1  Christopher Pitoun (SBN 290235)
   *christopherp@hbsslaw.com*
2  HAGENS BERMAN SOBOL SHAPIRO LLP
   301 North Lake Avenue, Suite 920
3  Pasadena, CA 91101
   Tel: (213) 330-7150
4  Fax: (213) 330-7152

5  Joseph M. Vanek (*pro hac vice*)
   jvanek@vaneklaw.com
6  John P. Bjork (*pro hac vice*)
   jbjork@vaneklaw.com
7  VANEK, VICKERS & MASINI, P.C.
   55 W. Monroe Street, Suite 3500
8  Chicago, IL 60603
   Tel: (312) 224-1500
9  Fax: (312) 224-1510
   *Attorneys for Plaintiff and the Proposed Class*
10
   [Additional Counsel Listed on Signature Page]
11

12                UNITED STATES DISTRICT COURT

13               CENTRAL DISTRICT OF CALIFORNIA

14

15

16  JENNIFER BENTLEY, as trustee of the        No.15-cv-07870-DMG (AJWx)
    2001 Bentley Family Trust, and others
17  similarly situated.                         **MEMORANDUM OF POINTS
                                                AND AUTHORITIES IN
18                            Plaintiff,         SUPPORT OF PLAINTIFF'S
                                                MOTION FOR CLASS
19         v.                                   CERTIFICATION**

20  UNITED OF OMAHA LIFE                        Date:  March 30, 2018
    INSURANCE COMPANY; and DOES 1              Time:  9:30 a.m.
21  TO 50, inclusive,                           Judge: Hon. Dolly M. Gee
                                                Courtroom:  8C
22                            Defendants.
                                                [Filed with Notice of Motion,
23                                              Declaration of John Bjork and
                                                Proposed Order]
24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................ 1

II.  FACTUAL AND OTHER BACKGROUND RELEVANT TO CLASS CERTIFICATION ............................................... 3

III. ARGUMENT .................................................................... 7

    A.   Plaintiff's putative class satisfies each of Rule 23(a)'s requirements. .......................................................... 7

        1.   Plaintiff's putative class has and can be ascertained from Defendant's records. .................................. 7

        2.   Plaintiff's class of over 50 members exceeds the Ninth Circuit's numerosity threshold. ................. 8

        3.   The claims of Plaintiff and class members share common questions of fact and law. ................... 9

        4.   Plaintiff's claims are typical because they are directly aligned with all putative class members. .......... 11

        5.   Plaintiff is an adequate representative because her claims reflect the overall class's claims, she and the class have shared objectives and she has retained competent counsel to prosecute her suit. ......... 12

        6.   Defendant's argument concerning an alleged unique defense against a segment of putative class members is wrong and would not defeat class certification. ............................................... 14

    B.   Plaintiff's class satisfies Rule 23(b)(3) because common issues of fact and law predominate and a class action is the superior method of adjudication. ......... 16

        1.   Nearly every material factual and legal issue in this matter – concerning both liability and damages - is common to the class and such common issues predominate over any individual inquiries. ......... 16

            a.   Common evidence and common legal determinations predominate the contract claims. ................................................. 17

            b.   Common facts and legal analysis predominate the bad faith claims. ................ 18

        2.   Class adjudication of this dispute is far superior to individual lawsuits. .............................. 20

IV.  CONCLUSION ............................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aba v. Papa John's USA,*
  2007 U.S. Dist. LEXIS 28079 (C.D. Cal. Feb. 7, 2007) ................................. 7, 8, 22

*Ballas v. Anthem Blue Cross Life & Health Ins. Co.,*
  2013 U.S. Dist. LEXIS 199523 (C.D. Cal. Apr. 29, 2013)................................... 12

*Barnes v. AT&T Pension Benefit Plan,*
  270 F.R.D. 488 (N.D. Cal. 2010) .................................................................... 14, 15

*Boyd v. Bank of Am. Corp.,*
  300 F.R.D 431 (C.D. Cal. 2014)...................................................................... 12, 15

*Briseno v. Con Agra Foods, Inc.*
  844 F. 3d 1121 (9th Cir. 2017) ................................................................................ 7

*In re: Cathode Ray Tube (CRT) Antitrust Litig.,*
  2013 U.S. Dist. LEXIS 137946 (N.D. Cal. Sep. 24, 2013).................................... 16

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
  308 F.R.D. 606 (N.D. Cal. 2015) ............................................................................ 2

*Curran v. United of Omaha Life Ins. Co.,*
  38 F. Supp. 3d 1184 (S.D. Cal. 2014) ...................................................................... 5

*Durant v. State Farm Mut. Auto. Ins. Co.,*
  2017 U.S. Dist. LEXIS 34157 (D. Wash. March 9, 2017)................................ 10, 18

*Ellsworth v. U.S. Bank, N.A.,*
  2014 U.S. LEXIS 81646 (N.D. Cal. June 13, 2014) ..................................... 8, 13, 20

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.,,*
  2015 U.S. Dist. LEXIS 98656 (C.D. Cal. May 27, 2015)....................... 9, 11, 18, 21

*Gray v. County of Riverside,*
  2014 U.S. Dist. LEXIS 150884 (C.D. Cal. Sept. 2, 2014)........................................ 2

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) .......................................................................... 11, 16

*Johnson v. Hartford Cas. Ins. Co.*,
     2017 U.S. Dist. LEXIS 77482 (N.D. Cal. May 22, 2017) .............................. *passim*

*Leyva v. Medline Indus.*,
     716 F.3d 510 (9th Cir. 2013) ................................................................. 18

*Linney v. Cellular Alaska P'ship*,
     151 F.3d 1234 (9th Cir. 1998) ............................................................... 12

*Menking v.Daines*,
     287 F.R.D. 174 (S.D.N.Y. 2012) ............................................................ 2

*Miletak v. Allstate Ins. Co.*,
     2010 U.S. Dist. LEXIS 26913 (N.D. Cal. Mar. 5, 2010) ........................... 18

*Nitch v. Dreamworks Animation SKG, Inc.*,
     315 F.R.D. 270 (N.D. Cal. 2016) ......................................................... 9, 15

*Oasis West Realty, LLC v. Goldman*,
     51 Cal. 4th 811, 250 P.3d 1115 (2011) ................................................. 17

*Parsons v. Ryan*,
     754 F.3d 657 (9th Cir. 2014) ................................................................. 11

*Pole v. Estenson Logistics, LLC*,
     2016 U.S. Dist. LEXIS 105789 (C.D. Cal. Aug. 10, 2016) ...................... 8

*Rannis v. Recchia*,
     380 Fed. Appx. 646 (9th Cir. 2010) ....................................................... 8

*In re Scientific-Atlanta Inc. Sec. Litig.*,
     571 F. Supp. 2d 1315 (N.D. Ga. 2007) ................................................. 15

*In re TFT-LCD Antitrust Litig.*,
     267 F.R.D. 583 (N.D. Cal. 2010) ........................................................... 2

