1  Martin E. Rosen (SBN 108998)
   mrosen@hinshawlaw.com
2  Larry M. Golub (SBN 110545)
   lgolub@hinshawlaw.com
3  Jenny H. Wang (SBN 191643)
   jwang@hinshawlaw.com
4  HINSHAW & CULBERTSON LLP
   633 West Fifth Street, 47th Floor
5  Los Angeles, CA 90071
   Telephone: 213-680-2800
6  Facsimile: 213-614-7399

7  Attorneys for Defendant
   United of Omaha Life Insurance Company
8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

12  JENNIFER BENTLEY, as Trustee          Case No. 2:15-cv-07870-DMG-AJW
    of the 2001 Bentley Family Trust,
13                                         **OPPOSITION OF DEFENDANT
              Plaintiff,                    UNITED OF OMAHA LIFE
14                                          INSURANCE COMPANY TO
         vs.                                PLAINTIFF'S MOTION FOR CLASS
15                                          CERTIFICATION**
    UNITED OF OMAHA LIFE
16  INSURANCE COMPANY,                     Hearing Date:   March 30, 2018
                                           Hearing Time:   10:00 a.m.
17            Defendant.                    Courtroom:      8C

18                                         [Filed Concurrently With: (1) Declaration of
                                           Veronica Dougherty; (2) Declaration of
19                                         Nancy Irvine; (3) Declaration of Larry M.
                                           Golub; (4) Index of Evidence; and
20                                         (5) [Proposed] Order]

21                                         Discovery Cut-Off:   May 22, 2018
                                           Pre-Trial Conf. Date: August 28, 2018
22                                         Trial Date:          September 25, 2018

23                                         Complaint Filed:   August 27, 2015

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ...................................................................................... 1

II.    STATEMENT OF FACTS ......................................................................... 3

       A.    The Statutes ................................................................................... 3

       B.    The Bentley Policy ........................................................................ 4

       C.    Jennifer Bentley's Claims for Relief ............................................. 5

       D.    The Court's Prior Rulings at the Pleading Stage ........................... 6

       E.    The Policy Lists Generated by United in Discovery ..................... 7

       F.    Plaintiff's Continually Evolving Definition of the Proposed Class ....... 8

III.   LEGAL STANDARDS FOR CLASS CERTIFICATION ......................... 10

IV.    CERTIFICATION MUST BE DENIED TO THE EXTENT
       PLAINTIFF SEEKS TO INCLUDE NON-CALIFORNIA POLICIES
       IN THE CLASS ...................................................................................... 11

V.     COMMON QUESTIONS OF FACT OR LAW DO NOT
       PREDOMINATE OVER INDIVIDUALIZED ISSUES ............................ 14

       A.    The Date of Lapse of Each Policy is an Individualized Inquiry .......... 15

       B.    The Date Each Policy "Renewed" is an Individualized Inquiry .......... 16

       C.    The Existence of Different Policy Forms, Many of Which
             Mention Nothing About Renewal, Creates Individualized Issues ........ 17

       D.    Whether Any Given Policy Lapsed for Non-Payment of
             Premium is An Individualized Issue ............................................. 17

VI.    THE PROPOSED CLASS IS NOT SUFFICIENTLY NUMEROUS ........... 18

VII.   PLAINTIFF'S CLAIMS ARE NOT TYPICAL OF THE CLAIMS OR
       DEFENSES OF THE PROPOSED CLASS ................................................ 21

VIII.  A CLASS ACTION IS NOT SUPERIOR TO OTHER AVAILABLE
       METHODS OF ADJUDICATION ............................................................. 23

IX.    CONCLUSION ....................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ahern v. Dillenback*,
   1 Cal. App. 4th 36 (1991) ................................................................... 12

*Alba v. Papa John's USA*,
   2007 U.S. Dist. LEXIS 28079 (C.D. Cal. 2007) ................................. 25

*Amchem Prods. Inc. v. Windsor*,
   521 U.S. 591 (1997) ..................................................................... 10, 14

*Bassett v. ABM Parking Services*,
   2018 U.S. App. LEXIS 4097 (9th Cir. Feb. 21, 2018) ........................ 23

*Brandt v. Superior Court*,
   37 Cal. 3d 813 (1985) ......................................................................... 24

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) .............................................................................. 10

*Ellsworth v. U.S. Bank, N.A.*,
   2014 U.S. Dist. LEXIS 81646 (N.D. Cal. 2014) ................................. 25

*Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*,
   881 F.3d 679, 2018 U.S. App. LEXIS 1626 (9th Cir. 2018) ............... 10

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc*.
   2015 U.S. Dist. LEXIS 98656 (C.D. Cal. 2015) ................................. 25

*Hanon v. Dataproducts Corp*.,
   976 F.2d 497 (9th Cir. 1992) ........................................................ 10, 22

*Johnston v. HBO Film Management*,
   265 F.3d 178 (3d Cir. 2001) ............................................................... 23

*In re LifeUSA Holding Inc*.,
   242 F.3d 136 (3d Cir. 2001) ......................................................... 14, 23

*Martin v. Dahlberg, Inc*.,
   156 F.R.D. 207 (N.D. Cal. 1994) ........................................................ 10

ii

*Medina v. Conseco Annuity Assur. Co.*,
    121 P.3d 345 (Colo. App. 2005) ........................................................... 17

*Modglin v. State Farm Mut. Auto. Ins. Co.*,
    273 Cal. App. 2d 693 (1969) ............................................................... 13

*Moore v. Painewebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002) ............................................................... 14

*People v. Johnson*,
    60 Cal. 4th 966 (2015) ....................................................................... 12

*Phoenix. Mut. Life Ins. Co. v. Birkelund*,
    29 Cal. 2d 352 (1946) ........................................................................ 23

*Stephan v. Unum Life Ins. Co. of Am.*,
    697 F.3d 917 (9th Cir. 2012) ............................................................... 13

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ............................................................... 24

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................... 10

*Wang v. Chinese Daily News, Inc.*,
    737 F.3d 538 (9th Cir. 2013) ............................................................... 10

**Statutes**

Cal. Code of Civ. Proc. § 116.211 ............................................................ 24

Cal. Ins. Code § 10110.6 ................................................................. 11, 12

Cal. Ins. Code § 10113.71 ...................................................................... 1

Cal. Ins. Code § 10113.71(a) .............................................................. 11

Cal. Ins. Code § 10113.71(b)(1) ..................................................... 18, 20

Cal. Ins. Code § 10113.72 ........................................................ 1, 18, 20

Cal. Ins. Code §10113.72(a) ........................................................ 11, 15

Cal. Ins. Code § 10113.72(b) ...................................................... 7, 8, 15

Cal. Ins. Code § 10113.72(c) ............................................................... 18

Cal. Ins. Code § 11580.05 ........................................................................................ 12

