Martin E. Rosen (SBN CA 108998)
mrosen@hinshawlaw.com
Larry M. Golub (SBN CA 110545)
lgolub@hinshawlaw.com
Jenny H. Wang (SBN CA 191643)
jwang@hinshawlaw.com
HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
Telephone: 213-680-2800
Facsimile: 213-614-7399

Attorneys for Defendant
UNITED OF OMAHA LIFE INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER BENTLEY, as Trustee of the 2001 Bentley Family Trust,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED OF OMAHA LIFE INSURANCE COMPANY,<br><br>Defendant. | Case No. 15-cv-07870-DMG (AJWx)<br><br>(Honorable Dolly M. Gee)<br><br>**DECLARATION OF LARRY M. GOLUB IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date: March 30, 2018<br>Hearing Time: 10:00 a.m.<br>Courtroom: 8C<br><br>[Filed Concurrently With: (1) Opposition to Motion; (2) Declaration of Veronica Dougherty; (3) Declaration of Nancy Irvine; (4) Index of Evidence; and (5) [Proposed] Order]<br><br>**EXHIBITS TO THIS DECLARATION ARE ATTACHED TO THE ACCOMPANYING INDEX OF EVIDENCE**<br><br>Discovery Cut-Off: May 22, 2018<br>Pre-Trial Conf. Date: August 28, 2018<br>Trial Date: September 25, 2018<br><br>Complaint Filed: August 27, 2015 |

# DECLARATION OF LARRY M. GOLUB

I, Larry M. Golub, hereby declare as follows:

1. I am an attorney licensed to practice in all the courts in the State of California and a member of Hinshaw & Culbertson LLP, attorneys for Defendant United of Omaha Life Insurance Company ("United"). I am one of the attorneys primarily responsible for the handling of this matter. I have personal knowledge of the facts declared herein and if called upon to testify can and will testify competently thereto.

2. On December 2, 2016, United served its written responses to the first set of Plaintiff's document requests and interrogatories. Attached hereto as **Exhibit 10** is a true and correct copy of United's responses to Plaintiff's first set of document demands. (United's responses to Plaintiff's first set of interrogatories was served at the same time and referred to the concurrently-served document responses.) These discovery requests were not limited to policies that "renewed" after January 1, 2013, despite Plaintiff's argument made in this action that California Insurance Code sections 10113.71 and 10113.72 (the "Statutes") apply to policies issued before January 1, 2013 if the policies "renewed" thereafter.

3. On behalf of United in this action, I produced two policy lists in response to document and interrogatory responses served by Plaintiff. Attached hereto as **Exhibit 11** is a true and correct copy of United's responses to Plaintiff's second set of document demands, served November 22, 2017. (United's responses to Plaintiff's second set of interrogatories was served at the same time and referred to the concurrently-served document responses.) I produced the policy lists to Plaintiff's counsel on November 28, 2017. I then produced an updated set of policy lists to counsel on December 12, 2017 (United 1252-1254), which is the version of the lists that is found as Exhibit F to Plaintiff's motion. It is also attached to the

HINSHAW & CULBERTSON LLP
633 West 5th Street, 47th Floor
Los Angeles, CA 90071-2043
213-680-2800

301231940v1 0977380

accompanying Declaration of Veronica Dougherty ("Dougherty Declaration") as Exhibit 1.

4.     At the request of Plaintiff's counsel, United has updated the policy lists on multiple occasions, with the most recent update conducted in late January 2018, based on the most current data in its computer systems through the end of December 2017. I advised counsel for Plaintiff of this fact in an email dated January 29, 2018. The updated information did not generate any policies in addition to those contained on the policy lists supplied on December 12, 2017.

