1   Christopher Pitoun (SBN 290235)
    *christopherp@hbsslaw.com*
2   HAGENS BERMAN SOBOL SHAPIRO LLP
    301 North Lake Avenue, Suite 920
3   Pasadena, CA 91101
    Tel: (213) 330-7150
4   Fax: (213) 330-7152

5   Joseph M. Vanek (*pro hac vice*)
    jvanek@vaneklaw.com
6   John P. Bjork (*pro hac vice*)
    jbjork@vaneklaw.com
7   VANEK, VICKERS & MASINI, P.C.
    55 W. Monroe Street, Suite 3500
8   Chicago, IL 60603
    Tel: (312) 224-1500
9   Fax: (312) 224-1510
    *Attorneys for Plaintiff and the Proposed Class*

10  [Additional Counsel Listed on Signature Page]

11

12                  UNITED STATES DISTRICT COURT

13                 CENTRAL DISTRICT OF CALIFORNIA

14

15  JENNIFER BENTLEY, as trustee of the        No.15-cv-07870-DMG (AJWx)
    2001 Bentley Family Trust, and others
16  similarly situated,                         **REPLY MEMORANDUM OF
                                                POINTS AND AUTHORITIES
17                                              IN SUPPORT OF PLAINTIFF'S
                             Plaintiff,         MOTION FOR CLASS
18                                              CERTIFICATION**
             v.
19                                              Date:  March 30, 2018
    UNITED OF OMAHA LIFE                        Time:  10:00 a.m.
20  INSURANCE COMPANY; and DOES 1              Judge: Hon. Dolly M. Gee
    TO 50, inclusive,                           Courtroom:  8C
21
                             Defendants.        [Filed with Declaration of John
22                                              Bjork]

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................ 1

II.  ARGUMENT ........................................................................... 3

    A.   The minor variations among class members that Defendant identifies are irrelevant to the certification analysis and do not predominate the numerous and material common issues. ................... 3

    B.   Defendant's attempts to reduce Plaintiff's class size are without merit because the Statutes apply to every policy within the class. ............................................................................ 6

        1.   The Statutes cover Policies that lapsed prior to December 31, 2013 because they continued in force and were renewed after the Effective Date. ....................................... 7

        2.   Policies that purportedly failed to reach their renewal dates in 2013 prior to lapse are properly within the class because they continued in force after the Effective Date. ..................................................................... 9

        3.   Policies where policyholders allegedly requested cancellation are within the class because Defendant did not accept or permit cancellation, and the Statutes can be reasonably interpreted to require the Notices under these circumstances in any event. ........................................ 11

        4.   The policies Defendant alleges lapsed for inadequate cash value and the end of their guaranteed level premium period were, in truth, lapsed for non-payment of premium. ................................................................ 13

        5.   Policies without "renewal language" still legally renew annually and would be within the scope of the Statutes even if they did not. ............................................. 14

        6.   The Statutes cover policies renewed in California regardless of where they were initially issued. ............................. 14

        7.   It would require a significant narrowing of Plaintiff's putative class to defeat numerosity. ................................................ 17

    C.   Defendant's typicality challenges misconstrue the requirement and attempt to create conflict between Plaintiff and the class where there is none. ................................................. 19

    D.   Adjudication through a class proceeding is superior to individual lawsuits because individual suits are not a viable alternative and would be incredibly inefficient for all involved. ........................................................................ 21

III. CONCLUSION ...................................................................... 22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Barnes v. AT&T Pension Benefit Plan,*
  270 F.R.D. 494 (N.D. Cal. 2010) ............................................................ 20

*Castillo v. GMC,*
  2008 U.S. Dist. LEXIS 82337 (E.D. Cal. Sept. 5, 2008) ........................ 19

*Cerone v. Reliance Std. Life Ins. Co.,*
  9 F. Supp. 3d 1145 (S.D. Cal. 2014) ......................................................... 8

*Charlebois v. Angels Baseball, LP,*
  2011 U.S. Dist. LEXIS 71452 (C.D. Cal. June 30, 2011) ....................... 19

*Curran v. United of Omaha Life Ins.,*
  38 F. Supp. 3d 1184 (S.D. Cal. July 15, 2014) .................................... 8, 14

*Durant v. State Farm Mut. Auto. Ins. Co.,*
  2017 U.S. Dist. LEXIS 34157 (D. Wash. March 9, 2017) ........................ 5

*In re Equity Funding Corp. Secs. Litig.,*
  1976 U.S. Dist. LEXIS 17364 (C.D. Cal. March 26, 1976) ...................... 6

*Hanon v. Dataproducts Corp.,*
  976 F.2d 497 (9th Cir. 1992) ................................................................... 20

*Ikonen v. Hartz Mountain Corp.,*
  122 F.R.D. 258 (S.D. Cal. 1988) ............................................................. 20

*Johnson v. Hartford Cas. Ins. Co.,*
  2017 U.S. Dist. LEXIS 77482 (N.D. Cal. May 22, 2017) ....................... 22

*Medina v. Conseco Annuity Assur. Co.,*
  121 P.3d 345 (Colo. App. 2005) ................................................................ 4

*In re Modafinil Antitrust Litig.,*
  837 F.3d 238 (3rd Cir. 2016) ................................................................... 18

*Modglin v. State Farm Auto. Ins. Co.,*
  273 Cal. App. 2d 693 (1969) ............................................................ *passim*

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
    311 F.R.D. 590 (C.D. Cal. 2015)................................................................. 5

*Nationwide Mut. Ins. Co. v. Darden*,
    503 U.S. 318 (1992) ..................................................................................... 16

*In re Nexium Esomeprazole Antitrust Litig.*,
    296 F.R.D. 47 (D. Mass. 2013) .................................................................. 18

*Nitsch v. Dreamworks Animation SKG, Inc.*,
    315 F.R.D. 270 (N.D. Cal. 2016) ............................................................... 20

*People v. Johnson*,
    60 Cal. 4th 966 (2015)................................................................................. 16

*Rannis v. Recchia*,
    380 Fed. Appx. 646 (9th Cir. 2010) ...................................................... 17, 18

*Sherman v. CLP Res., Inc.*,
    2015 U.S. Dist. LEXIS 189636 (C.D. Cal. Feb. 4, 2015) ......................... 5

*Stephan v. Unum Life Ins. Co. of Am.*,
    697 F.3d 917 (9th Cir. 2012) .................................................................. 8, 15

*Tapia v. Superior Court*,
    807 P.2d 434 (Cal. 1991)......................................................................... 9, 11

