Christopher Pitoun (SBN 290235)
*christopherp@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone:  (213) 330-7150

Joseph M. Vanek (*pro hac vice*)
*jvanek@vaneklaw.com*
John P. Bjork (*pro hac vice*)
*jbjork@vaneklaw.com*
VANEK, VICKERS & MASINI, P.C.
55 W. Monroe Street, Suite 3500
Chicago, IL 60603
Telephone:  (312) 224-1500

*Attorneys for Plaintiff and the Class*

[Additional Counsel Listed on Signature Page

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER BENTLEY, as trustee of the 2001 Bentley Family Trust, and others similarly situated.<br><br>                              Plaintiffs,<br><br>        v.<br><br>UNITED OF OMAHA LIFE INSURANCE COMPANY; and DOES 1 TO 50, inclusive,<br><br>                              Defendants. | **No. 15-cv-07870-DMG (AJWx)**<br><br>**DECLARATION OF JOHN P. BJORK IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:  August 3, 2018<br>Time:  2:00 p.m.<br>Judge: Hon. Dolly M. Gee<br>Courtroom:  8c |

## DECLARATION OF JOHN P. BJORK

I, John P. Bjork, declare as follows:

1.     I am an attorney at the law firm of Vanek Vickers & Masini.

2.     Among other jurisdictions, I am licensed in Illinois and Massachusetts, and I am admitted *pro hac vice* on behalf Plaintiff Jennifer Bentley (*Plaintiff*) in this matter.

3.     I make this declaration in connection with Plaintiff's Motion for Summary Judgment (*Motion*).

4.     I have personal knowledge of the facts declared herein.

5.     On or around October 14, 2016 and March 23, 2017 respectively, Plaintiff served her First and Second Sets of Interrogatories and Requests for Production ("Written Discovery") on Defendant United of Omaha Life Insurance Company ("Defendant").

6.     In response to Plaintiff's Written Discovery, Defendant produced correspondence to its policyowners, including the correspondence bates labeled UNITED 679, UNITED 693, UNITED 729, UNITED 919 and  UNITED 944-945. True and accurate copies of the foregoing correspondence is attached as "Exhibit B" and "Exhibit D" to Plaintiff's Statement of Uncontroverted Facts (*Plaintiff's SOUF*).

7.     In response to Plaintiff's Written Discovery, Defendant produced certain Business Event Notes (*BE Notes*) concerning its policies, including the BE Notes bates labeled UNITED1096-UNITED1097.  True and accurate copies of the foregoing BE Notes are attached as "Exhibit C" to Plaintiff's SOUF.

8.     As part of the development of her claims in this case, on December 13, 2017,  Plaintiff's counsel conducted Rule 30(b)(6) corporate depositions of Defendant witnesses Mr. Dennis Kallenbach, (Senior Systems Business Consultant). True and accurate copies of the transcribed testimony of Mr. Kallenbach which Plaintiff is

relying on in her Motion is attached hereto as "Exhibit A" to Plaintiff's SOUF.

9.     To calculate the judgment total on the Class' claims in this case, Plaintiff's counsel applied a 10% per annum interest rate to the face amount of each Class policy from the date of the insured's death and then added up the total face amounts plus interest of all Class policies.   A true and accurate depiction of these totals is reflected in "Exhibit E" to Plaintff's SOUF.

10.    I declare under the penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.


Executed on June 15, 2018

          */s/      John P. Bjork*_____

                JOHN P. BJORK

# Plaintiff's Exhibit A

1                    UNITED STATES DISTRICT COURT
2                    CENTRAL DISTRICT OF CALIFORNIA

3   JENNIFER BENTLEY, AS TRUSTEE  ) NO. 15-cv-07870-
    OF THE 2001 BENTLEY           ) DMG (AJWx)
4   FAMILY TRUST,                 )
                                  )
5            PLAINTIFF,           ) DEPOSITION OF
                                  ) DENNIS KALLENBACH
6        VS.                      )
                                  )
7   UNITED OF OMAHA LIFE          )
    INSURANCE COMPANY; AND        )
8   DOES 1-50, INCLUSIVE,         )
                                  )
9            DEFENDANTS.          )
    - - - - - - - - - - - - - - - -

10

11           DEPOSITION OF DENNIS KALLENBACH, taken

12   before Chelsey A. Horak, Court Reporter, General

13   Notary Public within and for the State of Nebraska,

14   beginning at 7:52 a.m., on December 13, 2017, at

15   the Offices of Thomas & Thomas Court Reporters and

16   Certified Legal Video, L.L.C., 1321 Jones Street,

17   Omaha, Nebraska, pursuant to the within

18   stipulations.

19

20

21

22

23

24

25

Transcript of Dennis Kallenbach
Conducted on December 13, 2017                                    39

```
1    third party.
2                    MR. GOLUB:  I -- this --
3                    MR. BJORK:  Let me ask --
4    BY MR. BJORK:
5         Q.   Please answer.
6         A.   No.
7         Q.   Okay.  So the answer to the question --
8    strike that.  Let me ask it one more time so we have
9    a clean record.
10                Is it true that prior to October of 2016,
11   United did not give any of the policyholders of this
12   category of policies -- and the category I'm talking
13   about is life insurance policies United issued or
14   delivered in California prior to January 1, 2013,
15   that continued in force after January 1, 2013 -- the
16   opportunity to designate a third party to receive
17   notice of a lapse or termination of a policy for
18   nonpayment of a premium?
19        A.   Yes.  That is true.  We did not.
20        Q.   Okay.  And United issues or delivers life
21   insurance policies outside of California, correct?
22        A.   Yes.
23        Q.   Okay.  And United issued or delivered
24   these types of policies before and after
25   January 2013, correct?
```

Transcript of Dennis Kallenbach
Conducted on December 13, 2017                               43

1      Q.    And the policy continued in force?

2      A.    -- and the policy continued in force?

3            Yes.  We have states where we were

4   required by their law to put it into effect

5   third-party designations that were before 2013.

6      Q.    Okay.  And if those states did not require

7   third-party designations, would United have provided

8   the opportunity to designate a third party under

9   Subpart A of this statute?

10                MR. GOLUB:  Objection:  Calls for a

11  legal conclusion.  I think it's also vague and

12  ambiguous to the extent it refers to Subdivision A,

13  which says policies issued or delivered in this

14  state.  I think your question is --

15                MR. BJORK:  Okay.  That's --

16                MR. GOLUB:  -- vague and ambiguous.

17                MR. BJORK:  Please, Larry, limit the

18  objections to form, foundation, vague, ambiguity,

19  and limit the speaking objections.

20                MR. GOLUB:  I'm not speaking.  I'm

21  just explaining why it's vague.

22                THE WITNESS:  So, no, we did not.

23  BY MR. BJORK:

24     Q.    Please direct your attention to Subpart B

25  of the statute on Exhibit 2.

