UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 15-7870-DMG (AJWx)** | Date | March 13, 2020 |
|---|---|---|---|
| Title | *Jennifer Bentley v. United of Omaha Life Insurance Company* | Page | 1 of 15 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD [183]**

On February 21, 2019, the Court granted summary judgment in favor of Plaintiff Jennifer Bentley on her breach of contract cause of action and denied Defendant United of Omaha Life Insurance Company's ("United") cross-motion for summary judgment ("Feb. 21, 2019 Order"). [Doc. # 174.][1] On May 17, 2019, the Court approved of the parties' stipulated judgment amount of $2,889,722.31 as of May 10, 2019, which increases by $166.88 each day until final judgment is entered by the Court ("May 17, 2019 Order"). [Doc. # 181.] On May 24, 2019, Plaintiff filed a Motion for Attorneys' Fees, Costs, and an Incentive Award. [Doc. # 183.] The motion has since been fully briefed. [Doc. ## 185, 186.] The class has also been notified, in compliance with the Court's order of August 12, 2019 [Doc. # 190] and Federal Rule of Civil Procedure 23(h), and no objections were filed during the Notice Period. Joint Status Rep. at 1 [Doc. # 191].[2] Having duly considered the parties' written submissions, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion.

I.
LEGAL STANDARD

**A.      California Law**

When attorneys' fees are sought for state claims, state law governs the method of calculating those fees. *Mangold v. Cal. Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). When class litigation establishes a common fund for the benefit of the class, the trial court can determine the amount of the fee using a percentage of the common fund. *Laffitte v. Robert Half*

---

[1] This Order incorporates by reference the procedural history provided in the February 21, 2019 Order. *See* Feb. 21, 2019 Order at 2–3 [Doc. # 174].

[2] All page references herein are to the page numbers in the footer of the document in question, rather than the pagination employed by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 15-7870-DMG (AJWx)** | Date | March 13, 2020 |
|---|---|---|---|
| Title | *Jennifer Bentley v. United of Omaha Life Insurance Company* | Page | 2 of 15 |

*Int'l Inc.*, 1 Cal. 5th 480, 503 (2016). California law also requires that the amount of the fee award be reasonable. *Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557–58 (2009). Trial courts have the discretion to assess the reasonableness of the requested percentage fee award by cross-checking the percentage fee amount against the lodestar calculation or by using other means. *Laffitte*, 1 Cal. 5th at 506.

**B.     Rule 23(h)**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In the Ninth Circuit, the amount of attorneys' fees in class actions is calculated using either the percentage-of-recovery or the lodestar method. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (*en banc*) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). If a court elects to utilize the percentage-of-recovery method, then "the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." *Id.* (quoting *Hanlon*, 150 F.3d at 1029).

The court has the discretion to utilize either the percentage-of-recovery or the lodestar method in a class action case where the defendant provides monetary compensation to the plaintiffs. *Id.* (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)). There is "no presumption in favor" of either method. *Id.* (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994)). The lodestar calculation may be a more convenient method if the settlement value is difficult or impossible to calculate. *See id.* (citing *Hanlon*, 150 F.3d at 1029). On the other hand, the percentage-of-recovery method may be used when "the benefit to the class is easily quantified." *Id.* at 571 (quoting *Bluetooth Headset*, 654 F.3d at 942).

**II.
DISCUSSION**

**A.     Attorneys' Fees**

Plaintiff's counsel ("Counsel") petitions for an award of $1,515,189.25 in attorneys' fees and $36,562.42 in expenses and costs, along with a $25,000 incentive award for Plaintiff. Pl.'s Mem. of P. & A. at 2 [Doc. # 183-1]. Counsel requests that $965,778.50 of the attorneys' fees be paid from the common fund (*i.e.*, the final judgment), which would amount to 33.3% of the common fund as of July 12, 2019. *See id.* at 1. Counsel further requests an order requiring United

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 15-7870-DMG (AJWx)** | Date | March 13, 2020 |
|---|---|---|---|
| Title | *Jennifer Bentley v. United of Omaha Life Insurance Company* | Page | 3 of 15 |

to pay the remaining $585,973.17 under the private attorney general theory of California Civil Procedure Code section 1021.5. *See* Pl.'s Mem. of P. & A. at 1 [Doc. # 183-1].

Given the circumstances of this case, the Court finds that the percentage-of-recovery method is appropriate. Courts have found that this method often ensures that the interests of class counsel and the class are properly aligned, given that it allows class counsel directly to benefit from increasing the size of the class fund and from working efficiently. *See, e.g.*, *Laffitte*, 1 Cal. 5th at 489–90, 503 (reasoning that the percent-of-recovery method is advantageous in class actions, in part, because it aligns incentives between counsel and the class). Furthermore, the benefit to the class—net death benefits plus prejudgment interest—is readily ascertainable. *See id.* at 503; *see also Hyundai*, 926 F.3d at 571.

