1   Christopher Pitoun
    *christopherp@hbsslaw.com*
2   HAGENS BERMAN SOBOL SHAPIRO LLP
    301 North Lake Avenue, Suite 920
3   Pasadena, CA 91101
    Telephone:  (213) 330-7150
4

5   Joseph M. Vanek (*pro hac vice*)
    *jvanek@sperling-law.com*
6   John P. Bjork (*pro hac vice*)
    *jbjork@sperling-law.com*
7   SPERLING & SLATER, P.C.
    55 W. Monroe Street, Suite 3200
8   Chicago, IL 60603
    Telephone: (312) 224-1500
9

10  *Attorneys for Plaintiff and the Class*

11  *Additional Counsel Listed on Signature Block*

12
                    **UNITED STATES DISTRICT COURT**
13                  **CENTRAL DISTRICT OF CALIFORNIA**

14
    JENNIFER BENTLEY,                    No. 15-cv-07870-DMG (AJWx)
15
                         Plaintiff,      **MEMORMANDUM OF POINTS**
16                                       **AND AUTHORITIES IN SUPPORT**
            v.                           **OF PLAINTIFF'S MOTION FOR**
17                                       **PRELIMINARY APPROVAL OF**
    UNITED OF OMAHA LIFE                 **CLASS ACTION SETTLEMENT**
18  INSURANCE COMPANY;
19                       Defendants.        Date: March 18, 2022
20                                          Time:  9:30 AM
                                            Judge: Hon. Dolly M. Gee
21                                          Courtroom:  8C
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  Introduction. ........................................................................................ 1

II. The history of the case. ..................................................................... 2

A. Proceedings in this Court. ........................................................... 2

B. Proceedings in the Ninth Circuit. .............................................. 7

   1. United's appeal and plaintiff's cross-appeal. ...................... 7

   2. The motion for corrected judgment. .................................... 8

   3. The mediation. ......................................................................... 9

C. The settlement. ............................................................................ 10

III. Argument. .......................................................................................... 11

A. The proposed Settlement easily meets the standard for preliminary approval. .................................................................. 11

   1. The proposed Settlement, reached after over six years of hard-fought litigation, was the result of serious, arm's-length negotiations guided by a Ninth Circuit mediator. ........................................................ 13

   2. The proposed Settlement has no obvious deficiencies. ............................. 14

   3. The proposed Settlement treats all Class members fairly and equitably. ............................................................. 15

   4. The Settlement amount, which provides each Class member with the full net death benefit due on the policy to which they are a beneficiary, and nearly all of their damages, secures an excellent result for the Class and is well within the range of possible approval. ............... 16

B. The proposed plan to allocate the Settlement *pro rata* to Class members is fair, reasonable, and adequate. ........................................................ 19

C. The proposed form and manner of notice will fairly and efficiently inform Class members of the terms of the Settlement and their options.......20

   1. The form of the Settlement notice clearly and concisely describes all information required by Rule 23(c)(2)(b)....................................20

   2. The proposed manner of disseminating the Settlement notice will ensure that notice is timely received by all Class members.......................21

   3. The Court should not allow another opt-out opportunity. .......................22

D. The proposed final settlement schedule is appropriate, comports with due process, and satisfies the requirements of the Class Action Fairness Act. .................................................................................................24

IV. Conclusion. ........................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Acosta v. Frito-Lay, Inc.,*
    No.15-cv- 02128, 2018 WL 646691 (N.D. Cal. Jan 31, 2018) .................. 13, 15, 17

*Bellinghausen v. Tractor Supply Co.,*
    303 F.R.D. 611 (N.D. Cal. 2014) ........................................................ 18

*Booth v. Strategic Realty Tr., Inc.,*
    No. 13-cv- 04921, 2015 WL 6002919 (N.D. Cal. Oct. 15, 2015) ....................... 16

*Brown v. CVS Pharm., Inc.,*
    No. 15-cv-7631, 2017 WL 3494297 (C.D. Cal. Apr. 24, 2017) .......................... 17

*In re Cathode Ray Tube (Crt) Antitrust Litig.,*
    No. C-07-5944, 2016 WL 3648478 (N.D. Cal. July 7, 2016) ........................... 15

*In re Citric Acid Antitrust Litig.,*
    145 F. Supp. 2d 1152 (N.D. Cal. 2001) ............................................... 19

*Class Plaintiffs v. Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ......................................................... 12

*Cuzick v. Zodiac U.S. Seat Shells, LLC,*
    No. 16-cv-03793, 2017 WL 4536255
    (N.D. Cal. Oct. 11, 2017) ..................................................... 12, 13, 15, 17

*Denney v. Deutsche Bank AG,*
    443 F.3d 253 (2d Cir. 2006) .......................................................... 23

*Edenborough v. ADT, LLC,*
    No. 16-cv-02233, 2017 WL 4641988 (N.D. Cal. Oct. 16, 2017) ........................ 11

*Gaudin v. Saxon Mortg. Servs., Inc.,*
    No. 11-cv-01663, 2015 WL 7454183 (N.D. Cal. Nov. 23, 2015) ........................ 15

*Glass v. UBS Fin. Servs., Inc.,*
    No. C 06-4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ........................... 18

*Haralson v. U.S. Aviation Servs. Corp.,*
    383 F. Supp. 3d 959 (N.D. Cal. 2019) ............................................................ 11, 12

*In re Heritage Bond Litig.,*
    No. 02-ml-2475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ......................... 16

*In re High-Tech Emp. Antitrust Litig.,*
    No. 11-cv-2509, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013) .......................... 12

*Hunt v. Check Recovery Sys., Inc.,*
    No. C05-04993, 2007 WL 2220972 (N.D. Cal. Aug. 1, 2007) ........................... 22

*Khoja v. Orexigen Therapeutics, Inc.,*
    2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) ................................................... 19

*Lane v. Facebook,*
    696 F.3d 811 (9th Cir. 2012) .......................................................................... 20

*In re LendingClub Sec. Litig.,*
    Nos. C 16-02627, C 16-02670, C 16-03072,
    2018 WL 1367336 (N.D. Cal. Mar. 16, 2018) .................................................. 17

*Low v. Trump Univ.,*
    881 F.3d 1111 (9th Cir. 2018) ........................................................................ 23

*McHugh v. Protective Life Ins.,*
    No. S.259215, ECF No. 68 ............................................................................... 9

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) .......................................................................... 17

*In re MetLife Demut. Litig.,*
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ............................................................ 23

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................ 17, 18

*Nen Thio v. Genji, LLC,*
    14 F. Supp. 3d 1324 (N.D. Cal. 2014) ............................................................ 15

