Christopher R. Pitoun (SBN 290235)
*christopherp@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150

Joseph M. Vanek (*pro hac vice*)
*jvanek@sperling-law.com*
John P. Bjork (*pro hac vice*)
*jbjork@sperling-law.com*
SPERLING & SLATER, P.C.
55 W. Monroe Street, Suite 3200
Chicago, IL 60603
Telephone: (312) 224-1500

*Attorneys for Plaintiff and the Class*

*Additional counsel listed at end of document*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER BENTLEY,<br><br>                    Plaintiff,<br><br>          v.<br><br>UNITED OF OMAHA LIFE INSURANCE CO.,<br><br>                    Defendant. | No.: 15-CV-7870-DMG (AJWx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS-ACTION SETTLEMENT**<br><br>Date: July 29, 2022<br>Time: 10:00 AM<br>Judge: Hon. Dolly M. Gee<br>Courtroom: 8C |

# TABLE OF CONTENTS

Page

1. INTRODUCTION................................................................1

2. HISTORY OF THE CASE....................................................2

3. ARGUMENT. ....................................................................3

    3.1. The Settlement is fair, reasonable, and adequate. ...........5

        3.1.1. The strength of the Plaintiff Bentley's case...........6

        3.1.2. The risk, expense, and complexity, and likely duration of further litigation. ................................7

        3.1.3. The risk of maintaining class-action status throughout the trial..........................................8

        3.1.4. The amount offered in settlement.........................8

        3.1.5. The extent of discovery completed and the stage of the proceedings. ........................................9

        3.1.6. The experience and views of Counsel and the adequacy of Class Counsel's representation. ......9

        3.1.7. The presence of a governmental participant. ......10

        3.1.8. The reaction of Class Members to the proposed Settlement. .....................................................11

        3.1.9. Other Rule 23(e) factors not specifically addressed by the *Churchill* factors. ...........................11

            3.1.9.1. The effectiveness of the proposed method of distribution..........................12

            3.1.9.2. The terms of any proposed award of attorney's fees, including timing of payment...................12

            3.1.9.3. There are no agreements required to be disclosed under Rule 23(e)(3)..................12

            3.1.9.4. The proposal treats Class Members equitably relative to each other. .........................13

    3.2. The Court previously certified a litigation class.............13

    3.3. Notice of the Settlement complied with the Court's Preliminary Approval Order and applicable law.............13

3.4.  The proposed plan to allocate the Settlement *pro rata* to Class Members is fair, reasonable, and adequate. .......................15

3.5.  Treatment of multiple beneficiaries and other special circumstances. ..................................................................16

4.    CONCLUSION. ..........................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allen v. Bedolla*,
    787 F.3d 1218 (9th Cir. 2015) ........................................................................ 3

*Antonio Hurtado v. Rainbow Disposal Co.*,
    No. 17-cv-01605, 2021 WL 79350 (C.D. Cal. Jan. 4, 2021) ...................... 10

*Bayat v. Bank of the West*,
    No. C-13-2376, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015).................... 8

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979)............................................................. 11

*Briseño v. Henderson*,
    998 F.3d 1014 (9th Cir. 2021).................................................................. 3, 5

*Churchill Village LLC. v. Gen Elec.*,
    361 F.3d 566 (9th Cir. 2004).................................................................. 5, 14

*Contreras v. Armstrong Flooring, Inc.*,
    No. CV-20-3087, 2021 WL 4352299 (C.D. Cal. Jul. 6, 2021)..................... 4

*Garner v. State Farm Mut. Auto. Ins. Co.*,
    No. CV-08-1365, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)............... 10

*Glass v. UBS Fin. Servs., Inc.*,
    No. C-06-4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007)...................... 4

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)..................................................................... 3

*Hernandez v. Wells Fargo Bank, N.A.*,
    No. C-18-07354 WHA, 2020 WL 6020593 (N.D. Cal. Oct. 12, 2020)........ 5

*Hillman v. Lexicon Consulting, Inc.*,
   No. EDCV-16-01186, 2017 WL 10433869 (C.D. Cal. Apr. 27, 2017) ........ 9

*Hunt v. Check Recovery Sys., Inc.*,
   No. C-05-04933, 2007 WL 2220972 (N.D. Cal. Aug. 1, 2007) .................. 15

*In re Bluetooth Headset Prods. Liab.*,
   654 F.3d 935 (9th Cir. 2011) .................................................................... 4, 5

