Christopher R. Pitoun (SBN 290235)
christopherp@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150

Joseph M. Vanek (*pro hac vice*)
jvanek@sperling-law.com
John P. Bjork (*pro hac vice*)
jbjork@sperling-law.com
SPERLING & SLATER, P.C.
55 W. Monroe Street, Suite 3200
Chicago, IL 60603
Telephone: (312) 224-1500

*Attorneys for Plaintiff and the Class*

[additional counsel listed on signature page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER BENTLEY, as trustee of the 2001 Bentley Family Trust, and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED OF OMAHA LIFE INSURANCE CO.,<br><br>Defendant, | No. 15-cv-07870-DMG (AJWx)<br><br>**MEMORANDUM IN SUPPORT OF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION COSTS, AND A NAMED PLAINTIFF SERVICE AWARD**<br><br>Date: July 29, 2022<br>Time: 10 a.m.<br>Judge: Hon. Dolly M. Gee<br>Courtroom: 8C |

# TABLE OF CONTENTS

1. INTRODUCTION ........................................................................................... 1
2. WORK ALLOCATION AND TIME AND RESOURCES EXPENDED ........ 3
   2.2 The Efforts of Class Counsel were Extensive and Effective. .............. 4
3. THE REQUESTED FEES ARE REASONABLE AND WARRANTED ......... 8
   3.1 A Fee of 33.3% of the Common Fund was Justified Before the Appeal and is Even More Justified Now. ........................................ 8
   3.2 The Near 100% Recovery for the Class Supports the Requested Fee. ................................................................................ 10
   3.3 The Risks of Uncertain Recovery and added Complexity of Seeking to Certify a Class Support the Requested Fee ...................... 11
   3.4 The Effort and Skill Required and Quality of Work Support the Requested Fees ............................................................................ 12
   3.5 Counsels' Representation on a Contingent Basis Supports the Requested Fees ................................................................................... 12
   3.6 Awards in Similar Cases Support the Requested Fees ....................... 13
   3.7 The LoderStar Cross-Check Confirms the Reasonableness of the Fee Request ............................................................................. 13
4. THE REQUESTED REIMBURSEMENT FOR COSTS IS WARRANTED ............................................................................................ 14
5. BENTLEY SHOULD BE GIVEN A SERVICE AWARD OF $10,000 AS PREVIOUSLY AUTHORIZED BY THE COURT .................... 14
6. CONCLUSION ............................................................................................. 15

i

MEMORANDUM IN SUPPORT OF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION COSTS, AND A NAMED PLAINTIFF SERVICE AWARD

# TABLE OF AUTHORITIES

AUTHORITIES                                                                                           PAGE(s)

*Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) .............. 14

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) .................................................. 9

*Destefano v. Zynga, Inc.*, 2016 U.S. Dist. f.n.11 (N.D. Cal. 2016) ...................... 8

*Fernandez v. Vict. Secret Stores, LLC*, 2008 U.S. Dist., 60-61
    (C.D. Cal. Jul. 21, 2008) ....................................................... 10-11, 13-14

*Good Morning to You Prods. Corp. v. Warner/Chappell Music, Inc.*,
    (C.D. Cal. Aug. 16, 2016) ................................................................... 15

*Hensley v. Eckerhart*, 461 U.S. 424, 436, 76 L. Ed. 2d 40,
    103 S. Ct. 1933 (1983) ........................................................................ 11

*In re Am. Apparel S'holder Litig.*, (C.D. Cal. July 28, 2014) ............................... 15

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ...... 9, 14

*In re Heritage Bond Litig.*, (C.D. Cal. June 10, 2005) ................................. 11, 14

*In re Med. X-Ray Film Antitrust Litig.* (E.D. N.Y. Aug. 7, 1998) ....................... 11

*In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362 (N.D. Cal. 1996) ......... 15

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ......................... 14

*In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036
    (N.D. Cal. 2007) ............................................................................ 10, 13

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ......... 9, 16

*In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ........................... 14

