# Exhibit 2

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Jennifer Bentley, as the trustee of the
2001 Bentley Family Trust,

                Plaintiff,

v.

United of Omaha Life Insurance Co.,

                Defendant.

Case No. 15-cv-07870-DMG (AJWx)

## DECLARATION OF JASON A. ZWEIG IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

I, Jason A, Zweig, hereby declare as follows:

1.      I am an attorney licensed to practice before the courts of New York and Illinois, and numerous federal courts, and am in good standing in each of those jurisdictions and courts. I am a partner in the law firm of Keller Postman LLC. I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently to them. I make this declaration in support of Class Counsel's request for attorneys' fees and reimbursement of litigation expenses, as set forth in Plaintiff's motion for attorneys' fees, expenses, and service award that is being filed concurrently.

2.      My firm is counsel of record in this case and represents named Plaintiff, Jennifer Bentley, the class representative, and the class that this Court has certified. I was formerly a partner at Hagens Berman Sobol Shapiro LLP, and while at that firm, was the principal attorney from that firm working on this case. As reflected in this declaration, I am the only attorney working on this case at my current firm. My biography was attached to Class Counsel's previous motion for fees, costs and an incentive award (*Prior Petition*) that this Court granted in large part following entry of summary judgment in favor of the Class (Doc. 183-3, at pp. 8-9). I also attach a copy of Keller Postman's biography, as well as my current biography, as exhibit one to this declaration.

3.      At the time I first began working on this matter, I was a partner at Hagens Berman Sobol Shapiro LLP. On January 25, 2021, I moved to Keller Lenkner LLC which is now known as Keller Postman LLC. This declaration presents the time and expenses for only Keller Postman LLC. My prior firm's time through May 7, 2019 is set forth in the May 17, 2019 Declaration of Jason A. Zweig in Support of Plaintiffs' Motion for Attorneys' Fees and Expenses and Service Awards, along with supporting exhibits. (Doc. 183-2.)  And, Hagens Berman Sobol Shapiro will be filing a declaration in connection with Class Counsel's current motion for fees and expenses, detailing Hagens Berman's time and expenses following May 7, 2019.

DECLARATION OF JASON A. ZWEIG IN SUPPORT OF CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES
No. 15-cv-07870-DMG

4.      Throughout the course of this litigation, Class Counsel carefully coordinated their activities to avoid engaging in duplicative work. Indeed, for the past several years, Class Counsel vigorously pursued the Class's interests, knowing that any time spent would not be compensated at full value due to the size of the case. During the entire time that Keller Postman has been involved in this case, it was clear that any time it spent on this case would not be compensated at anywhere close to its billable rates. Thus, Keller Postman and all Plaintiff's counsel had strong incentives to work efficiently.

5.      During my time at Keller Postman, and as Co-Class Counsel, I shared responsibility for running the litigation with Joseph Vanek, the other Class Counsel. Together Class Counsel and their respective firms generally handled most of the non-Plaintiff-specific work on behalf of the Class.

6.      During my time at Keller Postman, I performed, among others, the following tasks:

   a.  Helped draft and review Ninth Circuit reply appellate brief;

   b.  Reviewed Amicus briefs in support of Ninth Circuit appeal and evaluated arguments in those briefs for inclusion in Plaintiff's reply brief;

   c.  Drafted, reviewed, revised and filed several FRAP 28(j) letters regarding supplemental authority to Ninth Circuit;

-3-

d. Drafted, reviewed, revised and filed Plaintiff's response to Ninth Circuit's order to show cause as to why Plaintiff's appeal shouldn't be stayed pending decision in *McHugh*;

e. Reviewed *McHugh* decision from California Supreme Court and drafted, reviewed, revised and filed Ninth Circuit submission on import of decision;

f. Responsible for updating www.omahalifeinsuranceclassaction.com with relevant updates and pleadings;

g. Preparation for and participated in mediation sessions, including preparation, review and revisions of mediation statement;

h. Reviewed drafts of settlement agreement;

i. Researched procedural issues arising from fact that settlement was reached while case was on appeal and procedures for settlement approval in that circumstance; and

j. Drafted motion for preliminary approval, final approval, supporting declarations, class notice, claim form, and other documents associated with same.