*Tietz v. Bowen*,
     695 F. Supp. 441 (N.D. Cal. 1987).......................................................... 8

*In re Toys R Us – Delaware, Inc. v. Fair & Accurate Credit Transactions
     Act Litig.*,
     300 F.R.D 347 (C.D. Cal. 2013)......................................................... 8, 15

*Vaccarino v. Midland Nat'l Life Ins. Co.*,
  2013 U.S. Dist. LEXIS 88612 (C. D. Cal. June 17, 2013) ..................... 8, 11, 20, 22

*Valdez v. Neil Jones Food Co.*,
  2014 U.S. Dist. LEXIS 111766 (E.D. Cal. Aug. 11, 2014) ..................................... 9

*Williams v. Std. Ins. Co.*,
  2017 U.S. Dist. LEXIS 59813 (E.D. Cal. Apr. 19, 2017) ........................................ 5

*Winkler v. DTE, Inc.*,
  205 F.R.D. 235 (D. Ariz. 2001) ............................................................................ 15

*Wolin v. Jaguar Land Rover North Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ........................................................................ 11, 20

## STATUTES

Cal. Civ. Code § 3289 .............................................................................................. 17

Cal. Ins. Code § 10110 .............................................................................................. 4

Cal. Ins. Code § 10111 ........................................................................................ 4, 17

Cal. Ins. Code § 10113 ..................................................................................... 1, 3, 11

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 ............................................................................................. *passim*

1

## I.    INTRODUCTION

Plaintiff, Jennifer Bentley, is a widow and trustee of the family trust that is the designated beneficiary of a $1 million term life insurance policy issued by defendant United of Omaha Life Insurance Company to Plaintiff's late husband Eric Bentley. Defendant has wrongfully, and in bad faith, denied Plaintiff's claim under the life insurance policy. This Court has already held that California law required Defendant to provide Mr. Bentley, and other policyholders, an opportunity to designate third parties to receive notices to prevent lapses due to non-payment of premiums. Yet, Defendant continues to drive right over the Court's rulings, hiding behind a flawed and discredited interpretation of California law to continue to deny Plaintiff's claim. Because Ms. Bentley is not the only one that the Defendant has improperly denied life-insurance benefits to, Plaintiff filed this class action to remedy the wrongful lapse and termination of the policies of her husband and the class.

This litigation specifically concerns Defendant's failure to comply with California Insurance Code sections 10113.71 and 10113.72 (collectively the *Statutes*). In discovery, Defendant confirmed that it terminated (Plaintiff contends improperly) numerous life insurance policies that were renewed in California after January 1, 2013 (the Statutes' effective date) without providing the required statutory notice to policyholders and their designated third parties (the *Notices*). Although the argument has been thrice rejected by this Court, Defendant stubbornly persists in arguing that it was not required to provide the required Notices, because the Statutes do not apply to policies issued before 2013, even though the policyholder renewed the policy *in California* after January 1, 2013, as Mr. Bentley did.

Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), Plaintiff seeks certification of the following class:

> All beneficiaries who made a claim, or would have been eligible to make a claim, for the payment of benefits on life insurance policies renewed, issued or delivered by Omaha in

the State of California that lapsed or were terminated by Omaha for the non-payment of premium after January 1, 2013, and as to which policies one or more of the notices described by Sections 10113.71 and 10113.72 of the California Insurance Code were not sent by Omaha prior to lapse or termination.[1]

This case is particularly well-suited for class treatment because satisfaction of Rule 23(a)(2) and (b)(3)'s commonality and predominance requirements are fairly obvious. The core facts – Defendant's failure to provide the Notices for policies renewed in California after the Statutes' effective date and subsequent lapse of such policies for non-payment of premiums - are undisputed and common to every class member. Similarly, the primary legal issue – whether the Statutes apply to policies issued before January 1, 2013 and renewed in California after the Statutes' effective date – is the same as to all class members and can be resolved in one stroke.

Rule 23's other requirements are likewise satisfied with ease. Putative class members are identifiable from Defendant's records and the class is comprised of over 50 members who are geographically dispersed throughout California and several states. Numerosity under Rule 23(a)(1) is thus met.

---

[1] The phrase – "prior to lapse or termination" - is <u>not</u> in the class definition in the operative complaint. But, without this language, Defendant could destroy the existing proposed class by sending Notices to those policyholders who otherwise fit the class definition. In fact, Discovery has revealed that Defendant sent at least a handful of notices to policyholders of <u>lapsed</u> policies after lapse but did not reinstate those policies. These policies should be included in the class as the beneficiaries were wrongfully denied benefits under common factual circumstances. Modification of the class definition at the class certification stage is entirely appropriate. *See Gray v. County of Riverside*, 2014 U.S. Dist. LEXIS 150884, at *37 (C.D. Cal. Sept. 2, 2014) (permitting modification to class definition as part of class certification briefing to make the class objectively identifiable); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 619-20 (N.D. Cal. 2015) (permitting expansion of class definition from that proposed in complaint); *In re TFT-LCD Antitrust Litig.,* 267 F.R.D. 583, 591 (N.D. Cal. 2010) (allowing revisions to class definition during class certification briefing because "…the proposed modifications are minor, require no additional discovery, and cause no prejudice to defendants."); *Menking v.Daines*, 287 F.R.D. 174, 181 (S.D.N.Y. 2012) (court permits plaintiff to broaden class definition to statewide versus citywide class in complaint).

1   The typicality and adequacy requirements of 23(a)(3) and (4) are also satisfied.

2   Because Plaintiff's claims, just like those of all class members, are premised on

3   Defendant's failure to provide the Notices following a policy renewal in California,

4   she is a typical representative of the class and will adequately protect the class's

5   interests. Moreover, Plaintiff is represented by counsel with extensive experience in

6   the class action context generally, and the insurance context in particular, all of whom

7   can, have and will prosecute this action competently and vigorously.

8   Finally, adjudication of this matter on a class-wide basis is plainly superior to

9   individual lawsuits. Many class members have relatively small claims. The potential

10  recoveries on such claims would quickly be surpassed by the costs and other burdens

11  of litigation, which, if Defendant's rigorous defense against Plaintiff's claims is any

12  indication, would surely be significant. Additionally, because the class members are

13  beneficiaries and not policyholders, many are likely unaware of their claims.

14  Certification would result in the issuance of notice apprising them of their claims.

15  These facts, in conjunction with the judicial inefficiency of individual lawsuits and

16  possibility of inconsistent judgments, strongly support a finding of superiority under

17  Rule 23(b)(3).

18  Plaintiff respectfully requests that her Motion for Class Certification (*Motion*)

19  be granted.