**Other Authorities**

Fed. R. Civ. P. 23........................................................................... 1, 10, 11, 14

Fed. R. Civ. P. 23(a) ........................................................................... 10, 14

Fed. R. Civ. P. 23(a)(1)................................................................................21

Fed. R. Civ. P. 23(b) ................................................................................... 10

Fed. R. Civ. P. 23(b)(3) ........................................................................10, 14, 23

## I.   **INTRODUCTION**

Plaintiff Jennifer Bentley argues that class certification is warranted because there exists a common question of law:  whether California Insurance Code sections 10113.71 and 10113.72 (the "Statutes") apply to life insurance policies issued before January 1, 2013 and "renewed" in California thereafter. However, one common question of law does not a class action make. The Court must conduct a rigorous analysis to determine whether a class may be certified pursuant to the elements of Federal Rule of Civil Procedure 23 (the "Rule"). Many questions must be answered to determine whether a class comprised of Plaintiff and other life insurance beneficiaries may be certified based on Defendant United of Omaha Life Insurance Company's ("United") alleged violation of the Statutes for not notifying owners of policies issued before the Statutes' effective date of the ability to designate a third party to receive notices of policy lapse for nonpayment of premium.

Obtaining those answers requires ***an individualized inquiry*** into the circumstances surrounding each policy implicated by the proposed class definition. Among the individual inquiries are: Was the policy issued or delivered in California such that the Statutes, which refer to policies "issued or delivered in this state," apply to the policy? When was the statutory notice of the right to designate a third party to receive pending-lapse notices required to be provided, and did the policy lapse before that notice was even required? Did the policy lapse before it "renewed" such that it cannot be subject to the Statutes under Plaintiff's renewal theory? Did the policy renew at all, especially if the policy in question makes no mention of "renewal" but rather remains in force under the same terms and conditions with the timely payment of premiums? Did the policy lapse for nonpayment of premium, or did it terminate for another reason not covered by the Statutes, *e.g.*, the policyholder contacted United and asked to cancel the policy? If the policy lapsed for nonpayment of premium, did the insured die after the lapse such that the putative

HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

301280286v1 0977380

class members (comprised of beneficiaries) had a claim, or were eligible to make claim, for benefits under the policy?

These are foundational questions that must be answered to determine the existence of a viable class, and if so, whether any given putative class member belongs in the class. Every one of the questions requires a review of each policy identified in what Plaintiff has mischaracterized as the "class lists"[1] and the facts related to the policy, its policyholder, its insured, and its beneficiary. Answering these questions with respect to the named Plaintiff Jennifer Bentley and the policy issued to Eric Bentley that she claims was breached does not answer the questions for any of the other policies implicated by the proposed class definition. An individualized inquiry is required to first determine whether each putative class member might have a claim for breach of an applicable policy based upon facts unique to that policy, thereby defeating class certification.

The extent of the individualized inquiry required is confirmed by the fact that when the above issues are examined, as they must be, on a policy-by-policy basis, it appears that many of the beneficiaries of the 46 policies that United identified in discovery cannot be part of the proposed class for various reasons. For example, under Plaintiff's theory, United violated the Statutes for any policies, regardless of where they were issued, that were in force before the Statutes' January 1, 2013 effective date if the policies "renewed" after that date; yet, 11 of the policies never reached a "renewal" date in 2013 before they lapsed and thus those policies do not belong in the proposed class because there was no policy "renewal" that triggered the application of the Statutes. As another example, 11 of the 46 policies identified by United in discovery were canceled at the request of the policyholder, who no longer wished to keep his/her policy in force. Those policies do not belong in the

---

[1] What Plaintiff calls "class lists" are actually lists of policies United identified (the "policy lists") in response to Plaintiff's discovery requests, which broadly asked for information relating to policies United contends are not governed by the Statutes.

HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

1   proposed class because the Statutes govern policies that lapsed for nonpayment of
2   premium, and those policies did not lapse for non-payment of premium, but because
3   of affirmative actions by the policyholders, rendering the notice provisions of the
4   Statutes inapplicable.

5       In sum, numerous individualized factual inquiries, beyond the one common
6   question of law advanced by the Plaintiff, must be examined to determine whether a
7   class may be certified. The fact that those inquiries are needed, along with the fact
8   that they could be just as easily raised in an individual lawsuit, renders class
9   certification improper. Additionally, an individual analysis of each policy that
10  Plaintiff argues was breached reveals that a majority of them is not subject to the
11  Statutes for reasons unique to each policy, and thus could not have been breached,
12  reducing the number of purported class members to a number too low to satisfy the
13  numerosity requirement. Plaintiff's motion should be denied.

14  **II.   <u>STATEMENT OF FACTS</u>**

15      **A.   The Statutes**

16      This action is premised upon Plaintiff's legal argument that United violated
17  the Statutes by not sending the notices required by the Statutes to owners of policies
18  issued or delivered before the Statutes' January 1, 2013 effective date, Eric
19  Bentley's policy being one of them. The DOI – the agency charged with enforcing
20  the Statutes – unequivocally announced a contrary view on that issue, consistent
21  with United's interpretation:  the Statutes only govern policies issued or delivered
22  after their effective date. The DOI expressly informed Jennifer of its position that
23  the Statutes do not apply to Eric's policy.[2] After Jennifer's dispute with United
24  arose, her counsel, David Klevatt, wrote to the DOI, arguing that the Statutes apply
25  to policies issued prior to the Statutes' effective date. On March 23, 2015, Lisa
26  Hastings, Senior Insurance Compliance Officer at the DOI, wrote to Klevatt as

27  _____

28  [2] For ease of reference and to avoid confusion between the Bentley's, Jennifer and
    Eric will be referred to herein as "Jennifer" or "Plaintiff," and "Eric."

HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

301280286v1 0977380

follows:

> "You asserted that the company [United] was required to provide a notice of lapse pursuant to California Insurance Code Section 10113.71, and that this legislation applies retroactively. [¶] ***The Department's position is that California Insurance Code Section 10113.71 applies only to policies issued or delivered on or after January 1, 2013. It does not apply to any in force polices issued prior to this date***. [¶] Also, based on the policy document you provided to us, the policy was designed to continuously remain in force, provided all required premiums were paid. The policy was not re-issued every year as a new policy, as you have asserted. [¶] Therefore, based on ***the prospective applicability*** of the California Insurance Code Section 10113.71 and based on the policy language which indicates that the policy was designed to continuously remain in force provided the required premiums were paid, California Insurance Code Section 10113.71 does not apply to this policy." Declaration of Larry M. Golub ("Golub Dec."), Ex. 19. (Emphasis added.)