5.     Of the 46 policies found on the two lists at United 1252-1254, the "California" list contains 45 policies, which includes policies that were (1) issued or delivered in the State of California prior to January 1, 2013, (2) which lapsed after January 1, 2013, (3) where United's computer system categorized that event as a lapse for "non-payment of premium," and (4) the insured died after the date of lapse. The second list, the non-California list, contains the one policy issued or delivered *outside* the State of California (either prior to or after January 1, 2013). The second list was generated after United searched for policies that (1) "renewed" on or after January 1, 2013, (2) where the policyholder was residing in California at or after the time of renewal based on the address of record as recorded in United's electronic systems, (3) which lapsed after January 1, 2013, (4) where United's computer system categorized that event as a lapse for "non-payment of premium," and (5) where the insured died after the date of lapse. For purposes of responding to Plaintiff's discovery requests, the parties agreed that the concept of "renewal" for non-California policies would mean that the policy stayed in force after the first annual recurrence of the policy's effective date, otherwise known as its anniversary date, after January 1, 2013. *See* Exhibit 11, at pp. 6:20-7:1.

6.     Plaintiff's initial discovery requests to United sought (1) documents "sufficient to show each type of life insurance policy issued by [United], and in effect as of January 1, 2013" and (2) documents "sufficient to show the terms and

conditions of each life insurance policy issued by [United] and in effect as of January 1, 2013." *See* Exhibit 10, at pp. 4:11-5:16. In response to those discovery requests, United produced 17 specimen life insurance policies constituting those United policy forms that had been issued or delivered in California prior to January 1, 2013 and that were still in effect as of that date. These specimen forms were bates-numbered as United 292-566. The policies included both term policies and permanent policies, such as whole life or universal life policies. Certain of the term policies contained provisions that referred to renewal and/or stated on the face page of the policy that it was "annually renewable" to a certain age. The term policy issued to Eric Bentley (Form No. 6182L) was one such a policy. *See* Exhibit A to Plaintiff's motion, Dkt. No. 121-3, at pp. 2, 3, 13-14. However, unlike the Bentley policy form, most of the non-term (*i.e.*, permanent) policies did not refer to renewal and/or state on the face page of the policy that it was "annually renewable" to a certain age. Five of the policy forms and a total of 28 policies identified in the policy lists fall into this category. *See* the fifth column in Exhibit F to Plaintiff's motion, Dkt. No. 121-3, at pp. 76-77, and Exhibit 1 to the Dougherty Declaration; in particular, form nos. 1084L (with 6 listed policies), 1097L (with 4 listed policies), 6442L (with 3 listed policies), 7627L (with 12 listed policies) and 7629L (with 3 three policies)). In other words, nearly 61% (or 28) of the 46 policies on the lists do not contain any "renewal" language. True and correct copies of those five specimen forms are attached hereto as **Exhibits 12-16**. Of these 28 policies that do not refer to renewal and/or state on their face page that they are "annually renewable," seven of them are not listed in the 14 remaining policies after the reductions of policies are calculated in paragraph 4 of the Dougherty Declaration. (Looking at the number of beneficiaries, as listed on the chart attached as Exhibit 1 to the Dougherty Declaration, the 14 policies have 18 beneficiaries (one with four (No. UR2647072) and one with two (No. BU1395175)), and the 7 policies have 8 beneficiaries (No. BU1395175 with two).

7. The Declaration of John P. Bjork submitted in support of Plaintiff's motion states that, in order to establish Plaintiff bad faith claims, Plaintiff subpoenaed "life insurers to determine how they interpreted the applicability of the California Insurance Code sections 10113.71 and 10113.72 ('Statutes') to renewals and what actions they took to comply with the Statutes." *See* Dkt. No. 121-2, at p. 3, ¶ 9. Mr. Bjork does not explain that Plaintiff issued subpoenas to ten (10) separate life insurers, and that nine of them objected without providing any documents. The one insurer that produced documents without objections is Northwestern Mutual, whose declaration is attached as Exhibit E to Plaintiff's motion. *See* Dkt. No. 121-3, at pp. 73-74. The Northwestern Mutual Declaration says nothing about the applicability of the Statutes to "renewals" and merely states in paragraph 6 that since "January 1, 2013, for policies issued or delivered in California (whether issued or delivered before or after 2013), Northwestern Mutual has included in the Annual Policy Statement a notice reminding the policy owner that he/she could designate a secondary addressee to receive copies of policy notices and other documents/letters." The Declaration states in paragraph 3 that Northwestern Mutual sent such annual statements to "policy owners whose policies were issued or delivered in California." The above statements confirm that Northwestern Mutual only issued such notice reminders to policies issued or delivered *in California*.