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*,
    209 F.R.D. 159 (C.D. Cal. 2002)................................................................. 5

*Tietz v. Bowen*,
    695 F. Supp. 441 (N.D. Cal. 1987)............................................................. 18

*U.S. v. Nash*,
    115 F. 3d 1431 (9th Cir. 1997) .................................................................. 16

*Williams v. Std. Ins. Co.*,
    2017 U.S. Dist. LEXIS 59813 (E.D. Cal. Apr. 18, 2017) ..................... 8, 14

*Yamaha Corp. of Am. v. State Bd. of Equalization*,
    19 Cal. 4th 1 (1998)..................................................................................... 3

**STATUTES**

Cal Civ. Code § 3289 ........................................................................................ 4

Cal. Ins. Code § 10111 .................................................................................. 4, 20

Cal. Ins. Code § 10110 .................................................................................. 8, 14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 .............................................................................. 2, 3, 18, 20

# I.   INTRODUCTION

Defendant's Opposition (*Opposition*) to Plaintiff's Class Certification Motion (*Motion*) is telling by what Defendant does *not* challenge. Defendant does not dispute that failing to provide the Notices required by the Statutes (*Notices*) with respect to policies issued before the Statutes' Effective Date (*Effective Date*) applies equally to every class member. Defendant also doesn't dispute that the threshold legal determination of whether the Statutes apply to such policies is common to every class member. Also undisputed is that: 1) the class is geographically dispersed and ascertainable from Defendant's own records; 2) every class member's harm can be easily and commonly calculated; and 3) Plaintiff (and her counsel) can, have and will adequately represent the class's interest.

Given that the critical questions in this case are common to all class members, Defendant resorts to trying to create the illusion of a disparate class, by claiming purported differences between individual class members. Each of these attacks falls flat.

As to predominance, the key consideration is whether the *Defendant's conduct* and its resulting impact are common across the class. Here, *Defendant's conduct* is not only common across the class, it is identical. Any purported variances in policy types and the specific circumstances of issuance, renewal or lapse do not change this analysis. The Notices are required by law to be provided to all class members and the remedy for that statutory breach is also set by law, i.e. the face amount of the policy. Moreover, even if the Court had to analyze these "individual" matters, this analysis – which would in large part entail simply reviewing dates on Defendant's class lists - would be straightforward and would not "overwhelm" the critical issues that can be adjudicated class-wide. Rule 23's predominance requirement is satisfied.

As for numerosity, Defendant attempts to whittle down the class size by arguing the Statutes are inapplicable to particular policies for various reasons. But each of

Defendant's arguments is belied by the law, the record or both. Any policies that reached their anniversary date in 2013 – regardless of whether they contained explicit "renewal" language - renewed *as a matter of law* and incorporated all then existing legal requirements, including those under the Statutes. Policies that allegedly lapsed before their anniversary dates are likewise covered and properly within the class because they continued in force after the Statutes' Effective Date and Defendant failed to provide the mandated designation notice prior to lapse. So too are policies that were purportedly cancelled for something other than failure to timely pay premiums when the record evidence plainly shows that *all* policies within the putative class – including those Defendant claims were intentionally cancelled – were lapsed for non-payment of premium. Therefore, these policies fall squarely within the ambit of the Statutes and the proposed class. Defendant's efforts to slice and dice the class to defeat numerosity fail.

The same is true of superiority. Defendant's sole argument to the contrary – that *some* class members have fairly sizeable claims – fails because it ignores the fact that many more do not and most will likely never know their claims exist absent a class proceeding. Defendant doesn't even attempt to rebut Plaintiff's argument that repetitive individual lawsuits on the same issues would be inefficient and could lead to inconsistent judgments.

Finally, with respect to typicality, there are no material differences between Plaintiff's claims and those of her fellow class members. The question of whether Defendant was required to send the Notices to pre-2013 policies that renewed or continued after the Statutes went into effect binds the Plaintiff's claim to those of every class member. Accordingly, Plaintiff's claim is typical of the class she seeks to represent, and she has every incentive to advance them to the class's collective benefit. Any individual variation among class members is irrelevant to typicality or any other consideration under Rule 23 given the overriding shared elements of their claims.

1    Plaintiff respectfully requests that her Motion for Class Certification be granted.

2                              **II.   ARGUMENT**

3   **A.    The minor variations among class members that Defendant identifies are**
        **irrelevant to the certification analysis and do not predominate the**
4       **numerous and material common issues.**

5        As it must, Defendant concedes that the overarching legal determination in this

6   case - whether the Notices were required for policies issued prior to the Effective Date

7   - is a common one. *See* Opposition[1] at 14. Defendant wrongly states that this

8   determination is "superficial" and is the only commonality among class members. *Id.*

9   To the contrary, it is fundamental to every class member's claim and is but one of

10   many common issues.[2]

11        Indeed, the claims of every member of Plaintiff's putative class are essentially

12   identical. All class member's claims are against the same party, premised on the same

13   uniform conduct,[3] pursued under the same Statutes, assert the same causes of action

14   _____

15       [1]   "Opposition" refers to the February 27, 2018 Opposition of Defendant United of
     Omaha Life Insurance Company to Plaintiff's Motion for Class Certification, Dkt. No.
16   123.

17       [2] Defendant's "Statement of Facts" includes citation to, among other items,
     correspondence between the Department of Insurance (*DOI*) and Plaintiff's counsel
18   concerning how to interpret the Statutes. *See* Opposition at 4. These purported "facts"
     have absolutely nothing to do with class certification. In any event, the ultimate
19   interpretation of a statute is an exercise of judicial power; it cannot be assumed by any
     other body. *See Yamaha Corp. of Am. v. State Bd. of Equalization,* 19 Cal. 4th 1, 7-8
20   (1998).

21       [3] Defendant claims that "the Designation Notice is the only aspect of the Statutes
     that Plaintiff asserts United violated with respect to Jennifer and the class she purports
22   to represent." *See* Opposition at 6. This is false. Plaintiff contends Defendant failed
     to provide any of the third-party Notices under Statutes, as is evident from, among other
23   pleadings, Plaintiff's Complaint. *See e.g.,* Dkt. No. 87 at ¶ 32 ("At no time prior to the
     termination did Omaha provide Mr. Bentley with 30 day prior written notice of
24   termination or the opportunity to designate a third party to receive notification of a
     pending termination as mandated by the Designation and 30 Day Notice Requirements
25   of the Statutes.), and ¶ 33 ("Having failed to satisfy the Designation Requirement,
     Omaha, by extension, also failed to notify a third party designee of Mr. Bentley's of
26   the pending termination in violation of the Third Party Notice Requirement of the
     Statutes.").
27

28

1    and seek the same damages, all calculated under the same statutory provision (Cal.