Transcript of Dennis Kallenbach
Conducted on December 13, 2017                                44

```
1            Am I correct that that subpart reads, "The
2    insurer shall notify the policy owner annually of
3    the right to change the written designation or
4    designate one or more persons.  The policy owner may
5    change the designation more often if he or she
6    chooses to do so"?
7        A.   Yes.
8        Q.   Okay.  Is it true that United did not give
9    Mr. Bentley an annual notification to designate a
10   third party to receive notice of a termination of
11   his policy for nonpayment of a premium?
12             MR. GOLUB:  Object:  I think it goes
13   beyond the scope of his testimony.
14   BY MR. BJORK:
15       Q.   If you know.
16       A.   Repeat the question, please.
17       Q.   Okay.  I'll read it back.
18             Is it true that United did not give
19   Mr. Bentley an annual notification to designate a
20   third party to receive notice of termination of his
21   policy for nonpayment of a premium?
22       A.   That is true.
23       Q.   Okay.  And let me back up.  And,
24   I apologize, I meant to ask this earlier.
25             But looking, again, at Subpart A of
```

Transcript of Dennis Kallenbach
Conducted on December 13, 2017                              45

1    Exhibit 2, is it true that United never gave

2    Mr. Bentley the opportunity to designate a third

3    party to receive the notices described in Subpart A,

4    that is, notice of a termination of his policy for

5    nonpayment of a premium?

6                    MR. GOLUB:  When it was issued or

7    delivered?

8                    MR. BJORK:  Please --

9                    MR. GOLUB:  You can't --

10                   MR. BJORK:  Do you have an objection?

11                   MR. GOLUB:  Yes.  The question is

12   ambiguous because --

13                   MR. BJORK:  I don't need -- if your

14   objection is it's ambiguous, I don't need the

15   explanation.  That's sufficient.

16                   MR. GOLUB:  Lacks foundation --

17                   MR. BJORK:  Okay.

18                   MR. GOLUB:  -- as well.

19   BY MR. BJORK:

20       Q.    You can answer.

21       A.    The question was:  Did we provide

22   Mr. Bentley with an opportunity?  No, we did not.

23       Q.    Okay.  So directing your attention back to

24   Subpart B of Exhibit 2, again.

25                   Again, I want to ask you about United's

1    policyholders of policies issued or delivered in

2    California prior to January 1, 2013, whose policies

3    continued in force after January 1, 2013.

4         A.   Okay.

5         Q.   Is it true that United did not prior to

6    October 2016 provide the annual notification

7    described in Subpart B of the statutes to policy

8    owners in this category of policies?

9         A.   Yes.

10        Q.   Okay.  And, again, now I want to ask you

11   about policies United issued or delivered outside

12   the state of California where the policyholder

13   thereafter moved into California after January 1,

14   2013, and the policy continued in force.

15             Do you understand what policies I'm

16   talking about?

17        A.   Yes.

18        Q.   Okay.  Is it true that United did not

19   provide the annual notification described in

20   Subpart B of the statutes to policy owners in this

21   category of policies?

22        A.   Yes.

23        Q.   And is it -- is that -- is your answer

24   true regardless of when the policies were first

25   initially issued or delivered?

Transcript of Dennis Kallenbach
Conducted on December 13, 2017                    47

1        A.    No.  It's based on the issue date of

2   the -- of the policy.

3        Q.    Okay.

4        A.    And for any policy that was issued prior

5   to 2013, we did not send any notices --

6        Q.    Okay.

7        A.    -- or did not make any system changes to

8   send any notices.

9        Q.    Okay.  So if United issued or delivered a

10  policy outside of California January 1 of 2013,

11  okay, the policy owner thereafter moved into

12  California after January 1, 2013, and the policy

13  continued in force, would the annual notification

14  described in Subpart B be provided by United?

15       A.    No.

16       Q.    Okay.  And that's true even today of that

17  category of policies, correct?

18       A.    That is correct.

19       Q.    Okay.  Is it true even if United has an

20  indication that the policy owner has moved into

21  California?

22       A.    Do we have --

23       Q.    Is it true that United would not provide

24  this annual notification even if United has a record

25  indicating the policyholder has moved into the state

Transcript of Dennis Kallenbach
Conducted on December 13, 2017                            48

1      of California?
2           A.    That is true.
3           Q.    Okay.  I'm going to direct your attention
4      to Subpart C of the statute.
5                 Am I correct that it reads, "No individual
6      life insurance policy shall lapse or be terminated
7      for nonpayment of premium unless the insurer, at
8      least 30 days prior to the effective date of the
9      lapse or termination, gives notice to the policy
10     owner and to the person or persons designated
11     pursuant to Subdivision A, at the address provided
12     by the policy owner for purposes of receiving notice
13     of lapse or termination.
14                "Notice shall be given by first-class
15     United States mail within 30 days after a premium is
16     due and unpaid."
17                Did I read that correctly?
18          A.    Yes.
19          Q.    Okay.  Is it true that United never
20     notified a third party designated by Mr. Bentley of
21     a pending lapse of his policies -- strike that.
22                Is it true that United never notified a
23     third party designated by Mr. Bentley of a pending
24     lapse of his policy prior to lapsing the policy for
25     nonpayment of a premium?

Transcript of Dennis Kallenbach
Conducted on December 13, 2017                                    49

```
 1                    MR. GOLUB:  Objection to the extent

 2     it calls for testimony beyond the scope of

 3     Mr. Kallenbach's deposition.

 4                    THE WITNESS:  Would you please repeat

 5     it?  I'm --

 6                    MR. BJORK:  Would you mind reading it

 7     back, please.

 8                         (The requested portion of the
                           transcript was read back by the
 9                         court reporter.)

10                    MR. GOLUB:  I also object to the

11     question as vague and ambiguous, to the extent it

12     says a third party designated by Mr. Bentley, to the

13     extent that assumes facts not in evidence.  Lacks

14     foundation.

15                    THE WITNESS:  I'm not aware that we

16     sent one to a third party designated -- I didn't --

17     I don't know for sure if he had a third party -- I

18     did not look to see if he had a third-party

19     designation on the policy.

20     BY MR. BJORK:

21        Q.   Okay.  But am I correct that you testified

22     earlier that Mr. Bentley was not given the

23     opportunity to designate a third party pursuant to

24     Subpart A of the statute?  Correct?

25        A.   That's correct.
```

Transcript of Dennis Kallenbach
Conducted on December 13, 2017                                    50

```
 1        Q.    Okay.

 2        A.    He was not because the issue date of the

 3   policy was prior to 2013.

 4        Q.    Okay.  And you'll sense a theme here, but

 5   I'm going to talk about the categories of policies

 6   we've already addressed with respect to this

 7   Subpart C.

 8              And, first, I'm going to talk about -- or

 9   ask you about, rather, United's policy owners of

10   policies issued or delivered in California prior to

11   2013 whose policies continued in force after

12   January 1, 2013.  Okay?

13        A.    Yes.

14        Q.    Is it true that prior to October 2016,

15   United did not provide the third-party notice

16   described in Subsection C of the exhibit we are

17   looking at to this category of policies prior to

18   lapsing them for nonpayment of premium?

19              MR. GOLUB:  Objection:  Vague and

20   ambiguous, based upon the language in the statute

21   and your question.

22              THE WITNESS:  Mr. Bentley was given

23   notice -- a follow-up premium notice -- our process

24   is for premiums to -- we have -- at 30 days before

25   the premium due date, we send a notice.  We send a
```