The Court first addresses the reasonableness of Counsel's percentage-of-recovery request, and next discusses the remainder of the attorneys' fee request under California Civil Procedure Code section 1021.5.

**1. Request for Fees from the Common Fund**

**a. Reasonableness**

The benchmark for the percentage-of-recovery method is 25% of the fund, which "can be adjusted upward or downward, depending on the circumstances." *See Hyundai*, 926 F.3d at 570 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). Courts can evaluate the following non-exhaustive list of factors to determine reasonableness of the award, including: (1) result obtained for the class; (2) effort expended by counsel; (3) counsel's experience; (4) counsel's skill; (5) the complexity of issues; (6) the risks of nonpayment assumed by counsel; and (7) comparison with counsel's lodestar. *See Nunez v. BAE Sys. San Diego Ship Repair*, 292 F. Supp. 3d 1018, 1055 (S.D. Cal. 2017).

United does not specifically address Counsel's arguments offered to support the attorneys' request for fees amounting to 33.3% of the common fund, nor does United object to Counsel's request that part of the fee award be taken from the common fund. *See* Opp'n at 1 n.2 [Doc. # 185]. Nonetheless, United does claim that "an award of 20%–25% seems more appropriate, particularly considering the dismissal of claims and duplication of effort" on the part of Counsel. *See id.* This Court has an independent obligation to assess the reasonableness of Counsel's fee request. *See Staton v. Boeing Co.*, 327 F.3d 938, 970 (9th Cir. 2003) ("In a common fund case, the judge must look out for the interests of the beneficiaries, to make sure that they obtain sufficient financial benefit after the lawyers are paid.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 15-7870-DMG (AJWx)** | Date | March 13, 2020 |
|---|---|---|---|
| Title | *Jennifer Bentley v. United of Omaha Life Insurance Company* | Page | 4 of 15 |

### i. Complexity of Issues

This area of law was not particularly complex. While the case presented an issue of first impression relating to the interpretation of California Insurance Code section 10113.71 and 10113.72 (the "Statutes"), the Court resolved these questions by applying well-established canons of statutory construction. Thus, this factor weighs against finding that a fee request of 33.3% of the fund is reasonable.

### ii. Risk of Nonpayment

This litigation was risky for several reasons. First, class actions are inherently risky. Most classes are never certified, and many that are receive only partial recovery. Second, the California Department of Insurance ("DOI") and the California insurance industry had taken the position that the Statutes did not apply to policies in force prior to the Statutes' effective date, even if renewed after the effective date. *See* Feb. 21, 2019 Order at 3–5, 16 [Doc. # 174]. Third, given the Statutes' recent enactment, there were no court opinions addressing whether the Statutes applied to policies in force prior to their effective date on January 1, 2013. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (finding that pursuing a case in the absence of supporting precedent contributed to the risk of the litigation). Fourth, United put forth a vigorous defense. For example, United filed several motions to dismiss, a motion to deny class certification and to certify the action for appeal, a motion for summary judgment, and an *ex parte* application to stay the action. *See* Feb. 21, 2019 Order at 2–3 (discussing this case's procedural history) [Doc. ## 174, 194]. Finally, it is undisputed that Counsel took this case on a contingency basis. This factor weighs in favor of finding the award requested to be reasonable.

### iii. Effort Expended, Results Obtained, and Counsels' Experience and Skill

This case has been pending for over four years. During that time, the work Counsel performed included the following: (1) factual investigation; (2) preparation of the complaint and three amended complaints; (3) research, briefing, and preparation for argument related to United's multiple motions to dismiss; (4) research and briefing related to United's motion for certification and request to stay; (5) written discovery and depositions; (6) briefing and preparation for the class certification motion; (7) preparation of multiple status reports and joint stipulations; (8) preparation and delivery of class notices and communication with class members; (9) settlement and meet and confer conferences; and (10) research, briefing, and preparation for argument for the summary judgment motions and related supplemental briefing. *See* Vanek Decl.

Case 2:15-cv-07870-DMG-AJW Document 197 Filed 03/13/20 Page 5 of 15 Page ID #:5329

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 15-7870-DMG (AJWx)** | Date | March 13, 2020 |
|---|---|---|---|

| Title | *Jennifer Bentley v. United of Omaha Life Insurance Company* | Page | 5 of 15 |
|---|---|---|---|

at ¶ 6 [Doc. # 183-2]; Zweig Decl. at ¶ 4 [Doc. # 183-3]; Klevatt Decl. at ¶ 5 [Doc. # 183-4]; Bruchey Decl. at ¶ 3 [Doc. # 183-5].