*Officers for Justice v. Civil Service Commission of City
    and County of San Francisco,*
    688 F.2d 615 (9th Cir. 1982) .......................................................................... 22

*Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ................................................................. 18

*Satchell v. Fed. Express Corp.*,
    No. C03-2659, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ........................... 13

*Smith v. Am. Greetings Corp.*,
    No. 14-cv-02577, 2015 WL 4498571 (N.D. Cal. July 23, 2015) ......................... 18

*Torres v. Pick-A-Part Auto Wrecking*,
    No. 16-cv-01915, 2018 WL 306287 (E.D. Cal. Jan. 5, 2018) ............................. 15

*Uschold v. NSMG Shared Serv., LLC*,
    333 F.R.D. 157 (N.D. Cal. 2019) ..............................................13, 17, 20

*Vinh Nguyen v. Radient Pharm. Corp.*,
    No. 11-cv-00406, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ........................... 16

*Zepeda v. PayPal, Inc.*,
    Nos. C 10-2500, C 10-1668, 2014 WL 718509
    (N.D. Cal. Feb. 24, 2014) .................................................................. 12

*In re Zynga Inc. Sec. Litig.*,
    No. 12-cv-04007, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ................... 15-16

STATUTES

Cal. Civ. Code § 3289 .......................................................................... 6

California Insurance Code § 10113.71 ...................................................3, 4, 9

California Insurance Code § 10113.72 ...................................................3, 4, 9

Class Action Fairness Act ..........................................................11, 24, 25

OTHER AUTHORITIES

Fed. R. Civ. P. 23 ...................................................... 2, 4, 11, 20, 21, 22

Fed. R. Civ. P. 60 .......................................................................... 9

*Manual for Complex Litigation (Fourth)* (2015) .................................. 11, 12, 20, 22

# I.    Introduction.

After over six years of hard-fought litigation, the class of plaintiffs that the Court certified (*Class*) and defendant United of Omaha Life Insurance Company (*United*) have reached a class-action settlement which, if approved by the Court, would fully (and at long last) resolve this litigation. The settlement provides for an immediate cash payment of $3 million to the 33 class members, who are beneficiaries to 26 life insurance policies that the Court determined fell within the class.[1]

The settlement is more than fair, reasonable, and adequate. As further detailed below, the settlement would provide Class members with almost 100% of their damages and prejudgment interest (before deductions for any fees and expenses awarded by the Court). The class will receive the *full* net policy benefits due on each of the 26 Class Policies, and significantly more in prejudgment interest than the Class obtained through this Court's final judgment entered in March 2020.[2] In the absence of this litigation, the Class would have received nothing, since United took the position that the Class Policies lapsed due to unpaid premiums. This settlement not only makes the Class nearly whole, but it also eliminates the risk that the Class could have gone home empty handed, since, on appeal, United sought to overturn this Court's March 2020 Class judgment. Thus, not only is this settlement fair, reasonable and adequate, it is exceptional. Although the settlement is surely not the largest class-

---

[1]    The 26 policies are 8448979, 7997098, 5342817, 6422766, 7010893, 9149455, BU1105227, BU1133356, BU1101313, BU1083350, UR2627721, UR2674494, UR2671752, UR2493480, UR2577555, UR2584816, UR2681720, UR2447251, UR2654966, UR2647072, BU1289270, BU1395175, BU1399164, BU1152776, BU1067439, UR1652898. These 26 policies were identified in the May 29, 2019 Joint Stipulation as to Judgment Amount and Schedule for Petition for Attorneys' Fees and Class Representative Incentive Award [ECF No. 179]. The 26 policies are hereafter referred to as the *Class Policies*.

[2]    As explained below at pp. 7-8, the Court's $2,943,457.86 judgment was based on an error discovered during the time the parties were on appeal. The correct amount of the judgment should have been $2,427,791.22.

action settlement this Court has seen, given that it recovers nearly 100% of the class's damages, in the annals of class-action litigation, it is in rarified air.

Not only is the settlement amount fair, but the settlement itself is accompanied by other indicia of fairness. The settlement negotiations were overseen by an experienced Ninth Circuit mediator. The mediator's efforts and involvement in the process were instrumental in concluding the Settlement. For these reasons, and the reasons further explained below, the Court should find that this proposed settlement is fair, reasonable and adequate, and preliminarily approve it.

Because the settlement is fair, reasonable, and adequate, the Court should, pursuant to Fed. R. Civ. P. 23(e)(1), authorize notice to be sent to the Class. In connection with its May 1, 2018 class certification decision, the Court previously ordered that notice be sent to the Class. That notice was sent and clearly explained Class members' rights to opt-out of the class. Therefore, the Court should not permit Class members a second opt-out opportunity. This is particularly so because Class Counsel has now improved the amount the Class will recover. As further described below, the proposed notice clearly explains class member's rights, the deadlines associated with their rights, the plan of distribution, and the consequences of not filing a claim form. Finally, the Court should also set a schedule for the filing of plaintiff's motion for final approval and Class Counsel's motion for attorneys' fees, reimbursement of litigation expenses, and an incentive award to the named plaintiff.

## II.   The history of the case.

### A.   Proceedings in this Court.

Plaintiff was the trustee of a family trust and the trust was the sole beneficiary of a $1 million term life insurance policy (the *Policy*) that United issued. United issued the Policy to Eric Bentley, Ms. Bentley's ex-husband, in February 2001. On

October 28, 2014, United lapsed the Policy due to non-payment of premium. Eric Bentley then died on November 7, 2014.[3]

On August 27, 2015, plaintiff filed this litigation in California state court.[4] Plaintiff alleged that United improperly terminated the Policy for unpaid premiums, because prior to terminating the Policy, United failed to provide certain notices required by a California law which went into effect January 1, 2013.[5] Plaintiff's initial complaint was filed as an individual action, not a class action. On October 7, 2015, United removed the case to this Court on the basis of diversity jurisdiction.[6]

On December 4, 2015, plaintiff filed an amended complaint in this Court, which brought claims not only on behalf of herself, but also a class of those similarly situated.[7] On January 15, 2016, defendant United then moved to dismiss this complaint.[8] On June 22, 2016, the Court largely denied the motion.[9] United then sought to stay proceedings, and seek an interlocutory appeal of the Court's denial of its motion to dismiss.[10] On September 14, 2016, the Court denied United's motion.[11]

Plaintiff would later file a third amended class-action complaint on January 25, 2017 (the current operative complaint).[12] United then moved to dismiss this

---

[3]    These facts are undisputed.