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   MDL No. 1917, 2016 WL 721680 (N.D. Cal. Jan. 28, 2016) ................... 11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   MDL No. 1917, 2020 WL 1873554 (N.D. Cal. Mar. 11, 2020) .................. 6

*In re LinkedIn User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) .............................................................. 11

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-md-02420, 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) ............... 5

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .................................................................... 11

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d (N.D. Cal. 2008) .............................................................. 9

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................... 8

*In re Rambus Inc. Derivative Litig.*,
   No. C-06-3513, 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) .................... 11

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) .................................................................... 3

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..................................................... 5

1

2  *Kim v. Allison,*
3      8 F. 4th 1170 (9th Cir. 2021)......................................................................... 5

4  *Kudatsky v. Tyler Techs., Inc.,*
5      No. C-19-07647, 2021 WL 5356724  (N.D. Cal. Nov. 17, 2021).............. 14

6  *Lembeck v. Arvest Central Co.,*
7      No. 3:20-cv-03277-VC, 2021 WL 5494940 (N.D. Cal. Aug. 26, 2021) ........ 5

8  *Marshall v. Holiday Magic, Inc.,*
9      550 F.2d 1173 (9th Cir. 1977)................................................................... 11

10 *McHugh v. Protective Life Ins.,*
11     494 P.3d 24 (2021).................................................................................... 7

12 *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
13     221 F.R.D. 523 (C.D. Cal. 2004)......................................................... 4, 5, 9

14 *O'Connor v. Uber Techs., Inc.,*
15     No. 13-cv-03826, 2019 WL 1437101 (N.D. Cal. Mar. 29, 2019)................. 5

16 *Ochinero v. Ladera Lending, Inc.,*
17     No. SACV-19-1136, 2021 WL 2295519 (C.D. Cal. Feb. 26, 2021).............. 6

18 *Officers for Justice v. Civil Serv. Comm'n of San Francisco,*
19     688 F.2d 615 (9th Cir. 1982).............................................................. 3, 7, 8
20

21 *Rodriguez v. West Publ'g Corp.,*
22     563 F3d 948 (9th Cir. 2009)........................................................... 4, 7, 8, 11

23 *Satchell v. Fed. Exp. Corp.,*
24     No. C03-2878, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .................... 5

25 *Uschold v. NSMG Shared Servs., LLC,*
26     333 F.R.D. 157 (N.D. Cal. 2019) .............................................................. 14

27 *Van Bronkhorst v. Safeco Corp.,*
28     529 F.2d 943 (9th Cir. 1976)..................................................................... 3

1

2
*Williams v. Brinderson Constructors, Inc.*,
3       No. CV-15-02474, 2017 WL 490901 (C.D. Cal. Feb. 6, 2017) ................... 4
4
**STATUTES**

5
28 U.S.C. § 1715(b) ......................................................................... 10
6
28 U.S.C. § 1715(d) ......................................................................... 11

California Insurance § 10113.72 ...................................................... 13
7
**RULES**
8
9
Fed. R. Civ. P. 23 ..................................................................... passim
10
**OTHER AUTHORITIES**
11
*Manual For Complex Litigation*, (4th ed. 2021) ........................... 14, 15
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 1.  Introduction

Plaintiff Jennifer Bentley's (*Bentley*) motion for final approval of the proposed class-action Settlement[1] represents the final step in this hard-fought nearly seven-year litigation. The proposed Settlement is more than fair, reasonable, and adequate. It is significantly more than this Court awarded the Class at summary judgment after taking into account a correction to the judgment due to an erroneous policy amount. Before any deductions for fees and expenses, the class will receive the *full* net policy benefits due on each of the 26 Class Policies,[2] and significantly more in prejudgment interest than the Class obtained through this Court's final judgment entered in March 2020.[3]

In the absence of this litigation and Class Counsel's efforts, the Class likely would have received nothing, since defendant United of Omaha (*United*) took the position that the Class Policies lapsed due to unpaid premiums. This Settlement not only makes the Class nearly whole, but it also eliminates the risk that the Class could have gone home empty-handed, since, on appeal, United sought to overturn this Court's March 2020 Class judgment. Thus, not only is this Settlement fair, reasonable and adequate, it is exceptional, and easily meets the Ninth Circuit's *Churchill* factors.

---

[1]  A copy of the December 23, 2021, class-action settlement is attached as exhibit one to the Plaintiff's February 15, 2022 motion for preliminary approval (Doc. 227-2) and is hereafter referred to as the *Settlement*.