*Johnson v. Gen. Mills, Inc.*, (C.D. Cal. June 17, 2013) ....................................... 10

*Knight v. Red Door Salons, Inc.*, (N.D. Cal. Feb. 2, 2009) ................................. 10

*Lusby v. GameStop Inc.*, (N.D. Cal. Mar. 31, 2015) ..................................... 10, 14

*McHugh v. Protective Life Insurance*, No. S259215. ........................................... 5

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) .......................... 14

*Morris v. Lifescan, Inc.*, 54 Fed. App'x 663 (9th Cir. 2003) ......................... 12, 14

*Roberti v. OSI Sys., Inc.*, (C.D. Cal. Dec. 8, 2015) ............................................. 15

*Romero v. Producers Dairy Foods, Inc.*, (E.D. Ca. Nov. 14, 2007) ........................ 10

*Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673 (N.D. Cal. 2016) .... 8

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) ........... 10

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) .............................. 10

RULES AND STATUTES

California Insurance Code §§ 10113.71 ......................................................... 1

California Insurance Code §§ 10113.72 ......................................................... 1

Fed. R. Civ. P. 23(h) ..................................................................................... 9

OTHER SOURCES

Eisenberg, Miller & Germano, *Attorneys' Fees in Class Actions: 2009-2013*, New York Law Review, 92 N.Y.U. L. Rev. 937, October 2017 ............. 4

# 1. INTRODUCTION

After six years of litigation, the Court-certified plaintiff class (*Class*) reached a settlement (*Settlement*) with Defendant United of Omaha Life Insurance Company (*United*). Class Counsel now seeks a reasonable amount of attorneys' fees, reimbursement of litigation expenses and a service award for class representative Jennifer Bentley (*Bentley*).

This Motion follows Class Counsel's prior motion for attorneys' fees, reimbursement of litigation costs and a for a service award, which this Court granted in large part in March 2020 following summary judgment in favor of the Class.[1] This Court approved attorneys' fees amounting to 33.3% of the common fund, which based on the size of the common fund at that time equated to a fee award of $965,778.50 and a negative multiplier of lodestar of approximately 0.9. The Court also authorized reimbursement of expenses totaling $32,896.86, and a $10,000 incentive award to Bentley.

Extensive further litigation ensued for the next two years following that award. United appealed to the Ninth Circuit and sought reversal of the summary judgment in favor of the Class, arguing that California Insurance Code §§ 10113.71 and 10113.72 (*Statutes*) did not apply to any policies issued before the Statutes' Effective Date. Bentley cross-appealed the amount of prejudgment interest and the reduction of the class size. Following full briefing, the parties engaged in mediation that lasted over a month and ultimately resulted in the $3 million Settlement.

This further litigation required significant additional time and effort, which resulted in a greater recovery for the Class than they would have received under the Court's judgment. That notwithstanding, we request by this Motion the same percentage of the common fund that the Court previously deemed appropriate

---

[1] We will refer to the Court's prior order on fees, expenses and service award (Doc. 197) as "Prior Fee Order."

1

(33.3%), which would result in a total fee of $999,000. In other words, even though Plaintiff's counsel expended over $1 million in additional attorney time since the Court's last fee award, Plaintiff's counsel seeks only an additional approximately $33,000 in fees, in order to keep any fee award cabined at 33.3%. We further seek reimbursement of $43,948.31 in total expenses, which is $11,051.45 more than the previously-awarded amount.[2] Finally, we ask for the same previously-authorized $10,000 incentive award for Bentley.