7. Keller Postman's lodestar from January 25, 2021 (the time I joined the firm) through May 1, 2022 is $138,580. It does not have any litigation expenses. My

DECLARATION OF JASON A. ZWEIG IN SUPPORT OF CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES
No. 15-cv-07870-DMG

firm regularly prepared and maintained files contemporaneously documenting all time spent, including tasks performed. All of the time reported by my firm were incurred for the benefit of this litigation. The following is a breakdown of the time expended by Keller Postman's attorneys and paralegals from January 25, 2021 through May 1, 2022:

| Name | Title | Rate | Hours | Lodestar |
|------|-------|------|-------|----------|
| Jason A. Zweig | Partner | $950 (2021) and $975 (2022) | 136.70 | $131,557.50 |
| Jennifer Ahmed | Paralegal | $250 (2021) | 15.95 | $3,987.50 |
| Marissa Spalding | Paralegal | $250 (2021) and $275 (2022) | 11.36 | $3035.00 |
| Totals | | | 164.01 | $138,580 |

8.     Detailed time and expense records supporting this summary information are available, if requested by the Court.

9.     The hourly rates provided for my firm's attorneys and professional support staff are the same as our usual and customary hourly rates. My firm handles both contingency cases and hourly work for paying clients, though the firm works overwhelmingly on contingent matters. The rates charged in this matter represent: i) standard rates charged to clients in similar matters or, ii) for counsel that work overwhelmingly on contingency matters, the rates charged for their services on a contingent basis in similar complex class-action litigation. Our rates have been approved

by courts in other class action cases as well.[1] Keller Postman also represents several state

Attorneys General in its public institutions practices. And, the rates charged to those

clients are consistent with the rates billed for this matter.

I declare under penalty of perjury under the laws of the United States that the

foregoing is true and correct to the best of my knowledge.

Executed this 17th day of May, 2022.

_____

Jason A. Zweig

---

[1] *See, e.g.*, *James Barr et al. v. Drizly, LLC et al.*, 1:20-cv-11492 (D. Mass). The rates approved in that case were the firm's current rates in effect at the time the fee application was submitted. Keller Postman LLC has historically increased its standard hourly rates at the start of each fiscal year.

# Exhibit

# 1

# Keller | Postman

Firm Resume

# Table of Contents

About Keller Postman ............................................................1

About Our Team ..................................................................2

Practice Areas .....................................................................3

Why Keller Postman ............................................................4

Awards................................................................................5

Antitrust Practice + Case Highlights ....................................7

Arbitration Practice + Case Highlights .................................8

Privacy Practice + Case Highlights ....................................10

Product-Liability Practice + Case Highlights ......................12

Public Institutions Practice + Case Highlights ...................14

Attorney Biographies .........................................................16

Keller|Postman

# About Keller Postman

**Keller Postman LLC** is one of the nation's leading complex litigation firms for plaintiffs. We represent a broad array of clients in class and mass actions, individual arbitrations, and multidistrict litigation matters at the trial and appellate levels in federal and state courts.

Serving hundreds of thousands of clients in litigation and arbitration, we have prosecuted high-profile antitrust, privacy, product liability, employment, and consumer-rights cases. Our firm also acts as plaintiffs' counsel in high-stakes public-enforcement actions.

## Our Mission

To achieve exceptional results for our clients, drive innovation in the practice of law, and pursue unparalleled excellence in everything we do. We are committed to excellence and innovation at every level. We act for clients who deserve to win—and we do everything we can to ensure that they do.

## Our Approach

Keller Postman seeks out complicated cases and takes on groundbreaking legal challenges where our legal and strategic counsel can add significant value. Our innovative approach combines high-end legal expertise with best practices in business operations and technology to deliver superlative representation for plaintiffs.

Our founders' previous experience building the world's largest private litigation-finance firm means we take a disciplined approach to assessing the merits and litigation outcomes of every claim we pursue.

Our greatest asset is our team of smart, dedicated professionals. Keller Postman lawyers honed their skills at AmLaw 100 law firms, national trial boutiques, corporate in-house legal departments, prestigious government posts, and successful business startups. Every member of our team shares a commitment to client service and a spirit of entrepreneurship, creativity, and excellence.