20  ## II.   FACTUAL AND OTHER BACKGROUND RELEVANT TO CLASS CERTIFICATION

21  The Statutes went into effect on January 1, 2013 (the *Effective Date*) and

22  established the Notices' requirements. *See* Cal. Ins. Code § 10113.71-72. The Notices

23  require, among other things, that life insurers: 1) give their policyholders notice of an

24  opportunity to designate a third party to receive notice of a potential termination of

25  benefits for non-payment of a premium; 2) provide notice to the designated third

26  parties of any non-payment of a premium prior to terminating any policy; and 3)

27  provide policyholders 30 days written notice prior to cancellation. *Id.* The public

28

1   policy underlying the Statutes is to protect individuals from losing coverage under

2   their life insurance policies resulting from a missed payment. *See* Plaintiff's Third

3   Amended Class Action Complaint and Demand for Jury Trial, Dkt. No. 87 at ¶¶ 3-4.

4   Under California law, the remedy available for breaching insurance contracts due to

5   violations of the Statutes is the amount of the policy. *See* Cal. Ins. Code § 10111.

6          In February 2001, Defendant issued a $1 million term life insurance policy to

7   Plaintiff's husband, Mr. Eric Bentley (the *Policy*) *See* Declaration of John Bjork

8   (*Bjork Dec.*)(the Policy), "**Exhibit A**" at UNITED-000005.[2] Pursuant to the Policy,

9   Mr. Bentley was able to renew on a yearly basis for successive one-year periods until

10  February 28, 2060, at which point he would have reached the age of 95. *Id.* at

11  UNITED-000009. Mr. Bentley made his premium payments for 13 years, some after

12  the Effective Date, and, as a result, the Policy renewed each year and coverage

13  remained in force without interruption during that time. *See* Defendant Answer

14  (*Answer*), Dkt. No. 108 at ¶ 29. On October 28, 2014, Defendant lapsed coverage

15  under the Policy for the non-payment of the premiums. *See* Bjork Dec. (Termination

16  Letter), "**Exhibit B**." Less than two weeks later, on November 7, 2014, Mr. Bentley

17  died. *See* Answer at ¶ 31. Then, on behalf of the family trust, Ms. Bentley made a

18  claim on the Policy which Defendant denied. *Id.* at ¶¶34-35.  It is undisputed that

19  Defendant never provided Mr. Bentley or any designee with the Statutes' required

20  Notices. *See* Answer at ¶ 32; Bjork Dec. (Transcript of D. Kallenbach, Senior Systems

21  Business Consultant at Mutual of Omaha) (*Kallenbach Tran.*), "**Exhibit C**" at 44:18-

22  22, 58:6-10.

23         The Defendant claims that despite the fact that Mr. Bentley's Policy renewed[3] in

24  California after the Effective Date, the Notices were not required because Mr.

25  _____

26      [2] As required by the Court's standing order, all exhibits cited in the Motion are
    attached to the declaration of Plaintiff's attorney, John P. Bjork, filed in conjunction
27  with the Motion.

28      [3] The California Insurance Code defines "renew" as "continued in force on or after
    the policy's anniversary date." Cal. Ins. Code Section 10110.6. Case law interpreting

1   Bentley's Policy was initially issued prior to the Statutes' Effective Date. *See Answer*

2   *at ¶ 2.* Defendant took this position – that the Statutes do not apply to renewals – with

3   respect to not only Mr. Bentley's Policy, but <u>all</u> policies it issues, delivers or renews in

4   California. *See* Bjork Dec. (Kallenbach Tran.), Ex. C at 39:10-19; 45:23-47:18; 51:11-

5   56:7; 57:10-60:3. In other words, Defendant had a uniform company practice not to

6   issue the Notices in connection with a policy renewal in California. *Id.* Defendant's

7   practice continued after the filing of Plaintiff's complaint and, incredibly, even after

8   this Court's rulings that Statutes *do apply* to policy renewals in California. [4]

9       Defendant's narrow interpretation of the Statutes was developed in early 2013,

10  without consulting legal counsel, industry groups, the Department of Insurance or

11  anyone else outside of Defendant. *See* Bjork Dec. (Transcript of K. Meyerring,

12  Product and Advertising Compliance Consultant at Mutual of Omaha) (*Meyerring*

13  *Tran.*), "**Exhibit D**" at 32:2-33:2; 36:20-48:8. Defendant's narrow interpretation was

14  implemented despite knowing at that time that an industry association had reported,

15  based on a communication with the Department of Insurance, that the Statutes applied

16  to renewals. *See Id.* at 38:16-40:19. Although discovery remains ongoing, the record

17  developed to date shows that, unlike Defendant, at least one other life insurer began

18  issuing the Notices on policies regardless of issue date as soon as the Statutes went

19

20

21  ─────────────
    the term "anniversary date" has defined it to mean "the annual recurrence of the

22  policy's effective date." *See Williams v. Std. Ins. Co.*, 2017 U.S. Dist. LEXIS 59813
    (E.D. Cal. Apr. 19, 2017); *Curran v. United of Omaha Life Ins. Co.*, 38 F. Supp. 3d

23  1184, 1191-92 (S.D. Cal. 2014). The class members Defendant has identified were all
    beneficiaries of policies that renewed in California after the Effective Date under this

24  definition.

25      [4] On or around October 21, 2016, in response to this lawsuit, Defendant began
    issuing the Notices for in-force policies initially issued in California regardless of

26  when they were first issued. *See* Bjork Dec. (Kallenbach Tran.), Ex. C 102:3 at 63:8-
    64:5. However, Defendant did not issue Notices on policies that lapsed before that

27  date, nor has Defendant provided the Notices for any policies that were issued outside
    California but renewed within California. *Id.* at 66:25-67:5.

28

into effect.[5] *See* Bjork Dec. (Declaration of Northwestern Mutual Insurance)(*NW Dec.*), "**Exhibit E**" at ¶ 6.

Plaintiff is currently aware of at least approximately 250 policies that were renewed within California by Defendant after the Effective Date and thereafter lapsed by Defendant for non-payment of a premium after the renewal without first providing the Notices. *See* Bjork Dec. (Kallenbach Tran.), Ex. C at 100:22-102:3. The insureds on 45 of these policies have passed away, of which there are 53 beneficiaries with eligible claims who live in various parts of California, Tennessee, Arizona, Nevada, Michigan, Massachusetts and Texas. *See* Bjork Declaration (Defendant lists of beneficiaries fitting class definition)(*Class Lists*), "**Exhibit F**." [6] The face value of the claims on the policies vary, with many being $5,000 or less. *Id.* at UNITED 001252-001253. Other than Plaintiff's lawsuit, there are no other known suits that have been filed against Defendant by any of the other eligible beneficiaries on the lapsed policies.