Additionally, and contrary to Plaintiff's implication in this motion, United was not alone in its interpretation that the Statutes only to apply to policies issued and delivered after January 1, 2013. Transamerica Premier Life Insurance Company ("TPLIC") initially produced two documents in response to subpoenas served by Plaintiff seeking documents as to whether insurers sent notices pursuant to the Statutes to pre-January 1, 2013 policies. TPLIC first produced an email blast from an insurance trade association to a multitude of insurers, referencing a meeting with the DOI in which the insurers were advised that the Statutes "will be applied prospectively," and a later email to TPLIC that the Statutes are "intended to apply only to new policies issued on or after 1/1/13, and not to a standard renewal." *See* Golub Dec., ¶ 8, Ex. 17. TPLIC later provided a declaration to Plaintiff's counsel, confirming that it "***did not apply the requirements of these Statutes to policies issued or delivered prior to January 1, 2013, including renewals of such policies after January 1, 2013***." Golub Dec., ¶9, Ex. 18, p. 5:8-14 (emphasis added).

## B.    The Bentley Policy

Eric purchased a term policy from United, issued February 28, 2001, with a $1,000,000 face amount (the "Bentley Policy" or "Policy"). Motion, Ex. A, pp. United 5, 9. Eric paid the Policy premium annually for 13 years through February

28, 2014. Golub Dec., ¶ 11, Ex. 20, pp. 21:2-22:5; Ex. 21. On April 28, 2014, Eric informed United that he wished to pay the premium on a semiannual basis. *See* the accompanying Declaration of Nancy Irvine ("Irvine Dec."), ¶ 5(a); Ex. 4. He then paid the semi-annual premium of $670.80. Irvine Dec., ¶¶ 5(a), (b); Exs. 4, 5. United wrote to Eric confirming that United used his semiannual payment "to advance your coverage to August 28, 2014." Irvine Dec., ¶ 5(c), Exs. 6, 4.

United sent Eric a premium notice dated July 28, 2014, advising him that his next semiannual premium payment was due on August 28, 2014. Irvine Dec., ¶5(d), Exs. 7, 4. After not receiving that payment, United sent Eric another premium notice, dated September 9, 2014, informing him, "All you need to do to continue your coverage is to mail your premium payment before the Grace Period expires on **September 28, 2014**." Irvine Dec., ¶5(e), Exs. 8, 4 (emphasis in original). Not having received Eric's premium payment, United sent him a letter dated October 28, 2014 (61 days after August 28, 2014), stating that his coverage had terminated. Irvine Dec., ¶ 5(f), Exs. 9, 4. After the Policy terminated, Eric died. Third Amended Complaint ("TAC"), Dkt #87, ¶ 31. United denied Jennifer's claim for benefits because the Policy had terminated before Eric's death. TAC, ¶¶ 34-35.

### C.    Jennifer Bentley's Claims for Relief

Jennifer, as the Trustee of the Bentley Family Trust, and on behalf of the putative class members, asserts a claim for breach of life insurance policies that she contends did not lapse for non-payment of premium because United failed to provide notice and an opportunity to designate per the Statutes. TAC, ¶¶ 1-2, 47-50. Her theory of liability is that notwithstanding Eric's nonpayment of premiums, his policy did not lapse pursuant to the Statutes because United failed to provide him with an opportunity to designate a third party to receive pending lapse notices (in violation of the Statutes) and that, accordingly, United unreasonably denied her claim for death benefits, thus constituting a breach of the policy and bad faith. TAC, ¶¶ 51-59.

HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

301280286v1 0977380

Jennifer asserts, "It is undisputed that Defendant never provided Mr. Bentley or any designee with the Statutes' required Notices." Motion, p. 4:18-19. Not true. There are three so-called types of "notices" that the TAC contends United was to provide under the Statutes: (1) the Designation Notice, to "give their policyholders an opportunity to designate a third party to receive notice of a potential termination of benefits for non-payment of a premium;" (2) the Third Party Notice, to provide notice to a designated third party of any impending lapse (which, of course, would only come into play if a policyholder actually designated a third party); and (3) the Policyholder Notice, to provide written notice to the policyholder prior to termination.

United twice notified Eric in writing, first by the July 28, 2014 notice that his policy would lapse on August 28, 2014 if the premium was not paid, and then by a reminder notice dated September 9, 2014 that his premium was past due. Eric's policy lapsed on October 28, 2014, which was 90 days after United first notified Eric that the premium was due, and 61 days after the premium due date. Irvine Dec., ¶¶5(d)-(f), Exs. 7, 8, 9, 4. Accordingly, United did not violate the Policyholder Notice requirement, which is ostensibly why the motion fails to mention this Notice, except briefly in passing. And the motion clearly does not assert United violated this requirement with respect to Eric or any other policy that is part of the putative class. Thus, the Designation Notice is the only aspect of the Statutes that Plaintiff asserts United violated with respect to Jennifer and the class she purports to represent.[3]

### D.    The Court's Prior Rulings at the Pleading Stage

Plaintiff originally defined the class as "All **California residents** who purchased life insurance policies from United...." FAC, Dkt #16, ¶ 29 (Emphasis added). In denying United's motion to dismiss the then-operative FAC, this Court

---

[3] Plaintiff may argue the Third Party Notice was also not sent, but since that is only required if a third party has been designated, the entire claim here flows from the alleged failure to provide the Designation Notice (*i.e.*, the "offer" to designate).

stated in its June 22, 2016 Order that it "presumes that the Legislature meant what it said and therefore subsection (b) of Section 10113.72, by its plain language, applies to every individual life insurance policy *issued and delivered in California*." Dkt #27, p. 6 (emphasis added). Thus, this Court acknowledged the Legislature's intent that the Statutes govern California-issued policies.

The Court's interpretation that the Statutes apply to *California* policies was further evident in its August 8, 2017 order denying in part United's motion to dismiss the TAC. There, the Court construed United's motion to dismiss the TAC as a motion for reconsideration of the Court's prior order regarding the FAC – again, a pleading that limited the proposed class to "California residents" and thus had nothing do with policies issued or delivered outside of California. Dkt # 107, p. 4. In so doing, the Court reiterated its prior finding that the Statutes generally apply to policies renewed in California after the Statutes' effective date. *Id*. at p. 5. The Court declined to strike Plaintiff's class allegations at the pleading stage, stating it to be an issue better suited for determination at the class certification stage.  Dkt #27, p. 12; Dkt #107, p. 10.

United moved to deny class certification on the limited ground that the Statutes cannot reasonably be interpreted to apply to non-California policies. Dkt #111. On January 5, 2018, the Court denied the motion without prejudice to renewal of United's arguments concerning the inapplicability of the Statutes to non-California policies in opposing class certification. Dkt #119, p. 4:15-17. In doing so, the Court explained that its "main concern continues to be that motions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle." Dkt #119, p. 3:22-28. We are at that stage now.