8. One other insurer, Transamerica Premier Life Insurance Company ("TPLIC"), after interposing objections, produced two documents in response to Plaintiff's subpoena. True and correct copies of the two documents served in this action by TPLIC on January 4, 2018 are collectively attached hereto as **Exhibit 17**. The first document was an email blast from an insurer trade association, Association of California Life & Health Insurance Companies ("ACLHIC"), to a multitude of insurer representatives. ACLHIC issued the email following a telephone conference it conducted with another insurer trade association, the American Council of Life Insurers, and representatives of the California Department of Insurance ("DOI")

during which they discussed the prospective nature of the Statutes. In the second paragraph of that email (at page TPLIC 0003), ACLHIC informed the insurance industry of the results of its call with the DOI:

> "The call went better than expected, as requirements for the 60-day grace period and alternate designee provisions will be applied prospectively, and will only impact those policies issued, delivered or renewed on or after January 1, 2013."

In a subsequent email from ACLHIC to TPLIC (at page TPLIC 0009), ACLHIC clarified what constitutes a "renewal" as follows:

> "Requirements for the 60-day grace period and alternate designee provisions will be applied prospectively, and will only impact those policies issued or delivered on or after January 1, 2013.
>
> It is intended to apply only to new policies issued on or after 1/1/13, and not to a standard renewal.
>
> If a policy/contract is changed substantially at renewal so it might be deemed a "new policy", in 2013 and beyond, the requirements will likely apply. (e.g., the underlying policy is being changed and it is being reissued as a new policy/contract)."

9.  TPLIC subsequently served a declaration on Plaintiff's and United's counsel on February 22, 2018, and a true and correct copy of this declaration is attached hereto as **Exhibit 18**. In that declaration, TPLIC states at paragraph 11:

> "Based on [the DOI's] interpretation of the Statutes (communicated by ACLHIC to its member insurers and TPLIC as noted above), as well as TPLIC's own analysis and review of the Statutes, TPLIC concluded that the Statutes do not apply to life insurance policies issued or delivered in California prior to the January 1, 2013 effective date of the Statutes. Thus, TPLIC did not apply the requirements of these Statutes to policies issued or

1  delivered prior to January 1, 2013, including renewals of such policies after January 1, 2013."

10. In this action, Plaintiff produced 71 pages of documents on December 15, 2016. Attached hereto as **Exhibit 19** is a true and correct copy of the December 15, 2016 cover letter from Plaintiff's counsel that transmitted those documents, along with the first eight pages of Plaintiff's production. These eight pages consist of letters between the California Department of Insurance and Jennifer Bentley's counsel of record, David Klevatt. These letters were bates-numbered as Bentley 1-8.

11. On December 13, 2017, I attended and defended the Rule 30(b)(6) depositions of United's witness Nancy Irvine. A true and correct copy of pertinent portions of the transcript from the Irvine deposition (including an errata sheet and Ms. Irvine's signature) are attached hereto as **Exhibit 20**. Attached hereto as **Exhibit 21** is a true and correct copy of a document identified at the Irvine deposition as Exhibit 14 (the payment audit history for the Bentley policy) and authenticated Ms. Irvine at pages 21:2-22:15. Attached hereto as **Exhibit 22** is a true and correct copy of a document identified at the Irvine deposition as Exhibit 16 (the Business Events notes for the Bentley policy) and authenticated by Ms. Irvine at page 44:6-21.

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.

Executed on February 27, 2018, at Los Angeles, California.

/s/ *Larry M. Golub*
LARRY M. GOLUB