2    Ins. Code § 10111). The statutory damages provision provides that the remedy for a

3    violation of the Statutes is the face amount of the policies. *See* Cal Ins. Code

4    §10111("In life or disability insurance, the only measure of liability and damage is the

5    sum or sums payable in the manner and at the times as provided in the policy to the

6    person entitled thereto"). Each plaintiff would also be commonly entitled to pre-

7    judgment interest. *See* Cal Civ. Code § 3289. This case is, therefore, an ideal class

8    case as the legal theory is common to all members and the amount recoverable as a

9    result of Defendant's failure to comply is preordained by statute as well.

10          Common evidence showing, *inter alia,* that Defendant hastily developed its

11   view and position on the Statutes shortly after their enactment, applied its narrow

12   interpretation of the Statutes to all the policies in Plaintiff's putative class and

13   continues to stubbornly maintain its position despite adverse court rulings, will be

14   used by each and every class member. *See* Plaintiff Motion[4] at 19. At summary

15   judgment (which Plaintiff intends to move for) and trial (if necessary), this evidence,

16   in conjunction with common legal arguments concerning the renewal principle and

17   statutory interpretation rules, will be presented to the Court for a decision on

18   Defendant's liability. The Court's decision – whatever it may be – will apply to and

19   impact the class as a whole.

20          Defendant's authority on predominance– a non-binding Colorado state court

21   opinion in *Medina v. Conseco Annuity Assur. Co.,* 121 P.3d 345 (Colo. App. 2005) –

22   does not advance its argument. In *Medina*, the differences in insurance policies were

23   meaningful only because the case concerned premium overcharges, and the policy

24   forms had different premium payment structures and varying "premium increase

25   modifications." *Id.* at 347. That analysis is much different than here where the legality

26

27   _____

    [4]   "Plaintiff Motion" refers to the February 2, 2018 Memorandum of Points and

28   Authorities in Support of Plaintiff's Motion for Class Certification, Dkt. No. 121-1.

1   of Defendant's conduct is determined by the Statutes' scope, not the language of the

2   policies involved.

3          Of course there is some variation among class members. But that is true in every

4   class action. The test is not whether individual issues exist at all, or whether they

5   outnumber common issues, but rather whether individual issues will "overwhelm the

6   common questions so as to render the class action valueless." *See Thomas & Thomas*

7   *Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 168 (C.D.

8   Cal. 2002). *See also Sherman v. CLP Res., Inc.*, 2015 U.S. Dist. LEXIS 189636, **24-

9   25 (C.D. Cal.  Feb. 4, 2015) ("Predominance is not a bean-counting exercise, where

10  courts simply tally up the number of common and individualized issues without

11  considering relative importance. [ ] Instead, predominance asks a qualitative question:

12  whether the common questions are sufficiently central to the case (even if undisputed)

13  that aggregation will materially advance the resolution of multiple claims in an

14  efficient and procedurally fair manner.") When, as here, the challenged conduct by a

15  defendant is the same for all class members, the predominance requirement is

16  regularly found to be satisfied. *See Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*,

17  311 F.R.D. 590, 612 (C.D. Cal. 2015) ("Courts routinely hold that proof of a

18  defendant's uniform policy is not plagued by individual inquiry, but is often sufficient

19  to satisfy the predominance requirement."); *Durant v. State Farm Mut. Auto. Ins. Co.*,

20  2017 U.S. Dist. LEXIS 34157, at **10-11, 14-16 (D. Wash. March 9, 2017)

21  (predominance satisfied in insurance breach-of-contract class action because the

22  legality of defendant's uniform standard of denying claims was central to defendant's

23  liability to each class member).

24         Even if the purported variations among members of Plaintiff's class were

25  material and had to be analyzed separately, which Plaintiff disputes, this still would

26  not defeat class certification. Any analysis required to determine renewal dates, lapse

27  dates and/or the circumstances of lapse would involve no more than a consideration of

28

1   Defendant's class lists (which identify issue and lapse dates for each subject policy)

2   and Defendant's termination correspondence. Such an undertaking would not be

3   particularly time consuming or complicated, and certainly would not overwhelm the

4   extensive common questions among class members. This exercise is precisely the

5   same one involved in almost every class action, where there are objective questions to

6   be answered as to every class member to determine class membership.[5] Objective

7   determinations of the type Defendant identifies do not predominate when, as here,

8   there are many more material, common issues. *See In re Equity Funding Corp. Secs.*

9   *Litig.*, 1976 U.S. Dist. LEXIS 17364, **29-33 (C.D. Cal. March 26, 1976) (certifying

10  a class of securities holders alleging fraud because, while their dates of purchase and

11  exposure to fraud varied, the threshold legal determination was common and the

12  liability of defendants to particular plaintiffs could be easily determined by simply

13  looking at the respective dates of purchase, which was evident from the defendant's

14  own records).

**B.    Defendant's attempts to reduce Plaintiff's class size are without merit because the Statutes apply to every policy within the class.**

15

16          Defendant's Opposition goes to great lengths to limit the size of Plaintiff's

17  putative class in a patent attempt to destroy numerosity. Such has been Defendant's

18  *modus operandi* throughout the case. Throughout discovery, Defendant has

19  stonewalled Plaintiff's effort to discover who falls within her putative class. *See*

20  Declaration of John P. Bjork ("Bjork Reply Declaration"), filed concurrently herewith

21  as at ¶¶ 7-26. Initially, Defendant refused to produce information on policies without

22  "renewal language substantially similar" to Mr. Bentley's policy and would not reveal

23  contact information for putative class members. *Id.* at ¶¶7-8. It took extensive

24

25  _____

26      5    For example, in an antitrust class action involving the price fixing of widgets, it would be necessary to determine whether each class member purchased the right widget, from which defendant the class member purchased, and when. That this information will vary from class member to class member does not defeat certification.

27

28

negotiations and a motion to compel (on class member identities) to finally obtain this information. *Id.* at ¶¶11, 16-17. The obstruction did not end there. Currently, Defendant is refusing to: 1) check the master death rolls (which Plaintiff cannot do on her own) one more time ahead of the certification hearing to confirm the class numbers are up to date;[6] 2) undertake an alternative, simple search process to confirm all putative class members have been captured; and 3) identify the number of beneficiaries who would be class members if the insured on the improperly lapsed policy dies, which would give Plaintiff and the Court an understanding of how large the class could become with time.[7] *Id.* at ¶¶12-15, 18-26. These issues, unfortunately, appear headed to yet another motion to compel on what should be routine discovery.