Transcript of Dennis Kallenbach
Conducted on December 13, 2017                              51

```
 1   notice 12 days after the due date.  And then we --
 2   the third notification of the lapse happening, they
 3   get notified.
 4   BY MR. BJORK:
 5       Q.   Okay.  My question was a little different.
 6   I was asking about policies beyond the Bentley
 7   policy and more focused --
 8       A.   Okay.
 9       Q.   -- on the third-party notice.
10            So let me read it again.
11            Specifically, again, I'm talking about
12   policy owners of policies issued or delivered in
13   California prior to January 1, 2013, and continued
14   in force after January 1, 2013.
15       A.   Uh-huh.
16       Q.   You understand what category of
17   policies --
18       A.   Yes.
19       Q.   -- I'm talking about, correct?
20       A.   Yes.
21       Q.   Is it true that prior to October 2016,
22   United did not provide a third-party notice
23   described in Subpart C of the exhibit we just looked
24   at to this category of policy -- policies prior to
25   lapsing any such policies for nonpayment of premium?
```

Transcript of Dennis Kallenbach
Conducted on December 13, 2017                                    52

1       A.    That's true.

2       Q.    Okay.  Is United's failure to provide the

3   third-party notices with regard to this category of

4   policies true even if United had received a premium

5   payment on any such policies after January 1, 2013?

6              MR. GOLUB:  Objection:  Vague and

7   ambiguous.  I don't understand what you're asking.

8              THE WITNESS:  Yeah.  I was going to

9   ask that you repeat the question.

10  BY MR. BJORK:

11      Q.    Okay.  Sure.

12             So am I -- you testified previously that

13  with regard to policies issued or delivered by

14  United in California prior to January 1, 2013, which

15  continued in force after January 1, 2013, that

16  United did not provide the third-party notice

17  described in Subpart C of the statute prior to

18  October 2016 before lapsing any such policies,

19  correct?

20      A.    Correct.

21      Q.    Okay.  My question is:  For that category

22  of policies, was United's failure to provide the

23  third-party notice true even if United had received

24  a premium payment on any such policies after

25  January 1, 2013?

Transcript of Dennis Kallenbach
Conducted on December 13, 2017                    53

1        A.    Yes.

2        Q.    Okay.  And is it true even if any such

3   policies had an annual recurrence of their effective

4   date after January 1, 2013?

5        A.    Can you explain what you mean by the

6   occurrence [sic] of the effective date?

7        Q.    Yeah.

8              So do you know what "effective date" in a

9   policy is?

10       A.    Yes.

11       Q.    What is it?

12       A.    The effective date of the policy is the

13  date in which the policy was put in force.

14       Q.    Okay.  So what I'm talking about is the

15  annual anniversary of that effective date.  For

16  instance, if a policy was issued on January 1, 2013,

17  the annual recurrence of the effective date would be

18  January 1, 2014, January 1, 2015, assuming it was in

19  force.

20       A.    The anniversary date.

21       Q.    Does that make sense?

22       A.    Yes.

23       Q.    Okay.  So my question, then, is:  With

24  regard, again, to policies that United issued or

25  delivered prior to January 1, 2013, that continued

Transcript of Dennis Kallenbach
Conducted on December 13, 2017                                   54

1    in force after January 1, 2013, was United's failure

2    to provide the third-party notice described in

3    Subpart C of the exhibit true even if a policy had

4    an annual recurrence of its effective date after

5    January 1, 2013?

6                    MR. GOLUB:  And I just want to

7    clarify.  Prior to October 2016?

8                    MR. BJORK:  True.

9                    THE WITNESS:  Prior to 2016, that is

10   true.

11   BY MR. BJORK:

12       Q.   Okay.  So I again want to talk about the

13   non-California policies.  And just so we have a

14   clean record, the policies I'm going to ask about

15   now are policies United issued or delivered outside

16   California where the policyholder thereafter moved

17   into California after January 1, 2013, and the

18   policy continued in force.

19           Do you understand what category of

20   policies I'm talking about?

21       A.   Yes.

22       Q.   Okay.  Is it true that United did not

23   provide the third-party notice described in

24   Subpart C of the statute that we're looking at to

25   this category of policies prior to lapsing any such

Transcript of Dennis Kallenbach
Conducted on December 13, 2017                                      55

1    policies for nonpayment of a premium?

2         A.    Yes.

3         Q.    Okay.  And that's true regardless of when

4    any such policies were issued or delivered, correct?

5         A.    Correct.

6         Q.    Okay.  So if a policyholder -- or strike

7    that.

8              So if a policy was initially issued or

9    delivered outside of California after January 1,

10   2013, the policy holder thereafter moved into

11   California, and the policy continued in force,

12   United would not provide the third-party notice

13   prior to lapsing any such policy for nonpayment of

14   premium, correct?

15        A.    That's correct.

16        Q.    Okay.  And, again, that's even true today,

17   right?

18        A.    Yes.

19        Q.    Okay.  Is that true even if United has a

20   record indicating the policyholder has moved into

21   California?

22        A.    Yes.

23        Q.    Is it true even if United had received a

24   payment of a premium from a California address after

25   January 1, 2013?

Transcript of Dennis Kallenbach
Conducted on December 13, 2017                              56

```
1        A.    Yes.
2        Q.    And is it true even if any such policy had
3    an annual recurrence of its effective date after
4    January 1, 2013?
5        A.    That is correct.
6        Q.    Okay.  That's all I have on that exhibit,
7    so you can set that aside.
8              MR. GOLUB:  Do you need to take a
9    break or anything?
10             THE WITNESS:  I'm okay right now.
11             MR. BJORK:  Okay.  So I'm going to
12   go -- just to make you aware, I'm going to go --
13   show you now what is going to be Exhibit 3, which is
14   the other statute.  I have a series of questions
15   similar to ones you've already heard on this
16   statute.  So if you wanted to take a break, that
17   might be a good -- a good spot for it after this.
18             THE WITNESS:  I would like --
19             MR. GOLUB:  Sure.
20             THE WITNESS:  -- to take a break.
21             MR. GOLUB:  Let's take a break.
22             MR. BJORK:  Okay.  Sure.
23                  (8:56 a.m. - Recess.)
24
25
```

Transcript of Dennis Kallenbach
Conducted on December 13, 2017                                57

```
 1              (At 9:06 a.m., with all parties present as
 2    before, the following proceedings were had, to-wit:)
 3                      (Exhibit No. 3
 4                      marked for identification.)
 5    BY MR. BJORK:
 6         Q.    So we're back on the record,
 7    Mr. Kallenbach.  You recognize that you're still
 8    under oath, correct?
 9         A.    Correct.
10         Q.    Okay.  Let's see, I haven't given you
11    this.  I'm going to show you what I've marked as
12    Exhibit 3.
13              I will represent to you that this is the
14    other statute that plaintiff alleges defendant did
15    not comply with, specifically California Insurance
16    Code 10113.71.
17              Please direct your attention to Subpart B
18    of the exhibit and statute that I just handed you.
19              Am I correct that Subpart B(1) reads,
20    "A notice of pending lapse and termination of a life
21    insurance policy shall not be effective unless
22    mailed by the insurer to the named policy owner, a
23    designee named pursuant to Section 10113.72 for an
24    individual life insurance policy, and a known
25    assignee or other person having an interest in the
```

Transcript of Dennis Kallenbach
Conducted on December 13, 2017                               58

1    individual life insurance policy, at least 30 days

2    prior to the effective date of termination, if

3    termination is for nonpayment of premium."