Further, Plaintiff prevailed at summary judgment, thereby securing net death benefits and prejudgment interest for the class. *See* Feb. 21, 2019 Order at 28 [Doc. # 174]; May 17, 2019 Order at 2 [Doc. # 181]. Although Plaintiff ultimately prevailed on only one claim, that claim entitled the class to substantial monetary relief. The Court also finds that the class's attorneys are skilled and experienced class action litigators who effectively prosecuted this action to its conclusion. *See* Vanek Decl. at ¶ 6 [Doc. # 183-2]; Vanek Decl., Ex. A (attorney biographies) [Doc. # 183-2]; Zweig Decl. at ¶ 4 [Doc. # 183-3]; Zweig Decl., Attach. (attorney biography) [Doc. # 183-3]; Klevatt Decl. at ¶ 5 [Doc. # 183-4]; Klevatt Decl., Attachs. (attorney biographies) [Doc. # 183-4]; Bruchey Decl. at ¶ 3 [Doc. # 183-5]; Bruchey Decl., Attachs. (attorney biographies) [Doc. # 183-5].

The Court also notes that in cases with a common fund of less than $10 million, the fee awards can exceed 30% of the fund. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297 (N.D. Cal. 1995) (collecting cases).

In sum, the Court finds that the factors discussed in Part II.A.1.a weigh in favor of awarding Counsel 33.3% of the common fund.

      **b.**     **Lodestar Cross-check**

The lodestar amount is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hyundai*, 926 F.3d at 570 (citing *Hanlon*, 150 F.3d at 1029). A court can adjust the lodestar amount either upward or downward to account for various factors. *Id.* (citing *Hanlon*, 150 F.3d at 1029). "The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting" as it is simply a means to verify the reasonableness of a percentage-of-recovery request. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005).

Counsel's total lodestar calculation is based upon time expended by 24 different timekeepers from five different firms. *See* Vanek Decl., Ex. B [Doc. # 183-2]; Zweig Decl., Ex. 1 [Doc. # 183-3]; Klevatt Decl. at ¶¶ 8–9 [Doc. # 183-4]; Bruchey Decl. at ¶¶ 7–8 [Doc. # 183-5]. The table below summarizes this information.[3]

---

[3] Bolded names in the chart correspond to partners. Names with an asterisk are non-attorney timekeepers. Klevatt & Associates does not disclose whether attorney Howe is a partner or an associate. *See* Klevatt Decl. at ¶ 8 [Doc. # 183-4].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 15-7870-DMG (AJWx)** | Date | March 13, 2020 |

| Title | *Jennifer Bentley v. United of Omaha Life Insurance Company* | Page | 6 of 15 |

| **Firm** | **Attorney** | **Hours** | **Rate / Hour** | **Lodestar** |
|---|---|---|---|---|
| Vanek Vickers & Massini, P.C. (many of these timekeepers joined Sperling in 2019) | **Vanek** | 145.7 | $700.00 | $101,990.00 |
| | **Bjork** | 1279 | $425.00 | $543,575.00 |
| | **Moran** | 59.4 | $645.00 | $38,313.00 |
| | Amaro | 10.75 | $475.00 | $5,106.25 |
| | Fan* | 19.6 | $200.00 | $3,920.00 |
| Sperling & Slater, P.C. | **Vanek** | 18.8 | $895.00 | $16,826.00 |
| | **Bjork** | 45.5 | $605.00 | $27,527.50 |
| | Fan* | 3.25 | $295.00 | $958.75 |
| | **Sperling** | 1 | $1,205.00 | $1,205.00 |
| | **Paul Slater** | 13.5 | $895.00 | $12,082.50 |
| | **Macknin 2016** | 5 | $675.00 | $3,375.00 |
| | **Macknin 2016/17** | 47 | $695.00 | $32,665.00 |
| | **Macknin 2017/18** | 57.75 | $715.00 | $41,291.25 |
| | **Macknin 2018/19** | 10 | $755.00 | $7,550.00 |
| | **Matthew Slater 2016** | 76.9 | $415.00 | $31,913.50 |
| | **Matthew Slater 2016/17** | 168.95 | $435.00 | $73,493.25 |
| | **Matthew Slater 2018** | 6.25 | $445.00 | $2,781.25 |
| | Fridgeirsson* | 0.5 | $295.00 | $147.50 |
| Hagens Berman Sobol Shapiro LLP | **Zweig 2016/17** | 92.2 | $683.00 | $62,972.60 |
| | **Zweig 2018** | 133.2 | $700.00 | $93,240.00 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 15-7870-DMG (AJWx) | | | Date | March 13, 2020 |
|---|---|---|---|---|---|

| Title | *Jennifer Bentley v. United of Omaha Life Insurance Company* | | | Page | 7 of 15 |
|---|---|---|---|---|---|