[4]    ECF No. 1, Ex. 1.

[5]    The specific California statutes are California Insurance Code §§ 10113.71 and 10113.72, and collectively are referred to herein as the *Statutes*.

[6]    *Id.*

[7]    ECF No. 16.

[8]    ECF No. 22.

[9]    ECF No. 27.

[10]    ECF No. 30.

[11]    ECF No. 46.

[12]    ECF No. 87.

complaint on February 9, 2017.[13] On August 8, 2017, the Court denied the motion.[14] Shortly thereafter, before the plaintiff moved for class certification, United made a motion to "deny certification" on November 11, 2017.[15] On January 4, 2018, the Court denied that motion.[16]

On February 2, 2018, the plaintiff moved for class certification.[17] Following a hearing, on May 1, 2018, the Court largely granted plaintiff's motion for class certification and certified the following class:

> All beneficiaries who made a claim, or would have been eligible to make a claim, for the payment of benefits on life insurance policies renewed, issued, or delivered by United of Omaha Life Insurance Company ("Omaha") in 2013 in the State of California that lapsed or were terminated by Omaha for the non-payment of premium after January 1, 2013 (and which were not affirmatively cancelled by the policyholder), and as to which policies one or more of the third-party notices described by Sections 10113.71 and 10113.72 of the California Insurance Code were not sent by Omaha prior to lapse or termination.[18]

---

[13] ECF No. 89.

[14] ECF No. 107.

[15] ECF No. 111.

[16] ECF No. 119.

[17] ECF No. 121.

[18] ECF No. 132. The Court also appointed Joseph Vanek and Jason Zweig as Class Counsel pursuant to Fed. R. Civ. P. 23(g). *Id.* On May 22, 2018, the Court entered an order modifying slightly the class definition. ECF No. 141. On August 3, 2018, the Court revised the class definition yet again to: All beneficiaries who made a claim, or would have been eligible to make a claim, for the payment of benefits on life insurance policies renewed, issued or delivered by United of Omaha Life Insurance Company ("Omaha") in the State of California that lapsed or were terminated by Omaha for the non-payment of premium after January 1, 2013 (and which were not affirmatively cancelled by the policyholder), and as to which policies the policyholder(s) did not receive one or more of the notices of the right to designate under Section 10113.72 of the California Insurance Code. ECF No. 158.

The Court also found that, at that time, there were 43 beneficiaries in the class.[19]

Following the Court's class-certification order, the Court authorized notice to be sent to the Class.[20] The Court approved the notice to be sent by First Class Mail to each member of the proposed class "to the most current ascertainable address for each class member . . . ."[21] In addition, Class Counsel established a website at www.omahalifeinsuranceclassaction.com, which was referenced in the notice, and on which Class Counsel posted the notice and other documents about the case.[22] There were five class members who plaintiffs did not have addresses for, and plaintiffs hired an investigator to locate them, and did locate them.[23] Notice was proposed to be sent, when a separate dispute regarding class member identification was resolved.[24] That dispute was resolved by the Court on August 3, 2018, and the Court ordered notice to be sent by August 8, 2018, and that Class members had until September 24, 2018 to opt out.[25] Class counsel sent such notice out in compliance with the August 3, 2018 order. One opt-out was received by the deadline.

Class plaintiffs moved for summary judgment on June 15, 2018,[26] and United moved for summary judgment on the same day.[27] On February 21, 2019, the Court largely granted summary judgment to Class plaintiffs.[28] In connection with the Court's summary judgment ruling, however, the Court excluded certain policies from

---

[19]   ECF No. 132 at p. 12.

[20]   ECF No. 144.

[21]   ECF No. 143, at p. 2.

[22]   The website remains live today and Class Counsel continue to post updates and relevant documents about the case.

[23]   *Id.*

[24]   *Id.*

[25]   ECF No. 158.

[26]   ECF No. 147.

[27]   ECF No. 148.

[28]   ECF No. 174.

the Class, ultimately granting summary judgment in favor of a class consisting of 26 policies with 33 different beneficiaries.[29] The Court did deny summary judgment to plaintiff with respect to the rate of prejudgment interest that the plaintiff argued applied. Plaintiff had argued that the Class was entitled to prejudgment interest at a rate of 10% per annum pursuant to Cal. Civ. Code § 3289(b).[30] Instead, the Court found that prejudgment interest should be calculated at a rate of 1% or 3% depending on the policy language.[31] Following the Court's summary judgment ruling, the parties met and conferred and stipulated to the amount of the judgment. Specifically, on May 10, 2019, the parties stipulated that the Class judgment with respect to the 26 Class Policies was $2,889,722.31 and, it would increase each day by $166.88 until final judgment was entered.[32]

Shortly thereafter, the Class plaintiffs filed a motion for attorneys' fees and reimbursement of litigation costs.[33] On July 22, 2019, the Court ordered that the Class plaintiffs provide the Class with notice of their fee petition, which plaintiff did by mailing to Class members and posting on the website www.omahalifeinsuranceclassaction.com.[34] On March 13, 2020, the Court awarded Class Counsel 33.3% of the common fund as fees, and reimbursement of litigation costs of $32,896.86, and awarded plaintiff Bentley a $10,000 incentive award.[35] This award was based on submitted lodestar (through May 7, 2019) of $1,515,189, and expenses of $36,562.42.[36] On March 31, 2020, the Court then entered a final

---

[29] *Id.* at p. 24.

[30] *Id.* at p. 25.

[31] *Id.* at p. 27.

[32] ECF No. 179, at p. 2.

[33] ECF No. 183.

[34] ECF No. 188.

[35] ECF No. 197.

[36] ECF No. 183-1, at p. 2.

judgment for the Class in the amount of $2,943,457.67, attorneys' fees to Class Counsel of 33.3% of that amount, reimbursement of $32,896.86 in litigation expenses, and a $10,000 incentive payment to plaintiff.[37] On April 14, 2020, pursuant to a stipulation between the parties, the Court stayed execution of the final judgment pending appeals.[38]

### B. Proceedings in the Ninth Circuit.

#### 1. United's appeal and plaintiff's cross-appeal.

Following the Court's entry of final judgment discussed above, United filed a notice of appeal on April 23, 2020 appealing the Court's March 31, 2020 final judgment, and plaintiff filed a notice of appeal on April 27, 2020 appealing the same final judgment.[39]

United filed its opening appeal brief on September 1, 2020.[40] In its opening brief, United argued that the district court erred because the Statutes applied only to new policies that were issued in California after the Statutes' effective date of January 1, 2013. Each of the 26 Class Policies were initially issued prior to January 1, 2013, and so, United argued, the Statutes did not apply and the policies were properly lapsed due to unpaid premiums. In addition, United argued that this Court erred in granting plaintiff's motion for class certification because many of the elements of class certification were lacking in this case.[41] In other words, United sought to overturn the entirety of the Court's final judgment.