[2]  The 26 Class Policies are 8448979, 7997098, 5342817, 6422766, 7010893, 9149455, BU1105227, BU1133356, BU1101313, BU1083350, UR2627721, UR2674494, UR2671752, UR2493480, UR2577555, UR2584816, UR2681720, UR2447251, UR2654966, UR2647072, BU1289270, BU1395175, BU1399164, BU1152776, BU1067439, UR1652898. These 26 policies were identified in the May 29, 2019 Joint Stipulation as to Judgment Amount and Schedule for Petition for Attorneys' Fees and Class Representative Incentive Award [Doc. 179]. The 26 policies are hereafter referred to as the *Class Policies*.

[3]  As explained below at pp. 7-8, the Court's $2,943,457.86 judgment was based on an error discovered during the time the parties were on appeal. The correct amount of the judgment should have been $2,427,791.22. The Court entered an amended judgment on March 17, 2022. [Doc. 232].

The Settlement itself is also accompanied by other indicia of fairness. The settlement negotiations were overseen by an experienced Ninth Circuit mediator. The mediator's efforts and involvement in the process were instrumental in bridging the settlement gap that the parties' themselves were unable to overcome for years. For these reasons, and the reasons further explained below, the Court should find that the proposed Settlement is fair, reasonable and adequate, and grant final approval.

Further, notice of the Settlement was carried out in strict accordance with this Court's March 17, 2022 preliminary approval order.[4] As set forth in the May 17, 2022 declaration of Joseph M. Vanek (filed as **Exhibit 1**), by March 25, 2022, such notice was mailed to all 33 Class Members (the beneficiaries on the 26 Class Policies) at their last known address, and was posted on the case website at www.omahalifeinsuranceclassaction.com. Further, Class Counsel have been in direct email and/or phone communication with 29 of the 33 Class Members and notice was emailed to Class Members for which Class Counsel had an email address. For those with whom Class Counsel did not communicate directly, Class Counsel attempted to contact each one by telephone, and also hired a private investigator to assist Class Counsel in finding these Class Members. The notice that was sent to the class clearly apprised Class Members of their rights with regard to the Settlement and the consequences of exercising them or not exercising them. Thus, notice satisfied due process.

For these reasons, and the reasons set forth herein, Plaintiff respectfully requests that the Court grant final approval to the Settlement.

### 2. History of the case.

The procedural history of the case and the history of settlement negotiations are fully set forth in Plaintiff's motion for preliminary approval,[5] which is incorporated by reference herein.

---

[4]  Doc. 230.

[5]  Doc. 227-1, at pp. 2-11.

### 3.    Argument.

In this Circuit "voluntary conciliation and settlement are the preferred means of dispute resolution."[6] The "overriding public interest in settling and quieting litigation" is "particularly true in class action suits[.]"[7] Indeed, the Court of Appeals has "'repeatedly noted that there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'"[8] "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because [she] is 'exposed to the litigants, and their strategies, positions and proof.'"[9] In exercising such discretion, courts should give "proper deference to the private consensual decision of the parties" because:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.[10]

The Court may approve a class action settlement "'only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate.'"[11]

---

[6]   *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

[7]   *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

[8]   *Briseño v. Henderson*, 998 F.3d 1014, 1030 (9th Cir. 2021) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015). *See also In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (The Ninth Circuit recognizes "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.").

[9]   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (*quoting Officers for Justice*, 688 F.2d at 626).

[10]   *Id.* at 1027 (citation omitted).

[11]   *Contreras v. Armstrong Flooring, Inc.*, 2021 WL 4352299, * 4 (C.D. Cal. Jul. 6, 2021); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *3 (N.D. Cal. Jan. 26, 2007) (citing Fed. R. Civ. P. 23(e)(1)(c)).

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."[12] The Ninth Circuit has said that courts in this Circuit should "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . ."[13] The Settlement in this case was reached through contested, arm's-length negotiations conducted by capable counsel and with the assistance of the Ninth Circuit mediator.[14] As this Court already has found and held (in the preliminary approval order), "[t]he Settlement is the product of non-collusive, arm's-length negotiations between experienced class-action and defense attorneys who were well informed of the strengths and weaknesses of the Action[.]"[15]

The Settlement was negotiated with the active involvement of the Ninth Circuit mediator, Ms. Sasha Cummings, Esq. It raises no collusion red flags under *Bluetooth*.[16] "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."[17] The Court must also ensure that the

---

[12] *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

[13] *Rodriguez v. West Publ'g Corp.*, 563 F3d 948, 965 (9th Cir. 2009).

[14] *See Williams v. Brinderson Constructors, Inc.*, 2017 WL 490901, at *2 (C.D. Cal. Feb. 6, 2017) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (citation omitted).