The foregoing requests are reasonable and should be granted. <u>First</u>, we have achieved an exceptional result for the Class. The $3 million Settlement represents a complete recovery under the terms of the Class policies, along with approximately $572,000 in interest over and above the corrected judgment amount.[3] <u>Second</u>, a cross check against lodestar affirms the reasonableness of the requested fees because we are asking for far less compensation than the time we expended. As of two years ago, the Court determined that we had reasonably expended approximately $1.07 million in attorney time. Since then, we have expended approximately $1 million in further attorney time. Our total lodestar for this long-running litigation is approximately $2.1 million—whereas our requested fee is less than half that. <u>Third</u>, the other factors the Court identified as justifying the prior fee award—for example, the risk of non-payment and our class action experience—have not changed and justify the nearly identical request we now make. <u>Fourth</u>, the modest amount of

---

[2] This total includes up to $5,000 allocated for a private investigator to locate Class members who cannot be found. We have expended $1,961.05 to date to confirm class member contact information. If the total expense is less than $5,000, we will distribute the unused funds *pro rata* to Class members as part of the Settlement proceed distribution process.

[3] As explained in in Bentley's motion for preliminary approval of the settlement and United's motion to correct the judgment, the judgment amount of $2,943,125.19 was premised on a transcription error that overstated the face value of one of the Class policies. [Doc. 227-1 at 14-15 of 32; Doc. 228]. When the correct face amount is used, the appropriate judgment amount is $2,427,791.22. The Court entered an amended judgment on March 17, 2022. [Doc. 232].

additional expenses we incurred was reasonable and directly related to the successful result achieved. <u>Finally</u>, as the sole named Plaintiff in this matter, Bentley has effectively represented the interests of the Class as a whole and undertaken a significant burden in doing so. The $10,000 incentive award the Court granted is as warranted today as it was before the appeal.

For the reasons stated herein, we respectfully submit that this Motion should be granted. United has advised it does not oppose any of the requests contained in the Motion. A proposed order granting this Motion and the Motion for Final Approval of the Settlement filed concurrently herewith is included with the today's filings.

## 2. WORK ALLOCATION AND TIME AND RESOURCES EXPENDED

**2.1  We have efficiently and effectively prosecuted the case.**

As counsel for the Class, we have strived to prosecute the case efficiently and effectively. To avoid duplication of labor, attorneys from the firms of Class Counsel[4] generally managed the day-to-day litigation, while co-counsel addressed the efforts specific to Bentley and provided strategic input at critical case junctures. We provided descriptions of the work performed by the individual firms, as well as time allocations by firm, attorney and supporting professional, in our prior fee petition.[5] The Court approved our hourly rates and held that we had reasonably expended $1,070,376.98 in attorney time.[6]

Our efforts in connection with, inter alia, entry of the judgment, the appellate process and mediation have required significantly more time and the expenditure of additional monetary resources. Our work, time and expense allocation since May 24,

---

[4] The Court appointed Joseph M. Vanek and Jason A. Zweig as Class Counsel pursuant to Fed. R. Civ. P. 23(g). [Doc. 132 at 22 of 22].
[5] Doc. 183-2- Doc. 183-5.
[6] Doc. 197 at 8-10 of 15.

2019—the date of our prior fee and expense petition upon which the Court issued its Prior Fee Order—is as follows:

| Firm | Fees since 5-24-19 | Expenses Since 5-24-19 |
|---|---|---|
| Sperling & Slater: | $649,999.50 | $6,050.58 |
| Keller Postman[7]: | $138,580.00 | $0 |
| Hagens Berman: | $122,785.00 | $1,961.92 |
| Klevatt & Assoc.: | $126,028.50 | $0 |
| Other: | | Up to $3,038.95 (Unspent Funds for Private Investigator Services) |
| **Totals Since 5/24/19:** | **$1,037,393.00** | **Up to $11,051.45** |
| **Sum of Amounts Approved in Prior Fee Award and Totals Since 5/24/19:** | **$2,107,769.98** | **$43,948.31** |

The total lodestar of just over $2.1 million (the approximately $1.07 million approved by the Court previously plus the additional time since then) is far less than most class action suits litigated through settlement or judgment.[8] We submit that this reflects our competency and the efficient manner in which we have represented the Class over the course of this long running litigation.