**OUR TEAM**

**8** PARTNERS

**23** ASSOCIATES

**14** STAFF ATTORNEYS & COUNSEL

**12** LEGAL SUPPORT TEAM MEMBERS

**22** CLIENT SERVICES TEAM MEMBERS

**15** CASE MANAGEMENT TEAM MEMBERS

**21** BUSINESS, OPERATIONS & IT TEAM MEMBERS

**OUR OFFICES**

CHICAGO

WASHINGTON, D.C.

AUSTIN

MIAMI

Keller | Postman

kellerpostman.com    1



# About Our Team

## Keller Postman is home to one of the most exceptional teams representing plaintiffs in the United States.

We're powered by a talented team with top-notch credentials and real-world experience. Our lawyers have litigated "bet the company" cases for plaintiffs and defendants, studied and taught at some of the top law schools in the country, served at the highest levels of government, and managed more than $1 billion of litigation-related investments.

---

THE FIRM COMPRISES MORE THAN
**THREE DOZEN LAWYERS** AND MORE THAN
**60 PROFESSIONAL STAFF MEMBERS**.

---

Our lawyers embrace challenges—drawing on their unique backgrounds to litigate complicated matters. Our commitment to hiring the very best people allows us to serve all our clients' needs, from engagement and fact development to settlement negotiation or trial. Although we come from a wide range of backgrounds and experiences, we share an unwavering commitment to excellence in advocating on behalf of our clients.

### TECHNOLOGY, DATA & ANALYTICS TEAM

Keller Postman operates a dedicated, in-house technology, data, and analytics team, led by an accomplished graduate of the Massachusetts Institute of Technology. Our firm utilizes cutting-edge technology and processes to ensure successful litigation for thousands of claims at once.

---

**OF KELLER POSTMAN'S PARTNERS AND ASSOCIATES:**

**81%**

hail from **national defense-oriented law firms**, and 74% from AmLaw 25 firms and elite trial boutiques.

**67%**

were **law clerks** at a federal court of appeals or district court.

**81%**

attended a **Top 15 U.S. News ranked law school.**

**4**

of Keller Postman's eight partners were **law clerks at the Supreme Court of the United States.**

---

Keller | Postman

# Practice Areas

At Keller Postman, we represent plaintiffs in complex litigation matters. Unlike many plaintiffs' firms, we don't limit our practice to certain types of claims or areas of law. Our diverse team has experience litigating cases across a wide variety of practice areas, which allows us to be flexible and responsive to our clients' needs. Regardless of the substantive claims involved, one thing is true about all our cases: they give us the opportunity to use our unique skills and resources to help our clients solve problems and vindicate their rights.

## Antitrust

We believe competition stimulates innovation, sparks improvements of products and services, and leads to more efficient means of delivery and production. We have brought antitrust claims against some of the largest and best-known corporations in the world— and we are confident in our team's vast experience, knowledge and capabilities to successfully litigate these cases.

## Arbitration

We help our clients level the playing field when contracts written by defendants force them into arbitration. Our team has successfully represented plaintiffs in complex arbitration proceedings throughout the United States, including wage-and-hour disputes, employee misclassification claims, consumer product disputes, and other types of contract-related disputes.

## Privacy

Technology continues to evolve and intertwine itself with our day-to-day. With these technological advances come a greater threat to privacy and data protection. Keller Postman is committed to protecting that fundamental right to privacy. Our attorneys' legal acumen matches our technical expertise, which allows us to skillfully litigate even the most complicated privacy claims.

## Product Liability

With extensive experience handling claims associated with products (including with suppliers, manufacturers, and sellers), our attorneys play key roles in some of the most significant product liability multidistrict litigation proceedings in the country. Our team continues to be selected to lead federal and state product-liability litigation through appointments to leadership positions.

## Public Institutions

We represent States, municipalities, and other government entities as plaintiffs in legal actions for the benefit of their constituents. In line with our commitment to the public good, our practice provides pivotal support—in terms of expert attorneys and resources—to public entities for the benefit of their people. We have developed the expertise to help public institutions navigate the legal landscape they face every day.



# Why Keller Postman

**WE FIND INNOVATIVE SOLUTIONS TO COMPLEX PROBLEMS.**
Our work is cutting-edge. It is not enough merely to advocate for our clients. We prize creativity, develop and harness our own technology, and commit the resources necessary to succeed. We share an ambition to do things differently—and to do them better.