Plaintiff filed this class action to remedy what she believes was a wrongful and bad-faith cancellation of her husband's policy and all other policies renewed in California after the Effective Date for which the Notices were not provided. *See* Bjork Dec. (Declaration of Jennifer Bentley) (*Bentley Declaration*), "**Exhibit G**" at ¶¶ 2, 4. To achieve this objective, Plaintiff has retained counsel with extensive class action and insurance law experience. *See* Bjork Dec. (Attorney and Firm Descriptions) (*Attorney Descriptions*), "**Exhibit H**." Further, she has familiarized herself with the facts of the

---

[5] For the purpose of establishing her bad-faith claims, Plaintiff issued subpoenas to several other insurers to determine how they interpreted the applicability of the Statutes to renewals and what actions they took to comply with the Statutes. To date, Northwestern is the only insurer to provide information that answers this question. Plaintiff's counsel is in the process of meeting and conferring with counsel for the remaining insurers to obtain this important discovery.

[6] According the Defendant, Policy No. 7864066 was included on their list of policies lapsed for non-payment of premiums by mistake and was not in fact lapsed for non-payment of premium. Plaintiff has therefore excluded this policy from the foregoing numbers.

1  case and legal theories, she has worked diligently to comply with Defendant's

2  discovery requests (including sitting for a four-hour deposition that covered extensive

3  irrelevant personal matters concerning her divorce from her husband) and she is

4  willing to appear and testify at trial if needed. Bjork Dec. (Bentley Declaration), Ex. G

5  at ¶¶ 3, 5-7. Put simply, Plaintiff has done and is committed to continue doing what is

6  necessary to successfully prosecute the claims of her putative class. *Id.*

7  ## III.  ARGUMENT

8  ### A.    Plaintiff's putative class satisfies each of Rule 23(a)'s requirements.

9  Rule 23(a) has four familiar requirements: 1) numerosity; 2) commonality; 3)

10  typicality; and 4) adequacy. *Aba v. Papa John's USA*, 2007 U.S. Dist. LEXIS 28079,

11  at *15 (C.D. Cal. Feb. 7, 2007). Plaintiff and her putative class are ascertainable and

12  plainly satisfy each of these requirements.

13  ### 1.    Plaintiff's putative class has and can be ascertained from Defendant's records.

14
15  Unlike some circuits, the Ninth Circuit does not have an express

16  "ascertainability" requirement for certification under Rule 23. *See Briseno v. Con*

17  *Agra Foods, Inc*. 844 F. 3d 1121, 1124-1125, fn 4 (9th Cir. 2017) ("[Defendant] cites

18  no other precedent to support the notion that our court has adopted an

19  'ascertainability' requirement. This is not surprising because we have not.") However,

20  even if there is no formal requirement, Plaintiff's class is ascertainable.

21  Defendant's records identify the class members. *See* Bjork Dec. (Class Lists),

22  Ex. F. Through queries of its internal database systems, Defendant can and has

23  identified beneficiaries of policies that were renewed in California after the Effective

24  Date, lapsed after renewal for non-payment of premiums and to which the Notices

25  were not sent before the lapse and where the insured has since died. *See Id.*; Bjork

26  Dec. (Kallenbach Tran.), Ex. C at 100:22-102:7. Identifying deceased insureds

27  involves consulting an internal death master file that Defendant maintains, and which

28  is regularly updated and populated by the federal government's death master file. *See*

1    Bjork Dec. (Kallenbach Tran.), Ex. C at 102:4-104:12. This ability to identify class
2    members through objective criteria renders Plaintiff's class ascertainable. *See*
3    *Ellsworth v. U.S. Bank, N.A.*, 2014 U.S. LEXIS 81646, at **37-44 (N.D. Cal. June 13,
4    2014) (a class of home loan borrowers ascertainable because they could be identified
5    through Defendant bank's loan records); *Vaccarino v. Midland Nat'l Life Ins. Co.*,
6    2013 U.S. Dist. LEXIS 88612, at *16 (C. D. Cal. June 17, 2013) (class of annuity
7    holders "readily ascertainable" from Defendant's own "books and records").

8          ## 2.    **Plaintiff's class of over 50 members exceeds the Ninth Circuit's numerosity threshold.**

9
10          To meet Rule 23(a)(1)'s numerosity requirement, joinder need not be
11   impossible. *Rannis v. Recchia*, 380 Fed. Appx. 646, 650 (9th Cir. 2010). All that is
12   required is that putative class members would suffer a strong litigation hardship or
13   inconvenience if joinder were required. *Id.* In general, this hardship is presumed, and
14   numerosity is met, when a class includes at least 40 members. *Id.* at 651. *See also In re*
15   *Toys R Us – Delaware, Inc. v. Fair & Accurate Credit Transactions Act Litig.*, 300
16   F.R.D 347, 367-368 (C.D. Cal. 2013) ("…classes of 40 or more are numerous
17   enough"); *Alba,* 2007 U.S. Dist. LEXIS 28079 at * 17 (noting that "…pertinent Ninth
18   Circuit authority... holds that a class consisting of 39 people is large enough to satisfy
19   the numerosity requirement"). In fact, courts in this circuit have held that classes
20   smaller than 40 can still meet Rule 23's numerosity requirement. *See Rannis*, 380 Fed.
21   Appx. at 650-6652 (affirming numerosity finding on class size of 20); *Tietz v. Bowen*,
22   695 F. Supp. 441, 445-446 (N.D. Cal. 1987) (class of 27 members certified).   In view
23   of this precedent, Plaintiff's putative class meets the numerosity requirement. *See*
24   Bjork Dec. (Class Lists), Ex. F.

25          While Plaintiff's class size alone is enough, the fact that the putative class is
26   geographically dispersed throughout the country further bolsters a finding of
27   numerosity. *Pole v. Estenson Logistics, LLC*, 2016 U.S. Dist. LEXIS 105789, at **14-
28   16 (C.D. Cal. Aug. 10, 2016) (finding that geographical diversity of class members

favored certification); *Valdez v. Neil Jones Food Co.*, 2014 U.S. Dist. LEXIS 111766, at \*11 (E.D. Cal. Aug. 11, 2014) ("A variety of factors have been found to be relevant to the whether joinder of the class members would be impracticable, including…the geographical spread of class members…"). It would be impracticable and burdensome on individual class members – many of whom live hundreds or even thousands of miles from this district – to join this lawsuit in order to prosecute claims many of which are worth as little as a few thousand dollars. *See* Bjork Dec. (Class Lists), Ex. F. For this additional reason, joinder is not feasible and a class proceeding is the appropriate way to adjudicate this dispute.

### 3. The claims of Plaintiff and class members share common questions of fact and law.

Under Rule 23(a)(2), a plaintiff must show there are "questions of law or fact common to the class" to which a class-wide proceeding has the capacity to generate common answers. *See Nitch v. Dreamworks Animation SKG, Inc.*, 315 F.R.D. 270, 283 (N.D. Cal. 2016) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). This means that the class claims must depend on a common contention and that the "…determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *See Flo & Eddie Inc. v. Sirius XM Radio, Inc.,* 2015 U.S. Dist. LEXIS 98656, at \*29 (C.D. Cal. May 27, 2015) (citing *Wal-Mart*, 564 U.S. at 338). The standard is not a particularly stringent one as even a "single common question" will do. *Nitch*, 315 F.R.D. at 283.