## E.    The Policy Lists Generated by United in Discovery

Plaintiff propounded written discovery to United seeking information about life insurance policies that issued prior to the January 1, 2013 effective date of the Statutes and that continued in force after that date and subsequently lapsed for non-

HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

301280286v1 0977380

payment of premiums. *See* Golub Dec. ¶ 2, Ex. 10. Plaintiff's discovery requests were ***not*** limited to policies that "renewed" after January 1, 2013, despite Plaintiff's argument that the Statutes would only apply to policies issued before January 1, 2013 if the policies "renewed" thereafter. *Id.* at ¶ 2. In responding to Plaintiff's broad discovery requests, United compiled and updated two policy lists identifying a total of 46 policies, which included policies that did not "renew" by the payment of premiums in 2013 or otherwise after January 1, 2013. Golub Dec., ¶ 3; Exhibit F to Bjork's Declaration at Dkt #121-3, pp. 76-78; *see also* the accompanying Declaration of Veronica Dougherty ("Dougherty Dec."), Ex. 1. Plaintiff has misleadingly characterized those lists in her motion as the "class lists," incorrectly implying that all of the 46 policies identified therein comprise the class.

The term "class lists" is a misnomer because many of the policies identified in the lists prepared in response to discovery requests do not belong in the proposed class. Specifically, because Plaintiff's discovery sought information about policies that issued prior to 2013 and remained in force thereafter, ***without regard to whether the policies "renewed" after January 1, 2013***, United identified policies that were not "renewed" after that date (*i.e.*, reached an anniversary date). Moreover, United identified policies for which the Statutes' "annual" deadline to comply with the Designation Requirement had not yet passed at the time they lapsed. *See* Ins. Code § 10113.72(b) ("The insurer shall notify the policy owner annually of the right to change the written designation or designate one or more person…."). In other words, the policies United identified in discovery include many that do not belong in the proposed class for one reason or another, as explained in more detail below.

F.      **Plaintiff's Continually Evolving Definition of the Proposed Class**

Plaintiff's TAC expands the proposed class to encompass not only California policies, but also non-California policies that "renewed" in California as follows:

HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

301280286v1 0977380

> All beneficiaries who made a claim, or would have been eligible to make a claim, for the payment of benefits on life insurance policies ***renewed***, issued or delivered by Omaha in the State of California that lapsed or were terminated by Omaha for the non-payment of premium after January 1, 2013, and as to which policies one or more of the notices described by Sections 10113.71 and 10113.72 of the California Insurance Code were not sent by Omaha. TAC, Dkt #87, ¶ 37. (Emphasis added.)[4]

In yet another effort to expand the proposed class even beyond the TAC, Plaintiff's present motion has again changed the definition of the proposed class, this time to include policies for which the notices described in the Statutes "were not sent by [United] prior to lapse or termination." Motion, p. 2:4-5. In doing so, Plaintiff argues, "Discovery has revealed that Defendant sent at least a handful of notices to policyholders of <u>lapsed</u> policies after lapse but did not reinstate those policies. These policies should be included in the class as the beneficiaries were wrongfully denied benefits under common factual circumstances." *Id.* at p. 2, n.1 (underlining in original). United, however, did not remove those policies from the policy lists, so this is a non-issue.

Moreover, nothing in the Statutes entitles a policyholder to free insurance coverage, meaning that to obtain benefits under a policy that lapsed in violation of the Statutes, all past due premiums would have to be paid through the date of the insured's death, assuming the insured died. United has no information that the policies for which it sent notices pursuant to the Statutes before or after this action commenced had insureds who died such that any beneficiaries thereunder could make a claim, or would have been eligible to make a claim, for benefits. The only "claim" presented to United from the policies on the policy lists is that of Jennifer. Irvine Dec., ¶ 6. Accordingly, Plaintiff's revised class definition does not, as a

---

[4] It is important to note that this definition is not limited to policies that renew after the Statutes' effective date. Plaintiff's proposed class definition encompasses policies renewed prior to that date, even if they were not renewed after that date. As noted below, that is clearly not supported by the language of the Statutes, even as construed by Plaintiff.

HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

301280286v1 0977380

1   practical matter, expand the proposed class.

2   **III.   LEGAL STANDARDS FOR CLASS CERTIFICATION**

3   "Before certifying a class, the trial court must conduct a rigorous analysis to

4   determine whether the party seeking certification has met the prerequisites of Rule

5   23." *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 881 F.3d 679,

6   2018 U.S. App. LEXIS 1626, *6 (9th Cir. 2018). Because a class action is an

7   exception to the general rule that litigation is to be conducted by and on behalf of

8   individual named parties only, to come within the exception the party seeking to

9   maintain a class action bears the burden of proving compliance with Rule 23. *Id*. at

10  *6, citing to *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011), and *Comcast

11  Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

12  The party seeking certification must advance evidentiary proof that all of the

13  requirements of Rule 23 are met, including numerosity, commonality, typicality and

14  adequacy as set forth in Rule 23(a). *Espinosa, supra* at *8; *Martin v. Dahlberg, Inc*.,

15  156 F.R.D. 207, 213 (N.D. Cal. 1994); *Amchem Prods. Inc. v. Windsor*, 521 U.S.

16  591, 613 (1997). The moving party must also show predominance and superiority as

17  set forth in Rule 23(b). *Espinosa, supra* at*8; *Comcast, supra* at 34. "[A] court has a

18  duty to take a close look at whether common questions predominate over individual

19  ones, and ensure that individual questions do not overwhelm questions common to

20  the class. In short, the main concern of the predominance inquiry under Rule

21  23(b)(3) is the balance between individual and common issues." *Id.; see also Wang

22  v. Chinese Daily News, Inc*., 737 F.3d 538, 545-46 (9th Cir. 2013).

23  A rigorous analysis of whether Rule 23's requirements have been met "[w]ill

24  frequently entail overlap with the merits of the plaintiff's underlying claim. That is

25  so because the class determination generally involves considerations that are

26  enmeshed in the factual and legal issues comprising the plaintiff's cause of action."

27  *Comcast, supra,* 569 U.S. at 33-34 (citations and quotations omitted); *Hanon v.

28  Dataproducts Corp*., 976 F.2d 497, 508-09 (9th Cir. 1992) (A court is "at liberty to

HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

301280286v1 0977380

1    consider evidence which goes to the requirements of Rule 23 even though the

2    evidence may also relate to the underlying merits of the case.") (quotations omitted).

3    **IV.   CERTIFICATION MUST BE DENIED TO THE EXTENT PLAINTIFF**

4    **SEEKS TO INCLUDE NON-CALIFORNIA POLICIES IN THE CLASS**

5    The policy lists produced by United in discovery includes one policy that was

6    not issued or delivered in California. *See* Bjork Dec., Ex. F, Dkt #121-3, p.78.

7    Neither that policy, nor any other policy that was issued or delivered outside of

8    California, belongs in the proposed class, despite Plaintiff's proposed class

9    definition which seeks to apply the Statutes to policies issued or delivered ***outside of***

10   ***California*** but "renewed" in California after the Statutes' effective date. TAC, ¶ 37.