As with Defendant's discovery positions, its arguments as to why certain known policies should not be considered within Plaintiff's proposed class are legally and/or factually incorrect and unconvincing. Every beneficiary identified in Plaintiff's Motion is a beneficiary of a policy within the scope of the Statutes and the proposed class and should remain in the class.

**1.    The Statutes cover Policies that lapsed prior to December 31, 2013 because they continued in force and were renewed after the Effective Date.**

Defendant's claim that the Statutes are inapplicable to any policy lapsed prior to December 31, 2013 is erroneous in multiple respects. First, it completely ignores

---

[6] Defendant's review does not include any 2018 beneficiaries, since its last review captured only deaths of insureds in 2017.

[7] While Defendant has steadfastly refused to identify policies and beneficiaries that fit Plaintiff's class definition except for the fact that the insured has not yet died, in discovery, one of Defendant's witnesses testified that he had already compiled and knew the number was approximately 250 for policies that were initially issued in California. *See* Plaintiff's Motion at p. 6.  He further testified that he also compiled and has access to an extract reflecting such policies that were renewed in California, but initially issued out of state. *See* Bjork Reply Dec. (Transcript of D. Kallenbach, Senior Systems Business Consultant at Mutual of Omaha) (*Kallenbach Tran.*), "**Exhibit J**" at 125:23-127:9. Despite the fact that this information is already sitting on Defendant's desk and producing it would cause no burden, Defendant refuses to do so.

1   California's longstanding renewal principle. Any policy that reached its anniversary

2   date in 2013 renewed, as a matter of law, after the Effective Date. *See* Cal. Ins. Code

3   Section 10110.6;[8] *Curran v. United of Omaha Life Ins.*, 38 F. Supp. 3d 1184, 1191-92

4   (S.D. Cal. July 15, 2014); *Williams v. Std. Ins. Co.*, 2017 U.S. Dist. LEXIS 59813,

5   **4-8 (E.D. Cal. Apr. 18, 2017). And pursuant to the renewal principle, the Statute's

6   requirements became effective no later than the time of such renewal. *See Stephan v.*

7   *Unum Life Ins. Co. of Am.*, 697 F.3d 917, 927-28 (9th Cir. 2012) ("[e]ach renewal [of

8   an insurance policy] incorporates any changes in the law that occurred prior to the

9   renewal"). *See also Cerone v. Reliance Std. Life Ins. Co.*, 9 F. Supp. 3d 1145, 1149

10  (S.D. Cal. 2014); *Modglin v. State Farm Auto. Ins. Co.,* 273 Cal. App. 2d 693, 700-

11  701 (1969). The arbitrary December 31st date selected by Defendant to suit its own

12  purposes completely ignores this established law and therefore cannot be the proper

13  construction of the Statutes' requirements.

14      Second, Defendant's self-serving date is at loggerheads with the Statute's

15  express language as well as the public policy underlying them. While the initial

16  designation Notice under subpart §10113.72(a) is triggered by an issuance or delivery

17  – which includes renewals pursuant to longstanding precedent - the other third party

18  Notices are not so limited and can reasonably be interpreted to apply to any policy that

19  continued in force after the Effective Date. *See* §10113.71(b)(1) and §10113.72(b) and

20  (c). This interpretation - which would require that the annual designation Notice of

21  §10113.72(b) (*Annual Notice*) and lapse Notice of §10113.72(c) (*Lapse Notice*) be

22  provided prior to *any* lapse in 2013 - is consistent with the Court's motion to dismiss

23  order. The Court held that the Statutes apply to pre-2013 issued policies in part

24  because the Annual Notice under §10113.72(b) was separate and distinct from

25  §10113.72(a) and was intended to apply to "existing policy owners, who now have the

---

[8] Under this section of the Insurance Code – which is informative in this case - "renewed" is expressly defined as "continued in force on or after the policy's anniversary date."

opportunity to designate a person to receive notification of a pending lapse or termination." (Dkt. No. 27 at 6-7). The Court similarly held that the Lapse Notice is a requirement independent of §10113.72(a). *Id.* This is rational, because the determination of whether a policy was properly cancelled or still in force is determined by the laws in effect governing notice. Procedural changes to the law, like those contained in the Statutes, are not presumed to be retroactive. *See Tapia v. Superior Court,* 807 P.2d 434 (Cal. 1991) ("Such a statute  is not made retroactive merely because it draws upon facts existing prior to its enactment .... [Instead,] [t]he effect of such statutes is actually prospective in nature since they relate to the procedure to be followed in the future.") (citing *Strauch v. Superior Court,* 107 Cal. App. 3d 45, 49, (1980) *quoting Olivas v. Weiner,* 127 Cal. App. 2d 597, 600-601 (1954)).

The foregoing interpretation by the Court was in addition to its holding that policies renewed in California are covered by the Statues and further undermines Defendant's position. *Id.* at 6-9. This interpretation of the Statutes is supported by the Statute's text and Court's prior order, and is consistent with the public policy of protecting consumers from losing coverage. Conversely, Defendant's proposed interpretation – which would allow insurers to lapse policies without providing the Notices for an additional 12 months after the Effective Date – is an affront to the Statutes' consumer protection objectives. The 20 policies Defendant challenges on the basis that they lapsed prior to December 31st should remain in the class.