4           Did I read that correctly?

5       A.   Yes.

6       Q.   Okay.  Is it true that United never

7    provided the notice to a designee identified in this

8    Subpart B(1) of the statute you're looking at prior

9    to lapsing Mr. Bentley's policy?

10      A.   Yes.

11      Q.   Okay.  And now, again, I'm going to ask

12   you about the categories of policies we've been

13   discussing with regard to the other statutes, the

14   first being policies United issued or delivered in

15   California prior to January 1, 2013, and continued

16   in force after January 1, 2013.  Okay?

17      A.   Okay.

18      Q.   Are you -- do you understand what category

19   I'm talking about?

20      A.   Repeat the category again.

21      Q.   Sure.  It's --

22      A.   Sorry, I was reading.

23      Q.   It's life insurance policies that United

24   issued or delivered in California, prior to

25   January 1, 2013, that continued in force after

Transcript of Dennis Kallenbach
Conducted on December 13, 2017                    59

1    January 1, 2013.

2        A.    Okay.

3        Q.    Do you understand what ones I'm talking

4    about?

5        A.    Yes.

6        Q.    Okay.  Is it true that prior to

7    October 2016, United did not provide the notices to

8    designees identified in this Subsection B(1) with

9    regard to any life insurance policy issued or

10   delivered in California prior to January 1, 2013,

11   that continued in force after January 1, 2013?

12       A.    Correct.

13       Q.    Okay.  I now want to ask you about

14   policies United issued or delivered outside of

15   California where the policies subsequently moved

16   into California after January 1, 2013, and where the

17   policy continued in force after the move.

18            Do you understand what policies I'm

19   talking about?

20       A.    Yes.

21       Q.    Okay.  Is it true that United did not

22   provide the notice to designees described in

23   Subsection B(1) of the statute we're looking at to

24   any policyholder in this category of policies prior

25   to lapsing their policies for nonpayment of a

Transcript of Dennis Kallenbach
Conducted on December 13, 2017                          60

```
1    premium?
2         A.   Yes.  Yes.
3         Q.   Okay.  You can set that aside.
4              So I am going to now show you what we'll
5    mark as Exhibit 4.
6                        (Exhibit No. 4
7                        marked for identification.)
8    BY MR. BJORK:
9         Q.   And this Exhibit 4 is Bates labeled
10   UNITED-000660 through UNITED-000663.
11             Please let me know when you're ready.
12        A.   Okay.  Ready.
13        Q.   Okay.  Have you seen these forms before?
14        A.   Yes.
15        Q.   All right.  What are they?
16        A.   They are our annual notification that's
17   sent to policyholders in the state of California
18   where we give them the opportunity to designate a
19   third party or a secondary addressee to a policy
20   where we can look at them as a third party.
21        Q.   Okay.  And am I correct that these notices
22   are opportunities to designate third parties for,
23   among other things, the purpose of receiving notice
24   of a pending lapse of a policy for a missed premium
25   payment?
```

Transcript of Dennis Kallenbach
Conducted on December 13, 2017                                     61

1        A.    Yes.

2        Q.    Okay.   Please take a look at the first

3    page, which is UNITED-000660.

4            Am I right that the first paragraph reads,

5    "This letter is your annual notice of the

6    opportunity to name a secondary addressee who, in

7    addition to yourself, may receive notification of

8    possible lapse in coverage.

9            "Notification of possible lapse in

10   coverage will be sent to the owner and the persons

11   they designate to be their secondary addressee"?

12           Did I read that correctly?

13       A.    Yes.

14       Q.    Okay.   And then if you turn to

15   UNITED-000662, which is the last page of the

16   exhibit.

17       A.    Yes.

18       Q.    Okay.   Am I correct that the title of this

19   page is "third-party notice"?

20       A.    Yes.

21       Q.    And am I correct that it reads, "You have

22   the right to designate a person, in addition to

23   yourself, to receive notice that your premium is

24   past due and has not been paid.

25           "This extra notice will be sent at least

Transcript of Dennis Kallenbach
Conducted on December 13, 2017                    62

```
 1   21 days prior to the effective date of cancellation

 2   of your policy or certificate.  It will state the

 3   amount of the premium, the date by when the premium

 4   must be paid, and the date on which the coverage

 5   terminates.

 6           "You have the right to change this

 7   third-party designation at any time; however, you

 8   must submit the change in writing to the address

 9   below"?

10           Did I read that correctly?

11       A.   Yes.

12       Q.   Okay.  Are these notices representative of

13   the types of notices United sent to policy owners in

14   an effort to comply with the statutes?

15       A.   Yes.

16       Q.   Okay.  Has United issued these types of

17   notices to policy owners of policies issued or

18   delivered in California prior to January 1, 2013?

19               MR. GOLUB:  Oh, I'm sorry.  Could you

20   repeat the question, again?

21               MR. BJORK:  Would you mind reading it

22   back?  Sorry.

23                   (The requested portion of the
                     transcript was read back by the
24                   court reporter.)

25               THE WITNESS:  No.
```

Transcript of Dennis Kallenbach
Conducted on December 13, 2017                              63

```
1    BY MR. BJORK:
2         Q.   Has United issued any notices in an effort
3    to comply with the statutes to policy owners of
4    policies that were issued or delivered in California
5    prior to January 1 of 2013?
6              Oh, let me strike that.  Let me strike
7    that.  I think there's a little confusion here.
8              Am I correct that in October of 2016,
9    United began issuing notices like the ones that
10   you're looking at to some policy owners of policies
11   that were in existence prior to January 1, 2013?
12        A.   Yes.
13        Q.   Okay.  And, specifically, what types of
14   pre-2013 policies received such notices?
15        A.   They have to have been issued in the state
16   of California and their effective date is prior to
17   2013 -- 1/1/2013.
18        Q.   Okay.  What policy -- strike that.
19             So in October 2016, United first began
20   issuing these types of notices to policies that were
21   in existence prior to 2013, correct?
22        A.   Yes.
23        Q.   Did United send the notices to policies
24   that were already lapsed at that time?
25        A.   No.
```

Transcript of Dennis Kallenbach
Conducted on December 13, 2017                    64

1       Q.    Okay.   So am I correct that United only

2   sent notices like the ones we're looking at in

3   Exhibit 4 to in force policies that had been issued

4   prior to 2013?

5       A.    Yes.

6       Q.    Okay.   Now, with regard to that category

7   of policies, when specifically in October did United

8   start issuing these types of notices?