| | | **Zweig 2019** | 7.8 | $725.00 | $5,655.00 |
|---|---|---|---|---|---|
| | | **Gordon** | 47.1 | $683.00 | $32,169.30 |
| | | Pitoun 2017 | 5.2 | $473.00 | $2,459.60 |
| | | Pitoun 2018 | 41 | $500.00 | $20,500.00 |
| | | Tasic | 1.2 | $400.00 | $480.00 |
| | | Waggoner* | 1.5 | $175.00 | $262.50 |
| | | Isaacs* | 1.3 | $200.00 | $260.00 |
| | | Downey* | 0.8 | $250.00 | $200.00 |
| | | Schaaf 2016/17* | 8.5 | $158.00 | $1,343.00 |
| | | Schaaf 2018* | 10 | $175.00 | $1,750.00 |
| | | Jones* | 6.9 | $250.00 | $1,725.00 |
| | | Conte 2016/17* | 103.3 | $236.00 | $24,378.80 |
| | | Conte 2018* | 34.5 | $250.00 | $8,625.00 |
| | | Conte* | 2.8 | $300.00 | $840.00 |
| Klevatt & Associates | | **Klevatt** | 363.5 | | $215,391.20 |
| | | Howe | | | $841.50 |
| Shernoff, Binard, Escheverria LLP | | **Shernoff** | 190 | $950.00 | $97,375.00 |
| | | Bruchey | | $475.00 | |

As this chart indicates, 24 timekeepers billed 3019.65 hours. When these hours are multiplied by each attorney's respective hourly rate(s), Counsel's lodestar calculation becomes $1,515,189.25. *See* Pl.'s Mem. of P. & A. at 2 [Doc. # 183-1].

United challenges the reasonableness of Counsel's lodestar calculations. First, United points out that Counsel did not provide billing records or other documentation showing how the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 15-7870-DMG (AJWx)** | Date | March 13, 2020 |
|---|---|---|---|

| Title | *Jennifer Bentley v. United of Omaha Life Insurance Company* | Page | 8 of 15 |
|---|---|---|---|

attorneys spent their time. Opp'n at 13–14 [Doc. # 185]. Second, United asserts that Counsel's declarations indicate that attorneys from five different law firms engaged in duplicative tasks. *Id.* at 14–16. When there is a proliferation of attorneys working on a case, as there was here, the potential for duplicative work and overbilling is a legitimate concern. The Court takes United's concerns into account in conducting its analysis of Counsel's lodestar.[4]

### i. Reasonableness of Counsel's Hourly Rates

In California, "[t]he reasonable hourly rate is that prevailing in the community for similar work." *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001) ("[T]he reasonable value of attorney services is variously defined as the 'hourly amount to which attorneys of like skill in the area would typically be entitled.'" (quoting *Serrano v. Unruh*, 32 Cal. 3d 621, 640 n.31 (1982)). Courts take into consideration the experience, skill, and reputation of the attorneys, as well as an affidavit from the plaintiff's attorney regarding the prevailing rate in the community. *See Heritage Pac. Fin., LLC v. Monroy*, 215 Cal. App. 4th 972, 1009 (2013).

Counsel cites three cases to support the attorneys' claim that the rates charged in the chart above are reasonable and comparable to rates that have been approved in this district. *See* Pl.'s Mem. of P. & A. at 11 n.21 [Doc. # 183-1]. These courts approved partner rates that ranged from $420–$975, a range similar to that of the partner hourly rate in the instant case (*i.e.*, $415 to $950),[5] and at least one of them approved of associate and paralegal rates akin to those requested by Counsel. *See Good Morning to You Prods. Corp. v. Warner/Chappell Music, Inc.*, No. CV 13-4460-GHK (MRWx), 2016 WL 6156076, at *2, *6–*8 (C.D. Cal. Aug. 16, 2016) (approving partner rates that ranged from $420–$935 in a copyright class action); *Roberti v. OSI Sys., Inc.*, No. CV 13-09174-MWF (MRWx), 2015 WL 8329916, at *1, *7 (C.D. Cal. Dec. 8, 2015) (approving partner rates that ranged from $525–$975 in a securities class action litigation); *In re Am. Apparel, Inc. v. Shareholder Litig.*, No. CV 10-06352 MMM (JCGx), 2014 WL 10212865, *1, *24–*25 (C.D. Cal. July 28, 2014) (approving partner rates from $600–$735, associate rates from $395–$475, and paralegal staff from $200–$250 in a shareholder class action). As all but

---

[4] Counsel correctly notes that a court *may* rely upon declarations and summaries from attorneys when conducting a lodestar cross-check. *See* Reply at 6 n.9 [Doc. # 186]; *Rite Aid*, 396 F.3d at 306–07 ("The district courts may rely on summaries submitted by the attorneys and need not review actual billing records."). Nonetheless, because Counsel's declarations arguably suggest that several of the attorneys billed for many of the same tasks, they should have offered evidence showing that was not the case.