Plaintiff filed her opposition and cross-appeal brief on November 2, 2020.[42] As

---

[37]   ECF No. 200.

[38]   ECF No. 202.

[39]   *See* ECF Nos. 203 and 204 respectively.

[40]   ECF No. 18 in 20-55435 (9th Cir.).

[41]   *See* generally, *id.*

[42]   ECF No. 25 in 20-55435 (9th Cir.).

to her cross appeal, plaintiff appealed two issues. First, plaintiff argued that the district court erred in excluding 11 policies from the Class in connection with the Court's summary judgment ruling. And second, the Court applied the incorrect prejudgment interest rate.[43] The briefing on appeal closed on February 22, 2021, with the filing of plaintiff's reply in support of her cross appeal.[44]

### 2.    The motion for corrected judgment.

During the parties' mediation efforts (discussed below), United discovered there had been an error in the district court's calculation (through no fault of the Court) of the final judgment amount. Specifically, United discovered that in the parties' May 10, 2019 stipulation, one of the policies, BU1289270, was incorrectly identified as having a face value of $550,000.[45] However, the actual face value of the policy was $55,000.[46] The discrepancy between these two figures was due to a transcription error when compiling the list of Class Policies included in the parties' May 2019 joint stipulation. The net death benefit (face value less the amount of unpaid premium) on policy BU1289270 was therefore $54,623.68 and not the $549,623.28 set forth in the joint stipulation.[47] The error also resulted in the calculation of daily interest applicable to the policy as $15.06, when it should have been $1.50.[48] And finally, as a result of this error, the final judgment entered by the Court, with the corrected face value of policy BU1289270 as of March 31, 2020, was $2,427,791.22, instead of the $2,943,125.19 entered by the Court.[49]

---

[43]  *See* generally, *id.*

[44]  ECF No. 51 in 20-55435 (9th Cir.).

[45]  ECF No. 77-1, at ¶ 6 in 20-55435 (9th Cir.).

[46]  *Id.*

[47]  *Id.* at ¶ 9.

[48]  *Id.* at ¶ 10.

[49]  *Id.* at ¶ 11.

As a result of this error, on November 23, 2021, United moved the Ninth Circuit seeking a limited remand so that it could move the district court, under Fed. R. Civ. P. 60(a), to correct the final judgment to correct this clerical error.[50] On February 1, 2022, the Ninth Circuit entered an order granting United's motion for leave to file a Rule 60(a) motion to correct the judgment as to policy BU1289270.[51]

### 3. The mediation.

On June 3, 2021, the Ninth Circuit stayed United's appeal and Bentley's cross appeal, pending a decision by the California Supreme Court in *McHugh v. Protective Life Ins.*, No. S.259215.[52] *McHugh* involved the very same Statutes at issue as in Bentley's case, and the California Supreme Court's ruling in *McHugh* was likely to impact United's appeal and Bentley's cross appeal.

On August 30, 2021, the California Supreme Court issued its ruling in *McHugh*, and held that the Statutes apply to all policies that were in force when the Statutes went into effect on January 1, 2013: "[W]e conclude that sections 10113.71 and 10113.72 apply to all life insurance policies in force when these two sections went into effect, regardless of when the policies were originally issued."[53] Following the California Supreme Court's ruling, on September 13, 2021, the parties submitted a joint status report describing their respective views as to *McHugh*'s application, and also, that they were interested in participating in the Ninth Circuit's mediation program.[54]

Following the joint status report, on October 4, 2021, the Ninth Circuit referred the parties to the Ninth Circuit's mediation program.[55] A Ninth Circuit

---

[50]  *Id.* at ¶ 19.

[51]  ECF No. 85 in 20-55435 (9th Cir.).

[52]  ECF No. 68 in 20-55435 (9th Cir.).

[53]  ECF No. 70-1 in 20-55435 (9th Cir.), at p. 2.

[54]  *Id.*

[55]  ECF No. 71 in 20-55435 (9th Cir.).

mediator, Ms. Sasha M. Cummings, Esq., was assigned as the parties' mediator. The parties held joint mediation sessions on October 26, November 8, November 30, and December 2, 2021, and individually communicated with Ms. Cumming on multiple occasions. The mediation was contentious, and at times, appeared to be on the verge of concluding unsuccessfully. However, on or about December 7, 2021, the parties reached an agreement to settle.

### C.    The settlement.

The December 23, 2021 settlement agreement (*Settlement*) is straightforward. It generally consists of a cash payment and a release by the Class. Under the Settlement, United will pay $3 million.[56] That payment is to be made within 10 business days of all of the following events: 1) execution of the settlement agreement (which has been completed); 2) following remand from the Ninth Circuit: this Court's entry of a corrected judgment (to account for the error discussed above), the Court's preliminary approval of the settlement agreement, and the Court's approval of the form and manner of notice; 3) and receipt of W-9 documents from the Class.[57] There is no reversion in the Settlement; the net proceeds of the settlement payment (after deduction for attorneys' fees, reimbursement of litigation costs, and any incentive payment awarded by the Court) shall go to the Class.

In exchange for the $3 million, the Class will release their claims against United relating to this litigation. The release provides:

> <u>General Release of Known and Unknown Claims.</u> Upon timely performance by Defendant of all of its obligations as set out in this Agreement, Plaintiff and the members of the certified class do hereby release and forever discharge Defendant and its parents, subsidiaries, affiliates, officers, directors, partners, predecessors, successors,

---

[56]    Settlement Agreement, ¶ 3A. The Settlement Agreement is attached as exhibit one to the February 14, 2022 Declaration of Jason A. Zweig (*Zweig Declaration*), filed concurrently herewith.