[15] Doc. 230, at p. 3.

[16] *In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935, 947(9th Cir. 2011); *see Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in theproduct of an arms-length, non-collusive, negotiated resolution."). The proposed Settlement does not allow for a reversion of any settlement funds to Defendant; does not contain any "clear sailing" or other agreement regarding attorneys' fees, leaving the issue to the Court's discretion; and Class Counsel do not seek a disproportionate share of the Settlement.

[17] *Lembeck v. Arvest Central Co.*, No. 3:20-cv-03277-VC, 2021 WL 5494940, at *4 (N.D. Cal. Aug. 26, 2021); *Satchell v. Fed. Exp. Corp.*, No. C03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007). *See also Hernandez v. Wells Fargo Bank, N.A.*, No. C 18-07354 WHA, 2020 WL 6020593, at *7 (N.D. Cal. Oct. 12, 2020) (that "settlement follows the efforts of Magistrate Judge Ryu in facilitating mediation between the parties" shows that "proposed settlement agreement appears to be 'product of serious, informed, non-collusive negotiations'" (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420-YGR (DMR), 2020 WL 7264559, at *14 (N.D. Cal. Dec. 10, 2020) ("'the involvement of a neutral or court-affiliated mediator

4

settlement "is not the product of collusion among the negotiating parties."[18] There is no hint of collusion here.

### 3.1.    The Settlement is fair, reasonable, and adequate.

In assessing whether a settlement is fair, reasonable, and adequate, courts in the Ninth Circuit consider the eight *Churchill*[19] factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.[20]

Courts have recognized that "[n]ot all of these [*Churchill*] factors will apply to every class action settlement. Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval."[21]

In addition to the *Churchill* factors, revised Rule 23(e) "directs the parties to present [their] settlement to the court in terms of [a new] shorter list of core concerns," which are largely similar to the traditional *Churchill* factors.[22] "Thus, courts may apply the framework set forth in Rule 23, 'while continuing to draw

---

or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests'" (quoting Advisory Committee Notes)).

[18]  *O'Connor v. Uber Techs., Inc.*, 2019 WL 1437101, at *7 (N.D. Cal. Mar. 29, 2019) (citation omitted).

[19]  *Churchill Village LLC. v. Gen Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). The Ninth Circuit has also referred to these factors as the "*Hanlon* factors" or "*Staton* factors." *Briseño*, 998 F.3d at 1023.

[20]  *Kim v. Allison*, 8 F. 4th 1170, 1178-79 (9th Cir. 2021) (*quoting In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935, 946 9thCir. 2011)).

[21]  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004).

[22]  *Deborah Ochinero v. Ladera Lending, Inc.*, 2021 WL 2295519, at *4 (C.D. Cal. Feb. 26, 2021).

guidance from the Ninth Circuit's factors and relevant precedent.'"[23] Revised Rule

23(e)(2) provides:

> If the proposal would bind class members, the court may
> approve it only after a hearing and only on finding that it is fair,
> reasonable, and adequate after considering whether:
>
> (A)  the class representatives and class counsel have adequately
>       represented the class;
>
> (B)  the proposal was negotiated at arm's length;
>
> (C)  the relief provided for the class is adequate, taking into
>       account:
>
>       (i)   the costs, risks, and delay of trial and appeal;
>
>       (ii)  the effectiveness of any proposed method of distributing
>             relief to the class, including the method of processing
>             class-member claims;
>
>       (iii) the terms of any proposed award of attorney's fees,
>             including timing of payment; and
>
>       (iv)  any agreement required to be identified under Rule
>             23(e)(3); and
>
> (D)  the proposal treats class members equitably relative to each
>       other.

"The goal of [amended Rule 23(e)] is ... to focus the [district] court and the lawyers

on the core concerns of procedure and substance that should guide the decision

whether to approve the proposal."[24]

Evaluating the Settlement against these factors demonstrates that the

Settlement merits the Court's final approval.

### 3.1.1. The strength of the Plaintiff Bentley's case.

In assessing the strength of a plaintiff's case, "there is no 'particular formula by

which th[e] outcome must be tested.'"[25] Rather, "the district court's determination

---

[23]  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2020 WL 1873554,
at *7 (N.D. Cal. Mar. 11, 2020) (citation omitted).

[24]  2018 Advisory Committee Notes.