**2.2  The Efforts of Class Counsel were Extensive and Effective.**

This case was hard fought. United vigorously defended the lawsuit at every stage, through numerous motions to dismiss, a motion for class decertification,

---

[7] Jason Zweig left the law firm of Hagens Berman Sobol & Shapiro and joined Keller Postman on January 25, 2021. Prior to Mr. Zweig joining Keller Postman, it was not involved in this case. Following Mr. Zweig's departure from Hagens Berman, Hagens Berman attorneys who are located in the Central District of California, continued to assist with the litigation.

[8] The mean for class action attorney fees in the Ninth Circuit from 2009-2013 was $5.96 million. *See* Eisenberg, Miller & Germano, *Attorneys' Fees in Class Actions: 2009-2013*, New York Law Review, 92 N.Y.U. L. Rev. 937, October 2017, at 950-951.

4

resistance to discovery that required discovery motions, opposition to class certification, opposition to summary judgment, a motion to stay the Court's entry of judgment for the Class and other efforts. We, on behalf of the Class, were not deterred. We defeated the vast majority of United's motions and prevailed on our own discovery, class certification and summary judgment motions.

Our work continued on appeal. We first defeated a motion by United to stay the appeal. We then fully briefed both United's appeal and the Class's cross-appeal, and expended significant time preparing for the scheduled oral argument.[9] When the case was ordered to mediation, we drafted detailed submissions to educate the mediator on the pertinent issues and prepared for and participated in numerous individual and joint mediation sessions. Once a settlement in principle was reached, we jointly prepared the Settlement agreement with United, and then individually drafted the motion for limited remand, motion for indicative ruling, motion for preliminary approval, and, most recently, the motion for final approval. The work will continue with the ongoing administration of class notice and facilitation of class member payments if final approval on the Settlement is granted.

Below is a summary of the tasks we performed—many of which we described in our prior fee petition:

- Factual investigation, legal research and preparation of initial and amended complaints [Doc. 16, 77 and 87];
- Briefing, research and preparation for argument in connection with defeating two motions dismiss [Doc. 24, 27, 90 and 107];

---

[9] The Ninth Circuit Panel cancelled the oral argument due to the pendency of the California Supreme Court's decisions in *McHugh v. Protective Life Insurance*, No. S259215. [Ninth Circuit Appellate Docket, 20-5543/20-55466 ("AD") No. 68]. However, the cancellation came just five days before the hearing, so we had already undertaken significant preparations.

- Briefing and research in connection with defeating United's motion for certification for an appeal of the Court's initial motion to dismiss ruling [Doc. 31 and 46];
- Briefing and research in connection with multiple motions for judicial notice concerning motions to dismiss and summary judgment [Doc. 23, 89 and 148];
- Offensive written discovery, including preparation of multiple requests for production, interrogatories, requests for admission and third-party subpoenas as well as motions to compel regarding the same [Doc. 91 and 114];
- Review and analysis of United's document productions and discovery responses;
- Offensive oral discovery, including preparation of corporate deposition notices and the taking of three United fact depositions;
- Defensive discovery, including responding to interrogatories and requests for production, collecting and producing documents and preparing for and defending Ms. Bentley's deposition;
- Preparation of confidentiality and ESI orders [Doc. 80 and 91];
- Preparation of multiple status reports and joint stipulations on scheduling and other case issues [Doc. 12, 14, 20, 35, 75, 79, 80, 84, 109, 126, 140, 149, 154, 163, 168, 175,179];
- Briefing and argument preparation in connection with United's unsuccessful motion for decertification [Doc. 113 and 119];
- Briefing, research and oral argument in connection with our successful motion for class certification; [Doc.121, 125, 128, 131, 132];
- Preparation and delivery of class notices and investigation related thereto;