**WE ARE COMMITTED TO EXCELLENCE.**
We take pride in serving as trusted advisors and provide exceptional client service. We challenge ourselves to perform at the highest level and deliver outstanding results. And we have broken new ground in our approach to client service through building a dedicated, in-house client-services team.

**WE EMBRACE CHALLENGES.**
Adopting an entrepreneurial philosophy, our firm has successfully taken on cases that are legally, technically, and politically complex. Our team has the skills, experience, and resources to go head-to-head with deep-pocket defendants.

**WE ADD STRATEGIC VALUE.**
We offer comprehensive counsel, because our lawyers have experience on both sides of the courtroom and the negotiating table. This allows us to anticipate our opponents' moves and better understand their litigation and negotiation strategies.

## Industry Recognition



**THE NEW YORK TIMES**
Keller Postman is driven "by a legal reformist spirit and entrepreneurial zeal."

**WALL STREET JOURNAL**
"[Keller Postman is calling] companies on their bluff and saying, 'You think you're going to get out of liability by going to arbitration? We'll show you what the arbitration system can do when you face tens of thousands of claims.'"

**THE AMERICAN LAWYER**
"Part of the vision was to make plaintiff-side work attractive to folks with clerkship and Big Law experience like [Keller Postman's] founders. So far, the approach seems to be working."

**LAWDRAGON MAGAZINE**
"In the blink of an eye, [Keller Postman] has moved to the forefront of litigation, from the nationwide opioid epidemic to wholesale assaults on venture-capital-backed companies exploiting workers."

# Awards

We're proud of the recognition we've received as leaders of the plaintiffs' bar.



## Trial Strategy Innovation
## 2021 Law Firm of the Year
Named by National Law Journal and American Lawyer Media

### PLAINTIFFS' LAWYERS TRAILBLAZERS
Partners **Ashley Keller** and **Warren Postman** named 2021 Plaintiffs' Lawyers Trailblazers by National Law Journal



### ELITE TRIAL LAWYERS RISING STARS
Associates **Sean Duddy** and **Marquel Reddish Longtin** named 2021 Elite Trial Lawyers Rising Stars of the Plaintiffs Bar



### KELLER POSTMAN PARTNERS AND ASSOCIATES NAMED TO SEVERAL EXCLUSIVE LEGAL DIRECTORIES,
including National Trial Lawyers Top 100, Super Lawyers, Best Lawyers, and Lawdragon's 500 Leading Lawyers in America, 500 Leading Plaintiff Consumer Lawyers, and Leading Plaintiff Financial Lawyers.

### MIDWEST TRAILBLAZERS
Partner **Ben Whiting** named 2022 Midwest Lawyers Trailblazers by The American Lawyer



### LAW360 MVP
Partner **Warren Postman** named a 2021 Law360 MVP for leadership of Keller Postman's arbitration practice



### CRAIN'S CHICAGO NOTABLE RISING STARS
Partners **Nicole Berg** and **Seth Meyer** named Crain's Chicago 2021 Notable Rising Stars in Law





# Practice & Case Highlights

# Antitrust Practice

At Keller Postman, our attorneys **stand up as the voice for consumers against predatory business practices and work tenaciously to ensure fair competition** for all businesses in the market. Our team has experience litigating a wide variety of antitrust cases on behalf of competing businesses (which deserve an equal playing field) and consumers (who have a right to fair prices, more service choices, and better products).

### CASE HIGHLIGHT: DE COSTER V. AMAZON.COM INC.

Keller Postman filed a federal antitrust lawsuit against Amazon on May 26, 2021 after the company dropped its arbitration clause as a result of Keller Postman's massive arbitration campaign. Keller Postman Partner Zina Bash is court-appointed interim co-lead class counsel in *De Coster et al. v. Amazon.com Inc.*, filed in the U.S. District Court for the Western District of Washington. In this major antitrust case, a proposed class of Amazon shoppers alleges that the Amazon platform's unlawful imposition of 'most favored nation' pricing restrictions against third-party sellers blocks competition from other e-commerce marketplaces and inflates the prices paid by customers.

The plaintiffs' allegation is that Amazon has exploited its market power to inflate prices on its own platform—and across the internet. Given the scale of this antitrust violation, the suit has the potential to be one of the largest antitrust cases in history.