Commonality is satisfied here because the core factual <u>and</u> legal issues are the same for Plaintiff and every other putative class member. Factually, each class member's claim is premised on the same core conduct by Defendant – lapsing of a policy that was renewed in California for non-payment of premium after the Effective Date and to which the Notices were not sent prior to lapse. Given Defendant's admitted company-wide practice of not issuing the Notices in these circumstances, the factual proof of Defendant's conduct can and will be shown through common, class-

1   wide evidence. *See* Bjork Dec. (Kallenbach Tran.), Ex. C at 39:10-19; 45:23-47:17;

2   51:11-56:7; 57:10-60:3. So too will Defendant's bad faith because Defendant

3   developed and applied its position regarding the applicability of the Statutes to

4   renewals to all class members in a uniform manner. *See* Bjork Dec. (Kallenbach

5   Tran.), Ex. C at 39:10-19; 45:23-47:17; 51:11-56:7; 57:10-60:3; Bjork Dec.

6   (Meyerring Tran.), Ex. D., at 30:15-33:2; 36:20-48:8.

7       Similarly, with regard to the legal issues, commonality exists because each class

8   member's claim is based on the same central legal determination: whether the Notices

9   are required for renewals of policies in California after the Effective Date. Plaintiff's

10  claim, and those of every class member, hinge on the Court's answer to this common

11  question. If the Court determines the Notices were required, then the breach necessary

12  for each class member's contract and bad faith claims will be established. If the Court

13  rules to the contrary, the opposite will be true. Because the fate of all class member

14  claims can be determined in one stroke. Commonality is, by definition, satisfied.

15      The case of *Johnson v. Hartford Cas. Ins. Co.,* 2017 U.S. Dist. LEXIS 77482

16  (N.D. Cal. May 22, 2017) is directly on point. In *Johnson*, a class of property

17  insurance policyowners challenged defendant insurance company's practice of

18  depreciating insured property for payout purposes that was not normally subject to

19  repair. *Id.* at **2-5. Plaintiffs alleged that the defendant's practice – which was applied

20  to all class members - violated certain California Insurance Code provisions

21  prohibiting depreciation in such circumstances and constituted breach of contract and

22  bad faith. *Id.* at **2-5, 25-28. The Court certified the class because each of the class

23  member's claims was based on the same conduct, the legality of which could be

24  decided for all based on the Court's interpretation of the applicable Insurance Code

25  provisions. *Id.* at **35-36. *See also Durant v. State Farm Mut. Auto. Ins. Co.*, 2017

26  U.S. Dist. LEXIS 34157, at **10-11 (D. Wash. March 9, 2017)(commonality found

27  for class of auto insurance policyowners because defendant auto insurance provider

28

1   denied each of their claims based on a uniform policy interpretation and therefore the

2   legality of defendant's practice could be decided commonly); *Flo & Eddie*, 2015 U.S.

3   Dist. LEXIS 98656 at **29-30 (class of copyright owners certified in part because the

4   conduct alleged against defendant– unlawful broadcasting of plaintiffs' songs without

5   a license – as well as the core legal determination – whether the alleged broadcasting

6   required prior owner authorization under California law – was common and could be

7   decided for each class member uniformly ); *Vaccarino,* 2013 U.S. Dist. LEXIS 88612

8   at **17-20 (commonality satisfied because defendant's challenged practice of annuity

9   bonus recoupment was applied to all class members in the same manner).

10      As in *Johnson* and the other cited authority, Defendant's conduct, and the

11  analysis necessary to determine its legality, is common to Plaintiff and every other

12  class member. Therefore, commonality exists here.

13      **4.     Plaintiff's claims are typical because they are directly aligned with all putative class members.**

14

15      The purpose of the typicality requirement is "…to assure that the interest of the

16  named representative aligns with the interests of the class." *Wolin v. Jaguar Land*

17  *Rover North Am., LLC*, 617 F.3d 1168, 1175-1176 (9th Cir. 2010). This is a lenient

18  requirement. *See Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). It is not

19  necessary that the class-member claims and representative claims be "substantially

20  identical." *Id.* All that is necessary is that representative claims be "reasonably co-

21  extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d

22  1011, 1020 (9th Cir. 1998).

23      Plaintiff's claims are not only "reasonably co-extensive" with those of her

24  putative class, they are identical. The defendant (United of Omaha), the Statutes (Cal.

25  Ins. Code sections 10113.71-10113.72), the wrongful conduct (failure to provide the

26  Notices under the Statutes prior to a policy lapse), the causes of action (breach of

27  contract and bad faith), the principal defense (that a renewal in California does not

28  trigger the Statutes), the remedy (the amount due on the policy as required by statute),

1    and the harm sustained (loss of the policy proceeds) are the same and so, the Rule

2    23(a)(3) typicality requirement is met.

3          The case of *Ballas v. Anthem Blue Cross Life & Health Ins. Co.,* 2013 U.S. Dist.

4    LEXIS 199523 (C.D. Cal. Apr. 29, 2013) is instructive. There, plaintiff filed a class

5    action on behalf of individuals with life insurance policies issued by the defendant all

6    of whom were denied coverage for the same type of back procedure. *Id.* at **3-4. In

7    each instance, the defendant denied coverage under a "blanket" policy determination

8    that the requested procedure was "experimental" and therefore not covered. *Id.* at

9    **27-28. In certifying the class, the Court found that plaintiff was typical because he

10   suffered the same injury – denial of coverage – from the same conduct by defendant –

11   an adverse blanket policy determination. *Id.* Given the similar fact pattern in this case,

12   a finding of typicality is justified.

13         **5.    Plaintiff is an adequate representative because her claims reflect the overall class's claims, she and the class have shared objectives and she has retained competent counsel to prosecute her suit.**

14

15         For many of the same reasons Plaintiff's claims are typical, Plaintiff is also an

16   adequate class representative. Rule 23(a)(4)'s adequacy requirement mandates that a

17   representative plaintiff "fairly and adequately protect the interests of the class." *See*

18   *Boyd v. Bank of Am. Corp.*, 300 F.R.D 431, 438 (C.D. Cal. 2014). To satisfy the

19   requirement, a plaintiff must show that its interests are not antagonistic to those of the

20   class and that it is able to prosecute the action vigorously through qualified and

21   competent counsel. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th

22   Cir. 1998).

23         With regard to Plaintiff's interests, they are shared by all class members.

24   Plaintiff's fundamental objective in this litigation is to obtain a ruling that a policy

25   renewal in California after the Effective Date triggers the Statutes' obligations. If

26   Plaintiff prevails on this central issue, she and all class members benefit. If she does

27   not, her claims, and those of the other class members, fail. So, Plaintiff has every

28

1   incentive to vigorously pursue her and the class's claim on their mutual, collective

2   behalf.  This is especially true given that Plaintiff's $1 million claim is the largest in

3   the class. *See* Bjork Dec. (Class Lists), Ex. F. Moreover, Plaintiff has demonstrated -

4   through her knowledge of the case, her extensive litigation efforts to date and her

5   attested willingness to do what is necessary going forward - that she can and will

6   adequately and competently fulfill her class- representative obligations. *See* Bjork

7   Dec. (Bentley Dec.) Ex. G at ¶¶ 3, 5-7. There is no antagonism between Plaintiff and

8   the class. Plaintiff is an adequate class representative. *See Ellsworth*, 2014 U.S. LEXIS

9   81646 at **59-60 (adequacy established because class representative suffered "same

10  injuries" and had "common claims and shared interests" as the putative class).