11   The Statutes make no mention of policies "renewed" in California; instead,

12   they refer solely to policies "issued or delivered ***in this state***." (Emphasis added.)

13   *See* § 10113.71(a) (a "policy issued or delivered in this state" must contain a 60-day

14   grace period); §10113.72(a) (a "policy shall not be issued or delivered in this state"

15   until the applicant is permitted to designate a third person to receive notice). That is

16   in stark contrast to other California Insurance Code statutes that refer to and thus

17   govern policies regardless of the state of issuance or delivery. *See, e.g.,* Ins. Code §

18   10110.6, enacted only one year prior to the Statutes, which refers to policies "issued,

19   delivered, or renewed, ***whether or not in California***…." (Emphasis added.)[5]

20

21   _____

22   [5] In denying United's motion to dismiss this action at the pleading stage, the Court
     rejected United's argument that the Statutes do not apply to policies issued or
23   delivered prior to their January 1, 2013 effective date because the Statutes do not
     mention "renewal," as compared to other sections in the Insurance Code that do
24   mention "renewal," thereby demonstrating that when the Legislature wants to enact
     a statute that applies to policies that "renew" it expressly says so in the statute. *See*
25   United's Motion to Deny Class Certification, Dkt #111-1, p. 14:13-27, citing to
     Section 10110.6, which specifically mentions renewal. Ironically, Plaintiff now
26   argues that the Statutes apply to policies that renewed after January 1, 2013, despite
     the absence of the word "renewed" in the Statutes, by citing to that same Section
27   10110.6 that specifically refers to renewal. But Plaintiff's argument actually
     confirms United's prior assertion that the Statutes do not apply to "renewed"
28   policies because of that distinction. Section 10110.6 ***specifically mentions***
     "renewal," while the Statutes do not.

HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

301280286v1 0977380

Had the Legislature intended for the Statutes to govern non-California policies, it could and would have said so in the Statutes. *See People v. Johnson*, 60 Cal. 4th 966, 991 (2015) (If a statute does not require a particular action or statement for compliance, such an action or statement would not seem to be required because if it was, the Legislature "could have easily said so."); *Ahern v. Dillenback*, 1 Cal. App. 4th 36, 50 (1991) (The "portion of the Aherns' argument based on the express declaration of public policy contained in [Insurance Code] section 11580.05 again ignores the language 'issued or delivered in this state.' (§11580.05.) We are dealing here with a policy that was neither issued nor delivered in California, and, therefore, neither section 11580.05 nor 11580.2 is applicable.").

The DOI – the agency charged with enforcing the Statutes – has provided in its directives to insurers that the Statutes are intended only to apply to California policies. Among other places, the DOI's Instructions with respect to form filings for the Statutes, as found on the internet-based System for Electronic Rate and Form Filing ("SERFF"), which is sponsored by the National Association of Insurance Commissioners and provides a cost-effective method for facilitating the submission, state that the Statutes only apply to life insurance policies "issued or delivered *in California* on or after 1/1/13." *See* Declaration of Helen Curry, Dkt #30-2, ¶¶ 3, 6, and pp.13-14 of 16 (emphasis added).[6]

Plaintiff has argued that, despite the plain language of the Statutes, the "renewal principle" (whereby some courts have held that a renewal of certain types of insurance policies incorporates changes in the law that occurred prior to renewal) operates to bring non-California policies within the ambit of the Statutes. *See* Plaintiff's Opp. to Motion to Deny Class Certification (Dkt #113), p. 7:22-28, citing

---

[6] Even Northwestern Mutual, the sole insurer that Plaintiff relies on to contend that an insurer sent notices on all policies, whether issued before or after January 1, 2013, declared that it only sent notices to "policy owners whose policies were issued or delivered *in California*." *See* Dkt #121-3, Ex., E, at pp. 73-74, ¶¶ 3, 6 (emphasis added); *see also* Golub Dec., ¶ 7.

HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

1   to *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917 (9th Cir. 2012), and *Modglin*
2   *v. State Farm Mut. Auto. Ins. Co.*, 273 Cal. App. 2d 693 (1969).

3       Plaintiff is wrong. The "renewal principle" (if it operates in the way that
4   Plaintiff has argued) incorporates any provisions of law that are in effect at the time
5   of renewal, such as the Statutes. Importantly, however, the "renewal principle" does
6   not change or expand the applicable law, to make the Statutes applicable to policies
7   issued or delivered *outside* of California. Even if applicable to previously issued
8   policies that subsequently renewed, the Statutes still only apply to policies
9   previously issued or delivered *in* California. The "renewal principle" cannot be
10  tortured to bring non-California policies within the ambit of statutes that expressly
11  only apply to policies issued or delivered *in* California.

12      Plaintiff's typicality and commonality arguments relating to the Statutes'
13  purported application to non-California policies center around her assertion that the
14  claims of all putative class members will "rise and fall" on whether a renewal of a
15  policy in California after 2013 triggers the notice requirements in the Statutes.
16  Motion, p. 14:14-16. This assertion evades the fundamental premise that regardless
17  of any policy renewal, putative class members whose claims arise from policies
18  issued outside of California must as a threshold matter litigate a legal issue not
19  applicable to the named Plaintiff who is seeking relief under a California-issued
20  policy: whether the Statutes apply to policies issued or delivered outside of
21  California. As to such persons, it makes no difference whatsoever whether such
22  policies renewed in California after January 1, 2013 if they cannot as a threshold
23  matter establish that the Statutes apply to non-California policies. This issue is not,
24  as Plaintiff has asserted, merely a "unique defense" against a segment of putative
25  class members; it is a core legal issue central to class certification that defines who
26  may be part of the putative class that Plaintiff seeks to represent.

27
28

At a minimum, the non-California policy identified by United in discovery does not belong in the putative class, and any class permitted to proceed must be limited to policies issued or delivered *in California*.

## V.   COMMON QUESTIONS OF FACT OR LAW DO NOT PREDOMINATE OVER INDIVIDUALIZED ISSUES

Predominance under Rule 23(b)(3) "is a more demanding criterion than the commonality inquiry under Rule 23(a)," but incorporates much of the same analysis. *Amchem*, *supra,* 521 U.S. at 623-24; *In re LifeUSA Holding Inc*., 242 F.3d 136, 144 (3d Cir. 2001). "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. Painewebber, Inc*., 306 F.3d 1247, 1252 (2d Cir. 2002). The predominance requirement exists to ensure that the class action does not "degenerate into a mass of individual claims" that overwhelm the existing common and general issues. *Ikonen*, *supra,* 122 F.R.D. at 264 (denying class certification due to serious problems of commonality, typicality, manageability and predominance).