**2.     Policies that purportedly failed to reach their renewal dates in 2013 prior to lapse are properly within the class because they continued in force after the Effective Date.**

Every policy in Plaintiff's putative class continued in force after the Effective Date, and none of these policies received *any* of the third-party Notices under the Statutes. *See* Ex. C. to Bjork Declaration to Plaintiff Motion, Kallenbach Tran. (Dkt. No. 121-3, at 39:10-19; 45:23-47:18; 51:11-56:7; 57:10-60:3). This includes the

Annual Notices and Lapse Notices which, as discussed, are not conditioned upon the issuance, delivery or renewal of a policy. Therefore, it doesn't matter if a small number of polices in the class didn't renew prior to lapse.[9]

While a renewal would have triggered the Statutes pursuant to the renewal principle, the continuance in force of the policies after the Effective Date mandated that, at a minimum, the Annual Notice and Lapse Notice be provided prior to lapse. Again, although the Statutes are silent on exactly when the Notices must be provided, it is reasonable to conclude that they were required, at the very latest, prior to the time of any cancellation. At the time Defendant lapsed policies in 2013 for non-payment of premium, it was on notice of the Statutes' requirements. It should have complied with notice requirements then in existence. Absent providing the Notices immediately when the Statutes went into effect, Defendant should at the very least have provided the Notices as part of its lapse process. Because there is no dispute that Defendant did not, these policies, regardless of any renewal, are properly within the class.[10]

---

[9] Defendant contends there are 11 such policies. This is incorrect. One of the policies Defendant identifies – policy UR2681720 - did in fact renew in 2013 prior to lapse. While the policy did not reach its anniversary date prior to lapse according to Defendant, Defendant's records show that a premium payment was made and accepted on the policy in January 2013 prior to the policy's lapse later in the year. *See* Bjork Reply Dec., (Defendant Business Event Notes ("BE Notes")), UNITED-001096-UNITED001097, "**Exhibit K**". Under California law, payment of premium is another method of renewal, making this policy subject to the Statutes. *See* MTD Order, Dkt. No. 27 at 8 ("…because the Insured renewed the Policy after the Statutes were enacted **by paying his premiums** and extending the policy period, the Policy is subject to the provisions of the Statutes.") (emphasis added); *Modglin*, 273 Cal. App. 2d 693 at 696 (the insured subsequently moved to California and renewed the automobile policy in California by paying the premium in California).

[10] At the time of Plaintiff's Motion, Plaintiff was under the impression that Defendant's Class Lists only included policies that renewed in 2013 prior to lapse. Accordingly, Plaintiff did not focus on the fact that all policies in the Class continued in force after the Effective Date.  Plaintiff has, however, consistently taken the position that all such policies, which are clearly within the class definition, are covered by the Statutes. *See* e.g., Dkt. No. 90, Feb. 23. 2017, at 10 ("…because subsections 10113.72(b) and (c) of the Statutes are independent of subsection 10113.72(a), they

**3.      Policies where policyholders allegedly requested cancellation are within the class because Defendant did not accept or permit cancellation, and the Statutes can be reasonably interpreted to require the Notices under these circumstances in any event.**

The 11 policies purportedly "cancelled at the request of the policyholder" were still entitled to receive the Notices, and are rightly included in the class for at least three reasons.

First, each of the policies Defendant challenges was lapsed for non-payment of premium, not because of any cancellation request. In the affidavit of Business System Analyst Veronica Dougherty submitted in support of Defendant's Opposition, Ms. Dougherty testified that when Defendant receives a cancellation request, Defendant does not cancel the policy, or refund any money to the policyowner. *See* Dougherty Declaration, Dkt. No. 123-2 at pp. 4-5, ¶ d. Instead, Defendant maintains the policy in force until a premium goes unpaid at which point the policy is lapsed for non-payment of premium. Ms. Dougherty described the process as follows:

> When a policyholder contacts United to cancel a policy, United does not refund premium, and the policy continues in force to the paid-to date, and when the policy terminates at the end of that period, United's system codes that event as a Lapse – Non Payment of Premium, not a cancellation (again, since United does not refund any premium).

> *Id*.

This testimony shows that a cancellation request does nothing with respect to a policy's status. Defendant keeps the premium, and the policy continues providing coverage. In other words, the operative event in terms of the lapse is the missed premium payment, as reflected by Defendant's coding of these events as "Lapse-Non-Payment of Premium." The coding is accurate because that is exactly what happens. Defendant's attempt to re-cast the facts to avoid this incontrovertible evidence falls flat.

---

impose independent obligations on insurers and apply to all policies in existence after 2013 regardless of issue date.").

1
2
3
4
5
6
7
8
9

    Second, none of the policies were cancelled pursuant to their terms. Every single policy form in Plaintiff's putative class includes language stating that "any change" in the policy requires the "written consent of an executive officer" or similar language to that effect. *See* Bjork Reply Dec., (Defendant Form Policy Excerpts) attached as "**Exhibit L**." There is no more significant "change" in a policy than a cancellation, yet Defendant hasn't produced evidence that it ever gave such consent. Put another way, Defendant did not accept the cancellation requests, which is reflected by the fact that Defendant kept the previously paid premiums and kept the policies in force.

10
11
12
13
14
15
16
17
18
19
20
21

    Also problematic for Defendant is the absence of admissible evidence of the requests themselves. Of the 11 policies Defendant identifies, only two were made through a written statement from the policy-owner. Defendant's sole "support" for the remaining requests – all of which Defendant claims were oral - is inadmissible hearsay evidence in the form of *Defendant's* short hand, ambiguous "business event notes", that is, call logs, and other documents authored by Defendant. *See* Defendant Evidence Index, Dkt. No. 123-5, Ex. 2 at UNITED-001025, UNITED-001028, UNITED-001044, UNITED-001055-56, UNITED-001081, UNITED-001088, UNITED-001114, UNITED-001117, UNITED-001126, UNITED-001168. In view of Defendant's scant evidence regarding the circumstances of these purported cancellations, it would, at the very least, be premature to rule that the beneficiaries of these policies do not have viable claims.

22
23
24
25
26
27

    Finally, regardless of the circumstances of the cancellation requests, the Statutes should nonetheless apply. The Statutes do not carve out policies that were lapsed for non-payment of a premium, but where the policy-owner indicated some desire, at some point in time, in some manner, that he or she desired this result. To read in this exclusion would be incongruous with the Statutes' consumer protection goals. The Statutes are designed to give a trusted third party a voice to provide input to the

28

policy-owner prior to a policy lapse. This input - especially when someone is ill or nearing the final stages of life and perhaps not of sound mind - may prevent not only missed payments, but also ill-conceived decisions to cancel policies that a policyowner may not have given sufficient consideration. Defendant's proposed exclusion would eliminate this important protection and is further reason the Court should refrain from adopting it.

### 4.   The policies Defendant alleges lapsed for inadequate cash value and the end of their guaranteed level premium period were, in truth, lapsed for non-payment of premium.

Defendant's argument that policies lapsed for inadequate cash value and the end of their guaranteed level premium can be easily refuted. With regard to the cash value subset, Defendant's representations are terribly disingenuous and, as to some policies, flat out false. Of the six policies Defendant identifies as being lapsed for unpaid "interest charges," the lapse letters for five of them identify an unpaid *premium* as the sole or partial reason for lapse. *See* Defendant Evidence Index, Dkt. No. 123-5, Ex. 3 at UNITED-000679, UNITED-000686, UNITED-000693, UNITED-000919; Bjork Reply Dec., (Policy No. UA7820542 Lapse Notice) attached as "**Exhibit M**".  Thus, these five policies are squarely within the Statues.