9       A.    I believe it was October the 21st, is when

10  the first letters went out.

11      Q.    Okay.   And did they all go out on the same

12  day, same week, or...

13      A.    Yes.

14      Q.    Did they all go out on the same day?

15      A.    Yes.

16      Q.    Okay.   On October 21, 2016?

17      A.    Well, actually, it was October 20.

18      Q.    Okay.

19      A.    The date that's on the --

20      Q.    Okay.

21      A.    Yes.

22      Q.    Okay.   So directing your attention back to

23  Page 1 of this exhibit, the date at the top of the

24  document, which reads October 20, 2016, is the date

25  of mailing; is that correct?

Transcript of Dennis Kallenbach
Conducted on December 13, 2017                                          102

1          Q.    Okay.   Approximately how many policies met

2     that criteria?

3          A.    I think it was 250, roughly.

4          Q.    Okay.   And then from there, did you narrow

5     the list of policies further to instances in which

6     the insured on those roughly 250 policies had died?

7          A.    Yes.

8          Q.    Okay.   How do you -- can you walk me

9     through the process of that last step, how you

10    determine whether the insured on these policies is

11    alive or dead?

12         A.    The policies that were determined that --

13    we have an in-house database that is populated from

14    a death master process that we have, which uses an

15    external vendor.

16              We send these policies to them, they run

17    them through their process and return a result to

18    us, and those results are loaded onto a database

19    that we have in-house.

20              And the policies that met the criteria, we

21    ran them against that master file to see if there

22    was a date of death --

23         Q.    I see.

24         A.    -- and what the actual date of death was.

25         Q.    Okay.   So is it true that United does not

Transcript of Dennis Kallenbach
Conducted on December 13, 2017                                     103

1    have direct access to -- I guess, it would be the

2    federal government's death master file?

3         A.    I can't answer that.  I know that we send

4    the policies on an -- every month, we send policies

5    to them to help us understand and determine whether

6    a death has occurred on a policy.

7         Q.    Okay.  So it's -- you aren't sure whether

8    United has direct access, but you -- typically, the

9    normal course is to access the federal government's

10   death master file through an outside vendor; is that

11   correct?

12        A.    In the process that we use, yes, now.

13        Q.    Okay.

14        A.    I don't know for sure if the analysts that

15   are in that area actually use the government

16   database or not.

17        Q.    Okay.  In the creation of the list that's

18   reflected in Exhibit 6, did United provide the names

19   of its insureds to this vendor that accesses the

20   death master file for the specific purpose of

21   creating this list?

22        A.    No.

23        Q.    Okay.  So it wasn't -- it wasn't specific

24   to this exercise?  It's regularly done with regard

25   to all of United's insureds; is that correct?

Transcript of Dennis Kallenbach
Conducted on December 13, 2017                                    104

1      A.   Against that master file, yes.

2      Q.   Okay.  And what master file are you

3  talking about?  The external death master file or

4  the one that's internal to United?

5      A.   The external.

6      Q.   Okay.  How often does United ask the

7  vendor to check the federal death master file for

8  the names of United's insureds that have died?

9      A.   On a monthly basis, we send a rolling

10 18-month window of policies to them to have them

11 verify and provide a date of death for us.

12     Q.   Okay.

13          MR. BJORK:  Would you mind reading

14 back the answer to me, please.

15               (The requested portion of the
                 transcript was read back by the
16               court reporter.)

17          MR. BJORK:  Okay.

18 BY MR. BJORK:

19     Q.   When United provides that rolling 18-month

20 list of policies, do those policies include policies

21 where the insured has already -- strike that.

22          When United provides those lists of

23 policies to the external vendor, do those lists

24 include policies that have already lapsed?

25     A.   Yes.  If we -- if we do not have a date of

# Plaintiff's Exhibit B

UNITED OF OMAHA LIFE INSURANCE COMPANY
Omaha, NE  68175
402 342 7600
mutualofomaha.com

Mutual of Omaha

October 4, 2013

# REDACTED

Coverage ID:   8448979

Dear REDACTED:

As a valued policyowner, it is important that we keep you advised of the status of your policy.

Premiums and interest for this policy are currently due July 28, 2013.  A payment of $66.52 is needed so that you do not lose this valuable protection.  This will pay all costs to December 28, 2013.

As you know, this policy has a maximum loan at this time, so there are no remaining values.  If the payment is not received, the policy will terminate with no further value.

Please keep in mind that once this policy terminates, it is no longer providing the valuable insurance coverage intended.  You have had the policy for a considerable number of years and if you were to replace it at a later date, it could be more expensive for you since premiums are based on age.

We hope that you will allow United of Omaha Life Insurance Company to be a part of your insurance needs.  If you should have any questions, please write or call us at (800)228-9999.

Sincerely,

*Anthony Adams*

Anthony Adams
Associate Policyowner Services Analyst
Policyowner Services

Enc.   Return Envelope

UNITED *of* OMAHA LIFE INSURANCE COMPANY
Omaha, NE 68175
402 342 7600
mutualofomaha.com

March 22, 2015

# REDACTED

Coverage ID:   7997098

Dear REDACTED  :

Your premium was due on January 7, 2015 and we realize this coverage is important to you.  For a limited time, we are willing to accept a premium without evidence of insurability.  To take advantage of this offer, we will need a written request to reinstate your policy along with a payment of $470.98 must be received at our Home Office on or before April 6, 2015 and during the lifetime of all persons insured under the coverage.

This payment of $470.98 will be used to pay your coverage from January 7, 2015 to July 7, 2015.  If you do not take advantage of this offer, evidence of insurability may be required to later reinstate this coverage.  This does not waive the policy provisions, extend the Grace Period or establish a precedent.

If you have any questions, you may email us via our website at www.mutualofomaha.com or call our Customer Service Center at (800)228-9999.

Thank you for trusting United of Omaha Life Insurance Company to help meet your insurance needs.

Sincerely,

*Cynthia R Herman*

Cynthia R Herman
Sr. Policy Service Analyst
Individual Policy Services

Enc.   Return Envelope

Mutual of Omaha Plaza
Omaha, NE 68175
402 342 7600
mutualofomaha.com

**Mutual**of**Omaha**

OCTOBER 01, 2013

# REDACTED

Coverage ID:   UA7820542
Application On:  REDACTED

Keeping you informed about your policy's status is important to us. Due to the fact that your policy's current cash surrender value is no longer sufficient to cover the current monthly deductions, your policy is in danger of lapsing. However, your policy does have a no lapse guarantee which protects the policy from lapsing when the cash surrender value reaches zero. Unfortunately, the premiums that have been paid are no longer adequate to keep this no lapse guarantee in effect.

In order to continue your coverage, a payment of $151.30 is needed by November 02, 2013. If payment is not received, your policy will terminate on this date, the end of the 61-day grace period, with no further value.

The payment requested is only enough to bring your surrender value above zero.

In order to understand how future premiums and charges will affect your policy's status and in order to avoid future lapse notices, we urge you to contact your agent for a new in force illustration.