[5] Although Sperling's hourly rate is $1,205, he billed for only one hour of work on this case. *See* Vanek Decl., Ex. B [Doc. # 183-2]. Thus, excluding fees associated with his work on this case would have minimal effect on the Court's lodestar calculation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 15-7870-DMG (AJWx)** | Date | March 13, 2020 |
|---|---|---|---|
| Title | *Jennifer Bentley v. United of Omaha Life Insurance Company* | Page | 9 of 15 |

one of the rates discussed in the chart above are comparable to those approved in other cases in this district and United does not challenge the rates, the Court approves the hourly rates proposed by Counsel.

### ii. Reasonableness of Hours Expended

"In determining the appropriate lodestar amount, the district court may exclude from the fee request any hours that are 'excessive, redundant, or otherwise unnecessary.'" *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Cases may be overstaffed, and the skill and experience of lawyers vary widely." *Hensley*, 461 U.S. at 434. If a court determines that some hours billed are not reasonable, it may exclude them using one of two methods. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013). The court may either conduct an "hour-by-hour analysis" of the fee request or make an "across-the board percentage cut[]." *See id.*

Counsel failed to provide the Court with detailed, itemized time records documenting the attorneys' activities, and instead submitted declarations describing the general nature of the work performed by Counsel. The Court finds that Counsel's descriptions of the tasks completed by the class's attorneys are extremely vague and opaque, and strongly suggest that the attorneys engaged in duplicative tasks. With regard to the former, Counsel's declarations discuss each firm's tasks in only the most general of terms. *See, e.g.*, Vanek Decl. at ¶ 6.a (attesting that Vanek's firm conducted "[l]egal analysis of the claims") [Doc. # 183-2]. With regard to the latter issue, the declarations concerning work done by Sperling & Slater; Vanek Vickers & Masini, P.C.; Hagens Berman; and Klevatt & Associates all state that these firms worked on: (1) legal analysis of claims; (2) the amended complaints; (3) discovery and discovery motions; (4) oppositions to motions to dismiss and preemptive motion to deny class certification; (5) motion for class certification and related briefing; (6) motion for summary judgment, an opposition to United's motion for summary judgment, and related briefing; and (7) management of day-to-day litigation. *See* Vanek Decl. at ¶ 6 [Doc. # 183-2]; Zweig Decl. at ¶ 4 [Doc. # 183-3]; Klevatt Decl. at ¶ 6 [Doc. # 183-4]. Although these four firms appear to have handled certain unique tasks, *see, e.g.*, Klevatt Decl. at ¶ 6.g ("During the course of the litigation, my firm performed the following tasks: . . . [d]efense of the Bentley deposition[.]") [Doc. # 183-4], the above-mentioned tasks seem to be the predominant work undertaken by the four firms. Further, although Shernoff Bidart undertook several of the tasks discussed earlier in this paragraph, Shernoff Bidart appears to have engaged in less duplicative work than did the other four firms. *See, e.g.*, Bruchey Decl. at ¶¶ 6.a–b (attesting that this firm drafted the initial Complaint after researching the legislative history and interpretation of the Statutes) [Doc. # 183-5].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 15-7870-DMG (AJWx)** | Date | March 13, 2020 |
|---|---|---|---|
| Title | *Jennifer Bentley v. United of Omaha Life Insurance Company* | Page | 10 of 15 |

For these reasons, the Court cannot ascertain with precision whether the amount of time Counsel spent on litigating the instant case was reasonable. On account of Counsel's duplicative and extraordinarily vague task descriptions, the Court reduces the Sperling & Slater's; Vanek Vickers & Masini, P.C.'s; Hagens Berman's; and Klevatt & Associates' respective lodestars by 30%. *Cf. Welch*, 480 F.3d at 948 (noting that, in deciding to reduce counsel's fee request by 20%, the district court had reasoned that "block billing may increase time by 10% to 30%[,]" and stating that the panel did "not quarrel with the district court's authority to reduce hours that are billed in block format"). The Court reduces Shernoff Binart's lodestar by 20% because although that firm's task descriptions are also somewhat vague and indicate that the firm undertook several of the tasks discussed in the prior paragraph, Shernoff Bidart appears to have engaged in less duplicative work than did the other four firms. These reductions lower Counsels' total lodestar to $1,070,376.98. Counsel seeks an award of attorneys' fees amounting to $965,778.50 of the common fund, which yields a negative multiplier of approximately 0.90. Therefore, the Court finds Counsels' fee request for 33.3% of the common fund to be reasonable, notwithstanding the Court's reductions to the lodestar.[6]

### 2. Request for Fees Under Cal. Civ. Proc. Code § 1021.5

A prevailing party may move for attorneys' fees from the opposing party when the prevailing party "acted as a private attorney general by enforcing an important right affecting public interest." *See Laffitte*, 1 Cal. 5th at 489; Cal. Civ. Proc. Code § 1021.5. Attorneys' fees may be awarded under Section 1021.5 if a "successful party" shows:

> (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

*See* Cal. Civ. Proc. Code § 1021.5. To obtain an award of fees, a successful party must satisfy each element of Section 1021.5. *City of Oakland v. Oakland Police & Fire Ret. Sys.*, 29 Cal. App.