[57]    *Id.*, at ¶ 3B(ii).

representatives, insurers, reinsurers, assignees, employees acting within the scope of their employment, executors, administrators, heirs, and all other persons acting by, through, or in any way on behalf of Defendant (the "Released Parties"), of and from any and all claims, debts, defenses, liabilities, costs, attorneys' fees, actions, suits at law or equity, demands, contracts, expenses, damages, whether general, specific, punitive, exemplary, contractual or extra-contractual, and causes of action of any kind or nature which Plaintiff and the class have arising from or relating in any way to any conduct alleged or that could have been alleged in and arising from the factual predicate of the Litigation, from the beginning of time through the Effective Date, but excluding any and all representations, warranties, obligations, duties and covenants arising from this Agreement (the "Released Claims").[58]

Under the Settlement, United is required to provide CAFA notice within 10 days after this preliminary approval motion is filed with the Court.[59]

## III.    Argument.

### A.    The proposed Settlement easily meets the standard for preliminary approval.

Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Approving a settlement is a two-step process, the first of which requires the Court to "make a preliminary determination that the settlement is 'fair, reasonable, and adequate' when considering the factors set out in Rule 23(e)(2)."[60] At the preliminary

---

[58]    *Id.*, at ¶4B.

[59]    *Id.*, at ¶4D.

[60]    *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 966 (N.D. Cal. 2019); see also *Edenborough v. ADT, LLC*, No. 16-cv-02233, 2017 WL 4641988, at *5-6 (N.D. Cal. Oct. 16, 2017); *Manual for Complex Litigation (Fourth)* § 21.632 (2015) ("*Manual*").

approval stage, "a full fairness analysis is unnecessary"[61]; the Court need only make an "'initial evaluation of the fairness of the proposed settlement . . . on the basis of written submissions and informal presentation from the settling parties.'"[62] At this phase:

> Courts may preliminarily approve a settlement and direct notice to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not grant improper preferential treatment to class representatives or other segments of the class; and (4) falls within the range of possible approval.[63]

The Court does not have the authority to "delete, modify or substitute certain provisions," so the settlement "must stand or fall in its entirety."[64] While courts "must be particularly vigilant" for signs of collusion or self-interest, "[t]he Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions."[65]

The initial evaluation for preliminary approval does not *require* a hearing and may be made on the basis of information already known. In light of the Court's extensive knowledge of this case, the fact that the Settlement was reached at arm's length with the able assistance of a Ninth Circuit mediator, and Class members are receiving more than this Court awarded them in connection with the Court's

---

[61] *Zepeda v. PayPal, Inc.*, Nos. C 10-2500, C 10-1668, 2014 WL 718509, at *4 (N.D. Cal. Feb. 24, 2014) (quoting *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008)).

[62] *In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-2509, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013) (quoting *Manual* § 21.632).

[63] *Cuzick v. Zodiac U.S. Seat Shells, LLC*, No. 16-cv-03793, 2017 WL 4536255, at *5 (N.D. Cal. Oct. 11, 2017) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

[64] *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

[65] *Haralson*, 383 F. Supp. 3d at 966 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

summary judgment ruling, plaintiff respectfully submits that no hearing is necessary and that the Court should grant preliminary approval on the papers. If the Court desires a hearing, however, Class Counsel will, of course, make themselves available at the Court's convenience.

The Court should grant preliminary approval of the settlement because, as detailed further below, the proposed settlement easily satisfies this standard.

### 1. The proposed Settlement, reached after over six years of hard-fought litigation, was the result of serious, arm's-length negotiations guided by a Ninth Circuit mediator.

The first preliminary approval factor evaluates the means by which the parties reached the settlement. To grant preliminary approval, "a court must be satisfied that the parties 'have engaged in sufficient investigation of the facts to enable the court to intelligently make . . . an appraisal of the settlement.'"[66] There is "an initial presumption of fairness" afforded to settlements "recommended by class counsel after arm's-length bargaining."[67] The use of an experienced mediator, also "supports the conclusion that Plaintiffs were armed with sufficient information about the case to broker a fair settlement."[68]

---

[66] *Uschold v. NSMG Shared Serv., LLC*, 333 F.R.D. 157, 169 (N.D. Cal. 2019) (quoting *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007)); *see also Acosta v. Frito-Lay, Inc.*, No.15-cv- 02128, 2018 WL 646691, at *8 (N.D. Cal. Jan 31, 2018) ("For the parties 'to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value.'" (quoting *Acosta*, 243 F.R.D. at 396)).

[67] *Cuzick*, 2017 WL 4536255, at *5 (quoting *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011)).

[68] *Uschold*, 333 F.R.D. at 170; *see also Acosta*, 2018 WL 646691, at *8 ("The use of a mediator and the presence of discovery 'support[s] the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.'" (*quoting Villegas v. J.P. Morgan Chase & Co.*, No. 09-cv-00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012))); *Satchell v. Fed. Express Corp.*, No. C03-2659, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

The proposed Settlement was the result of arm's-length, non-collusive negotiations. The Settlement was reached after over six years of hard-fought litigation. Both sides fully understood the risks associated with their respective positions. Plaintiff had a full appreciation of the Class's maximum recovery should the Class prevail on appeal. Further, the Settlement will result in the Class receiving more money than it obtained in connection with this Court's summary judgment ruling. Each Class member beneficiary will receive their full net policy benefits due under the policies to which they are beneficiaries[69] less deductions for attorneys' fees, expenses and a class representative incentive award. Moreover, the proposed settlement was negotiated with the active involvement of an experienced Ninth Circuit mediator. The mediation lasted over a month, and involved numerous mediation sessions and the exchange of numerous settlement proposals. In short, the settlement was reached only after Class plaintiffs had a thorough appreciation of the strengths and weaknesses of all aspects of their claims.

### 2.    The proposed Settlement has no obvious deficiencies.

There are no clear omissions or deficiencies in the proposed Settlement. To the contrary, before any deductions for fees and expenses, the Settlement provides Class members with the full net policy benefits due under the policies to which they are a beneficiary. This is an extraordinary result, and the benefits to the class members are

---

[69]    Pursuant to the Court's summary judgment order, unpaid premiums, loans, and loan interest are deducted from the policy proceed amounts. ECF No. 174 at p. 26. Most of the Class members will have these amounts deducted from the face value of the applicable policies. Four of the 33 Class members will receive 110% of premiums paid less the foregoing deductions. The policies to which these four Class members are beneficiaries specify this payment amount in the event of a natural death (as opposed to accidental death) within two years of the policy's issuance. All of the insureds on these policies died within two years of issuance, and there was either evidence showing natural death or no evidence to the contrary. ECF No. 179-1 at p. 4 lines 12-15.

substantial, immediate, and certain. Further, the release granted to United is narrowly tailored to the allegations at issue in the litigation.[70]

### 3. The proposed Settlement treats all Class members fairly and equitably.

The Ninth Circuit requires the Court, when considering this factor, to be "'particularly vigilant' for signs that counsel have allowed the 'self-interests' of 'certain class members to infect negotiations.'"[71] For that reason, courts in this district deem preliminary approval inappropriate "where the proposed agreement 'improperly grants preferential treatment to class representatives.'"[72]