[25]  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

nothing more than an amalgam of delicate balancing, gross approximations and rough justice."[26] Here, the Plaintiff's case was always strong. While there were no decisions determining the Statutes' applicability when Plaintiff filed suit, the statutory language clearly required United to give the Class Members the statutorily-required notice — so that the policies at issue did not lapse due to United's failure to give the notice. The Plaintiff's case only got stronger when, during the pendency of United's appeal, the California Supreme Court held that the Statutes required that insurers like United provide the required notices.[27] The strength of the Plaintiff's case is matched by the strength of the Settlement. Before deductions for fees and expenses, the Settlement equates to 100% of each Class Member's net death benefit amount (policy face value or benefit amount owed minus the amount of unpaid premium or loan interest), and Class Members will receive the full net death benefit, plus prejudgment interest, minus their *pro rata* share of attorneys' fees and expenses, and any service award.

### 3.1.2. The risk, expense, and complexity, and likely duration of further litigation.

This factor also favors the Settlement. Although Plaintiff had prevailed at each step of the way, there were no assurances that Plaintiff would continue to win. United sought to overturn on appeal both this Court's class certification and summary judgment in favor of Plaintiff. Further, even if Plaintiff had continued to litigate and won all issues on appeal, Plaintiff would not have been able to achieve much more than what was achieved from this Settlement. As set forth at paragraph 3 (and exhibit 2) of the February 14, 2022, declaration of Jason A. Zweig submitted in support of Plaintiff's motion for preliminary approval,[28] had Plaintiff prevailed on all

---

[26] *Id.* (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

[27] *McHugh v. Protective Life Ins.*, 494 P.3d 24 (2021).

[28] Doc. 227-2.

issues, Plaintiff calculates she could have recovered a total of $3,214,297.60 for herself and the Class. Here, the Settlement recovers $3 million, or nearly 94% of her total upside. Given that the Plaintiff is recovering nearly all of what she could have recovered for the Class with further litigation, the Settlement, and this *Churchill* factor, favor approval.

### 3.1.3. The risk of maintaining class-action status throughout the trial.

Here, the Court previously certified a class in this case, and granted summary judgment to the Class. Thus, there would never be a trial. However, one of the issues United appealed was this Court's grant of class certification, which it sought to overturn in its entirety. While Plaintiff was confident in her arguments supporting the grant of class certification, given this issue was still in play in the Ninth Circuit, this factor also supports the Settlement.

### 3.1.4. The amount offered in settlement.

The amount of the proposed settlement "is generally considered the most important" factor.[29] But there is no "particular formula by which [the settlement] must be tested."[30] "[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes."[31] Thus, "a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial."[32]

Here, this factor strongly supports approval of the Settlement. The class will receive the *full* net death benefit amount due on each of the 26 Class Policies, and significantly more in prejudgment interest than the Class obtained through this Court's final judgment entered in March 2020. As discussed in section 3.1.2 above,

---

[29] *Bayat v. Bank of the West*, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015).

[30] *Rodriguez*, 563 F.3d at 965; *see also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

[31] *Officers for Justice*, 688 F.2d at 624.

[32] *Nat'l Rural Telecom. Coop.*, 221 F.R.D. at 527.

with the Settlement, the Plaintiff recovered nearly 94% of what she could have recovered if she prevailed on all issues.

### 3.1.5. The extent of discovery completed and the stage of the proceedings.

The Settlement was reached at an extremely advanced stage of the proceedings. The parties had already completed discovery and a final judgment had been entered. Further, the parties had already fully briefed their appeal and cross-appeal issues. Given the advanced stage of the proceedings, this factor favors approval of the Settlement.

### 3.1.6. The experience and views of Counsel and the adequacy of Class Counsel's representation.

Under Rule 23(e)(2)(A), the Court is to consider whether class representatives and class counsel have adequately represented the class. This analysis includes "the nature and amount of discovery" undertaken in the litigation.[33] In addition, Courts give significant weight to the views of experienced counsel.[34]

After reviewing their credentials, the Court previously appointed Joseph Vanek (formerly of Vanek Vickers & Masini and now of Sperling & Slater, P.C.) and Jason Zweig (formerly of Hagens Berman Sobol Shapiro LLP and now of Keller Postman LLC) as Co-Lead Counsel.[35] These lawyers collectively have decades of experience in class actions,[36] and vigorously and effectively prosecuted this case for nearly seven years. As a result of their efforts, before deductions for attorneys' fees and expenses, class members will receive 100% of their net death benefit plus interest. Class Counsel have personally sought to call and email each Class Member to ensure they

---

[33]   Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Committee Notes.