- Communication with class members regarding class notice and case developments;
- Briefing, research and oral argument in connection with motions for summary judgment [Doc. 147, 149, 152, 161, 166, 169];
- Calculation and determination of appropriate judgment amount;
- Preparation of settlement correspondence in an effort to resolve matter prior to judgment and appeal;
- Numerous meet-and-confer conferences and communications with defense counsel and third-party counsel regarding discovery, pleadings, class notice, scheduling and other case matters;
- Briefing in opposition to United's motion to stay entry of the Court's judgment [Doc. 193 and 195];
- Briefing in opposition to United's motion to stay the appellate proceedings [AD No. 13];
- Briefing in opposition to United's appeal and in support of the Class's cross appeal [AD Nos. 25, 49, 58];
- Preparation for oral argument on United's appeal and the Class's cross-appeal [AD No. 57];
- Preparation for and participation in successful mediation [AD Nos. 72-76, 78];
- Briefing on motions for indicative ruling, limited remand and settlement approval [AD No. 83 and Doc. 219 and 227-1]; and
- Administration of class settlement notice.

As the foregoing descriptions demonstrate, we worked hard, and efficiently, to certify the Class, prevail at summary judgment and ultimately settle the case on terms that, if approved, will result in Class members finally receiving the policy proceeds to which they are entitled. Further detail and substantiation of the work performed can be found in the attorney declarations accompanying this Motion. *See* Declarations of

Joseph M. Vanek, Jason A. Zweig, Christopher Pitoun and David S. Klevatt, attached as "**Exhibits 1-4**". As is clear from the declarations and fee amounts, we were highly efficient in our representation. Indeed, we had incentive to be as efficient as possible given it was clear that, if successful, our time would likely be steeply discounted in any fee petition.[10]

### 3. THE REQUESTED FEES ARE REASONABLE AND WARRANTED

**3.1 A Fee of 33.3% of the Common Fund was Justified Before the Appeal and is Even More Justified Now.**

Under Rule 23(h), in a certified class action, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."[11] This reflects the common fund doctrine, which provides a basis in law for a reasonable award of attorneys' fees. The United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."[12] The Court explains that a district court's "[j]urisdiction over the fund involved in the litigation allows a court to prevent

---

[10] The attorney declarations endeavor to provide a highly detailed summary of the work performed by firm and the primary attorneys on the case. We have not included the underlying time sheets because: 1) they are incredibly voluminous; 2) many contain confidential, work product and/or privileged information; and 3) the Court has already considered our efforts and made determinations regarding the reasonableness thereof in its Prior Fee Award. [Doc. 197 at 9-10 of 15]. *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 690 (N.D. Cal. 2016) (noting that in approving a class action fee request a court may rely on summaries of hours worked, and contemporaneous billing records are unnecessary); *Destefano v. Zynga, Inc.*, 2016 U.S. Dist. LEXIS 17196, *66, f.n.11 (N.D. Cal. 2016) ("Lead Counsel submitted summaries of hours worked. The Court may rely on these summaries, as actual billing records are unnecessary in the context of assessing the lodestar cross-check.") If the Court wishes to review the voluminous entries, we will of course provide them, but would ask that they be reviewed *in camera* rather than placed on the public docket.

[11] Fed. R. Civ. P. 23(h).

[12] *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

8

inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit."[13]

There are two primary methods to calculate attorneys' fees in making an award under Rule 23(h): lodestar and percentage of recovery. In a common fund case, a district court has the discretion to choose either.[14] And whichever is chosen as the primary method to calculate attorneys' fees, the Ninth Circuit encourages district courts to conduct "a cross-check using the other method."[15] As before, we request a fee of 33.3% of the common fund, which is now the $3 million Settlement. This request amounts to a **significant negative multiplier** on our lodestar of over $2 million. Under both methods, the $999,000 in fees we seek from the common fund are more than reasonable and fair as this Court has determined before. *See* Doc. 197 at 10 of 15.

"The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark."[16] However, the benchmark percentage "…should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."[17] Indeed, "in most common fund cases, the award exceeds [the 25%] benchmark."[18] When evaluating whether the percentage sought by counsel is

---

[13] *Id.*

[14] *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

[15] *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015).