### CASE HIGHLIGHT: VAN IDERSTINE V. LIVE NATION ENTERTAINMENT, INC.

Keller Postman represents a putative class of Ticketmaster customers who allege that the company and its parent company, Live Nation, illegally monopolized the market for online ticket sales. The case, in the U.S. District Court for the Central District of California, alleges that Ticketmaster and Live Nation have used their dominance to stifle competition, control ticket sales, and inflate ticket prices. As the largest promoter of concerts at major U.S. venues, Live Nation purposely reinforces Ticketmaster's dominance by threatening to withhold shows from those venues that do not work with both companies.



# Arbitration Practice

Keller Postman has won numerous precedent-setting victories requiring defendants to comply with their obligation to arbitrate disputes individually. In just two years, we have secured more than **$500 million in settlements for more than 448,000 individual workers and consumers** in these matters.

Keller Postman's pioneering arbitration practice is a clear example of the innovation and creativity our firm brings to the plaintiff's bar. We believe in our clients' cases, first and foremost. Our team and vast resources ensure that defendants cannot use forced arbitration clauses to escape responsibility for their misconduct.

**REUTERS**

"If [Keller Postman is] right—if companies imposed arbitration not as a good-faith way to expedite individual workers' claims, but as a way to assure that workers wouldn't assert their rights—then mass arbitration calls their bluff."

**CASE HIGHLIGHT: DOORDASH**

Represented by Keller Postman, more than 6,000 underpaid DoorDash couriers filed demands for arbitration against the delivery service. United States District Judge William Alsup of the Northern District of California issued an order that compelled DoorDash to abide by the arbitration clause it imposed on workers after the firm failed to meet deadlines or pay fees. DoorDash was compelled to arbitration.

*"This hypocrisy will not be blessed... Faced with having to actually honor its side of the bargain, [DoorDash] now blanches at the cost of the filing fees it agreed to pay in the arbitration clause. No doubt, DoorDash never expected that so many would actually seek arbitration,"* said Judge Alsup.

**CASE HIGHLIGHT: POSTMATES**

Represented by Keller Postman, more than 5,000 underpaid couriers for Postmates filed demands for arbitration against the delivery app. The court ordered Postmates to arbitrate with our clients. It also imposed sanctions under the new law, known as California Senate Bill 707—including requiring Postmates to pay our clients' attorneys' fees and costs in each individual arbitration, regardless of who wins.

*"I'm completely unsympathetic to [Postmates'] argument... Your complaint really is with AAA, and you chose them. You have agreements with these individual drivers, and they didn't do anything wrong from my vantage point,"* said Judge Paul Watford of the United States Court of Appeals for the Ninth Circuit in an early appellate hearing.



# Arbitration Practice

### CASE HIGHLIGHT: INTUIT

Keller Postman filed individual arbitration demands for more than 125,000 Intuit consumers, alleging the company deceived them into paying for tax-preparation services when they were eligible for a free version of Turbo Tax, as required by the IRS.

Throughout the litigation of this massive number of individual arbitrations, we've secured several landmark decisions. In *In re Intuit Free File Litigation*, Judge Terry Green of the Los Angeles Superior Court ruled that Intuit could not avoid arbitration with nearly 10,000 of our clients and denied Intuit's motion to push our clients' claims into small-claims court.

### JUDGE GREEN

"[On] whether Intuit has a viable way out of its own box... The answer is no... [Keller Postman deserves a toast. Good work."

Judge Charles R. Breyer of the U.S. District Court for the Northern District of California also denied Intuit's proposed $40 million class settlement. Keller Postman argued that Intuit should not use a class-action settlement to frustrate individual class members' efforts to bring individual arbitrations against the company.

The court ultimately compelled Intuit to arbitrate with thousands of our clients. The arbitrations are confidential—this matter has been resolved.

### CASE HIGHLIGHT: AMAZON

As reported by *The Wall Street Journal*, Keller Postman filed roughly 75,000 individual arbitration demands on behalf of Amazon Alexa users who had been recorded without permission. **Faced with arbitrating so many individual claims at once, in May 2021, Amazon eliminated its arbitration clause, allowing consumers (for the first time) to pursue their rights in court.**

After individual and class-action lawsuits against Amazon became permissible, Keller Postman filed a federal antitrust lawsuit against Amazon for the same illegal conduct. Keller Postman also separately filed another 75,000 individual arbitration demands for related claims.