11       As for her legal representation, Plaintiff's attorneys have diligently litigated this

12  case to date, have years of collective experience in the class action context, have

13  extensive collective backgrounds in the insurance arena and have successfully

14  resolved numerous class and other actions through judgment, settlement and trial. *See*

15  Bjork Dec. (Attorney Descriptions), Ex. H. Plaintiff has retained counsel who are

16  competent and qualified to adequately represent her and the class.

17       Pursuant to Fed. R. Civ. Proc. 23(g), Plaintiff additionally requests that her

18  counsel Joseph Vanek of Vanek Vickers & Masini and Jason Zweig of Hagens

19  Berman Sobol & Shapiro be appointed as class counsel. For many of the same reasons

20  they satisfy the adequacy requirement, Messrs. Vanek and Zweig would be effective

21  class counsel. They, along with Sperling & Slater and Klevatt & Associates, who are

22  also representing Plaintiff, have extensive individual and common experience in

23  commercial litigation, and, in particular, insurance and class-action matters. *Id.*

24  Moreover, they possess the resources – both human and financial – to effectively

25  litigate this matter to conclusion. *Id.* Their appointment as lead counsel is justified and

26  respectfully requested.

27

28

6.     **Defendant's argument concerning an alleged unique defense against a segment of putative class members is wrong and would not defeat class certification.**

In its Motion to Deny Certification, Defendant argued that Plaintiff is inadequate or atypical of, and lacks commonality with, a segment of the class who are beneficiaries of policies issued outside of California, but later renewed in California (*i.e.* insured moved to California and the policy continued in force beyond an anniversary date). *See* Dkt No. 111-1 at pp. 16-19. According to Defendant, beneficiaries of such policies are subject to a material unique defense regarding the applicability of the Statutes that Plaintiff is not. *Id.* Defendant was wrong when it made the argument previously and would be wrong insofar as it makes the argument again in opposition to this Motion.

First, all members of Plaintiff's putative class – regardless of where the policy was initially issued or delivered – have claims based on policies that were renewed in California by Defendant. Thus, they all have claims that will rise and fall on the same core disputed issue in the case - whether a renewal of a policy in California after the Effective Date triggers the Statutes' notice requirements. Plaintiff has every reason to pursue such claims, and, there is no conflict between her claim and those whose policies were initially issued outside of California, but later renewed in California.

Second, even if Defendant was correct that non-California issued policies were subject to some sort of unique defense – which it is not - such a defense would not make Plaintiff atypical or inadequate, nor would it defeat commonality. Class-action defendants have unsuccessfully attempted to defeat class certification on these grounds in the past. For example, in *Barnes v. AT&T Pension Benefit Plan,* 270 F.R.D. 488 (N.D. Cal. 2010), the plaintiff filed an ERISA class action based on the defendant's alleged failure to fully pay promised retirement benefits. The defendant attempted to defeat class certification by arguing that some class members, but not the class representative, were subject to a variety of defenses such as the statute of

1    limitations, waiver, estoppel and laches. Like Defendant here, the defendant in *Barnes*

2    argued these "unique" defenses against other class members made the plaintiff an

3    atypical and inadequate representative, and precluded a commonalty finding. *Id.* at

4    493-495. The court disagreed. With regard to commonality, the court held, "[t]he mere

5    existence of factual differences between a class representative and the class he seeks to

6    represent does not [ ] provide grounds for finding an absence of commonality." *Id.* at

7    493. As for typicality, the court stated "defenses that may bar recovery for some

8    members of the putative class, but that are not applicable to the class representative do

9    not render a class representative atypical under Rule 23." *Id.* at 494. Finally, as to

10   adequacy, the court ruled that "…the potential existence of [the alleged unique]

11   defenses against absent class members does not, standing alone, make [the class

12   representative] inadequate." *Id.* at 493.

13          Numerous other cases from this circuit and elsewhere are in accord with *Barnes*.

14   *See e.g., Nitsch,* 315 F.R.D. at 283-285 (holding that arbitration and release defenses

15   applicable to some class members but not the class representative did not defeat

16   adequacy or typicality); *Boyd,* 300 F.R.D. at 439 ("there is no authority for the

17   proposition that an affirmative defense, which may affect some members of the class,

18   creates a conflict that otherwise defeats adequacy of a proposed class representative");

19   *Winkler v. DTE, Inc*., 205 F.R.D. 235, 242 (D. Ariz. 2001) (rejecting a typicality

20   challenge based on purported unique defenses against class members because any such

21   defenses were "insufficient to overshadow the fact that the class' claims are based on a

22   common course of conduct and common legal theories"); *In re Scientific-Atlanta Inc.*

23   *Sec. Litig.*, 571 F. Supp. 2d 1315, 1326-28, 1331-1332 (N.D. Ga. 2007) (refusing to

24   deny certification on typicality and adequacy grounds in a securities case despite many

25   putative class members being subject to reliance based defenses that did not concern

26   the class representatives). Should Defendant raise its "unique defense" argument again

27

28

in its opposition, Plaintiff submits that the Court should follow the lead of the foregoing courts and refuse to deny class certification on this basis.

**B.     Plaintiff's class satisfies Rule 23(b)(3) because common issues of fact and law predominate and a class action is the superior method of adjudication.**

To achieve certification under Rule 23(b)(3), there must be "questions of law or fact common to the members that predominate over any questions affecting only individual members" and a class proceeding must be "superior to other available methods for fair and efficient adjudication of the controversy. *See* Fed.R.Civ.Proc. 23(b)(3). As with Rule 23(a), Plaintiff and her putative class clearly meet each of the requirements of Rule 23(b)(3).

**1.     Nearly every material factual and legal issue in this matter – concerning both liability and damages - is common to the class and such common issues predominate over any individual inquiries.**

The predominance test gauges "whether proposed classes are sufficiently cohesive to warrant adjudication by representation…[and] focuses on the relationship between the common and individual issues." *See Hanlon*, 150 F.3d at 1022. The test is satisfied when "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Id.* Establishing predominance "does not require plaintiffs to prove that every element of a claim is subject to class-wide proof: they need only show that common questions predominate over questions affecting only individual class members." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 137946, at *67 (N.D. Cal. Sep. 24, 2013).