Plaintiff's commonality argument is highly superficial, focusing solely on the existence of one common question of law: whether United violated the Statutes as to policies that issued before the Statutes' effective date. The existence of that single common question, however, is insufficient to demonstrate that class certification is proper under Rule 23. Each of the 46 policies identified by United in discovery must be examined individually to determine whether they are subject to the requirements of the Statutes, thereby demonstrating that individual issues predominate.[7]

---

[7] United includes the one non-California policy in this analysis because, like the 45 California policies, it must examined individually to determine whether it is subject to the Statutes. Moreover, Plaintiff states that there are "at least 250 policies that were renewed within California" where the insured has died, implying that the class will increase over time (while acknowledging that, without the insured's death, no "claim" or "eligibility to make a claim" presently exists). Motion, p. 6:3-6.

HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

301280286v1 0977380

Common issues do not predominate because Plaintiff cannot demonstrate, without conducting individualized analyses of case-specific facts, that each of the 46 policies (1) "renewed" after the Statutes' effective date such that the policies are subject to the requirements of the Statutes and/or (2) lapsed because of non-payment of premium. Any common "merits" issue as to whether or not United failed to comply with the Statutes is only the first step in this dispute, and it does not undercut the inherently individualized issues that predominate for each and every putative class member, as described below.

### A.   The Date of Lapse of Each Policy is an Individualized Inquiry

The Statutes require the Designation Notice to be given on or before issuance or delivery of the policy and then "annually" thereafter. *See* Calif. Ins. Code § 10113.72(a) and (b). Obviously, for policies that were issued or delivered prior to the effective date of the Statutes, the Designation Notice requirement could not have applied at the time of issuance or delivery. That raises the question: under Plaintiff's theory, for policies that were issued/delivered prior to the Statutes' effective date, at what point in time after the Statutes' effective date does the "annual" Designation Notice have to be given? The Statutes are silent on that issue.[8]

Without any specific guidance regarding when the "annual" term begins (other than with the issuance of the policy), it is reasonable to conclude that United could have fully complied with the Statutes by sending the "annual" Designation Notices on or before December 31, 2013, which is one year from the Statutes' January 1, 2013 effective date. That means the proposed class cannot include beneficiaries of policies that lapsed before December 31, 2013 because, as construed by this Court in its June 22, 2016 Order de-linking the applicant provisions from the

---

Assuming *arguendo* that is true, those additional policies would encounter the same individualized issues that confront the current 46 policies.

[8] These are among the reasons why the Statutes should not be construed to apply to existing policies at all, as previously asserted by United.

HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

301280286v1 0977380

1  annual notices, United cannot have violated the Statutes as to those policies.

2  Determining whether a policy lapsed before the Designation Notice requirement

3  took effect is an individualized inquiry that defeats class certification.

4        **B.        The Date Each Policy "Renewed" is an Individualized Inquiry**

5        Under Plaintiff's theory, United violated the Statutes for policies that existed

6  before the Statutes' January 1, 2013 effective date if the policies "renewed" after

7  that date. *See* the Motion's proposed class definition, at p. 1:28, referring to policies

8  that "renewed" in California. Indeed, the Court denied United's motion to dismiss

9  the then-operative FAC, observing that the Statutes apply to policies that were in

10 force prior to the Statutes' effective date by virtue of the policies' "renewal"

11 thereafter. Dkt #27, p. 8 ("The renewal of a policy incorporates changes in the law

12 prospectively and applies to conduct that occurred after the Statutes were enacted.

13 Here, accepting Plaintiff's allegations as true, because the Insured renewed the

14 Policy after the Statutes were enacted by paying his premiums and extending the

15 policy period, the Policy is subject to the provisions of the Statutes.").[9]

16       Although United disputes this renewal concept, Plaintiff contends a policy

17 "renews" if it remains in force after its anniversary date, or the annual recurrence of

18 the policy's effective date. Under that theory, the Statutes cannot be applied to

19 policies that lapsed in 2013 ***prior to their anniversary date*** because those policies

20 would not yet have "renewed" in 2013. Determining when the Bentley Policy lapsed

21 provides no information about any other policy's lapse date. That is an

22 individualized inquiry that defeats class certification.

23

24 _____

25 [9] As noted in prior motions, United disputes the applicability of this concept because the Statutes do not expressly apply to renewed policies. Nor is there any definition

26 of "renewal," or any explanation how a life insurance policy, which must continue in force without amendment as long as premiums are paid, can be renewed. Thus, in

27 order to apply this "renewal principle," it is necessary to construe the Statutes to include requirements, definitions and elements that simply are not there, much like

28 with determining when the "annual" Designation Notice is required.

**C.    The Existence of Different Policy Forms, Many of Which Mention Nothing About Renewal, Creates Individualized Issues**

As stated above, policy "renewal" after the Statutes' effective date is the hook by which Plaintiff seeks to hold United liable under those Statutes. Also as noted above, this Court previously stated Eric "renewed the [Annually Renewable] Policy after the Statutes were enacted by paying his premiums and extending ***the policy period . . . .***" Dkt #27, p. 8 (emphasis added). However, not all of the policies issued by United are "Annually Renewable Term" policies. In fact, ***nearly 61% of the policies identified in the policy lists mention nothing about a renewal***, or what it means for the policy to "renew." *See* Golub Dec., ¶ 6, Exs. 12-16. Those policies therefore have no "policy period" that can be extended by the payment of premium. Instead, the policy continues in force indefinitely as long as premium payments are made. The mere fact that a policy remained in force after the Statutes' effective date does not mean it thereby "renewed." Whether the policies implicated by the proposed class definition "renewed" in the absence of any policy language that refers to a "renewal" is an individualized inquiry.[10] *See Medina v. Conseco Annuity Assur. Co.*, 121 P.3d 345, 348 (Colo. App. 2005) ("Nevertheless, we conclude that because of the existence of seven policy types with different language, individual issues predominate over common issues of law and fact, and that a class action is not the superior method for resolving plaintiff's claim.").

**D.    Whether Any Given Policy Lapsed for Non-Payment of Premium is An Individualized Issue**

Pursuant to the Statutes, "No individual life insurance policy shall lapse or be terminated ***for nonpayment of premium*** unless" the required notices of lapse for nonpayment of premium are given. Ins. Code § 10113.72(c) (emphasis added). In

---

[10] And as discussed below, if policies without any renewal language are excluded from the putative class, it impacts the numerosity element of class certification. Furthermore, it renders Plaintiff's claims atypical from the claims of beneficiaries under policies with no "renewal" language.

HINSHAW & CULBERTSON LLP
633 West 5th Floor, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

301280286v1 0977380

order to bring any given policy identified by United in the policy lists within the ambit of the Statutes, Plaintiff must demonstrate that each of the policies lapsed "for nonpayment of premium." Yet, many of the policies were canceled specifically at the request of the policyholder, not because of any nonpayment of premium. *See* Dougherty Dec., ¶ 4(d).