The policies that reached the end of their guaranteed level premiums are as well because they too were lapsed for non-payment of a premium. Defendant admits as much when it describes the lapses of these policies as instances in which the policy-owner stopped "paying premiums," stopped "automatic withdrawals" or failed to pay "the increased premium." Defendant's speculation as to why the premium payments were not made is wholly irrelevant to the analysis. The pertinent question is why the policies were lapsed. Because the answer is non-payment of premium, the Notices

apply and should have been provided.[11] The eight policies challenged on this basis should also be considered as being within the Statutes' ambit.

### 5. Policies without "renewal language" still legally renew annually and would be within the scope of the Statutes even if they did not.

Defendant devotes only a couple of sentences to its argument that policies without "renewal language" are not covered by the Statues because they do not renew. This limited treatment is appropriate because the contention is directly at odds with the law. The California Insurance Code states that insurance policies automatically renew on the *annual* recurrence of their anniversary date. *See* Cal. Ins. Code Section 10110.6; *Curran,* 38 F. Supp. 3d at 1191-93; *Williams,* 2017 U.S. Dist. LEXIS 59813 at **4-8.  As discussed, payment of a premium also constitutes a renewal. *See* MTD Order, Dkt. No. 27 at 8; *Modglin*, 273 Cal. App. 2d 693 at 696. Defendant's argument fails in view of this authority. It also fails because, as explained in section II (B)(1) above, some third-party Notices were required regardless of whether there was a renewal. The 28 policies in this category are no different than the others, and Defendant's argument that they should be excluded from the class should be rejected.

### 6. The Statutes cover policies renewed in California regardless of where they were initially issued.

Defendant has repeatedly asked the Court to rule that the Statutes do not apply to renewals. Each time, the Court has rejected Defendant's argument due, in part, to the longstanding California principle that when an insurance policy renews, it incorporates changes in the laws that occur prior to the renewal. *See* Dkt No. 27 at 6-9, Dkt. No 46 at 3-4, Dkt. No. 107 at 4-6. *See also Modglin,* 273 Cal. App. 2d at 700-701. In its Opposition, the Defendant asks the Court, yet again, to change its mind, this time for the purpose of removing the single policy Defendant has identified to date that fits

---

[11]  The weakness of Defendant's semantics argument is illustrated by application to another context. A homeowner whose mortgage payments are automatically deducted from their bank account does not go into default because their bank balance is too low to permit the deduction; they default for non-payment of their mortgage.

the class definition and was initially issued outside California. The Court should re-affirm its prior holdings.

As the Court stated when it rejected this argument the last time:

> United takes issue with the word "renewed" because the Statutes should apply only to policies "issued or delivered" in California, not policies renewed in California. Yet, this same issue involving the "renewal principal" was already ruled on by the Court in its June 22, 2016 Order.

*See* Dkt. No. 107 at 5, f.n. 3.

The Court's ruling remains no less correct today. The Court's decision is consistent with the renewal principle that each renewal incorporates any changes in the law that occurred prior to the renewal. *See e.g.*, *Stephan*, 697 F.3d at 927-28. And this Court previously recognized that the principle is no less applicable to policies first issued or delivered outside but later renewed in California than it is for policies where issuance, delivery, and renewal all occur in California. *See* Dkt. No. 107 at 5, f.n. 3. The rule structure makes complete sense because a renewal triggers application of California law under the renewal principle, and in both instances the renewal occurs in the state.

Further undermining Defendant's position is the ruling in *Modglin*. In *Modglin*, the court held that an insurance policy purchased in Arizona and later renewed in California was governed by an uninsured motorist statute covering policies "issued or delivered" in California due to the renewal principle. *Modglin*, 273 Cal. App. 2d at 695-697, 700-701. Because the geographic language of the statute in *Modglin* is similar to the wording of the Statutes at issue in this case, *Modglin's* holding applies here and directly contradicts Defendant's argument. On the other hand, the case of *Ahern v. Dillenback* which Defendant principally relies on (Opposition at 12) is inapposite. The *Ahern* decision did not concern a renewal in California, but rather whether a statute that included "issued or delivered in this state" language applied to

an automobile policy that was issued, delivered *and renewed* all outside California. *See* 1 Cal. App. 4th 36, 45-46 (1991).

Second, the Court's decision is supported by the cannon of statutory construction that presumes the Legislature is aware of prior judicial constructions of terms and phrases and intends for those meanings to be applied to future statutes unless stated otherwise. In *People v. Johnson*, which Defendant itself cites, the California Supreme Court observed:

> We presume that when the Legislature employs words that have been judicially construed (and especially so recently), it intends the words to have the meaning the courts have given them. Indeed, we have described this presumption as "almost irresistible."

60 Cal. 4th 966, 991 (2015).

Here, the Court should presume that the Legislature was aware of the renewal principle and intended that it apply to the Statutes. The Court in *Modglin* interpreted "issued or delivered" language to include policy renewals in California regardless of where they were issued; and subsequent courts carried the renewal principle forward in other cases. In view of the precedent, had the Legislature desired a different interpretation, it could and would have said so. It did not. Accordingly, the application of the Statutes to renewals in California – irrespective of where they were initially issued or delivered – is appropriate. *See People v. Johnson*, 60 Cal. 4th at 991 (court applies its prior interpretation of a phrase in connection with a robbery statute to a carjacking statute enacted thereafter because if the Legislature had intended a different meaning, "it could easily have said so.."); *U.S. v. Nash*, 115 F. 3d 1431, 1436 (9th Cir. 1997) (court applies a "materiality" requirement to a bank fraud statute because prior constructions of the statutory term at issue incorporated such a requirement and Congress did not indicate it desired a departure from past precedent). *See also Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 322-323 (1992) ("…where Congress uses terms that have accumulated settled meaning under . . . the common

law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.")

Third, unlike Defendant's narrow proposed interpretation, Plaintiff's proposed interpretation is consistent with the Statutes' public-policy objectives. It is highly unlikely that the Legislature intended to protect policyholders who always lived in California, while deliberately excluding policyholders who relocated to California and thereafter renewed their policies within the state. In both instances an operative event – the renewal after the effective date of the Statutes – occurred in California, making it illogical that one category of California policyholders would be viewed as less worthy of protection than the other.