As a valued customer, you are important to us. If you would like more information, please contact our local office at:

    Representative: MARK V MINISTER
    PO BOX 80289
    INDIANAPOLIS IN 46280-0289

    Phone Number: 317-574-0097

If you have any additional questions, please feel free to contact our Customer Service Center at 1-800-775-6000.

Sincerely,

Individual Policy Services

B2UL845

0133300000

UNITED-000729



United *of* Omaha Life Insurance Company
3300 Mutual of Omaha Plaza
Omaha, NE 68175
mutualofomaha.com

November 16, 2015

# REDACTED

Coverage ID:   5554559

Dear REDACTED:

Keeping you informed on the status of your policy is an important part of our business.  Please allow us this opportunity to advise you of the following information.

The annual policy loan interest and premium is currently past due on your policy.

To keep your coverage in force, we will need the annual interest of $415.75 along with your monthly bank service plan $42.00 premium.  If this payment is not received, your coverage will terminate effective December 10, 2015.

Please return this letter with your interest and premium payment by December 3, 2015.

If your premiums are being paid by Government Allotment or the Monthly Bank Service Plan, the payment has been stopped.  The allotment will not be applied to the coverage or the premium will not be withdrawn from your bank.

If you have any questions regarding your policy, please feel free to contact us at (800)228-9999.

Sincerely,

*Sheila Frederickson*

Sheila Frederickson
Policy Service Analyst
Policyowner Services

Enc.   Return Envelope

# Plaintiff's Exhibit C

# Work Management Policy Detail

## Policy #: UR2681720

| | | |
|---|---|---|
| **Control Number:** 58903302 | **Business Event Code:** 016 | **Business Event Desc:** INQ-POLICY STATUS |
| **Received Date:** 3/18/2015 | **Close Date:** 3/18/2015 | |
| **Note Date** 3/18/2015 | **Business Event Note:** PcS Son Called, Po Is Deceased, Verified 2 Info, Inquired Policy Status; Advised. Requestor Relationship; Relative Requestor Name: | |
| **Note Name** SAMUEL MEYO | REDACTED , | |

| | | |
|---|---|---|
| **Control Number:** 184371959 | **Business Event Code:** 511 | **Business Event Desc:** CLAIM PHONE INQUIRY |
| **Received Date:** 3/11/2015 | **Close Date:** 3/11/2015 | |
| **Note Date** 3/11/2015 | **Business Event Note:** | |
| **Note Name** CHARLES DICKERSON Fh Called REDACTED CalledREDACTED To Check Statu S Of Policy, Policy Lpsed In 2013, I Informd Fh Policy L Apsed. | | |

| | | |
|---|---|---|
| **Control Number:** 797169537 | **Business Event Code:** 026 | **Business Event Desc:** POLICY TERMINATION |
| **Received Date:** 10/15/2013 | **Close Date:** 10/16/2013 | |
| **Note Date** 10/16/2013 | **Business Event Note:** | |
| **Note Name** SYSTEM GENERATED Policy Terminated On 10/15/2013, Reinstatement Requested $204.00 | | |

| | | |
|---|---|---|
| **Control Number:** 724761635 | **Business Event Code:** 49L | **Business Event Desc:** PMNT MOOB LCKBX |
| **Received Date:** 8/7/2013 | **Close Date:** 8/8/2013 | |
| **Note Date** 8/8/2013 | **Business Event Note:** | |
| **Note Name** SYSTEM GENERATED $ 53.00 Moo Bank Lckbx Payment Received, Processed And Deposited. | | |

| | | |
|---|---|---|
| **Control Number:** 937069900 | **Business Event Code:** 043 | **Business Event Desc:** MODE CHANGE |
| **Received Date:** 8/7/2013 | **Close Date:** 8/15/2013 | |
| **Note Date** 8/15/2013 | **Business Event Note:** | |
| **Note Name** SHEILA FREDERICKSORd 7/8/13 To 8/8/13, Chg Mde From Qtr To M | | |

| | | |
|---|---|---|
| **Control Number:** 622667989 | **Business Event Code:** OFR | **Business Event Desc:** OFFER RIDER ADDON |
| **Received Date:** 6/6/2013 | **Close Date:** 6/7/2013 | |
| **Note Date** 6/7/2013 | **Business Event Note:** | |
| **Note Name** SYSTEM GENERATED Offer For Ezad1 Rider/Upgrade Made On 06/06/2013 | | |

| | | |
|---|---|---|
| **Control Number:** 504450207 | **Business Event Code:** PFE | **Business Event Desc:** CREDIT CARD PAYMENT ENTRY |
| **Received Date:** 4/9/2013 | **Close Date:** 4/10/2013 | |

Work Management Policy Details

8/23/2017   2:45:54PM

UNTED-001096

**Control Number:** 504450207
**Received Dates:** 4/9/2013
**Close Date:** 4/10/2013

**Business Event Code:** PFE
**Business Event Desc:** CREDIT CARD PAYMENT ENTRY

Note Date: 4/10/2013
Note Name: SYSTEM GENERATED $ 153.00 From Credit Card Xxxx-Xxxx-Xxxx-3209 To Pay Quarterly Premium Due 04/07/2013

**Business Event Note:**

---

**Control Number:** 455466099
**Received Dates:** 4/8/2013
**Close Date:** 4/8/2013

**Business Event Code:** CPW
**Business Event Desc:** CREDIT CARD PAYMENT WEBSITE

Note Date: 4/8/2013
Note Name: KATHRYNE MURPHY

**Business Event Note:**
Request By Internal Associate; Kathryne Murphy Client Number: 027389307 Policy Number: Ur2681720 Online Payment - One Time Cc Payment Processed Thru ,Customer Access Web/Portal Cc Confirmation Number: Cfh-204l08340 Ca Confirmation Number: Cfh-65J85L-239f5H7 Amount Paid: $153.00 ,Credit Card Type: Visa Payment From – *********-3209 To Pay Quarterly Premium Due 04/07/2013 Via 10.9.160,136 On Mon Apr 08 10:17:01 Cdt 2013

---

**Control Number:** 718448857
**Received Dates:** 1/8/2013
**Close Date:** 1/9/2013

**Business Event Code:** PFE
**Business Event Desc:** CREDIT CARD PAYMENT ENTRY

Note Date: 1/9/2013
Note Name: SYSTEM GENERATED $ 153.00 From Credit Card Xxxx-Xxxx-Xxxx-3209 To Pay Quarterly Premium Due 01/07/2013

**Business Event Note:**

---

**Control Number:** 352571816
**Received Dates:** 1/7/2013
**Close Date:** 1/7/2013

**Business Event Code:** CPW
**Business Event Desc:** CREDIT CARD PAYMENT WEBSITE

Note Date: 1/7/2013
Note Name: KRISTA REID

**Business Event Note:**
Request By Internal Associate; Krista Reid Client Number: 027389307 Policy Number: Ur2681720 Online Payment - One Time Cc Payment Processed Thru ,Customer Access Web/Portal Cc Confirmation Number: Cfh-178170063 Ca Confirmation Number: Cfh-645622-X36R83 Amount Paid: $153.00 ,Credit Card Type: Visa Payment From – *********-3209 To Pay Quarterly Premium Due 01/07/2013 Via 10.9.160,234 On Mon Jan 07 13:43:27 Cst 2013