---

[6] United argues that because the Court appointed only Vanek from then Vanek Vickers & Masini, P.C. and Zweig of Hagens Berman as class counsel, it is inappropriate to consider the fee requests from Klevatt & Associates and Shernoff Bidart. *See* Opp'n at 14 n.17 [Doc. # 185]. The Advisory Committee notes for Rule 23(h) recognize that, "[i]n some situations, there may be a basis for making an award to other counsel whose work produced a beneficial result for the class, such as attorneys who acted for the class before certification but were not appointed class counsel . . . ." Fed. R. Civ. P. 23(h) (2003) advisory committee's note. Because the class benefitted from the efforts of Klevatt & Associates and Shernoff Bidart, it is appropriate to award them attorneys' fees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 15-7870-DMG (AJWx)** | Date | March 13, 2020 |
|---|---|---|---|
| Title | *Jennifer Bentley v. United of Omaha Life Insurance Company* | Page | 11 of 15 |

5th 688, 697–98 (2018). "[T]his is not a purely objective analysis. Rather, . . . the trial court, utilizing its traditional equitable discretion, must *realistically* assess the litigation and determine *from a practical perspective* whether or not the statutory criteria have been met." *Id.* at 698 (brackets omitted) (internal quotation marks omitted).

### a. Public Interest

Litigation results in enforcement of an "important right affecting the public interest" if the "subject matter of the action implicated the public interest." *See Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 578 (2004). The Statutes afford life insurance policy holders protection certain safeguards to prevent the lapse of their respective policies. *See* Cal. Ins. Code § 10113.71; *id.* § 10113.72. As a result of Counsel's efforts, the class will recover damages for United's violations of the Statutes. *See* Feb. 21, 2018 Order at 24–25, 28 [Doc. # 174]; May 17, 2019 Order at 2 [Doc. # 181]. Therefore, this litigation enforced an important right affecting the public interest by protecting life insurance consumers, and by extension possibly other insurance consumers, from unintended policy lapses or insurance termination.

### b. Significant Benefit

In assessing whether the litigation conferred a significant benefit, "a trial court should determine the significance of the benefit, as well as the size of the class receiving benefit, from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case." *City of Oakland*, 29 Cal. App. 5th at 710 (quoting *People v. Investco Mgmt. & Dev. LLC*, 22 Cal. App. 5th 443, 465 (2018)) (internal quotation marks omitted). "The strength or societal importance of a particular right generally is determined by realistically assessing the significance of that right in terms of its relationship to the achievement of fundamental legislative goals." *Id.* (quoting *Indio Police Command Unit Ass'n v. City of Indio*, 230 Cal. App. 4th 521, 541–42 (2014)) (internal quotation marks omitted).

Here, the class is comprised of only 33 persons. *See* Feb. 21, 2019 Order at 24 [Doc. # 174]. Assuming *arguendo* that this litigation nonetheless conferred a significant benefit on the general public, Counsel would not be entitled to attorneys' fees under Section 1021.5 because they have failed to show that the necessity and financial burden of private enforcement make such an award appropriate, or that such fees should not, in the interests of justice, be paid solely out of the recovery. *See infra* Part II.A.2.c–d.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 15-7870-DMG (AJWx)** | Date | March 13, 2020 |
|---|---|---|---|
| Title | *Jennifer Bentley v. United of Omaha Life Insurance Company* | Page | 12 of 15 |

### c. The Necessity and Financial Burden of Private Enforcement

The necessity and financial burden factor examines whether (1) "private enforcement was necessary"; and (2) "the financial burden of private enforcement warrants subsidizing the successful party's attorneys." *Conservatorship of Whitley*, 50 Cal. 4th 1206, 1214 (2010) (quoting *Lyons v. Chinese Hosp. Ass'n*, 136 Cal. App. 4th 1331, 1348 (2006) (internal quotation marks omitted). The "necessity" prong "looks to the adequacy of public enforcement and seeks economic equalization of representation in cases where private enforcement is necessary." *Id.* at 1215 (quoting *Lyons*, 136 Cal. App. 4th at 1348) (internal quotation marks omitted). The "financial burden" prong focuses "on the costs of the litigation" and "any offsetting financial benefits that the litigation yields or reasonably could have been expected to yield." *Id.*