All Class Members here are being treated equally. Pursuant to the proposed plan of allocation, described in Section III.B below, each Class member's share of the Settlement will be calculated in exactly the same way and is tailored to the damage that each Class member suffered. As a result, all Class members are treated equally and fairly with respect to their monetary recovery.[73]

---

[70]  *See, e.g., Torres v. Pick-A-Part Auto Wrecking,* No. 16-cv-01915, 2018 WL 306287, at *3 (E.D. Cal. Jan. 5, 2018) (finding no obvious deficiencies in proposed agreement providing for non- reversionary cash fund to be divided among class members who submit valid claims and release of liability narrowly tailored to the claims); *Nen Thio v. Genji, LLC,* 14 F. Supp. 3d 1324, 1334 (N.D. Cal. 2014) (finding non obvious deficiencies in settlement agreement where scope of release, while broad, was limited to claims based on the facts set forth in the complaint).

[71]  *Cuzick,* 2017 WL 4536255, at *6 (quoting *Bluetooth Headset,* 654 F.3d at 947).

[72]  *Id.* (quoting *Tableware,* 484 F. Supp. 2d at 1079).

[73]  *See, e.g., Acosta,* 2018 WL 646691, at *8 (finding no preferential treatment where proposed allocation plan entitled each class member to claim their pro rata share of settlement fund based on number of workweeks worked during class period); *In re Cathode Ray Tube (Crt) Antitrust Litig.,* No. C-07-5944, 2016 WL 3648478, at *15 (N.D. Cal. July 7, 2016) ("[T]he allocation plan appears to have a reasonable, rational basis, and fairly treats class members by awarding each a pro rata share"); *Gaudin v. Saxon Mortg. Servs., Inc.,* No. 11-cv-01663, 2015 WL 7454183, at *8 (N.D. Cal. Nov. 23, 2015) (finding proposed plan to distribute net settlement fund fairly "award[ed] a pro rata share to class members based on the extent of their injuries"); *In re Zynga Inc.*

It is true that one Class member will receive less than what was provided for in the Court's March 2020 final judgment. As explained above in section II.B.2, a clerical error occurred when compiling the list of Class Policies in the parties' May 2019 stipulation, and the list incorrectly identified one policy as having a $550,000 face value, when its face value was only $55,000. However, the adjustment to the final judgment with respect to this policy is simply a result of correcting a clerical error. That policyholder was never entitled to $550,000. Instead, the recovery is based on the *actual* face value of their policy, not the *mistaken* face value. And in this case, the actual face value of the policy was $55,000 and not $550,000. Failure to correct this error, would actually treat the beneficiaries of the other 25 Class Policies unfairly, since the beneficiaries of the one policyholder would be receiving a windfall to which they were not entitled, while the other beneficiaries received no such windfall. Thus, the clerical error discussed above, is not a reason to withhold approval of the Settlement. Instead, it is yet further evidence of the fairness of the Settlement.

   **4.    The Settlement amount, which provides each Class member with the full net death benefit due on the policy to which they are a beneficiary, and nearly all of their damages, secures an excellent result for the Class and is well within the range of possible approval.**

   To determine whether the Settlement falls within the range for possible approval, courts focus on "substantive fairness and adequacy," including "plaintiff's

---

*Sec. Litig.*, No. 12-cv-04007, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015) ("A settlement in a securities class action case can be reasonable if it fairly treats class members by awarding a pro rata share to every Authorized Claimant (quoting *Vinh Nguyen v. Radient Pharm. Corp.*, No. 11-cv-00406, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014))); *Booth v. Strategic Realty Tr., Inc.*, No. 13-cv-04921, 2015 WL 6002919, at *7 (N.D. Cal. Oct. 15, 2015) (finding the plaintiffs' proposed allocation plan "'fairly treats class members by awarding a pro rata share' to each class member" (quoting *In re Heritage Bond Litig.*, No. 02-ml-2475, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005))).

expected recovery balanced against the value of the settlement offer."[74] This "requires the Court to evaluate the strength of Plaintiff's case."[75] "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to class members at trial."[76]

Here, this Settlement secures substantially more than "only a fraction of the potential recovery." The Settlement secures the entirety of the net death benefit due on each of the Class Policies. Further, Class members will end up getting significantly more interest than this Court awarded them at summary judgment. In fact, before deductions for fees and expenses, Class members will receive almost the entirety of their damages in this case including prejudgment interest. Attached as exhibit two to the Zweig Declaration are calculations of what each Class member would have received, if they received their full net death benefit amount, plus the 10% prejudgment interest rate that plaintiff argued applied. Those calculations show that had Class plaintiffs secured all of the relief they asked for, they would have recovered $3,214,297.60, and here, the Settlement provides for $3 million, or over 93% of the Class's damages which could have been obtained if Class plaintiffs prevailed on all issues. Thus, the Settlement represents almost all of the damages, and perhaps more, than the Class could have secured at trial. This amount well exceeds the ranges that courts have deemed to be fair and adequate.[77]

---

[74] *Acosta*, 2018 WL 646691, at *9 (quoting *Harris*, 2011 WL 1627973, at *9).

[75] *Cuzick*, 2017 WL 4536255, at *6.

[76] *Uschold*, 333 F.R.D. at 171 (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004)).

[77] *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (affirming preliminary approval of class settlement representing approximately one-sixth of potential recovery); *In re LendingClub Sec. Litig.*, Nos. C 16-02627, C 16-02670, C 16-03072, 2018 WL 1367336, at *2 (N.D. Cal. Mar. 16, 2018) (granting preliminary approval of $125 million settlement representing approximately 17% of the $711 million maximum recoverable at trial); *Brown v. CVS Pharm., Inc.*, No. 15-cv-7631, 2017 WL 3494297, at *4 (C.D. Cal. Apr. 24, 2017) (finding recovery of 27% of

Although Class Counsel have always been (and remain) confident they could have prevailed on appeal, and secured slightly more money for the Class (10% versus the approximate 7% interest achieved through settlement), obviously, this confidence does not mean the Class would have actually prevailed on appeal. Further, even if plaintiff and the Class did prevail on appeal, it could be another year or longer before the appeal was resolved. All the while, the years between the time Class member's loved one passed away, and when they would receive the amounts owed under the policies, would continue to grow.[78]

The Class also is represented by lawyers with extensive complex and class-action litigation experience. In approving proposed class settlements, courts afford "great weight . . . to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."[79] The proposed Settlement has the imprimatur of Class Counsel.