[34]   *See, e.g.*, *Hillman v. Lexicon Consulting, Inc.*, 2017 WL 10433869, at *8 (C.D. Cal. Apr. 27, 2017); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1043 (N.D. Cal. 2008); *Nat'l Rural Telecoms. Coop.*, 221 F.R.D. at 528.

[35]   Doc. 132, at p. 22.

[36]   Doc. 121-3 at pp. 88-137.

9

receive notice, and ultimately, the Settlement funds they are entitled to. Given their collective experience in cases of this nature, Class Counsel's support for the Settlement "weighs in favor of" its approval.[37]

Plaintiff Bentley has also ably represented the interests of the Class. She has dedicated substantial time to this case, including appearing for a deposition, producing documents, and generally assisting the lawyers.

This factor weighs in favor of final approval.

### 3.1.7. The presence of a governmental participant.

The Class Action Fairness Act requires notice of a settlement be given to the Department of Justice and affected states with time to comment prior to final approval of the settlement.[38] "CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures."[39] Here, the Department of Justice and all attorneys general of affected states received CAFA notices of the Settlement from the defendant Omaha.[40] Under CAFA, the Court may not grant final approval of the Settlement until at least 90 days following the provision of CAFA notice.[41] CAFA notice was provided on February 23, 2022, and the 90 day period will run on May 24, 2022 (well in advance of the July 29, 2022 final approval hearing date). To date, no government participant has raised any concern. To the extent any concern is

---

[37] *Antonio Hurtado v. Rainbow Disposal Co.*, 2021 WL 79350, at *5 (C.D. Cal. Jan. 4, 2021).

[38] *See* 28 U.S.C. § 1715(b).

[39] *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV-08-1365, 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010).

[40] Doc. 235.

[41] 28 U.S.C. § 1715(d).

raised, Class Counsel will address it in their reply. This factor supports final approval of the Settlement.[42]

### 3.1.8. The reaction of Class Members to the proposed Settlement.

The fact that no Class Member has objected to any part of the Settlement strongly supports final approval.[43] To the extent that any Class Member does file an objection (the deadline is June 16, 2022), Class Counsel will address the objection in their reply.

### 3.1.9. Other Rule 23(e) factors not specifically addressed by the *Churchill* factors.

Although there is a significant overlap between the *Churchill* factors and those in Rule 23(e), some Rule 23(e) factors are not specifically addressed by the *Churchill* factors: 1) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims" (Rule 23(e)(2)(C)(ii)); 2) the terms of any proposed award of attorney's fees, including timing of payment (Rule 23(e)(2)(C)(iii)); 3) any agreement required to be identified under Rule 23(e)(3) (Rule 23(e)(2)(C)(iv)); and 4) the proposal treats class members equitably relative to each other (Rule 23(e)(2)(D)). Each of these will be addressed below.

---

[42]  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2016 WL 721680, at *19 (N.D. Cal. Jan. 28, 2016); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 588-89 (N.D. Cal. 2015).

[43]  *See In re Rambus Inc. Derivative Litig.*, No. C 06-3513 JF, 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) (noting that "the reaction of the class ... is perhaps the most significant factor to be weighed in considering its adequacy" where no objections to the settlement were filed); *cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement with one objection from a class of 5,400 members); *Rodriguez*, 563 F.3d at 967 ("The court had discretion to find a favorable reaction to the settlement among class members given that, of 376,301 putative class members to whom notice of the settlement had been sent, 52,000 submitted claims forms and only fifty-four submitted objections."); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) (approving settlement where one percent of the class objected); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (objections from only 16% of class was held "persuasive" of settlement's adequacy).

### 3.1.9.1. The effectiveness of the proposed method of distribution.

Here, as disclosed in the notice of Settlement, within 45 days following this Court's final approval of the Settlement, claim forms will be sent to each Class Member. Each claim form will disclose the actual amount each claimant is expected to receive, and will require them to sign the claim form and provide at least one additional document to help establish their identity. Checks will then be mailed to each Class Member.

### 3.1.9.2. The terms of any proposed award of attorney's fees, including timing of payment.

Concurrent with this motion, Class Counsel is filing a motion for an award of attorneys' fees, reimbursement of litigation expenses, and for a service award to named plaintiff Jennifer Bentley. Class Counsel's intention to make requests for fees, expense reimbursement, and service award was disclosed in the notice disseminated to all Class Members (*see* pp. 6-7 of the notice disclosing fee request of 33.3%). Further, the request for attorneys' fees is for the same percentage that this Court previously awarded Class Counsel: 33.3%. The Court also previously awarded Class Counsel $32,896.86 in expenses, and Class Counsel now seek only slightly more due to additional expenses: $43,948.31.  Finally, the $10,000 service award is the same amount that the Court previously awarded to Plaintiff.