[16] *Johnson v. Gen. Mills, Inc.*, 2013 U.S. Dist. LEXIS 90338, at *20 (C.D. Cal. June 17, 2013) (citing *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010). *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (noting that 25% is benchmark and "usual" range of awards is 20–30%).

[17] *Fernandez v. Vict. Secret Stores, LLC*, 2008 U.S. Dist. LEXIS 123546, *30-31, 60-61 (C.D. Cal. Jul. 21, 2008) (fee award of 34% of common fund).

[18] *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007); *Knight v. Red Door Salons, Inc.*, 2009 U.S. Dist. LEXIS 11149, *17 (N.D. Cal. Feb. 2,

reasonable, a court may consider numerous factors including: (1) the results achieved; (2) the complexity and risk involved with the litigation; (3) the effort and skill required and quality of work by counsel; (4) the reaction of the class; (5) the contingent nature of the fee; and (6) awards made in similar cases.[19] Each of these factors support the percentage sought here.

**3.2   The Near 100% Recovery for the Class Supports the Requested Fee**

The most critical factor in determining the reasonableness of a fee request is the degree of success obtained.[20] In this matter, our efforts on behalf of the Class produced a truly exceptional result. The Court's summary judgment ruling in favor of the Class and the parties' Stipulated Judgment entitled each Class member to the full amount of proceeds due under their policies plus either 1% or 3% prejudgment interest. [Doc. 174 and 179] As the Court found in its Prior Fee Order, this outcome provided "substantial monetary relief" to the Class. [Doc. 197 at 5 of 15]  Under the Settlement, the Class will do *even better*. United will pay $572,208.78 more than the corrected judgment amount. These additional funds will be allocated *pro rata* as prejudgment interest, which equates to an approximately 7% interest rate instead of the 1% or 3% rate that Class members would have received under the judgment. In all, the gross settlement provides for over 93% of the damages the Class could have

---

2009) (same); *Romero v. Producers Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270 *10 (E.D. Ca. Nov. 14, 2007) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

[19] *Fernandez,* 2008 U.S. Dist. LEXIS 123546, *41-48; *Lusby v. GameStop Inc.*, 2015 U.S. Dist. LEXIS 42637 , 9 (N.D. Cal. Mar. 31, 2015).

[20] *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, *62 (C.D. Cal. June 10, 2005) (*citing Hensley v. Eckerhart*, 461 U.S. 424, 436, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983)).

obtained had it prevailed on all issues on appeal.  This excellent outcome strongly supports the requested fee.[21]

### 3.3 The Risks of Uncertain Recovery and added Complexity of Seeking to Certify a Class Support the Requested Fee

As the Court previously held, "[t]his litigation was risky for several reasons". [Doc. 197 at 4 of 15] We took this matter on a pure contingency.  While we were confident in our theory, there were no decisions determining the scope of Statutes' applicability when Bentley filed suit.  Thus, unlike a typical insurance matter with well-established precedent to guide the process and expectations of the parties, this litigation concerned matters of first impression.  And, as noted, United put forth a vigorous defense at every turn.

Had the Court adopted United's view of the Statutes—that is, that they do not apply to any policy issued before January 1, 2013, including renewed policies—the Class (and us as Counsel) would have walked away with nothing.  Similarly risky was the decision to pursue the case as a class action. The exact size and scope of the Class was unknown until fact discovery. Although we had a good faith belief the Class would be sufficiently numerous and otherwise satisfy the Rule 23 requirements, this too was uncertain and could have gone the other way had the facts turned out to be different. The class component added a layer of complexity that made the case much more challenging than a standard breach of contract matter. The litigation risks that

---

[21] *Fernandez v. Vict. Secret*, 2008 U.S. Dist. LEXIS 123546, *30-31, 60-61 (award of 34% fee for exceptional result); *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, *62-63 (award of 33.3% common fund attorney fee based on settlement recovery of 36% of class's net loss); *In re Med. X-Ray Film Antitrust Litig.* 1998 U.S. Dist. LEXIS 14888 at *20 (E.D. N.Y. Aug. 7, 1998) (increasing 25% benchmark to 33.3% where counsel recovered 17% of damages); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 323,326 (E.D. N.Y. 1993) (increasing 25% benchmark to 33.8% where counsel recovered roughly 10% of damages).