The arbitrations are confidential and have been resolved. The unprecedented—and astounding—rescission by Amazon of its arbitration requirement marked a significant victory for consumers and access to justice. Keller Postman's arbitration practice has now sparked a movement towards corporate reconsideration of arbitration clauses—an astounding (and once-unthinkable) result that significantly benefits employees and consumers.



# Privacy Practice

As we become more dependent on technology, we are increasingly susceptible to companies that use illegal practices to access our data for their own commercial gain. At Keller Postman, we firmly believe that no one should have to sacrifice a reasonable expectation of privacy in exchange for modern convenience, particularly without knowledge or consent. **Our firm is committed to helping protect our clients' personal privacy through cases based on state and federal statutes.**

### CASE HIGHLIGHT: BARR V. DRIZLY, LLC F/K/A DRIZLY, INC. ET AL

A class action lawsuit was filed against Drizly, the largest online alcohol delivery marketplace in North America. The complaint alleged that Drizly's security measures were deficient in protecting consumers' personal information and that the company was slow to report the breach. As a result of the data breach, customers were exposed to fraud, identity theft, and other injuries.

Drizly moved to compel arbitration. However, after Keller Postman made an appearance with co-counsel, Drizly agreed to settlement terms within a week. Our firm has leveled up our arbitration strategy through making appearances with co-counsel partners after defendants compelled arbitration. We're extremely proud that our firm's reputation in mass arbitration has helped to swiftly secure favorable resolutions for both consumers and employees—and has also prevented defendants from using arbitration to evade liability.

### CASE HIGHLIGHT: ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT

Biometric identifiers like fingerprints and retina scans are used for everything from unlocking computers to accessing ATMs.The Illinois Biometric Information Privacy Act, or BIPA, is the country's most stringent biometric privacy law. BIPA requires anyone who records biometric information to get informed consent before doing so, and to create a publicly available retention policy so people can be assured that their sensitive biometric data won't be disclosed without their knowledge. Although BIPA has existed for more than a decade, companies are still capturing biometric information in Illinois without explaining the implications of that capture to their employees and customers.

At Keller Postman, we represent groups of individuals who have had their biometric information wrongfully recorded without consent by employers and technology platforms alike. Our goal is to make sure that sensitive biometric information is only given up knowingly, and that employers and other firms take responsibility for protecting that information once it comes into their possession.



# Privacy Practice

## CASE HIGHLIGHT: HESTRUP & PEISS V. DUPAGE MEDICAL GROUP. LTD

Keller Postman was first to file a proposed class action lawsuit — and later appointed interim co-lead counsel — against DuPage Medical Group (DMG) on behalf of patients whose sensitive medical information was stolen in a massive data breach. The complaint alleges negligence, breach of contract, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, among other allegations.

DMG revealed in August 2021 that "unauthorized actors" accessed its network, **exposing highly sensitive personal information of nearly 650,000 patients**. The compromised information includes names, addresses, dates of birth, diagnosis codes, medical procedure data, social security numbers, and other protected health information as defined by HIPAA.

The complaint alleges that DMG's inadequate safeguarding of its patients' information led to the unauthorized access and that DMG then failed to provide timely and adequate notice. As a result, patients have suffered ascertainable losses, including the loss of the value in their private and confidential information, loss of benefit of their contractual bargain, out-of-pocket expenses, and the value of their time incurred to remedy the effects of the data breach.

## CASE HIGHLIGHT: DATA BREACH LITIGATION

As privacy and data security issues continue to be a primary concern for every industry, Keller Postman is helping to define legal precedent for this evolving area of the law. Our firm leads class actions throughout the United States on behalf of more than 2.8 million individuals whose sensitive personal information has been stolen.



# Product-Liability Practice

Product-liability claims are as varied as the products available on the market. We represent plaintiffs in complex product-liability litigation, including class or mass actions in which multiple people were injured or affected by the same product or class of products. Our team has experience litigating product-liability claims involving pharmaceuticals, medical devices, and a wide variety of other consumer products.

**Our product-liability practice represents thousands of clients in a dozen consolidated actions throughout the country.** The firm litigates cases directly, receives referrals from co-counsel, and acts as co-counsel with other leading plaintiffs' firms.