Predominance clearly exists here because common issues abound. Indeed, it is difficult to come up with *any* material individual issues that cannot be adjudicated class-wide.

a.   **Common evidence and common legal determinations predominate the contract claims.**

To prove Defendant's liability for breach of contract, common evidence will be used to establish the following facts: 1) Defendant issued life-insurance policies to the policyowners of each policy to which each class member is a beneficiary; 2) each such policy was in force after the Effective Date; 3) Defendant renewed each such policy in California at least once after the Effective Date; 4) Defendant lapsed each such policy after the Effective date for non-payment of a premium; 5) Defendant did not provide the policyowners of such policies Notices to designate third parties of pending lapses prior to lapse; 6) the insureds on each such policy have passed away; and 7) despite the deaths of the insureds, Defendant has not paid out the policy proceeds to the class members. *See* Bjork Dec. (Kallenbach Tran.), Ex. C at 39:10-19; 45:23-47:17; 51:11-56:7; 57:10-60:3; Bjork Dec. (Class Lists), Ex. F. These facts, nearly all which have already been admitted by Defendant, are uniform to each class member and underlie each of their respective contract claims. *See Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821, 250 P.3d 1115, 1121 (2011) ("…the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff.)

As with the factual analysis, the core legal determination for the Court is the same for all class members. Whether Defendant breached its contracts by not providing the Notices is common to every class member, requires a single analysis of a single-state's Statutes and will determine the outcome of every class-member's claim. Moreover, even the legal assessment of damages is uniform across the class. The quantum of damage – the face amount of the policy – and prejudgment interest is set by California statute. *See* Cal. Ins. Code § 10111 ("In life or disability insurance, the only measure of liability and damage is the sum or sums payable in the manner and at the times as provided in the policy to the person entitled thereto"); Cal. Civ.

1   Code § 3289 (prejudgment interest). The damage analysis is thus straightforward

2   arithmetic of adding up the policy values and the prejudgment interest from date of

3   death of the insured, it is applicable to all class members and it is directly tied to the

4   liability (that is, the breach) Plaintiff is attempting to prove.[7]

5         Courts have routinely held that breach of contract claims similar to Plaintiff's

6   satisfy the predominance requirement. *See Johnson*, 2017 U.S. Dist. LEXIS 77482 at

7   **41-44 (finding predominance in class claims for breach of insurance contracts

8   because "[Plaintiff's] claims revolve around [Defendant's] alleged failure to pay the

9   amount it owes under its insurance contracts to the insured… These questions, which

10  pertain to every class member, can be resolved through the interpretation of one

11  statute, Section 2051, and the same factual determinations"); *Durant*, 2017 U.S. Dist.

12  LEXIS 34157 at **14-16 (holding that predominance satisfied for insurance-breach-

13  of-contract class action because the legality of defendant's uniform standard of

14  denying claims was central to defendant's liability to each class member); *Miletak v.*

15  *Allstate Ins. Co.*, 2010 U.S. Dist. LEXIS 26913, at **34-35 (N.D. Cal. Mar. 5, 2010)

16  (common issues deemed predominant where defendant's practice of inducing early

17  insurance premium payments in alleged violation of contract was the same for all

18  plaintiffs). Plaintiff submits that this Court should do the same.

19        **b.**    **Common facts and legal analysis predominate the bad faith claims.**

20

21        The common evidence applicable to the Plaintiff's contract claim will also

22  establish many of the facts underlying Plaintiff's bad faith claim because a breach of

23  contract is required for both. *See Johnson*, 2017 U.S. Dist. LEXIS 77482 at **26

24  ("Under California law, without a breach of the insurance contract, there can be no

25        [7] Even if Plaintiff's damage calculation required extensive individualized

26  analysis, which it does not, this would not defeat predominance. See *Flo & Eddie,*

27  2015 U.S. Dist. LEXIS 98656 at *51 ("The Ninth Circuit has clearly held that denying certification on the basis of individualized damages issues is an abuse of discretion")

28  (relying on *Leyva v. Medline Indus.*, 716 F.3d 510, 513-14 (9th Cir. 2013)).

1    breach of the implied covenant of good faith and fair dealing."). The additional

2    evidence of bad faith Plaintiff will rely on – which will demonstrate that Defendant's

3    investigation of the Statutes' scope and uniform failure to issue the Notices was

4    unreasonable – will also be common to all claims. Such common evidence will

5    include, without limitation, Defendant and third-party records and testimony showing

6    that: 1) Defendant developed its view and position on the Statutes in early 2013

7    without directly consulting any legal counsel, the California Department of Insurance

8    or any trade associations; 2) Defendant applied its early 2013 interpretation of the

9    Statutes to all the policies in Plaintiff's putative class; 3) Defendant has continued to

10   apply this interpretation and has not reinstated any previously lapsed policies despite

11   rulings by the Court at odds with Defendant's view; 4) Defendant was aware, no later

12   than early 2013, that there were questions in the industry about the Statutes'

13   applicability to renewals and that an industry association had reported the Statutes

14   applied to renewals; and 5) unlike Defendant, at least one other insurer began issuing

15   the Notices on the Effective date regardless of the policies' issuance date. *See* Bjork

16   Dec. (Meyerring Tran.), Ex. D at 32:2-33:2; 36:20-48:8; Kallenbach Tran., Ex. C at

17   39:10-19, 45:23-47:17, 51:11-56:7, 57:10-60:3, 63:8-64:5, 66:25-67:5; Bjork Dec.

18   (NW Dec.), Ex. E at ¶6.

19        Like the evidence, the Court's legal analysis of the bad-faith claim is common

20   in nature. Either Defendant was reasonable in its development and application of its

21   blanket policy that the Statutes do not cover renewals or it was not. To answer this

22   question, the Court need not examine any individual circumstances, but rather, must

23   simply assess the facts of Defendant's common conduct in light of the law. The

24   Court's answer to the question – whatever it may be – will resolve the bad-faith claims

25   of each and every class member.

26        Defendant is expected to argue that the class cannot be certified because it

27   includes those who intentionally allowed their policies to lapse, for whatever reason.

28

1   Specifically, Defendant is expected to argue that Plaintiff's divorce from her husband

2   is relevant to whether he intended to let the policy lapse. Defendant's justification for

3   this intrusive discovery is contradicted by the Statutes' language, which nowhere

4   indicate that the intention of the policyowners dictate whether the Notices are or are

5   not required. Moreover, the imposition requirement Defendant argues should apply –

6   i.e. the absence of a desire by the policy-owner to let the policy lapse – is at odds with

7   the statutory objective of protecting policy-owners, who may not be of sound mind at

8   or near the time of their deaths.

9        For these reasons, common issues predominate Plaintiff's bad faith claim just as

10   they do Plaintiff's contract claim. *See Johnson*, 2017 U.S. Dist. LEXIS 77482 at \*\*5,

11   42-44 (certifying bad-faith class action and rejecting contention by defendant that bad-

12   faith legal and factual analysis must be individual); *Vaccarino*, 2013 U.S. Dist. LEXIS

13   88612 at \*58-59 (certifying a class of bad-faith claimants in part because "[t]he duty

14   of good faith and fair dealing is assessed under an objective standard under California

15   law, making this claim suitable for class treatment.")