Likewise, many of the permanent (non-term) policies did not lapse for nonpayment of premium. Those policyholders were allowed to borrow (*i.e.*, take a loan) against the policies' cash value. Policyholders who took loans were required to pay interest on the loan. Failure to pay interest when the policy did not contain sufficient cash value to cover the interest charge caused the policy to lapse, even if premium payments were made. United's system categorizes these terminations as a "lapse – non-payment of premium," but the lapse was due to insufficient cash value to cover an interest payment, not a missed premium payment. *Id. at* ¶ 4(e).

The above-described policies cannot be subject to the Statutes because the Statutes govern policies that lapse for "nonpayment of premium" and policies that terminated at the policyholder's request, or that terminated due to inadequate cash value, did not lapse for "nonpayment of premium." *See* Ins. Code § 10113.71(b)(1) (requiring notice of termination if for "nonpayment of premium"); *id* at § 10113.72 (also referring to lapse or termination for "nonpayment of premium"). Whether the policies implicated by the proposed class definition lapsed for nonpayment of premium, thus bringing them with the ambit of the Statutes, is an individualized inquiry that defeats class certification.  This applies to both Plaintiff's breach of contract claim and her bad faith claim that United acted unreasonably.

## VI.   <u>THE PROPOSED CLASS IS NOT SUFFICIENTLY NUMEROUS</u>

As outlined above, class certification should be denied because common questions of law and fact do not predominate. But if many of the individualized questions are asked with respect to each policy in the policy lists, it can also be seen that the beneficiaries of a large number of the policies contained on the list cannot

HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

301280286v1 0977380

be members of the class. When these policies are removed, no more than 14 policies (and potentially even less) remain in a class that could possibly be certified. Such a class is not "so numerous" that a class is warranted. As more fully set forth in the subparagraphs of paragraph 4 of the accompanying Dougherty Declaration, the following policies should not be included in Plaintiff's class definition:

- **Policies that Lapsed Prior to December 31, 2013**. Any policies that lapsed in 2013 (regardless of their renewal/anniversary date) should be deleted because the annual Designation Notice would not be required until December 31, 2013. A lapse that occurred before that deadline cannot be nullified by the failure to provide a notice that was not yet required by the Statutes. There are 20 policies on the list that lapsed prior to December 31, 2013, and they should not be part of any class.

- **Policies that Failed to Reach Their Renewal Date in 2013**. Of the 20 policies referenced above, 11 of them terminated even before the anniversary date that first occurred after January 1, 2013, meaning they never reached a "renewal" date. United clearly cannot have violated the Statutes for failing to send notice for policies that lapsed prior to any renewal date in 2013, so those policies should be removed for this reason as well. Again, there are 11 such policies (though they are not "double-counted" in the total stated below).

- **Policies That Did Not Lapse for Nonpayment of Premium Because the Policyholder Requested Cancellation**. Eleven policies were canceled specifically at the request of the policyholder as documented in United's records produced in this action (including the one non-California policy.) As discussed in Section V(D) above, these policies cannot be subject to the Statutes because they govern policies that lapse for "nonpayment of premium" and policies that canceled at the policyholders' request do not lapse for "nonpayment of premium." *See* Ins. Code §§ 10113.71(b)(1), 10113.72. After removing the above policies that lapsed in 2013

HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

301280286v1 0977380

(either due to not reaching a "renewal" date or lapsing prior to December 31, 2013), there are 6 more policies that cannot be included in the class for this reason.

- **Policies that Did Not Lapse for Non-Payment of Premium But Rather Due to Inadequate Cash Value**. As stated above, independent of any premium payments, some of the policies in the policy lists lapsed due to insufficient cash value to cover interest charges on loans taken from the policy. There are 6 policies on the policy lists that fall within this category, and 4 of them are not listed above, further reducing the number of policies that could be part of the class.

- **Term Policies That Reached the End of their Guaranteed Level Premium Period**. United explained above that 11 policies were canceled at the request of the policyholder, but there are many times where a policyholder does not make that request and instead simply stops paying premiums and/or stops automatic withdrawals from his/her bank account. United's computer system categorizes this as a "Lapse – Non Payment of Premium." The Dougherty Declaration explains that one of those situations is where the term policy reaches the end of its guaranteed level premium term at which point the premiums become substantially more expensive. For example, the Bentley Policy had level annual premiums of $1,290 for 20 years, but at year 21, the annual premiums would have increased at least eight times to $10,050, and could have increased 14-fold to a guaranteed maximum of $18,180. *See* Bjork Dec., Ex. A (United 10, 12). To the extent that a term life insurance policy "renews," a policyholder chooses not to "renew" the policy when he or she chooses not to pay the increased premium. Of the 46 policies on the policy lists, there are eight (8) policies that lapsed at the end of their level premium term, and two (2) of them are not listed in the above bullet points. While the reason these policies lapsed present individual issues, as discussed above, they also should be removed from any class for the purpose of assessing numerosity.

- **Policies Without Renewal Language**. As discussed above, 28 of the 46 policies identified in the policy lists mention nothing about "renewal," contain any

HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

"renewal language" or state what it means for the policy to "renew." Because those policies do not "renew" at any time, they cannot be part of a class that is based on the applicability of Statutes due to policy renewal. Of these 28 policies, 7 of them are not listed in the above reductions of policies. *See* Golub Dec., ¶ 6.

After subtracting the above policies and removing any overlap, **only 14 policies remain** in the proposed class before the additional 7 policies with no "renewal language" are even considered. If they are considered, then **only 7** policies remain. Plaintiff's Motion, at page 8, acknowledges that 40 or more class members is typically required to satisfy numerosity under Rule 23(a)(1). Even if 14 policies remain, that falls well below the numerosity threshold.[11]

## VII.  PLAINTIFF'S CLAIMS ARE NOT TYPICAL OF THE CLAIMS OR DEFENSES OF THE PROPOSED CLASS

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs and whether other class members have been injured by the same course of conduct.'" *Hanon*, *supra,* 976 F.2d at 508 (affirming denial of certification where particularized facts specific to the named plaintiff precluded a finding of typicality) (citation omitted); *Ikonen*, *supra* 122 F.R.D. at 263 (plaintiffs' claims failed to meet the typicality requirement because of differing types and severity of injuries).

Jennifer's claim for breach of the Bentley Policy is atypical of the claims of any other putative class members for the reasons discussed in Section V, above. Specifically, *inter alia*, each class member's breach of contract claim is based on different policy types (*e.g.*, term, or non-term), different provisions (*e.g.*, some

---

[11] United expects Plaintiff to urge that the Court should count beneficiaries, rather than policies. Some of the policies had multiple beneficiaries at the time of lapse, but those beneficiaries would collect **under the same policy** and **share the same death benefits** and thus are not really separate class members. Furthermore, of the 14 policies remaining only two had multiple beneficiaries at the time of lapse, and therefore, even counting beneficiaries, there are only 18 class members. If we consider the 7 policies, then there are only 8 class members. *See* Golub Dec., ¶ 6.

HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

301280286v1 0977380

containing renewal language and other not), different facts related to the circumstances of the policy termination, different dates of issue, different dates of lapse and different states of issue.

The most recent proposed revision to Plaintiff's class definition is so broad as to encompass policies where the insured has not yet died. Jennifer's claim is certainly not typical of the claims of beneficiaries under those policies. Those beneficiaries can never be part of the proposed class because a beneficiary cannot make a claim, or be eligible to make a claim, unless the insured dies. Thus, simply because a policy lapsed allegedly in violation of the Statutes does not mean the beneficiaries of those policies belong in the proposed class.

For example, suppose in the future United were to send notices to all persons whose policies had lapsed, but who are still living, offering those persons continued coverage (as if there were no lapse) in exchange for the policyholder's contractual obligation to continue paying premiums. And suppose some of those persons decline the offer – presumably because they intended their policies to lapse in the first place; they did not want to maintain their coverage for the price of the premium. Beneficiaries under those policies would never be entitled to policy benefits. What will happen in the future concerning the policies of persons who have not yet died is unknown, and beneficiaries under those policies lack standing because they have not, and may not ever, suffer a concrete injury necessary to state a viable claim for relief. *See, e.g., Phoenix. Mut. Life Ins. Co. v. Birkelund*, 29 Cal. 2d 352, 360 (1946) (an "ordinary beneficiary of a life policy has merely an expectancy of an incomplete and inchoate gift which is revocable at the will of the insured"). Such speculative claims preclude those persons from being class members. *See Bassett v. ABM Parking Services*, 2018 U.S. App. LEXIS 4097 (9th Cir. Feb. 21, 2018) (dismissing a putative class action because statutory violations resulting in only a potential "threatened injury", as opposed to a concrete injury in fact, were insufficient to confer Article III standing).

HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

## VIII. A CLASS ACTION IS NOT SUPERIOR TO OTHER AVAILABLE METHODS OF ADJUDICATION

To certify a class, a court must determine not only that common questions predominate, but also that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3). "Superiority mandates that the district court determine that the class action is the best method of fairly and efficiently resolving the controversy," and consider "'the difficulties likely to be encountered in the management of a class action.'" *Johnston v. HBO Film Management*, 265 F.3d 178, 185, 194 (3d Cir. 2001), citing Rule 23(b)(3)(D). Cases based on individualized representations necessarily present "'insurmountable' manageability problems." *Id.*; *LifeUSA*, *supra,* 242 F.3d at 148.

Plaintiff speculates that, "[A]bsent this class proceeding, putative class members would likely never vindicate their rights against Defendant. Many have claims that amount to only a few thousand dollars, which would quickly be dissipated by legal fees and other costs associated with prosecuting their claims." Motion, p. 21:2-5. That contention is demonstrably false.

If we consider the 14 policies remaining on the policy lists after reducing the number for the factors discussed above, 8 of those policies have a face amount of $49,725.11 or more. *See* Dougherty Dec., Ex. 1. Individual actions under those policies may easily be pursued. Even if we consider all of the 46 policies identified in the policy lists, 36 policies have a face amount of $10,000 or more, including 21 that have a face amount over $50,000 (or actually, $49,725.11), and 3 more have a face amount between $20,000 and $50,000. Dougherty Dec., ¶ 5 and Ex. 1. These are hardly inconsequential policies that are not financially worth litigating.[12]

---

[12] Only 10 of the 46 policies have a face amount less than $10,000, but even those policies are not insignificant policies that are not financially worth litigating. Insurers regularly defend individual lawsuits relating to life insurance policies with a face value of less than $10,000, including those brought in small claims court. *See* Cal. Code of Civ. Proc. § 116.211 (allowing claims of up to $10,000).

HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

301280286v1 0977380

Moreover, to the extent that an individual prevails on a breach of contract claim, he or she could have a cognizable bad faith claim, which, if successful, could merit extra-contractual damages, as well as attorneys' fees incurred to obtain contract benefits and punitive damages. *See Brandt v. Superior Court*, 37 Cal. 3d 813, 817 (1985). Thus, it is simply untrue that putative class members would never litigate a dispute over "small" life insurance benefits. Individuals can, and they do.

Additionally, this is not a typical class action in which the named plaintiff is seeking to redress an alleged wrong that, if redressed, would result in a tiny award to individual class members that would never be financially worth litigating. Rather, Plaintiff is seeking $1 million in policy benefits and most of the other putative class members likewise have substantial individual damage claims arising under policies worth up to hundreds of thousands of dollars. Plaintiff cannot demonstrate superiority under these circumstances. *See Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227, 1234-35 (9th Cir. 1996) (explaining that, "A class action is the superior method for managing litigation if ***no realistic alternative exists***" and holding that the district court abused its discretion by certifying issues for class adjudication in the absence of evidence demonstrating superiority) (emphasis added).

Here, there is a realistic alternative to class adjudication:  individual prosecution of substantial damage claims. The cases Plaintiff cites for the contrary proposition are distinguishable. *See Ellsworth v. U.S. Bank, N.A*., 2014 U.S. Dist. LEXIS 81646, *99 (N.D. Cal. 2014) (superiority found where four named plaintiffs' combined damages totaled less than $3,000); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc*. 2015 U.S. Dist. LEXIS 98656. 53-54 (C.D. Cal. 2015) (superiority found where it would be cost-prohibitive for "small owners" of sound recordings distributed by Sirius without a license to individually pursue claims, particularly given the unavailability of attorneys' fees). In contrast, here, the proposed class members have substantial damage claims, amounting to tens and hundreds of thousands of dollars in alleged contract damages alone, that substantially differ from, for example,

HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

plaintiffs seeking compensation for missed meal and rest periods as in *Alba v. Papa John's USA*, 2007 U.S. Dist. LEXIS 28079 (C.D. Cal. 2007), also cited by Plaintiff.[13]

## IX.   CONCLUSION

While Plaintiff's motion seeks to portray this case as one involving a single common issue, as addressed above, there are a multitude of individual issues that predominate and overwhelm the statutory interpretation issue advanced by Plaintiff. Class certification should be denied and Plaintiff should pursue her claim for the $1,000,000 in benefits under the Bentley Policy as an individual action.

DATED:  February 27, 2018

HINSHAW & CULBERTSON LLP

By: /s/ *Jenny H. Wang*
Martin E. Rosen
Larry M. Golub
Jenny H. Wang
Attorneys for Defendant
United of Omaha Life Insurance Company

---

[13] Plaintiff contends that because the record contains no information about other pending lawsuits involving the same subject matter, individuals are either unable or unwilling to pursue individual litigation, thereby demonstrating superiority of a class action. *See* Motion, p. 22:2-8. This assertion is nothing but speculation and does not support the existence of superiority of a class action.

HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

301280286v1 0977380