Finally, even if the "issued or delivered" language in the Statutes could reasonably be interpreted to exclude policies renewed but not first issued/delivered in California – which it cannot – such a limitation would only apply to certain parts of the Statutes' protections. Only subsections 10113.71(a) and 10113.72(a) of each respective Statute contain the reference to "issued or delivered in the state." Contrary to Defendant's assertions, these subsections do not control the other subsections of the Statutes, which, importantly, contain the Annual Notice and Lapse Notice requirements. This proper read of the Statutes, taking into account the disjunctive nature of their respective subsections, constitutes yet another reason Defendant's narrow proposed interpretation cannot be correct.

### 7. It would require a significant narrowing of Plaintiff's putative class to defeat numerosity.

Plaintiff contends that every policy within her class definition was entitled to the Notices. However, even if the Court concludes differently with regard to particular policies, it would require a very significant narrowing of Plaintiff's class to deny certification on numerosity grounds.

The numerosity requirement exists to determine whether joinder is impractical and is not simply a counting exercise. *See Rannis v. Recchia*, 380 Fed. Appx. 646, 651

(9th Cir. 2010) ("The numerosity requirement is not tied to any fixed numerical threshold--it requires examination of the specific facts of each case and imposes no absolute limitations."). While class sizes in excess of 40 generally satisfy the requirement without further analysis, classes under 40 can and frequently are certified if other factors such as geographically dispersed class members, inefficiencies of individual suits and challenges for individual claimants are present. *See e.g., Rannis*, 380 Fed. Appx. at 651 (affirming certification of a 20 member class because individual suits would needlessly clog the court's docket and impose an unnecessarily significant litigation hardship on individual members); *Tietz v. Bowen*, 695 F. Supp. 441, 445-446 (N.D. Cal. 1987) (certifying class of 27 members due to geographic diversity of membership and challenges of bringing individual suits); *In re Nexium Esomeprazole Antitrust Litig.*, 296 F.R.D. 47, 50-53 (D. Mass. 2013) (finding a class of 24-29 members satisfied numerosity in part because they were geographically diverse and "litigating the exact same claims in multiple courts across the country is impracticable.").

Plaintiff's putative class currently stands at over 50 members as of the end of 2017.  *See* Ex. F to Bjork Declaration to Plaintiff's Motion, Dkt. No. 121-3, Class Lists.[12] Even if this number was reduced, the geographic dispersement of the class across California and the country, coupled with the small claim sizes of many

---

[12] Defendant contends that the Court should count policies, not beneficiaries, because multiple beneficiaries collected "under the same policy." Not so. The argument is at odds with the class definition covering *beneficiaries*. It is also at odds with established precedent and the numerosity requirement's intent of ensuring that joinder is impractical. Regardless of whether beneficiaries "share the same death benefits," each beneficiary with a claim would be a *separate* party to an individual suit, which would have implications for the efficiency and practicality of joinder. *See In re Modafinil Antitrust Litig.*, 837 F.3d 238, 251-251 (3rd Cir. 2016)(holding that a partially assigned claim held by multiple parties must be counted based on the number of parties holding the claim for numerosity purposes because "…the text of Rule 23(a)(1) says nothing about the number of claims; instead, it refers to the number of class *members*.") (emphasis in original).

1  members and the extreme inefficiency of litigating identical issues across multiple

2  forums, would still warrant a finding that the class is sufficiently numerous.

3          Moreover, the class will continue to grow prior to final judgment. As

4  mentioned, there are at least 250 insureds who did not receive the Notices before

5  Defendant lapsed their policies. *See* Plaintiff Motion at 6.  Incredibly, despite the

6  Court's rulings regarding the scope of the Statutes, Defendant has done nothing to

7  remedy these wrongful cancellations. Accordingly, when the insureds on these

8  policies pass away, the beneficiaries will have eligible claims because the policies

9  were not properly cancelled, and the putative class size will increase. *See Charlebois*

10  *v. Angels Baseball, LP*, 2011 U.S. Dist. LEXIS 71452, **13, 27  (C.D. Cal. June 30,

11  2011)(finding numerosity satisfied in part because the Court was "confident many

12  more class members will emerge" and "where the exact size of the class is unknown

13  but general knowledge and common sense indicate that it is large, the numerosity

14  requirement is satisfied"); *Castillo v. GMC*, 2008 U.S. Dist. LEXIS 82337 at **9-10

15  (E.D. Cal. Sept. 5, 2008)( "… a court may rely on common sense assumptions to

16  support findings of numerosity."). This additional fact should, at a minimum, tip the

17  balance in favor of Plaintiff if the Court feels it is a close call.

18  **C.      Defendant's typicality challenges misconstrue the requirement and attempt
         to create conflict between Plaintiff and the class where there is none.**

19

20          Defendant correctly notes that typicality requires Plaintiff and other members of

21  the class to have the "same or similar injury" stemming from the same "course of

22  conduct." *See* Opposition at 21. But Defendant misapplies the requirement and is

23  wrong that Plaintiff does not meet it.

24          Plaintiff has the exact same injury as the class (unpaid policy proceeds)

25  stemming from the exact same conduct by Defendant (uniformly refusing to provide

26  the Notices for any policy issued before the Effective Date). Just like Plaintiff, every

27  member of the putative class is a beneficiary of a policy that was: 1) issued before the

28  Effective Date, 2) continued in force and/or renewed in California after the Effective

1  Date; and 3) thereafter lapsed by Defendant for non-payment of premium without

2  providing the Notices. The core issue that will determine Defendant's liability is

3  whether the Statutes applied to pre-2013 policies for which the Notices were not

4  provided. Distinctions among types of policies, whether they had explicit "renewal

5  language," the circumstances of lapse, dates of issue, dates of lapse and states of issue

6  are distinctions without a difference. Nor will they have any bearing on Plaintiff's role

7  as a class representative because she seeks the same outcome as her fellow class

8  members: a ruling that the Statutes are applicable to their common fact pattern.

9        What the typicality requirement seeks to prevent is a situation where the *class*

10  *representative* is pre-occupied by issues that do not concern the class as a whole, for

11  example, unique defenses applicable *only* to a class representative. *See Nitsch v.*

12  *Dreamworks Animation SKG, Inc.*, 315 F.R.D. 270, 284 (N.D. Cal. 2016)

13  ("…defenses may pose a bar to typicality where a *putative class representative* is

14  subject to unique defenses which threaten to become the focus of the litigation.")