---

**Control Number:** 178583317
**Received Dates:** 12/10/2012
**Close Date:** 12/11/2012

**Business Event Code:** INW
**Business Event Desc:** INITIAL PAYMENT WEBSITE

Note Date: 12/11/2012
Note Name: SYSTEM GENERATED $ 51.00 A Cc Payment Of $ 51.00 Was Processed To Pay The Initial Premium From Cc Acct Xxxx-Xxxx-Xxxx-3209

**Business Event Note:**

# Plaintiff's Exhibit D



**UNITED OF OMAHA
LIFE INSURANCE COMPANY**
Mutual of Omaha Plaza
Omaha, NE 68175-0001

September 2, 2016

BTA1-P16090300031100001  343928-35149

**INSURANCE NOTICE ENCLOSED**

## REDACTED

---

| KEEP FOR YOUR RECORDS | |
|---|---|
| Policy Service:   1-800-775-7894 | |
| POLICY NUMBER: **BU1067439** | |
| INSURED: | REDACTED |
| | |
| PRIORITY UL90+ | $2,648.69 |
| PAYMENT DUE DATE: | October 04, 2016 |
| PAYMENT MODE: | Quarterly |
| PAYS FOR: | 3 month(s) |
| | |
| **TOTAL DUE:** | **$2,648.69** |

HO Information:   37  VU11

**You may make your payments, review your policy benefits and read about Mutual of Omaha's other products and services quickly and easily by registering for Customer Access at www.mutualofomaha.com. Just click on the Sign In link under "Access Your Account" on the left side of your screen.**

Your flexible premium policy provides you with death benefits to protect your valuable income, plus control and flexibility in your financial planning. As your needs change, Universal Life can change with you. You can:
- - Adjust your premiums without necessarily affecting your coverage, or
- - Adjust your coverage to meet your changing needs (increases are subject to insurability).

Competitive interest rates are paid on your cash accumulations. Our flexible interest rates help your coverage adjust to the economy and protect against the future risk of inflation.

---

**DETACH AND RETURN THIS LOWER PORTION WITH YOUR PAYMENT**

**UNITED OF OMAHA
LIFE INSURANCE COMPANY**
P.O. Box 2476
Omaha, NE 68175-2476

## REDACTED

To insure proper credit, return this portion and all billing notices associated with your payment. Your cancelled check is your receipt. DO NOT MAIL CASH. Make check or money order payable to United of Omaha.

| Billing Statement      Universal Life | | DUE: October 04, 2016 |
|---|---|---|
| POLICY NUMBER: **BU1067439** | | |
| PRIORITY UL90+ | 3 MONTH(S) DUE: | $2,648.69 |
| | | |
| | **TOTAL DUE:** | **$2,648.69** |

☐ Has your address changed?
Please check this box and
complete the information on
the back of this form.

VU11 9/2/2016

BTA1-P16090300031100001
010200000100000001

PREMIUM SERVICES
MUTUAL OF OMAHA COMPANIES
PO BOX 2749
OMAHA NE 68103-2749

246000038  00  00002648699  00000  02  BU0106743980      00002648699      20161129

UNITED-000944

2460000038 00 0000264869 02 BU01067439 00000 02 00000 BU01067439 0000264869  2016129

If your address, name or phone number has changed, please make the change in the box below and return with your payment.

REDACTED

POLICY NUMBER: BU1067439

| FIRST NAME | | MIDDLE NAME | | LAST NAME | |
| --- | --- | --- | --- | --- | --- |
| STREET ADDRESS | | CITY | | STATE | ZIP CODE |
| PHONE: AREA CODE AND NUMBER | | | | | |

UNITED-000945

**Plaintiff's Exhibit E**

## Plaintiff Judgment Total Calculation as of 8/3/18

| Policy Number | Face Amount | Death Date | Current Date | TERM (Days) | Interest Rate | Interest Earned | Face Amount + Interest |
|---|---|---|---|---|---|---|---|
| 8448979 | $2,000.00 | 9/28/2013 | 8/3/2018 | 1770 | 10% | $969.86 | $2,969.86 |
| 7997098 | $10,000.00 | 8/29/2015 | 8/3/2018 | 1070 | 10% | $2,931.51 | $12,931.51 |
| 5342817 | $24,000.00 | 7/9/2014 | 8/3/2018 | 1486 | 10% | $9,770.96 | $33,770.96 |
| 6422766 | $12,000.00 | 4/29/2015 | 8/3/2018 | 1192 | 10% | $3,918.90 | $15,918.90 |
| 7010893 | $12,000.00 | 9/19/2015 | 8/3/2018 | 1049 | 10% | $3,448.77 | $15,448.77 |
| 9149455 | $12,000.00 | 2/17/2016 | 8/3/2018 | 898 | 10% | $2,952.33 | $14,952.33 |
| 5554559 | $10,000.00 | 3/14/2017 | 8/3/2018 | 507 | 10% | $1,389.04 | $11,389.04 |
| BU1105227 | $150,000.00 | 10/4/2013 | 8/3/2018 | 1764 | 10% | $72,493.15 | $222,493.15 |
| BU1133356 | $200,000.00 | 8/12/2015 | 8/3/2018 | 1087 | 10% | $59,561.64 | $259,561.64 |
| BU1101313 | $100,000.00 | 1/6/2014 | 8/3/2018 | 1670 | 10% | $45,753.42 | $145,753.42 |
| BU1083350 | $1,000,000.00 | 11/7/2014 | 8/3/2018 | 1365 | 10% | $373,972.60 | $1,373,972.60 |
| UA7820542 | $50,000.00 | 2/3/2015 | 8/3/2018 | 1277 | 10% | $17,493.15 | $67,493.15 |
| UR2663468 | $7,000.00 | 3/13/2013 | 8/3/2018 | 1969 | 10% | $3,776.16 | $10,776.16 |
| UR2648669 | $5,000.00 | 6/7/2013 | 8/3/2018 | 1883 | 10% | $2,579.45 | $7,579.45 |
| UR2627721 | $10,000.00 | 6/23/2013 | 8/3/2018 | 1867 | 10% | $5,115.07 | $15,115.07 |
| UR2648784 | $3,000.00 | 10/21/2013 | 8/3/2018 | 1747 | 10% | $1,435.89 | $4,435.89 |
| UR2674494 | $10,000.00 | 1/31/2014 | 8/3/2018 | 1645 | 10% | $4,506.85 | $14,506.85 |
| UR2671752 | $3,000.00 | 2/11/2014 | 8/3/2018 | 1634 | 10% | $1,343.01 | $4,343.01 |
| UR2493480 | $5,000.00 | 2/28/2014 | 8/3/2018 | 1617 | 10% | $2,215.07 | $7,215.07 |
| UR2828580 | $11,000.00 | 11/21/2014 | 8/3/2018 | 1351 | 10% | $4,071.51 | $15,071.51 |
| UR2577555 | $10,000.00 | 6/27/2014 | 8/3/2018 | 1498 | 10% | $4,104.11 | $14,104.11 |
| UR2584816 | $10,000.00 | 8/2/2014 | 8/3/2018 | 1462 | 10% | $4,005.48 | $14,005.48 |
| UR2681720 | $10,000.00 | 1/14/2015 | 8/3/2018 | 1297 | 10% | $3,553.42 | $13,553.42 |
| UR2447251 | $15,000.00 | 8/10/2014 | 8/3/2018 | 1454 | 10% | $5,975.34 | $20,975.34 |
| UR2654966 | $20,000.00 | 12/23/2014 | 8/3/2018 | 1319 | 10% | $7,227.40 | $27,227.40 |
| UR2647072 | $20,000.00 | 1/10/2015 | 8/3/2018 | 1301 | 10% | $7,128.77 | $27,128.77 |
| BU1289270 | $55,000.00 | 12/10/2015 | 8/3/2018 | 967 | 10% | $14,571.23 | $69,571.23 |
| BU1395175 | $175,000.00 | 12/30/2015 | 8/3/2018 | 947 | 10% | $45,404.11 | $220,404.11 |
| BU1399164 | $60,000.00 | 10/31/2015 | 8/3/2018 | 1007 | 10% | $16,553.42 | $76,553.42 |
| BU1152776 | $100,000.00 | 4/2/2017 | 8/3/2018 | 488 | 10% | $13,369.86 | $113,369.86 |
| BU1067439 | $150,000.00 | 7/4/2017 | 8/3/2018 | 395 | 10% | $16,232.88 | $166,232.88 |
| UR1652898 | $50,000.00 | 6/3/2016 | 8/3/2018 | 791 | 10% | $10,835.62 | $60,835.62 |
| 7864066 | $3,000.00 | 10/9/2014 | 8/3/2018 | 1394 | 10% | $1,145.75 | $4,145.75 |
| 7759088 | $5,000.00 | 9/15/2017 | 8/3/2018 | 322 | 10% | $441.10 | $5,441.10 |
| BU1067439 | $150,000.00 | 7/4/2017 | 8/3/2018 | 395 | 10% | $16,232.88 | $166,232.88 |
| BU1164839 | $50,000.00 | 4/22/2017 | 8/3/2018 | 468 | 10% | $6,410.96 | $56,410.96 |
| | | | | | | | |
| **Total Face Amount** | | | | | **Aggregate (Int. + Face Amount)** | | |
| | $2,519,000.00 | | | | | | $3,311,890.68 |