An attorney fee award under § 1021.5 is not appropriate if the plaintiff reasonably expected the financial benefits would exceed actual litigation costs by a substantial margin. *See Collins v. City of L.A.*, 205 Cal. App. 4th 140, 154 (2012). A plaintiff's reasonable expectation of financial benefits is analyzed by "discounting the monetary value of the benefits that the successful litigant reasonably expected at the time the vital litigation decisions were made by the probability of success at that time." *Id.* This resulting value is then compared with the litigation costs plaintiff actually incurred. *Id.*

In the opening brief, Counsel failed to conduct the aforementioned financial burden analysis. *See* Pl.'s Mem. of P. & A. at 14–16 [Doc. # 183-1]. In the Reply, Counsel argued for the first time that the estimated case value at an unspecified point in time was between $1.45 million to $1.9 million, which purportedly demonstrates that the estimated value of recovery did not exceed the actual litigation costs by a substantial margin. *See* Reply at 5 [Doc. # 186]. The Court need not consider this new argument because even though Counsel bear the burden of establishing their entitlement to fees under Section 1021.5, they inexplicably failed to timely raise this contention. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Further, this argument is predicated on discount rates of 33% of 50%, which Counsel applied to the stipulated judgment amount of $2,889,722.31. *See* Reply at 5 [Doc. # 186]; May 17, 2019 Order at 2 [Doc. # 181]. Yet, Counsel offers no evidence to show that such discount rates are appropriate. *See Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 286 (N.D. Cal. 2015) ("[A]ttorney argument is not evidence on which the court can rely."). Instead, Counsel apparently believes that these rates are proper simply because they were employed in two other cases. They provide almost no analysis on this point. *See* Reply at 5 & n.6 (citing *Oakland Police & Fire*, 29 Cal. App. 5th at 700; *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407, 1416 (1991)); *see also* Fed. R. Civ. P. 7(b)(1)(B) ("A request for a court order must be made by motion. The motion must: . . . state *with particularity* the grounds for seeking the order."). Under these circumstances, the Court concludes

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 15-7870-DMG (AJWx)** | Date | March 13, 2020 |
|---|---|---|---|
| Title | *Jennifer Bentley v. United of Omaha Life Insurance Company* | Page | 13 of 15 |

that Counsel have failed to show that the estimated value of recovery did not exceed the litigation costs (including the $1,070,376.98 lodestar) by a substantial margin, or that Plaintiff's "own financial stake in the outcome would not by itself constitute an adequate incentive to litigate." *See Satrap v. Pac. Gas & Elec. Co.*, 42 Cal. App. 4th 72, 80 (1996) ("[Section 1021.5's] purpose is to provide some incentive for the plaintiff who acts as a true private attorney general, prosecuting a lawsuit that enforces an important public right and confers a significant benefit, despite the fact that his or her own financial stake in the outcome would not by itself constitute an adequate incentive to litigate.").

### d. The Interest of Justice

Counsel does not address the "interest of justice" element in the briefing on this motion. For that reason alone, Counsel is not entitled to attorneys' fees under Section 1021.5. *See Oakland Police & Fire Ret. Sys.*, 29 Cal. App. 5th at 697–98.

In sum, Counsel has not shown all of the criteria in Section 1021.5 have been satisfied.

### C. Costs

Reasonable costs and expenses in common fund cases can be reimbursed to counsel if those costs and expenses are reasonable and relevant to the litigation. *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1365–66 (N.D. Cal. 1996). Reasonable costs and expenses are "reimbursed proportionally by those class members who benefit from the settlement." *See id.* at 1366.

Counsel requests $36,562.42 in expenses and costs. *See* Pl.'s Mem. of P. & A. at 2 [Doc. # 183-1]. Vanek Vickers & Massini, P.C. and Sperling & Slater allegedly spent an aggregate of $24,122.59 on court fees, data management, delivery services, deposition transcripts, legal research, certificates of good standing, and travel. *See* Vanek Decl., Ex. B [Doc. # 183-2]. Hagens Berman claims to have incurred $4,686.08 on legal research, process serve fees, filing fees, transportation, certificates of good standing, conference calls, and photocopies. Although Counsel could have provided more detail regarding these expenses (*e.g.*, identifying each trip for which the attorneys seek reimbursement), the amounts sought by Sperling & Slater and Hagens Berman appear to be reasonable. As members of these firms are co-lead class counsel on a class action that has been pending for over four years, it is unsurprising that they would have expended $28,808.67 on this matter. *See* Order re Pl.'s Mot. for Class Cert. at 22 ("The court also appoints Plaintiff as class representative and Joseph M. Vanek of the law firm of Vanek Vickers & Masini, P.C. and Jason Zweig of the law firm of Hagens Berman Sobol & Shapiro LLP as class counsel

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 15-7870-DMG (AJWx)** | Date | March 13, 2020 |
| Title | *Jennifer Bentley v. United of Omaha Life Insurance Company* | Page | 14 of 15 |

pursuant to Rule 23(g).") [Doc. # 132]. Additionally, it was not unreasonable for Shernoff Bidart to have incurred $3,088.19 in litigation expenses for depositions, computerized research, and travel in connection with the 17 months in which Bidart was involved in this litigation.