---

class's potential damages "well within the range of possible approval"); *Glass v. UBS Fin. Servs., Inc.,* No. C 06-4068, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (preliminarily approving settlement amount constituting 25–35% of recoverable damages).

[78] *See Smith v. Am. Greetings Corp.,* No. 14-cv-02577, 2015 WL 4498571, at *7 (N.D. Cal. July 23, 2015) (evaluating recovery in view of trial hurdles faced by class); *Bellinghausen v. Tractor Supply Co.,* 303 F.R.D. 611, 624 (N.D. Cal. 2014) ("The Court considers that even if 'Plaintiffs were to prevail, they would be required to expend considerable additional time and resources potentially outweighing any additional recovery obtained through successful litigation,' and these delays will affect 'payment to the Class Members and increase the amount of attorneys' fees.'" (quoting *Collins v. Cargill Meat Sols. Corp.,* 274 F.R.D. 294, 302 (E.D. Cal. 2011))).

[79] *Nat'l Rural Telecomms. Coop.,* 221 F.R.D. at 528 (quoting *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 125 (S.D.N.Y. 1997)); see also, *e.g., Pac. Enters. Sec. Litig.,* 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.").

**B.**    **The proposed plan to allocate the Settlement *pro rata* to Class members is fair, reasonable, and adequate.**

A plan for allocating a class settlement fund is governed by the same legal standards applied to settlement approval: it must be "fair, reasonable and adequate."[80] Generally, an allocation plan is reasonable if it reimburses class members based on the type and extent of their injuries.[81] The proposed plan of allocation here meets this standard.

Here, each Class member was injured when United failed to pay life insurance beneficiaries the proceeds associated with the policy for which the class member was a beneficiary. The extent of those injuries is commensurate with the face value or other amount pursuant to the life insurance policy, as well as the interest associated with United's failure to pay on the policies. Here, the plan of allocation formula (which is fully described in the proposed notice) will result in each Class member receiving the full net death benefit owed on the policy to which they are a beneficiary, plus a portion of prejudgment interest. Each Class member will then pay their proportionate share of court-approved attorneys' fees, reimbursement of litigation expenses, and any incentive award to the named plaintiff. This formula treats all Class members fairly, and is easy to calculate and administer. Each Class member will be required to execute and return a proposed claim form (which will be submitted in connection with final approval) to receive any distribution from the Settlement. Given the size of the Settlement, and the need to conserve Class member settlement funds, Class Counsel is acting as the claims administrator. Class Counsel shall follow-up by phone, email, and/or mail, with any Class member that does not timely return a claim form to attempt to confirm that the decision not to submit a claim form was intentional and to address any questions the Class member may have. Further, Class Counsel will

---

[80]    *Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673 (S.D. Cal. Nov. 30, 2021); *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).

[81]    *Id.*

hire (at a cost of no more than $5000) a private investigator to attempt to locate any Class members who cannot be found.

### C. The proposed form and manner of notice will fairly and efficiently inform Class members of the terms of the Settlement and their options.

Federal Rule of Civil Procedure 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." The notice of settlement must fairly inform class members of the settlement and their options,[82] and notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."[83] The proposed notice program here meets this standard.

### 1. The form of the Settlement notice clearly and concisely describes all information required by Rule 23(c)(2)(b).

Rule 23 requires settlement notices to "generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." While notice must "adequately apprise[] class members of all material elements of the settlement agreement," it complies with Rule 23(e) without containing a "detailed analysis of the statutes or causes of action forming the basis for the plaintiff's claims" or "an estimate of the potential value of [the] claims."[84]

The proposed notice here, which is attached as exhibit three to the Zweig

---

[82]  *See Manual* § 21.312 (the notice must "describe clearly the options open to the class members and the deadlines for taking action").

[83]  *Uschold*, 333 F.R.D. at 172 (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

[84]  *Lane v. Facebook*, 696 F.3d 811, 826 (9th Cir. 2012) (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)).

Declaration, contains all elements enumerated in Rule 23(c)(2)(b). It provides clearly and concisely in plain, easily understood language, a description of the Class, the lawsuit's claims, the procedural status of the litigation, the significant terms of the proposed Settlement, the amount of the Settlement, the proposed allocation plan, the release, Class Counsel's forthcoming request for attorneys' fees in the amount of 33.3% of the settlement fund and reimbursement of reasonable litigation expenses (not to exceed $45,000), the rights of Class members under Rule 23, including the right to object and be heard as to the reasonableness and fairness of the proposed Settlement or request for attorneys' fees and expense reimbursement, Class Counsel's contact information, and the website for obtaining a full copy of the Settlement Agreement and key pleadings.

### 2. The proposed manner of disseminating the Settlement notice will ensure that notice is timely received by all Class members.

On or about August 8, 2018, following the Court's May 1, 2018 Class Certification Order, a Court-approved class notice was sent by first-class mail and in some case by email to all Class members. In addition, pursuant to Court order, Class Counsel also disseminated notice to Class members regarding their fee and expenses application. The Court-approved notice was also posted on the website www.omahalifeinsuranceclassaction.com. In some cases, the notice was returned as undeliverable, and Class Counsel successfully obtained corrected physical addresses and email addresses. The purpose of the Class notice was to: (a) inform Class members as to the existence of the lawsuit and the nature of the claims; (b) communicate to Class members that the Class had been certified, and (c) allow an opportunity for Class members to exclude themselves from the case by September 24, 2018.

The notice and program of dissemination proposed by this motion for purposes of providing the Settlement notice is identical to the one previously

approved by this Court for class notice. Since Class Counsel possesses email addresses for almost each Class member, and to save costs associated with printing and mailing (though minimal), Class Counsel propose to send a copy of the Settlement notice by mail to each Class Member, and via email to Class Members whose email address is known.

For purposes of notifying a certified class of a proposed settlement, the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[85] Based on their recent experience and success with the mailed and emailed class notice, and given the availability of Class member contact information, sending settlement notice by mail and email constitutes "the best notice practicable under the circumstances."[86]

### 3.    The Court should not allow another opt-out opportunity.

The Court already allowed Class members an opportunity to opt out following notice, and Rule 23 does not require the Court to authorize a second opt-out period. As the Ninth Circuit Court of Appeals observed in *Officers for Justice v. Civil Service Commission of City and County of San Francisco*,[87] due process concerns are not implicated when forgoing a second opt-out opportunity:

---

[85]    Fed. R. Civ. P. 23(c)(2)(B).