### 3.1.9.3. There are no agreements required to be disclosed under Rule 23(e)(3).

Rule 23(e)(3) provides that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the [settlement]." Here, there are no such agreements.

### 3.1.9.4. The proposal treats Class Members equitably relative to each other.

Here, the Settlement treats each Class Member equitably relative to each other. Before deductions for attorneys' fees and expenses, each Class Member will receive their full net death benefit, and prejudgment interest equivalent to about 7% per annum. Further, assuming the Court awards attorneys' fees and expenses, each Class Member will pay their *pro rata* share of such expenses.

### 3.2. The Court previously certified a litigation class.

For purposes of settlement, the Court is also required to find that the proposed class is capable of being certified. Here, the Court previously certified a litigation class, and the class in the Settlement agreement is the same as that previously certified by the Court.[44]

### 3.3. Notice of the Settlement complied with the Court's Preliminary Approval Order and applicable law.

Federal Rule of Civil Procedure 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." The notice of settlement must fairly inform class members of the settlement and their options,[45] and "[n]otice is satisfactory if it generally describes the terms of the

---

[44] Doc. 132. On May 22, 2018, the Court entered an order modifying slightly the class definition. Doc. 141. On August 3, 2018, the Court revised the class definition again to: All beneficiaries who made a claim, or would have been eligible to make a claim, for the payment of benefits on life insurance policies renewed, issued or delivered by United of Omaha Life Insurance Company ("Omaha") in the State of California that lapsed or were terminated by Omaha for the non-payment of premium after January 1, 2013 (and which were not affirmatively cancelled by the policyholder), and as to which policies the policyholder(s) did not receive one or more of the notices of the right to designate under. Doc. 158.

[45] *See Manual For Complex Lit.,* § 21.312 (4th ed. 2021) (the notice must "describe clearly the options open to the class members and the deadlines for taking action").

settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."[46]

The Notice here provides clearly and concisely—in plain, easily understood language—a description of: the Class, at p. 4, the claims contained in the lawsuit and the procedural status of the litigation, at pp. 2-3, the significant terms of the proposed Settlement, including the total amount of money that the Defendant agreed to pay to settle the claims, at p. 4, the release, at pp. 5-6, the plan of distribution, at p. 5, Class Counsel's then-forthcoming request for attorneys' fees in the amount of up to 33.3% of the Settlement fund and reimbursement of reasonable litigation expenses and its availability on the Settlement website, at pp. 6-7, the rights of Class Members under Rule 23 (and deadlines for exercising those rights), including the right to object and be heard as to the reasonableness and fairness of the proposed Settlement or request for attorneys' fees and expense reimbursement, at pp. 7-8, the contact information of Class Counsel and the website address for obtaining a full copy of the Settlement agreement and key pleadings, at 6.[47]

The manner of dissemination of the Settlement notice complies with Fed. R. Civ. P. 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Plaintiffs sent a copy of the Settlement notice by U.S. First-Class mail to the last known address of each Class Member, and, to the extent Class Counsel had email addresses for a Class Member, also sent it to the Class Member's email address on file.[48] The dissemination of the Settlement notice by

---

[46] *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 172 (N.D. Cal. 2019) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

[47] *Cf. Kudatsky v. Tyler Techs., Inc.*, 2021 WL 5356724, at *3 (N.D. Cal. Nov. 17, 2021) (notice approved where it "informed class members about all key aspects of the settlement, the date, time, and place of the fairness hearing, the process for objection and opt-out, and estimated recovery in settlement").

[48] *See* May 17, 2022 declaration of Joseph M. Vanek at ¶¶2-4.

direct mail and email was anticipated to be sufficient to reach all Class Members and constitutes the "best notice that is practicable under the circumstances."[49]

### 3.4. The proposed plan to allocate the Settlement *pro rata* to Class Members is fair, reasonable, and adequate.

A plan for allocating a class settlement fund is governed by the same legal standards applied to settlement approval: it must be "fair, reasonable and adequate." Generally, an allocation plan is reasonable if it reimburses class members based on the type and extent of their injuries. The proposed plan of allocation here meets this standard.