existed against vigorous and skilled opposition weigh strongly in favor of our fee request.[22]

### 3.4 The Effort and Skill Required and Quality of Work Support the Requested Fees

Summary judgment against and subsequent settlement with United did not come easy for the reasons discussed herein. As detailed in sections 2.1 and 2.2, the Class's successes in this matter called for skillful and diligent prosecution, and we devoted extensive time and resources over more than six years to achieve these successes. The Court previously stated that Counsel are "…skilled and experienced class action litigators who effectively prosecuted this action to its conclusion." [Doc. 197 at 5 of 15]. We appreciated the Court's statement and previous ruling and submit that this factor once again supports our request for a reasonable fee for our services.

### 3.5 Counsels' Representation on a Contingent Basis Supports the Requested Fees

The public interest is served by rewarding attorneys who assume class representation on a contingent basis, by way of a reasonable fee (usually enhanced by a multiplier) to compensate them for the very real risk they might be paid nothing for their work.[23] This case is no exception.

As stated, we pursued this matter on a contingent basis. Thus, absent a successful outcome, our services would go completely uncompensated. In addition,

---

[22] *Morris v. Lifescan, Inc.*, 54 Fed. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee award where district court noted that counsel achieved excellent results in a risky and complicated class action despite vigorous opposition throughout the litigation).

[23] *Fernandez,* 2008 U.S. Dist. LEXIS 123546 at *48 ("Given the risks assumed by class counsel [due to contingent representation], the court concludes that the percentage fee must encompass some risk multiplier to compensate counsel."); *In re Omnivision Techs.*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee.").

12

we would not be recouped for the nearly $44,000 in costs we have advanced or will advance for the Class's benefit. A reasonable fee is justified to account for the risk we assumed in accepting this contingent representation arrangement.

### 3.6 Awards in Similar Cases Support the Requested Fees

Our request for attorneys' fees in the amount of 33.3% of the common fund falls within the range of acceptable attorneys' fees in the Ninth Circuit. Many courts have awarded this percentage,[24] including this Court in its Prior Fee Order [Doc. 197] and other courts in this District.[25]

### 3.7 The Lodestar Cross-Check Confirms the Reasonableness of the Fee Request

Lodestar is calculated "by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."[26] Generally, district courts "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case."[27] "[L]awyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee."[28]

Here, a cross-check of our requested fee award against our lodestar strongly supports our petition. Unlike most class actions, we are **not** seeking a multiplier from

---

[24] *See, e.g., Morris*, 54 F. App'x at 664 (affirming 33% fee award); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (affirming fee award equal to one-third of recovery); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% fee award); *Lusby v. GameStop Inc.*, 2015 U.S. Dist. LEXIS 42637, **9-14 (N.D. Cal. Mar. 31, 2015) (granting 33% fee award and collecting cases regarding the same); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (granting 33% fee award and collecting cases).

[25] *Fernandez,* 2008 U.S. Dist. LEXIS 123546 at *30-31 (awarding fee award of 34% of common fund); *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555 at *62-63 (awarding 33.3% common fund attorney fee).

[26] *In re Bluetooth*, 654 F.3d at 941.

[27] *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

[28] *Id.* at 1112.