Federal courts have also recognized Keller Postman's talents through appointments to plaintiffs' leadership positions in four product-liability MDLs:

- Partner Ashley Keller chairs the Law & Briefing Committee in the Zantac (Ranitidine) MDL.
- Partner Nicole Berg sits on the Law & Briefing Subcommittee in the 3M Combat Arms Earplug MDL and also the Plaintiffs' Executive Committee for the Paragard IUD Products Liability Litigation MDL.
- Associate Ashley Barriere leads the Law & Briefing Committee for the Onglyza and Kombiglyze XR MDL.

### CASE HIGHLIGHT: INFANT FORMULA LITIGATION

Keller Postman is leading the development of a new mass tort against Mead Johnson & Company LLC, Mead Johnson Nutrition Company, and Abbott Laboratories related to their infant formula products. The defendants' formulas and milk fortifiers allegedly caused or contributed to premature infants' injury and death from necrotizing enterocolitis (NEC), a devastating intestinal condition. The claims include legal defects in the design of the formula products as well as an unlawful failure to warn of the increased risk of NEC when cow's milk-based formula is consumed by infants.

### CASE HIGHLIGHT: 3M COMBAT ARMS EARPLUGS MULTIDISTRICT LITIGATION

Keller Postman has filed lawsuits against manufacturer 3M and related companies on behalf of military service members who used Combat Arms Earplugs during training and while deployed on active duty. The suits allege that the earplugs failed to protect service members from hearing loss and other damage. Evidence suggests that the manufacturer was aware of a defect in the product's design and falsified test results to secure an exclusive contract with the U.S. Department of Defense. Potentially thousands more lawsuits may be filed, as records show that more than 800,000 service members suffer from hearing damage despite having used 3M's product.



# Product-Liability Practice

### CASE HIGHLIGHT: ZANTAC (RANITIDINE) MULTIDISTRICT LITIGATION

The Zantac MDL coordinates suits accusing Pfizer Inc., Sanofi SA, Boehringer Ingelheim Pharmaceuticals Inc. and GlaxoSmithKline LLC—as well as generic makers, distributors, pharmacies and others in the supply chain—of false advertising, failure to warn, and other claims associated with cancer-causing NDMA. The FDA has set an allowable daily limit of 96 nanograms of NDMA, but researchers have found more than 3 million nanograms in a single dose of Zantac.

### CASE HIGHLIGHT: PARAGARD IUD MULTIDISTRICT LITIGATION

The Paragard IUD MDL coordinates suits accusing Teva Pharmaceuticals USA, Inc., Teva Women's Health, Inc., The Cooper Companies Inc., and CooperSurgical Inc. of failing to warn users of the risks posed by the Paragard copper intrauterine device (IUD). The plaintiffs allege that their Paragard IUDs broke apart, leaving behind pieces of the device, which sometimes embedded in their uterus. The breakage caused serious complications and injuries, including surgeries to remove the broken pieces of the device, infertility, and pain.

### CASE HIGHLIGHT: ONGLYZA AND KOMBIGLYZE XR MULTIDISTRICT LITIGATION

This MDL involves individuals who took Onglyza (saxagliptin) and Kombiglyze XR (saxagliptin and metformin) to treat Type 2 diabetes. The plaintiffs represented by Keller Postman allege that the drugs caused serious cardiac complications. Defendants Bristol-Myers Squibb and AstraZeneca began selling the drugs in 2009 and 2010, before completing a cardiac risk study recommended by the U.S. Food and Drug Administration. The study was completed in 2013 and showed that saxagliptin users had a significantly increased risk of hospitalization due to heart failure.



# Public Institutions Practice

Keller Postman represents States, municipalities, and other government entities as plaintiffs in legal actions for the benefit of their constituents. In line with our commitment to the public good, our Public Institutions Practice provides pivotal support—in terms of expert attorneys and resources—to public entities for the benefit of their people.

**Our team's legal aptitude in areas of importance to public institutions** has allowed us to build close relationships with public institutions across the country, serving as trusted advisors. Our lawyers have the proficiency to partner with public entities, from States to cities to agencies, to tackle their most important and difficult challenges.