16        **2.    Class adjudication of this dispute is far superior to individual lawsuits.**

17        Rule 23(b)(3)'s superiority requirement tests whether a class action is the most

18   efficient and effective means of resolving the controversy. *Wolin,* 617 F.3d at 1175.

19   Factors to consider in assessing superiority include, the class member's interests in

20   individually controlling the prosecution or defense of separate actions; the extent and

21   nature of any litigation concerning the controversy already begun by or against class

22   members; the desirability or undesirability of concentrating the litigation of the claims

23   in the particular forum; and the likely difficulties in managing a class action.

24   *Ellsworth*, 2014 U.S. LEXIS 81646 at \* 98. The objective of the superiority analysis is

25   to "focus on efficiency and economy so that appropriate cases may be adjudicated

26   most profitably on a representative basis." *Id.*

27

28

1    Class treatment of this dispute is far superior to individual adjudication for a

2    number of reasons. First, absent this class proceeding, putative class members would

3    likely never vindicate their rights against Defendant. Many have claims that amount to

4    only a few thousand dollars, which would quickly be dissipated by legal fees and other

5    costs associated with prosecuting their claims. Bjork Dec. (Class Lists), Ex. F. This is

6    especially true given Defendant's willingness to aggressively litigate and spare no

7    expense as shown by its repeated motions to dismiss (Dkt. Nos. 22, 89), a motion for

8    interlocutory appeal (Dkt. No. 30), a lengthy premature certification motion (Dkt. No.

9    111), the issuance of subpoenas to Plaintiff's and her husband's divorce lawyers

10   covering sensitive, irrelevant information (*See* Defendant Divorce Lawyer

11   Subpoenas,) "**Exhibit I**" and extensive deposition questioning of Plaintiff regarding

12   the wholly irrelevant and painful topic of her divorce from her husband prior to his

13   death. *See* Bentley Declaration at ¶6. *See Flo & Eddie*, 2015 U.S. Dist. LEXIS 98656

14   at *53-54 (class format held to be superior in part because defendant's aggressive

15   litigation tactics would make it cost prohibitive for class members with smaller value

16   claims to pursue them individually).

17        Furthermore, without class notice, most, and likely all, class members will never

18   know they have a claim. Because the class consists of beneficiaries, not policyowners,

19   it is unlikely that they are aware of Defendant's conduct. In fact, Defendant's

20   resistance to Plaintiff's effort to learn their identities – which required a motion to

21   compel that was granted by Judge Wistrich (Dkt. No. 118) - indicates that Defendant

22   is actively attempting to keep them in the dark such that individual actions are never

23   filed.

24        Second, the record is devoid of any other suits or claims against Defendant on

25   this issue, indicating that Defendant's efforts to date have been a success. This absence

26   of other actions favors a superiority determination because it further demonstrates that

27   individual suits are not a viable alternative to class treatment and that class

28

1    adjudication will not disrupt any other ongoing proceedings covering the same subject
2    matter. *See Alba*, 2007 U.S. Dist. LEXIS 28079 at *46 (superiority found in part
3    because "the record does not contain any information about other pending lawsuits
4    that might need to be enjoined, and this factor therefore also weighs in favor of class
5    certification."); *Johnson*, 2017 U.S. Dist. LEXIS 77482 at **47-48 ("No other suits
6    have been brought involving the same subject matter as the present action… . This
7    indicates that individual parties are either unable or unwilling to seek individual
8    litigation on their own behalf, and supports certification.")

9          Finally, litigating the class' claims through one action in a single forum is the
10   sensible way to proceed in terms of both judicial efficiency and equity. As discussed
11   throughout this Motion, the factual and legal bases for Plaintiff's claims are shared by
12   each class member and can be managed and decided in "one stroke" by the Court. To
13   have multiple courts decide these identical claims across various forums would be a
14   misuse of judicial, party and attorney resources that could lead to inconsistent
15   judgments and confusion. Such resource and management considerations further
16   demonstrate the superiority of deciding this case on a class basis. *Vaccarino*, 2013
17   U.S. Dist. LEXIS 88612 at *59 ("This case presents a number of issues capable of
18   resolution with a 'single stroke' which makes the class action vehicle the most
19   effective method for fairly and efficiently adjudicating class members' rights."); 
20   *Johnson*, 2017 U.S. Dist. LEXIS 77482 at **47-48 ("A situation in which numerous
21   lawsuits surrounding the same question… in which each court must make a
22   determination, would produce confusion and uneven and inequitable results.")

23                              **IV.   CONCLUSION**

24         For the foregoing reasons, Plaintiff respectfully requests that the Court certify
25   Plaintiff's proposed class, appoint Plaintiff as class representative and appoint Joseph
26   Vanek of Vanek Vickers & Masini and Jason Zweig of Hagens Berman Sobol &
27   Shapiro as Class Counsel.

28

1    DATED: February 2, 2018      HAGENS BERMAN SOBOL SHAPIRO LLP

2                        By: _*/s/ Christopher Pitoun*_____

3

4                        Christopher Pitoun (SBN 290235)
                       *christopherp@hbsslaw.com*

5                        HAGENS BERMAN SOBOL SHAPIRO LLP
                       301 North Lake Avenue, Suite 920

6                        Pasadena, CA 91101
                       Telephone:  (213) 330-7150

7

8                        Steve W. Berman
                       *steve@hbsslaw.com*

9                        HAGENS BERMAN SOBOL SHAPIRO LLP
                       1918 Eighth Avenue, Suite 3300

10                       Seattle, WA  98101
                      Telephone:  (206) 623-7292

11

12                       Jason A. Zweig
                      *jasonz@hbsslaw.com*

13                       HAGENS BERMAN SOBOL SHAPIRO LLP
                      455 N. Cityfront Plaza Drive, Suite 2410

14                       Chicago, IL 60611
                      Telephone: (708) 628-4949

15

16                       Joseph M. Vanek
                      *jvanek@vaneklaw.com*

17                       John P. Bjork
                      *jbjork@vaneklaw.com*

18                       VANEK, VICKERS & MASINI, P.C.
                      55 W. Monroe Street, Suite 3500

19                       Chicago, IL 60603
                      Telephone: 312-224-1500

20

21                       Paul E. Slater
                      *pes@sperling-law.com*

22                       SPERLING & SLATER, P.C.
                      55 W. Monroe Street, Suite 3500

23                       Chicago, IL 60603
                      Telephone: (312) 641-3200

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

David S. Klevatt
*dklevatt@chicagolaw.biz*
KLEVATT & ASSOCIATES, LLC
33 North LaSalle Street, Suite 2100
Chicago, IL 60602-2619
Telephone: (312) 782-9090

*Attorneys for Plaintiff and the Proposed Class*