15  (emphasis added). That danger is not present here. Even assuming, *arguendo*, one or

16  more of the purported differences Defendant identifies constituted viable defenses –

17  which they do not -  such differences would not sink typicality because none of them

18  are applicable to Plaintiff. *See Barnes v. AT&T Pension Benefit Plan,* 270 F.R.D. 494

19  (N.D. Cal. 2010) ("defenses that may bar recovery for some members of the putative

20  class, but that are not applicable to the class representative do not render a class

21  representative atypical under Rule 23.") Defendant does not and cannot contend

22  otherwise and its typicality argument fails for this additional reason.

23        The two cases Defendant cites on the issue of typicality – *Hanon v.*

24  *Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) and *Ikonen v. Hartz Mountain*

25  *Corp.*, 122 F.R.D. 258 (S.D. Cal. 1988) – don't help it.  In *Hanon* – a securities fraud

26  case - the class representative was atypical because there were defenses unique to him

27  that did not apply to other class members. Again, that concern is not applicable to

28

Plaintiff because Defendant does not argue she is subject to any unique defense. In *Ikonen* – a product liability class action concerning a flea repellant - the typicality deficiency arose from causation, specifically, varying types and origins of injuries sustained. No such typicality challenges exist in this matter because the injury (loss of policy proceeds), damage amount (amount of policy proceeds under Cal. Ins. Code § 10111) and origin (Defendant's non-compliance with the Statutes) are uniform and largely undisputed as to Plaintiff and all in her putative class.[13]

**D.    Adjudication through a class proceeding is superior to individual lawsuits because individual suits are not a viable alternative and would be incredibly inefficient for all involved.**

Defendant challenges superiority on only one basis: some class members allegedly have "substantial damage claims," making individuals suits a "realistic alternative" to a class action. *See* Opposition at 23-25. The majority of the class, however, does not. Most have claims of $20,000 or less, some as little as $5,000. *See* Ex. F to Bjork Declaration to Plaintiff's Motion, Dkt. No. 121-3, Class Lists. The value of these claims would quickly be reduced by attorney fees, filing fees and other related expenses, as well as the non-monetary costs of the stress and inconvenience from what would surely be aggressive, disruptive litigation. Defendant ignores this reality when it characterizes the claims as "substantial."

But the value of the claims is not even the primary reason there is no "realistic alternative" to a class proceeding. As discussed in Plaintiff's Motion, but not addressed by Defendant, most (if not all) class members will never bring an individual claim because they likely have no idea they have one. As beneficiaries, as opposed to

---

[13] Defendant devotes the majority of its argument on typicality to alleged differences between Plaintiff and beneficiaries of policies where the insured has not yet died. This discussion is irrelevant to Plaintiff's Motion because Plaintiff's class does not include these individuals. Although beneficiaries on policies fitting the class criteria will become class members when the insureds pass away, they are not in the class until that happens, rendering any comparison between the life status of the insureds on their policies and Plaintiff's meaningless.

policy owners, they were not advised by Defendant that the policies to which they are entitled to proceeds lapsed, and may have never even known they were beneficiaries in the first place. Under these circumstances, a claim of $5 is no different than $5 million. In both cases, an individual lawsuit will never be filed. Defendant knows this and is certainly not going to advise these individuals of their rights. *See* Dkt. No. 114-1, Defendant Response to Plaintiff's Second Motion to Compel at 9 (describing beneficiaries as individuals "…who didn't pay the premiums for the policies, who had no say in whether the policies continued in force, who weren't the ones to whom the notices at issue in the Statutes were to be sent and ***who may not even know that a policy exists let alone that they are named beneficiaries*"**) (emphasis added). Without a class proceeding, it is unlikely anyone will.

Also ignored by Defendant is the reality that individual lawsuits would be a colossal waste of resources. It would be in no one's interest to litigate the uniform issues at stake in this matter 50 or more times in different forums across the country. To do so would not only be duplicative and inefficient, it could have the undesired result of inconsistent judgments. *See Johnson v. Hartford Cas. Ins. Co.*, 2017 U.S. Dist. LEXIS 77482, **47-48 (N.D. Cal. May 22, 2017) ("A situation in which numerous lawsuits surrounding the same question… in which each court must make a determination, would produce confusion and uneven and inequitable results.")

The sensible and superior adjudication method is, without question, a class proceeding.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court certify Plaintiff's proposed class as defined in Plaintiff's Motion. In the alternative, should the Court determine that the class cannot be certified as currently defined, Plaintiff respectfully requests leave to narrow or otherwise modify the class definition and/or take any other actions that are necessary to remedy any concerns the Court may have.

1    DATED: March 13, 2018       HAGENS BERMAN SOBOL SHAPIRO LLP

2                                   By:    */s/ Christopher Pitoun*

3
4                                     Christopher Pitoun (SBN 290235)
         *christopherp@hbsslaw.com*
5                                     HAGENS BERMAN SOBOL SHAPIRO LLP
         301 North Lake Avenue, Suite 920
6                                     Pasadena, CA 91101
         Telephone:  (213) 330-7150

7
8                                     Steve W. Berman
         *steve@hbsslaw.com*
9                                     HAGENS BERMAN SOBOL SHAPIRO LLP
         1918 Eighth Avenue, Suite 3300
10                                   Seattle, WA  98101
         Telephone:  (206) 623-7292

11
12                                     Jason A. Zweig
         *jasonz@hbsslaw.com*
13                                     HAGENS BERMAN SOBOL SHAPIRO LLP
         455 N. Cityfront Plaza Drive, Suite 2410
14                                     Chicago, IL 60611
         Telephone: (708) 628-4949

15
16                                     Joseph M. Vanek
         *jvanek@vaneklaw.com*
17                                     John P. Bjork
         *jbjork@vaneklaw.com*
18                                     VANEK, VICKERS & MASINI, P.C.
         55 W. Monroe Street, Suite 3500
19                                     Chicago, IL 60603
         Telephone: 312-224-1500

20
21                                     Paul E. Slater
         *pes@sperling-law.com*
22                                     SPERLING & SLATER, P.C.
         55 W. Monroe Street, Suite 3500
23                                     Chicago, IL 60603
         Telephone: (312) 641-3200

24
25
26
27
28

David S. Klevatt
*dklevatt@chicagolaw.biz*
KLEVATT & ASSOCIATES, LLC
33 North LaSalle Street, Suite 2100
Chicago, IL 60602-2619
Telephone: (312) 782-9090

*Attorneys for Plaintiff and the Proposed Class*