## Plaintiff Judgement Total Daily Increase Calculation from 8/4/18 to 11/1/2018

| Date | Aggregate | Date | Aggregate | Date | Aggregate |
|---|---|---|---|---|---|
| 8/4/2018 | $3,312,580.82 | 9/3/2018 | $3,333,284.93 | 10/3/2018 | $3,353,989.04 |
| 8/5/2018 | $3,313,270.96 | 9/4/2018 | $3,333,975.07 | 10/4/2018 | $3,354,679.18 |
| 8/6/2018 | $3,313,961.10 | 9/5/2018 | $3,334,665.21 | 10/5/2018 | $3,355,369.32 |
| 8/7/2018 | $3,314,651.23 | 9/6/2018 | $3,335,355.34 | 10/6/2018 | $3,356,059.45 |
| 8/8/2018 | $3,315,341.37 | 9/7/2018 | $3,336,045.48 | 10/7/2018 | $3,356,749.59 |
| 8/9/2018 | $3,316,031.51 | 9/8/2018 | $3,336,735.62 | 10/8/2018 | $3,357,439.73 |
| 8/10/2018 | $3,316,721.64 | 9/9/2018 | $3,337,425.75 | 10/9/2018 | $3,358,129.86 |
| 8/11/2018 | $3,317,411.78 | 9/10/2018 | $3,338,115.89 | 10/10/2018 | $3,358,820.00 |
| 8/12/2018 | $3,318,101.92 | 9/11/2018 | $3,338,806.03 | 10/11/2018 | $3,359,510.14 |
| 8/13/2018 | $3,318,792.05 | 9/12/2018 | $3,339,496.16 | 10/12/2018 | $3,360,200.27 |
| 8/14/2018 | $3,319,482.19 | 9/13/2018 | $3,340,186.30 | 10/13/2018 | $3,360,890.41 |
| 8/15/2018 | $3,320,172.33 | 9/14/2018 | $3,340,876.44 | 10/14/2018 | $3,361,580.55 |
| 8/16/2018 | $3,320,862.47 | 9/15/2018 | $3,341,566.58 | 10/15/2018 | $3,362,270.68 |
| 8/17/2018 | $3,321,552.60 | 9/16/2018 | $3,342,256.71 | 10/16/2018 | $3,362,960.82 |
| 8/18/2018 | $3,322,242.74 | 9/17/2018 | $3,342,946.85 | 10/17/2018 | $3,363,650.96 |
| 8/19/2018 | $3,322,932.88 | 9/18/2018 | $3,343,636.99 | 10/18/2018 | $3,364,341.10 |
| 8/20/2018 | $3,323,623.01 | 9/19/2018 | $3,344,327.12 | 10/19/2018 | $3,365,031.23 |
| 8/21/2018 | $3,324,303.29 | 9/20/2018 | $3,345,017.26 | 10/20/2018 | $3,365,721.37 |
| 8/22/2018 | $3,325,003.29 | 9/21/2018 | $3,345,707.40 | 10/21/2018 | $3,366,411.51 |
| 8/23/2018 | $3,325,693.42 | 9/22/2018 | $3,346,397.53 | 10/22/2018 | $3,367,101.64 |
| 8/24/2018 | $3,326,383.56 | 9/23/2018 | $3,347,087.67 | 10/23/2018 | $3,367,791.78 |
| 8/25/2018 | $3,327,073.70 | 9/24/2018 | $3,347,777.81 | 10/24/2018 | $3,368,481.92 |
| 8/26/2018 | $3,327,763.84 | 9/25/2018 | $3,348,467.95 | 10/25/2018 | $3,369,172.05 |
| 8/27/2018 | $3,328,453.97 | 9/26/2018 | $3,349,158.08 | 10/26/2018 | $3,369,862.19 |
| 8/28/2018 | $3,329,144.11 | 9/27/2018 | $3,349,848.22 | 10/27/2018 | $3,370,552.33 |
| 8/29/2018 | $3,329,834.25 | 9/28/2018 | $3,350,538.36 | 10/28/2018 | $3,371,242.47 |
| 8/30/2018 | $3,330,524.38 | 9/29/2018 | $3,351,228.49 | 10/29/2018 | $3,371,932.60 |
| 8/31/2018 | $3,331,214.52 | 9/30/2018 | $3,351,918.63 | 10/30/2018 | $3,372,622.74 |
| 9/1/2018 | $3,331,904.66 | 10/1/2018 | $3,352,608.77 | 10/31/2018 | $3,373,312.88 |
| 9/2/2018 | $3,332,594.79 | 10/2/2018 | $3,353,298.90 | 11/1/2018 | $3,374,003.01 |