On the other hand, the record suggests that Klevatt & Associates seeks reimbursement for unnecessary litigation expenses. The firm seeks $4,665.56 for airfare for court hearings and Plaintiff's deposition, local transportation, meals, and parking. *See* Klevatt Decl. at ¶ 10 [Doc. # 183-4]. There is no apparent justification for Klevatt & Associates' personnel to attend the court hearings because the firm's attorneys are not class counsel, but instead seem to have provided auxiliary support for class counsel. *See* Klevatt Decl. at ¶ 4 ("As the initial counsel for [Plaintiff], we took primary responsibility for finding and retaining experienced local counsel and then later experienced class action counsel to run the litigation and used our experience in the area of insurance law to guide the substantive areas of the litigation. In addition, we were the primary point of contact for . . . the Plaintiff and Class representative.") [Doc. # 183-4]. Although David Klevatt incurred expenses to travel to Chicago to defend Plaintiff's deposition, *see* Golub Decl. at ¶ 4 [Doc. # 185-1], Klevatt made no attempt to itemize the expenses corresponding to that deposition even after United pointed out that this firm's expenses appear to be duplicative. Klevatt & Associates has not met its burden of showing its entitlement to the full reimbursement of its asserted costs and expenses. The Court therefore awards it $1,000 in reasonable costs in connection with Klevatt's defense of Plaintiff's deposition.

For these reasons, the Court awards Counsel $32,896.86 in costs and expenses, which is comprised of Vickers & Massini, P.C.'s, Sperling & Slater's, Hagens Berman's, Shernoff Bidart's, and Klevatt & Associates' respective costs and expenses.

**D.     Plaintiff's Incentive Award**

Plaintiff requests a $25,000 incentive award. *See* Pl.'s Mem. of P. & A. at 17 [Doc. # 183-1]. When determining whether to grant an incentive award to the class representative, a court may consider:

> 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation[;] and . . . 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Vranken*, 901 F. Supp. at 299.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 15-7870-DMG (AJWx)** | Date | March 13, 2020 |
|---|---|---|---|

| Title | *Jennifer Bentley v. United of Omaha Life Insurance Company* | Page | 15 of 15 |
|---|---|---|---|

First, there is no indication that Plaintiff personally endured any risk by initiating this suit (*e.g.*, retaliation or financial liability). Second, while there is no notoriety associated with this litigation, Plaintiff attests that her "deposition covered a number of topics, including personal information from 7 years ago concerning divorce proceedings from [her] husband in a manner that was emotionally distressing to [her]." *See* Bentley Decl. at ¶ 6 [Doc. # 121-3]. Third, although Plaintiff appeared at a four-hour deposition, discussed this matter with Counsel, and provided certain relevant documents to her attorneys, it does not appear that she spent a significant amount of time assisting Counsel beyond that which might reasonably be expected. *See id.*; *cf. Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 462–63 (E.D. Cal. 2013) (finding that a reduction in plaintiff's incentive award from $7500 to $2500 was warranted in part because there was no evidence that the plaintiff "spent more time assisting counsel than occurs in the average case"). Fourth, Plaintiff will receive a *substantial* financial benefit on account of bringing this action—*i.e.*, she will receive net death benefits of nearly $1 million plus prejudgment interest, which is about 35% of the total judgment and well beyond what other Class members will recover. *See* Jt. Stip. on Judgment at 2–4 [Doc. # 182-1]. Fifth, this litigation lasted about four years. On balance, these factors weigh in favor of granting a reduced incentive award in the amount of $10,000 from the common fund.

## III.
## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion as follows:

1. Counsel's request for attorneys' fees amounting to 33.3% of the common fund is **GRANTED**;
2. Counsel's request for attorneys' fees under California Civil Procedure Code section 1021.5 is **DENIED**;
3. Counsel's request for costs and expenses is **GRANTED in part and DENIED in part** such that they are awarded $32,896.86 in total costs and expenses;
4. Plaintiff's request for an incentive award is **GRANTED in part** in the amount of $10,000; and
5. Pursuant to the Court's May 17, 2019 Order, the parties shall lodge a final proposed judgment **within 14 days** of the date of this Order.

**IT IS SO ORDERED.**