[86]    *See Hunt v. Check Recovery Sys., Inc.*, No. C05-04993, 2007 WL 2220972, at *3 (N.D. Cal. Aug. 1, 2007) ("Delivery by first-class mail can satisfy the best notice practicable when there is no indication that any of the class members cannot be identified through reasonable efforts." (citing *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 356 (E.D.N.Y. 2006))); *see also Manual* § 21.311 ("Rule 23(c)(2)(B) requires that individual notice in 23(b)(3) actions be given to class members who can be identified through reasonable effort.  When the names and addresses of most class members are known, notice by mail is usually preferred.").

[87]    688 F.2d 615 (9th Cir. 1982).

> [The objector]'s rights are protected by the mechanism provided in the rule: approval by the district court after notice to the class and a fairness hearing at which dissenters can voice their objections, and the availability of review on appeal. Moreover, to hold that due process requires a second opportunity to opt out after the terms of the settlement have been disclosed to the class would impede the settlement process so favored in the law.[88]

Here, a second opt-out period is unwarranted and would not serve the interests of the Class as a near full recovery has been made in this case. The Class was previously given direct notice of this lawsuit and the Court's class-certification ruling, the previous right to opt-out of the Class, and the consequences of not doing so. Only one Class member opted out. The prior notice clearly advised Class members as to how to opt-out and the consequences of opting out:

> If you do not wish to be bound by any rulings of the Court, favorable or unfavorable, and do not wish to share in any settlement or judgment entered in this case, you may exclude yourself from the class. This is often called "opting-out." To opt-out, write to the individuals and addresses identified in Paragraph 11 below, and in your written submission, provide the information identified in Paragraph 11 below.

The prior notice further advised class members of the consequences of not opting out:

> If you do nothing, you will remain a member of the Class, and you will be entitled to share in any recovery from any settlement judgment that

---

[88] *Id.* at 635; *see also Low v. Trump Univ.*, 881 F.3d 1111, 1121 (9th Cir. 2018) (affirming rejection of objection to the lack of opportunity to opt out at the settlement stage because "due process requires that class members be given [only] a single opportunity to opt out"); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006) ("Requiring a second opt-out period as a blanket rule would disrupt settlement proceedings because no certification would be final until after the final settlement terms had been reached"); *In re MetLife Demut. Litig.*, 689 F. Supp. 2d 297, 345 (E.D.N.Y. 2010) ("the court is not required to afford a second opportunity to opt out.").

may be paid to class members as a result of trial or settlement. You will also be bound by any favorable or unfavorable rulings by the Court, and be bound by any release of claims contained in any settlement agreement.

And finally, the prior notice apprised class members, that there may not be another opportunity to opt out in the event of a settlement or judgment: "You may not have the right to seek exclusion from the class at the time of settlement or judgment."

There is also no reason to believe that Class Members would elect to opt out now, considering they will be receiving more money than this Court awarded them in connection with summary judgment, and almost their entire recovery, had they prevailed on all issues. Further, this is not a case where a settlement provides class members a small fraction of their recovery. Instead, the Settlement provides Class members with the full net death benefit due under the policies to which they are beneficiaries (excluding attorneys' fees and expenses awarded by the Court).

**D.    The proposed final settlement schedule is appropriate, comports with due process, and satisfies the requirements of the Class Action Fairness Act.**

As set forth in the Proposed Order, class plaintiffs propose the schedule below for completion of the final settlement approval process. Under this schedule, Class members will have up to 90 days from preliminary approval to object to any or all of the proposed Settlement.

a.    Within 10 days from the date of filing for preliminary approval, defendant United shall serve any notices required pursuant to the Class Action Fairness Act of 2005;

b.    Within 7 days from the date that the Court grants preliminary approval to the proposed Settlement, notice will be disseminated to the Class via first-class mail and email (where email addresses are available);

c.    Within 60 days from the date that the Court grants preliminary approval to the proposed Settlement (and within 53 days from the date that notice is mailed),

Class Counsel will file a motion for final approval of the Settlement, and any motion for attorneys' fees and reimbursement of expenses, and incentive award to the named plaintiff;

d.      Within 90 days from the date that the Court grants preliminary approval to the proposed Settlement (and within 83 days from the date that notice is mailed), Class Members may object to any or all of the proposed Settlement and/or the requested attorneys' fees, reimbursement of expenses, and incentive award;

e.      Within 110 days from the date that the Court grants preliminary approval to the proposed Settlement (and within 20 days after the expiration of the deadline for Class Members to object to any or all of the proposed Settlement and/or the requested attorneys' fees and expenses), Class Counsel will file a reply in support of final approval and/or their request for attorneys' fees, reimbursement of expenses, and incentive award; and

f.      On a date to be set by the Court no less than 120 days following the issuance of its preliminary approval order, the Court will hold a Final Approval Hearing.

The proposed schedule comports with due process, and complies with the time periods set forth by the Class Action Fairness Act.

**IV.    Conclusion.**

For the foregoing reasons, the Court should preliminarily approve the proposed Settlement, approve the proposed manner and form of notice, approve the proposed final schedule (or any other schedule satisfactory to the Court), and set a date for a Final Approval Hearing. A proposed order is submitted herewith.

1    Dated: February 15, 2022          Respectfully submitted,

2                                      SPERLING & SLATER, P.C.

3                                      By: */s/ Joseph M. Vanek*

4                                          Joseph M. Vanek
                                       jvanek@sperling-law.com
5                                      John P. Bjork
6                                      jbjork@sperling-law.com
                                       55 W. Monroe Street, Suite 3200
7                                      Chicago, IL 60603
8                                      Telephone: (312-641-3200)

9
                                       Jason A. Zweig
10                                     jaz@kellerlenkner.com
11                                     KELLER LENKNER LLC
                                       150 N. Riverside Plaza, Suite 4100
12                                     Chicago, IL 60606
13                                     Telephone: (312) 216-8667

14
                                       Christopher Pitoun (SBN 290235)
15                                     christopherp@hbsslaw.com
16                                     HAGENS BERMAN SOBOL SHAPIRO LLP
                                       301 North Lake Avenue, Suite 920
17                                     Pasadena, CA 91101
18                                     Telephone: (213) 330-7150

19
                                       David S. Klevatt
20                                     david@insurancelawyer.com
21                                     KLEVATT & ASSOCIATES, LLC
                                       77 West Wacker Drive, Suite 4500
22                                     Chicago, IL 60602-2619
23                                     Telephone: (312) 782-9090

24
                                       *Attorneys for Plaintiff and the Class*
25

26

27

28