Here, each Class Member was injured when United failed to pay life insurance beneficiaries the proceeds associated with the policy for which the Class Member was a beneficiary. The extent of those injuries is commensurate with the face value or other amount pursuant to the life insurance policy, as well as the interest associated with United's failure to pay on the policies. Here, the plan of allocation formula (which is fully described in the Notice at p. 5) will result in each Class Member receiving the full net death benefit owed on the policy to which they are a beneficiary, plus a portion of prejudgment interest. Each Class Member will then pay their proportionate share of court-approved attorneys' fees, reimbursement of litigation expenses, and any service award to the named plaintiff. This formula treats all Class Members fairly, and is easy to calculate and administer. Each Class Member will be required to execute and return a proposed claim form (a copy of the proposed claim form appears as **Exhibit 2**) to receive any distribution from the Settlement. Given the relatively small size of the Settlement fund, and the need to conserve Class Member Settlement funds, Class Counsel is acting as the claims administrator. As for

---

[49] Fed. R. Civ. P. 23(c)(2)(B). *See Hunt v. Check Recovery Sys., Inc.*, No. C05-04993 MJJ, 2007 WL 2220972, at *3 (N.D. Cal. Aug. 1, 2007) ("Delivery by first-class mail can satisfy the best notice practicable   "); *see also Manual* § 21.311 ("Rule 23(c)(2)(B) requires that individual notice in 23(b)(3) actions be given to class members who can be identified through reasonable effort. . . . When the names and addresses of most class members are known, notice by mail is usually preferred.").

any Class Member who does not timely return a claim form, Class Counsel will follow-up by phone, email, and/or mail with such Class Members in an attempt to confirm that the decision not to submit a claim form was intentional and to address any questions the Class Member may have.

     **3.5.   Treatment of multiple beneficiaries and other special circumstances.**

     Plaintiff's plan of allocation also includes treatment of special circumstances such as, *i.e.*, policies that identify multiple beneficiaries, where the beneficiaries have died, and where the beneficiary is under the care and supervision of another party.

     In those instances that a single policy has multiple primary beneficiaries, a claim form will be sent to each primary beneficiary for their share of the Settlement attributable to the policy. For example, if a policy has two beneficiaries, each beneficiary will receive their own claim form enabling them to claim 50% of the Settlement attributable to the policy. If the other beneficiary fails to return a claim form, the remaining 50% will be escheated to the State of California under the name of that beneficiary.

     In those instances where a beneficiary has died, Class Counsel will use reasonable efforts to identify their heirs and pay the proceeds to those individuals. If the heirs cannot be adequately identified within 180 days after claim form issuance, Class Counsel will escheat those settlement funds to the State of California.

     In one instance, Class Counsel has been informed that a beneficiary is homeless but is the subject of a protective trust. The trustee of that protective trust is also a co-beneficiary under the policy. Consistent with the plan of distribution described above, Class Counsel proposes that 50% of the proceeds for that particular policy be paid to the sister in her name (for her share of the settlement proceeds), and 50% be paid into the protective trust (for his share of the settlement proceeds).

### 4.   Conclusion.

For the foregoing reasons, the Court should grant final approval of the proposed Settlement. A proposed order is submitted herewith.[50]

Dated: May 17, 2022                     Respectfully submitted,

                                        HAGENS BERMAN SOBOL SHAPIRO LLP
                                        By: */s/ Christopher Pitoun*
                                        Christopher Pitoun (SBN 290235)
                                        christopherp@hbsslaw.com
                                        HAGENS BERMAN SOBOL SHAPIRO LLP
                                        301 North Lake Avenue, Suite 920
                                        Pasadena, CA 91101
                                        Telephone: (213) 330-7150

                                        Joseph M. Vanek
                                        jvanek@sperling-law.com
                                        John P. Bjork
                                        jbjork@sperling-law.com
                                        SPERLING & SLATER, P.C.
                                        55 W. Monroe Street, Suite 3200
                                        Chicago, IL 60603
                                        Telephone: (312)641-3200

                                        Jason A. Zweig
                                        jaz@kellerpostman.com
                                        KELLER POSTMAN LLC
                                        150 N. Riverside Plaza, Suite 4100
                                        Chicago, IL 60606
                                        Telephone: (312) 216-8667

                                        David S. Klevatt

---

[50] The proposed order relates not only to this motion for final approval, but also for Class Counsel's motion for attorneys' fees, reimbursement of litigation expenses and for a named plaintiff service award which is being filed concurrently with this motion.

david@insurancelawyer.com
KLEVATT & ASSOCIATES, LLC
77 West Wacker Drive, Suite 4500
Chicago, IL 60602-2619
Telephone: (312) 782-9090

*Attorneys for Plaintiff and the Class*