13

the common fund despite the risks we have undertaken and the positive result we have obtained for the Class. To the contrary, we are requesting a fee award that is considerably less than our combined lodestar (over $1 million less).[29]

### 4. THE REQUESTED REIMBURSEMENT FOR COSTS IS WARRANTED

As the Court held before, "[r]easonable costs and expenses in common fund cases can be reimbursed to counsel if those costs and expenses are reasonable and relevant to the litigation." [ECF 197 at 13 of 15] (citing *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1365–66 (N.D. Cal. 1996). We request reimbursement of $11,051.45 in expenses beyond the $32,896.86 previously awarded for a total expense reimbursement up to $43,948.31. The additional expenses we seek are for computerized research fees primarily related to the appeal, hosting charges for documents produced in the case, fees paid to or to be paid to a private investigator to confirm class member contact information, filing fees and travel expenses. *See* Declarations of Joseph M. Vanek at ¶¶11-12 and Christopher Pitoun at ¶10. They are thus reasonably incurred in connection with prosecuting the case. If the Court desires additional documentation, we are of course happy to provide it.

### 5. BENTLEY SHOULD BE GIVEN A SERVICE AWARD OF $10,000 AS PREVIOUSLY AUTHORIZED BY THE COURT

The Court previously authorized a $10,000 incentive award for Bentley. [Doc. 197 at 14-15]. We believe the Court's prior award is no less justified now. As the Ninth Circuit has recognized, service awards that are "intended to compensate class

---

[29] The hourly rates for the primary Counsel in this action range from $400-955 per hour, with the upper level reserved for the most experienced partners. As the Court held in the Prior Fee Order, these rates are reasonable [Doc. 197 at 8-9 of 15]. They are also in line with market rates in this district that have been approved in similar actions. *Good Morning to You Prods. Corp. v. Warner/Chappell Music, Inc.*, 2016 U.S. Dist. LEXIS 191665, *19, (C.D. Cal. Aug. 16, 2016)(approving hourly rates ranging from $190 to $935); *Roberti v. OSI Sys., Inc.*, 2015 U.S. Dist. LEXIS 164312, *20 (C.D. Cal. Dec. 8, 2015) (approving hourly rates of $525 to $975); *In re Am. Apparel S'holder Litig.*, 2014 U.S. Dist. LEXIS 184548, at *77-82 (C.D. Cal. July 28, 2014) (approving hourly partner rates of $675 to $735, associate rates of $395 to $475 and paralegal rates of $200-$250).

representatives for work undertaken on behalf of a class are fairly typical…"[30] Bentley's work in the case is definitely worthy of such an award.

Throughout this litigation, Bentley has done all that was asked of her as class representative. To satisfy her responsibilities she, among other efforts, learned the facts of the case and the legal basis for bringing it, collected and provided documents, appeared for a deposition and attended multiple court hearings.[31] She has effectively represented the Class, which, absent her willingness to serve as the sole class representative, may not have existed at all. We submit that the Court should once again reward her effort with a $10,000 incentive payment from the common fund.

### 6. CONCLUSION

For the reasons detailed herein, Counsel respectfully requests the Court approve the following:

- Attorney fees in the amount of $999,000 from the common fund (i.e., 33.3% of the Settlement amount paid by United);
- Reimbursement of costs totaling $43,948.31 from the common fund; and
- A $10,000 service award payable from the common fund to Jennifer Bentley as trustee of the Bentley Family Trust.

Dated: May 17, 2022

HAGENS BERMAN SOBOL SHAPIRO LLP

By: /s/ Christopher Pitoun
Christopher Pitoun (SBN 290235)
christopherp@hbsslaw.com
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150

---

[30] *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015).
[31] Exhibit G to Bentley Motion for Class Certification (ECF. No. 121-3, pp. 83-85 of 150).

SPERLING & SLATER, P.C.
Joseph M. Vanek
jvanek@sperling-law.com
John P. Bjork
jbjork@sperling-law.com
55 W. Monroe Street, Suite 3200
Chicago, IL 60603
Telephone: (312-641-3200)

Jason A. Zweig
jaz@kellerpostman.com
KELLER POSTMAN LLC
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
Telephone: (312) 216-8667

David S. Klevatt
david@insurancelawyer.com
KLEVATT & ASSOCIATES, LLC
77 West Wacker Drive, Suite 4500
Chicago, IL 60602-2619
Telephone: (312) 782-9090

*Attorneys for Plaintiff and the Class*