### CASE HIGHLIGHT: STATE OF TEXAS V. GOOGLE LLC

Keller Postman represents the State of Texas, Idaho, Indiana, Mississippi, North Dakota, South Dakota, and South Carolina in the States' antitrust litigation against Google. The suit alleges that Google monopolized products and services used by advertisers and publishers in online-display advertising. The complaint also alleges that Google engaged in false, misleading, and deceptive acts while selling, buying, and auctioning online-display ads. Google also entered into an unlawful agreement with rival Facebook to maintain control of the marketplace for header bidding. These anticompetitive and deceptive practices demonstrably diminished publishers' ability to monetize content, increased advertisers' costs to advertise, and directly harmed consumers.

### CASE HIGHLIGHT: STATE OF TEXAS V. META PLATFORMS INC.

Keller Postman represents the State of Texas in a lawsuit against Facebook parent Meta Platforms Inc. for its decade-long use of facial-recognition technology to exploit Texans' biometric information in violation of Texas law. The suit alleges that the social media giant, formerly known as Facebook, unlawfully captured Texans' biometric identifiers for a commercial purpose without informed consent, disclosed those identifiers to others, and failed to destroy them within a reasonable time—all in violation of the Texas Capture or Use of Biometric Identifier Act ("CUBI"). The State also alleges that Facebook engaged in false, misleading and deceptive acts and practices in violation of the Texas Deceptive Trade Practices-Consumer Protection Act. The suit seeks civil penalties in the hundreds of billions of dollars.



# Public Institutions Practice

## CASE HIGHLIGHT: NATIONAL OPIOID CRISIS

Keller Postman represents the State of Arizona in litigation against the Sackler family and their pharmaceutical company, Purdue Pharma, Inc., alleging that the marketing of Purdue's signature drug, OxyContin, violated a 2007 consent judgement barring such tactics in the State. The State also has evidence that the Sackler family funneled billions of dollars away from Purdue, despite being aware that the company was facing massive financial liabilities from litigation.

To combat the monumental social and economic damage caused by the opioid crisis, Keller Postman also represents municipalities across Idaho, Minnesota, Nevada, and Wisconsin against drug companies, manufacturers, distributors, and pharmacies. The cases seek financial relief for the rising costs associated with public healthcare, law enforcement, and other municipal expenditures related to the opioid epidemic. Our clients also seek injunctive relief to require those companies to stop their harmful practices.



# Attorney Biographies



# Jason Zweig

*Partner*

Jason holds an impressive record of successful outcomes for clients across antitrust, consumer, products-liability, and securities matters. He has practiced in federal district and appellate courts throughout the country and has extensive experience in multidistrict litigation.

At Keller Postman, Jason focuses on class-action matters, including antitrust and consumer protection. He represents individuals, States and public institutions, and corporations as plaintiffs.

Before joining Keller Postman, Jason was the managing partner of the Chicago office of Hagens Berman Sobol Shapiro LLP, a national class-action and complex litigation firm. He moved to Chicago in 2015, having joined Hagens Berman in 2011 to open and lead the firm's New York office.

At Hagens Berman, he litigated antitrust, consumer-rights, product-liability, and securities cases. Among other notable matters, he led the firm's representation of merchants who opted out of the class settlement in In re Payment Card Interchange Fee and Merchant Discount Litigation, including FedEx, American Airlines, Southwest Airlines, Alaska Airlines, JetBlue, British Airways, Hawaiian Airlines, DSW, and The Minnesota Twins.

Prior to joining Hagens Berman, Jason was a partner at Kaplan Fox & Kilsheimer LLP in New York. At Kaplan Fox, he played significant roles in numerous class actions, including the High Fructose Corn Syrup Antitrust Litigation (recovered $531 million), Hydrogen Peroxide Antitrust Litigation (recovered $97 million), and the Plastics Additives Antitrust Litigation (recovered $46.8 million).

Jason is admitted to practice before the Department of Veterans Affairs and volunteers his time to assist military veterans with various matters.

Jason began his legal career at Proskauer Rose LLP in New York. He earned his law degree from Columbia Law School, where he was the Executive Editor for the Columbia Journal of Environmental Law, and his bachelor's degree in public affairs from Indiana University.

## EDUCATION

J.D., Columbia University

B.S., Indiana University

## INTERNSHIP

Hon. Jed S. Rakoff on the U.S. District Court for the Southern District of New York

## AWARDS

Illinois Super Lawyers (2022)

Lawdragon's Leading Plaintiff Financial Lawyers (2021)

## CONTACT

jaz@kellerpostman.com

312.216.8667

Keller | Postman